SHORT RECORD
NO. 18-2826
FILED 8/22/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DUSTIN JOHN HIGGS,                )
                                  )
          Plaintiff,              )
                                  )
     v.                           )          Case No. 2:16-cv-00096-JMS-MJD
                                  )
UNITED STATES PARK POLICE,        )
                                  )
          Defendant.              )

NOTICE OF APPEAL

Notice is hereby given that the United States of America, Defendant in

the above-named case, hereby appeals to the United States Court of Appeals

for the Seventh Circuit from an order granting, in part, Plaintiff's Motion for

Summary Judgment entered by this Court on June 25, 2018, (Dkt. 73).

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By:   s/ Gina M. Shields
      Gina M. Shields
      Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on August 22, 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Gina M. Shields
_____
Gina M. Shields
Assistant United States Attorney
Office of the United States Attorney
10 W. Market Street, Suite 2100
Indianapolis, IN 46204-3048
Telephone: (317) 226-6333
Fax:  (317) 226-6125
Email:  Gina.Shields@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DUSTIN JOHN HIGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cv-00096-JMS-MJD |
| | ) | |
| UNITED STATES PARK POLICE, | ) | |
| | ) | |
| Defendant. | ) | |

## **DOCKETING STATEMENT**

The United States of America, by counsel, Josh J. Minkler, United States Attorney for the Southern District of Indiana, and by Gina M. Shields, Assistant United States Attorney for the Southern District of Indiana, pursuant to Rule 3(c) of the Circuit Rules of the United States Court of Appeals for the Seventh Circuit, states that:

1.      On March 31, 2016, the Plaintiff filed a complaint seeking judicial review of a final agency action concerning a request for information under the Freedom of Information Act (FOIA).  (Dkt. 1.)  The district court's jurisdiction rested on 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (U.S. Government defendant), and 5 U.S.C. § 552(a)(4)(B).

2.     The Defendant filed a motion for summary judgment on June 7, 2017.  (Dkt. 38.)  The Plaintiff filed a combined response and a cross motion for summary judgment on December 13, 2017.  (Dkt. 52.)

3.     The Defendant file a combined reply in support of its summary judgment motion and a response to the cross motion for summary judgment on January 26, 2018.  (Dkt. 55.)  On February 20, 2018, the Plaintiff filed a reply in support of his cross motion for summary judgment.  (Dkt. 58.)

4.     Following a telephonic hearing held on March 6, 2018, (Dkt. 60), the Plaintiff filed a supplemental brief in support of his motion for summary judgment on March 30, 2018 (Dkt. 65.)  The Defendant filed its reply to the supplement on April 13, 2018.  (Dkt. 66.)  On April 27, 2018, the Plaintiff filed a "Reply In Support of Motion for Summary Judgment," which the district court construed as a motion for summary judgment.  (Dkt. 71, 73.)

5.     On June 25, 2018, the district court issued its ruling ordering the release of some, but not all, of the documents requested by Plaintiff.  The subject of this appeal is the district court's order to release documents that the Defendant argued were exempt: (1) under FOIA's unwarranted invasion of personal privacy exemption at 5 U.S.C. § 552(b)(7)(C), and (2) under FOIA's law enforcement techniques and procedures exemption at 5 U.S.C. § 552(b)(7)(E).  (Dkt. 73, p. 34.)

2

The Defendant was ordered to release the unredacted versions of the documents at issue on or before July 13, 2018. (*Id.*)

6.    On July 6, 2018, the Defendant filed an unopposed motion to stay the release of the documents pending appeal. (Dkt. 75.)  The motion was denied on July 9, 2018.  However, because the motion was unopposed, the district court amended the July 13 release due date—extending it to October 24, 2018.  (Dkt. 76.)

7.    The United States Court of Appeals for the Seventh Circuit has jurisdiction over this case pursuant to 28 U.S.C. § 1291, 5 U.S.C. § 552, and Federal Rule of Appellate Procedure 4(a)(1)(B).  This is an appeal from a final decision of the United States District Court for the Southern District of Indiana.  The district court entered judgment in this matter on June 25, 2018 (Dkt. 73), and the Defendant timely filed its notice of appeal on August 22, 2018, within 60 days of the date of the district court's judgment.

No motions claimed to toll the time within which to appeal have been filed.  This case is not a direct appeal from the decision of a magistrate judge.

8.    There are no prior or related appellate proceedings in this case.

9.    Because this is a civil case that does not involve any criminal convictions, 28 U.S.C. § 1915(g) is inapplicable. This case does not involve a collateral attack on a criminal conviction.

10.    None of the parties to the litigation appear in an official capacity.

3

Respectfully submitted,

JOSH J. MINKLER
United States Attorney


By:    s/ Gina M. Shields
        Gina M. Shields
        Assistant United States Attorney
        Office of the United States Attorney
        10 W. Market Street, Suite 2100
        Indianapolis, IN 46204-3048
        Telephone: (317) 226-6333
        Fax: (317) 226-6125
        Email: Gina.Shields@usdoj.gov

4

## CERTIFICATE OF SERVICE

I certify that on August 22, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<div style="margin-left:auto; width:55%;">

s/ Gina M. Shields
_____
Gina M. Shields
Assistant United States Attorney
Office of the United States Attorney
10 W. Market Street, Suite 2100
Indianapolis, IN 46204-3048
Telephone: (317) 226-6333
Fax:  (317) 226-6125
Email:  Gina.Shields@usdoj.gov

</div>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DUSTIN JOHN HIGGS,                          )
    *Plaintiff*,                              )
                                         )
    *vs.*                                    )            2:16-cv-96-JMS-MJD
                                         )
UNITED STATES PARK POLICE,                   )
    *Defendant.*                             )

**<u>ORDER</u>**

Plaintiff Dustin Higgs filed this suit against Defendant U.S. Park Police (the "Park Police") pursuant to the Freedom of Information Act ("FOIA"), asking this Court to review whether the Park Police complied with FOIA in response to Mr. Higgs' request for all documents in the agency's possession related to a triple homicide that occurred in 1996. [Filing No. 1.] Presently pending before the Court is Mr. Higgs' Cross Motion for Summary Judgment. [Filing No. 64.] In addition, given the unique procedural background of this case,[1] the Court will treat the Park

---

[1] Both parties had initially moved for summary judgment in this matter. [Filing No. 35 and Filing No. 51.] However, in its February 27, 2018 Order, the Court denied the pending Motions for Summary Judgment as moot and ordered supplemental briefing given that the Defendant's response to the FOIA request had changed over time. The Court stated that, "[s]hould the parties wish the briefs submitted pursuant to this order to constitute Motions for Summary Judgment, they should file such motions with their brief." [Filing No. 63.]

- 1 -

Police's filing entitled "Reply In Support of Motion for Summary Judgment" as a Motion for Summary Judgment. [Filing No. 71.]

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

---

Mr. Higgs did so and filed a Motion for Summary Judgment contemporaneous with his brief. [Filing No. 64.] The Park Police filed a Response to Mr. Higgs' Motion, and styled it "Reply In Support of Motion for Summary Judgment." [Filing No. 66.] However, the Park Police did not file a motion with its brief. Notwithstanding this, the Park Police drafted its briefing such that the Court assumes the Park Police believes that its prior Motion for Summary Judgment is still operative. [Filing No. 66 at 1.] The Park Police's failure to comply with the Court's Order, [Filing No. 63], and with the Local Rules for the United States District Court for the Southern District of Indiana, *see* Local Rule 7.1, is harmless in this case, as Mr. Higgs had a full opportunity to respond to the Park Police's arguments and, indeed, did so in his reply brief. Moreover, the Court may, in its discretion dispense with strict adherence to its local rules. *See Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). As such, the Court will consider the Park Police's Response to Mr. Higgs' Motion for Summary Judgment as a Cross-Motion for Summary Judgment.

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative.  *Montgomery v. American Airlines Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016).  The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014).  The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them.  *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017).  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

**II.**
**BACKGROUND**

The background of this case involves Mr. Higgs' conviction for three counts of first degree murder that were committed at the Patuxent National Wildlife Refuge in Prince George's County, Maryland in 1996. Both parties acknowledge that the identity of a FOIA requestor is not relevant to an analysis of the propriety of an agency's response to a FOIA request. [Filing No. 38 at 8.] As such, the Court will refrain from setting forth a more detailed recitation of Mr. Higgs' various attempts to appeal his conviction, except to note that Mr. Higgs was sentenced to death and is currently incarcerated on federal death row at the United States Penitentiary in Terre Haute, Indiana.

The facts of this case are not in dispute, and they begin on or about January 5, 2012, when Jessica Johnson, an investigator from the Federal Community Defender Office for the Eastern District of Pennsylvania, submitted a FOIA request (the "2012 Request") to William Line at the National Park Service. [Filing No. 1-1.] The 2012 FOIA Request referenced case #96-002243, described as "[t]riple homicides on route 197 in Patuxent Research Refuge on January 27, 1996," and requested that the Park Police furnish:

> a complete copy of everything pertaining to the above referenced matter including by way of illustration only and not limitation: files, transcripts, documents, notes, bench notes, worksheets, chain of custody forms, memorandums, reports, interviews, pictures/photographs, drawings, tests, test results, diagrams, tape recording(s), and any and all other information related to this case.

[Filing No. 1-1 at 1.]

Upon receipt of the 2012 Request, the Park Police emailed it to the Park Police's Criminal Investigation Branch ("CIB"), which began its search. [Filing No. 36-1 at 2.] By January 17, 2012, CIB had identified nine boxes of documents that it deemed responsive to the 2012 Request, including interviews, mug shots, investigative reports, photographs, and newspaper clippings. [Filing No. 1-1 at 2-3.] On February 7, 2012, the Park Police sent Ms. Johnson a letter estimating that it would "cost a total of $11,026.00 to process" the 2012 Request, giving remittance information for the payment, and indicating that the Park Police would not proceed further without receipt of the advance payment. [Filing No. 1-2 at 1-2.]

On May 12, 2012, Aren Adjoian, acting on behalf of Mr. Higgs, appealed the Park Police's calculation of the fee required to fulfill the 2012 Request. [Filing No. 1-6.] The following month, the appeal was granted, [Filing No. 1-7], and the Community Defender Office remitted $910.00 to the Park Police, [Filing No. 1-8.] On August 23, 2012, the Park Police again began to process records that it deemed responsive to the 2012 Request, [Filing No. 36-1 at 3].

Over a year later, on November 7, 2013, the Park Police sent Mr. Higgs a response which stated that documents responsive to the 2012 Request could not be released pursuant to 3 FOIA exemptions: 5 U.S.C. § 552(b)(7)(A), 5 U.S.C. § 552(b)(6); and 5 U.S.C. 552(b)(7)(C). [Filing No. 1-10 at 2.] On December 6, 2013, Mr. Higgs appealed the Park Police's November 7, 2013 Final Response. [Filing No. 1-11.] On September 17, 2014, the Office of the Solicitor for the Department of the Interior remanded the matter to the Park Police due to "procedural deficiencies," finding that the Park Police did not actually review documents that were responsive to the 2012 Request. [Filing No. 1-13 at 1-6.]

On February 15, 2015, the Park Police informed Mr. Higgs that it had determined that an enforcement proceeding remained pending due to Mr. Higgs' appeal of his criminal conviction.

[Filing No. 1-15.] On March 11, 2015, Mr. Higgs sent a letter to the Park Police alleging that the Park Police's handling of the matter "has been characterized by extensive delay and numerous errors," and contending that the Park Police's conclusion regarding enforcement proceedings was in error because Mr. Higgs' "conviction became final in 2004, when his petition for a writ of certiorari was denied on direct appeal." [Filing No. 1-18.]

On March 16, 2016, Mr. Higgs filed suit in this matter, alleging that the Park Police had wrongfully withheld documents to which Mr. Higgs has a legal right and that the Park Police had no legal basis under FOIA for doing so. [Filing No. 1.] Mr. Higgs alleged that the Park Police never responded to his March 11, 2015 letter. [Filing No. 1 at 8.]

On May 12, 2016, the Park Police responded to Mr. Higgs' March 11, 2015 letter, informing him that the Park Police had located 9 boxes of materials responsive to the 2012 Request, and had referred 46 groups of documents to other federal agencies. [Filing No. 16-1.] In addition, the Park Police released approximately 330 pages of responsive documents to Mr. Higgs and informed him that it would "process the remaining responsive records in a series of 'rolling responses.'" [Filing No. 16-1 at 5.] Accordingly, this Court stayed the case pending the production of additional documents. [Filing No. 17.]

By August 18, 2016, Mr. Higgs informed the Court that the "agency with the largest volume of records – the FBI – has asserted a blanket exemption to the production of any records." [Filing No. 20 at 1.]

Throughout the remainder of 2016 and into 2017, the Park Police continued to work with other federal agencies in reviewing documents in those agencies' possession that are responsive to the 2012 Request. [Filing No. 21; Filing No. 25; Filing No. 27.]

On April 6, 2017, Mr. Higgs filed a Memorandum of Law, indicating that the "only issue that remains in this litigation is whether the referrals made by [the Park Police] regarding documents generated by outside federal agencies constitute an improper withholding of agency records." [Filing No. 32 at 3.]

On June 7, 2017, the Park Police filed a Motion for Summary Judgment, [Filing No. 35], arguing that there was no improper withholding of agency records because "the U.S. Park Police has properly processed the request, and continued to make efforts to coordinate with these six Federal agencies to facilitate the release of documents to Higgs," [Filing No. 38 at 1-2].

On August 30, 2017, the Park Police filed a declaration by David Hardy, an FBI Records Management Division Section Chief, [Filing No. 43-1], and informed the Court that Mr. Hardy's declaration was filed in support of the FBI release of documents that had occurred on July 31, 2017, and provides information regarding "certain redactions" and the withholding of "certain information under specific exemptions under FOIA," [Filing No. 43.]

On December 13, 2017, Mr. Higgs filed a Cross-Motion for Summary Judgment, [Filing No. 51], alleging that "the only remaining issue [Mr. Higgs] contests is the adequacy of the response from the FBI," [Filing No. 52 at 2].

On March 6, 2018, the Court held a telephonic hearing in this matter, during which the parties agreed to stipulate to the following facts:

(1) all issues regarding the Park Police's response to Mr. Higgs'[FOIA] request have been resolved other than those related to the Park Police's referral of 806 pages of documents to the [FBI];

(2) Mr. Higgs is not seeking to raise in this litigation the legality of the FBI's responses to two requests for records that were made by Mr. Adjoyan; and

(3) neither the Park Police nor the FBI contend that Mr. Higgs was required to exhaust his administrative remedies with regard to the referred documents.

[Filing No. 60 at 1.]   In addition, the parties agreed "that the Park Police has accepted and is standing upon the FBI's response to Mr. Higgs regarding the 806 pages of referred documents."[2] [Filing No. 60 at 1.]

The Court subsequently denied the pending Motions for Summary Judgment as moot, observing that the issues before this Court had evolved significantly since the Motions had been filed.  [Filing No. 63.]

On March 7, 2018, pursuant to an Order from this Court, [Filing No. 60 at 2], the Park Police submitted a complete *Vaughn* Index, [Filing No. 61-1].  In the newly submitted *Vaughn* Index, the Park Police listed forty-five categories of documents and provided a description of each document, information from the document that the Park Police contends is protected, and an exemption code.  [Filing No. 61-1].

Subsequently, Mr. Higgs clarified that he no longer seeks certain documents listed in the *Vaughn* Index.  [Filing No. 65 at 1.]  As a result, of the forty-five categories of documents listed in the *Vaughn* Index, twenty-two are no longer relevant to the Court's inquiry in this matter.  Still at issue are twenty-three categories of documents.

On March 30, 2018, Mr. Higgs filed a Motion for Summary Judgment in this matter, arguing that the Park Police impermissibly withheld twenty-three categories of documents – some in part and some in full.  [Filing No. 65.]  The Park Police moved for Summary Judgment and seeks a finding that the government properly withheld the same documents.  Both Motions are now ripe for the Court's review.

---

[2] As a result, the Court will refer to the "Park Police" throughout this order, rather than to the "FBI."

## III.
### DISCUSSION

At the outset, the Court observes that as the six year history of this matter set forth herein demonstrates, the Park Police's initial series of responses could be interpreted as impeding Mr. Higgs' pursuit of the requested records rather than complying in good faith with FOIA. That said, such conduct is not at issue here. Instead, the Court's analysis is limited to the Park Police and Mr. Higgs' arguments concerning the twenty-three categories of documents still at issue. Prior to conducting this analysis, however, the Court sets forth the statutory backdrop against which it will consider all such arguments – FOIA.

### A. FOIA and the *Vaughn* Index

In introducing the 1974 Amendments to FOIA, Senator Edward Kennedy observed that:

> We should keep in mind that it does not take marching armies to end republics. . . . If the people of a democratic nation do not know what decisions their government is making, do not know the basis on which those decisions are being made, then their rights as a free people may gradually slip away, silently stolen when decisions which affect their lives are made under the cover of secrecy.

House Committee on Gov't Operations and Senate Committee on the Judiciary, Freedom of Information Act and Amendments of 1974, 157 (Comm. Print 1975). The basic purpose of FOIA is therefore "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 386 (7th Cir. 2015) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).

In *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, Justice Stevens set forth the history of FOIA, beginning with its origin in 1946 as part of the Administrative Procedures Act. 489 U.S. 749, 754 (1989). In 1966, Congress amended FOIA to implement "a general philosophy of full agency disclosure," *id.* (quoting *Dep't of Air Force v. Rose*, 425 U.S.

- 9 -

352, 360 (1976); S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)) and to require "every agency 'upon any request for records which . . . reasonably describes such records' to make such records 'promptly available to any person,'" *id*. at 754-55 (quoting 5 U.S.C. § 552(a)(3)). Congress exempted nine categories of documents from FOIA's "broad disclosure requirements." *Id.* at 755.

Although FOIA favors disclosure, its exemptions are meant to have "meaningful reach and application." *Catledge v. Mueller*, 323 F. App'x 464, 466 (7th Cir. 2009) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). For example, the Seventh Circuit has observed that "personal identifying information is regularly exempt from disclosure. And that is as it should be, for the core purpose of the FOIA is to expose what the government is doing, not what its private citizens are up to." *Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 715 F.3d 631, 651 (7th Cir. 2013) (quoting *Lakin Law Firm, P.C. v. F.T.C.*, 352 F.3d 1122, 1124 (7th Cir. 2003)). In addition, the Seventh Circuit has clarified that "FOIA's purpose is to ensure an informed citizenry, not to serve as a discovery tool." *Hawkins v. Drug Enf't Admin.*, 347 F. App'x 223, 224-25 (7th Cir. 2009) (citing *Bensman v. United States Forest Service*, 408 F.3d 945, 958 (7th Cir. 2005); *Antonelli v. F.B.I.*, 721 F.2d 615, 619 (7th Cir. 1983)).

Importantly, FOIA established a system for judicial review of agency determinations, as follows:

> If an agency improperly withholds any documents, the district court has jurisdiction to order their production. Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, [] FOIA expressly places the burden "on the agency to sustain its action" and directs the district courts to "determine the matter de novo."

*Reporters Comm.*, 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). The Seventh Circuit has characterized the challenge faced by District Courts in reviewing the denial of a FOIA request as

a task that can sometimes be "monumental." *Rubman*, 800 F.3d at 388 (quoting *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1038 (7th Cir. 1998)).

"When asserting that requested information is exempt from disclosure, agencies usually follow the procedures prescribed in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)," under which an agency may meet its "initial burden of demonstrating why it should not disclose the information" by providing "a 'detailed analysis' of the request and the reasons for invoking an exemption." *Antonelli*, 721 F.2d at 617. This is usually done via "a so-called *Vaughn* index—a list of each redacted or withheld document cross-referenced with the exemption that the agency asserts is applicable." *Henson v. Dep't of Health & Human Servs.*, __ F.3d __, 2018 WL 2994878, at *1 (7th Cir. June 15, 2018) (citations omitted).

Currently before the Court is Mr. Higgs' challenge to a *Vaughn* Index that the Park Police submitted on March 7, 2018. [Filing No. 61-1]. In his Motion, Mr. Higgs groups the documents still at issue into three categories, each of which the Court will discuss, in turn:

1) "interview reports from 1999 and associated records" (the "1999 Records");

2) National Crime Information Center ("NCIC") reports (collectively, the "NCIC Reports"); and

3) documents that relate to rifling characteristics (the "Ballistics Reports").

## B.     1999 Records

The Park Police's *Vaughn* Index lists several documents that Mr. Higgs broadly characterizes as interview reports from 1999 and associated records. The 1999 Records include FD-302s, which are "internal FBI forms" in which "evidence is often documented, usually the result of FBI interviews." [Filing No. 61-1 at 1.] Specifically, the 1999 Records consist of four FBI interviews of confidential sources "who provided information with an implied assurance of

confidentiality," [Filing No. 61-1 at 1-10 (detailing FBI pages 34-38, FBI pages 40-43, FBI pages 44-45, and FBI pages 210-14)], and two fax cover sheets [Filing No. 61-1 at 3-7 (detailing FBI page 39 and FBI page 209)].  In the *Vaughn* Index, the Park Police allege that the 1999 Records contain information that is protected under three FOIA exceptions found at 5 U.S.C. § 552(b)(6), ("Exemption 6"); 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"); and 5 U.S.C. § 552(b)(7)(D) ("Exemption 7(D)").

Exemption 6 provides an exemption to FOIA's disclosure requirements for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemptions 7(C) and 7(D) provide exemptions to FOIA's disclosure requirements for "records or information compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  In arguing that the Park Police failed to show that the 1999 Reports are exempt from disclosure, Mr. Higgs contends that because his burden "is heavier under Exemption 7 [than Exemption 6], it makes sense to analyze the claim under that Exemption."[3]  [Filing No. 65 at 2.]  Given that Exemptions 7(C) and 7(D) have differing standards, the Court sets forth the parties' arguments related to each exemption separately.

---

[3] The Court agrees with the parties' method of dispensing with an analysis under Exemption 6 and instead analyzing the Park Police's claimed exemptions under Exemption 7 because it is more protective of privacy than Exemption 6.  *See, e.g.*, *Stevens v. United States Dep't of Homeland Sec.*, 2014 WL 5796429, at *6 (N.D. Ill. Nov. 4, 2014) (analyzing claimed exemptions under Exemption 7(C) rather than Exemption 6 because "[a]lthough similar, Exemption 7(C) is more protective of privacy than Exemption 6") (citation omitted); *Marzen v. U.S. Dep't of Health & Human Servs.*, 632 F. Supp. 785, 806 (N.D. Ill. 1986) ("Exemption 7(C) is slightly broader on its face than Exemption 6 in that Exemption 7(C) protects against 'unwarranted invasions' of personal privacy whereas Exemption 6 protects against 'clearly unwarranted invasions'"); *see also Reporters Comm.*, 489 U.S. at 755-56 (presenting a detailed analysis of the differences between Exemption 6 and Exemption 7(C) and stating that "the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files").

### 1. *Exemption 7(D): Confidential Sources*

The Court begins its analysis of the exemptions set forth in the FBI's *Vaughn* Index by turning first to FOIA's most broad law enforcement exemption – Exemption 7(D). *See generally Irons v. F.B.I.*, 880 F.2d 1446, 1451-52 (1st Cir. 1989) (describing Exemption 7(D) as a "a broad exemption for law enforcement" that was enacted in 1974 and broadened in 1986 "to ease considerably a Federal law enforcement agency's burden in invoking it.") (quoting 199 Cong. Rec. S16504 (daily ed. October 15, 1986)).

Exemption 7(D) provides an exemption to FOIA's disclosure requirements for "records or information compiled for law enforcement purposes, but only to the extent that the production of such" records:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).

Mr. Higgs argues that, unlike Exemption 7(C), discussed *infra*, Exemption 7(D) requires no balancing of interests but rather, the "primary issue is whether the source was indeed confidential." [Filing No. 65 at 2-3.] Mr. Higgs states that the agency "must prove the expectation of confidentiality based on the circumstances of the specific case," [Filing No. 65 at 2-3], but all the Park Police has done is "state blandly that the source's relationship to the crime permits an inference of confidentiality," [Filing No. 65 at 5 (citations omitted)].

In its response brief, the Park Police alleges that the FBI was "selective in its application of this Exemption" and points to a declaration by David Hardy, an FBI Records Management Division Section Chief, who stated that the confidential sources "provided information on two

- 13 -

subjects who were the targets of a triple murder investigation" and that the disclosure of their "identities and the specific information they provided could have devastating consequences because revealing their cooperation could subject them, as well as their families, to harassment, serious bodily injury, and/or death." [Filing No. 66 at 2 (quoting Filing No. 43-1 at 15-16).]

In reply, Mr. Higgs reiterates his argument that the Park Police's "bland statements" in support of confidentiality do not pass muster under Exemption 7(D). [Filing No. 71 at 3.]

At the outset, the Court notes that there appears to be no dispute that the documents at issue in this case were compiled for law enforcement purposes. Accordingly, for the purposes of the Court's analysis of Exemption 7(D) and Exemption 7(C), the Court will follow suit and assume that the Park Police has proven the threshold law enforcement purpose. *See Barmes v. I.R.S.*, 60 F. Supp. 2d 896, 902 (S.D. Ind. 1998) ("To withhold a document pursuant to Exemption 7(D), an agency must make a threshold showing that it was compiled for law enforcement purposes") (citation omitted); *Stevens v. United States Dep't of Homeland Sec.*, 2014 WL 5796429, at *6 (N.D. Ill. Nov. 4, 2014) (holding that the government must satisfy the standard under Exemption 7(C) if it could establish that the material was compiled for law enforcement purposes).

Twenty-five years ago, the Supreme Court rejected "the proposition that the category of all FBI criminal investigative sources is exempt." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 178 (1993) (stating that "[h]ad Congress meant to create such a rule, it could have done so much more clearly.") Instead, an agency must establish that a particular source spoke with an understanding that the communication would remain confidential. *Id*. at 172. An analysis of whether an informant spoke with implied confidentiality "proceeds from the perspective of an informant, not the law enforcement agency." *Billington v. U.S. Dep't of Justice*, 233 F.3d 581,

585 (D.C. Cir. 2000). When a document containing confidential source information is requested, the Supreme Court has held that

> it generally will be possible to establish factors such as the nature of the crime that was investigated and the source's relation to it. Armed with this information, the requester will have a more realistic opportunity to develop an argument that the circumstances do not support an inference of confidentiality. To the extent that the Government's proof may compromise legitimate interests, of course, the Government still can attempt to meet its burden with in camera affidavits.

*Landano*, 508 U.S. at 180. In addition to "the character of the crime at issue," and "the source's relation to the crime," courts should consider "whether the source received payment, and whether the source has an 'ongoing relationship' with the law enforcement agency and typically communicates with the agency 'only at locations and under conditions which assure the contact will not be noticed.'" *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (citing *Landano*, 508 U.S. at 179).

In his affidavit, Mr. Hardy analyzes the particular crime at issue, characterizing it as a "violent triple murder" and states that the confidential sources provided information that was "singular in nature" concerning the activities of two of the suspects in the triple murder. [Filing No. 43-1 at 15-16.] Mr. Hardy does not specify whether the confidential sources received payment, nor does he specify the manner in which the purported informants communicated with the FBI. Mr. Hardy's declaration does not allow the Court to analyze confidentiality under each factor set forth in *Roth*, 642 F.3d at 1184. However, the nature of the crime at issue and the sources' relation to the crime are both factors that weigh in favor of confidentiality in this case. Given the breadth of Exemption 7(D)'s protections, the Court concludes that the FBI properly withheld documents or portions of documents pursuant to Exemption 7(D).

The fact that Mr. Higgs may know the identity of one or more of the confidential informants does not change the Court's analysis. Mr. Hardy does not indicate the extent of the informants'

- 15 -

involvement in the criminal case against Mr. Higgs. Therefore, there is a possibility that the informants identified by the FBI and alluded to in Mr. Hardy's declaration may have been involved in the criminal case against Mr. Higgs' and perhaps even publicly testified in Mr. Higgs' trial. In other words, Mr. Higgs may know the identity of one or more of the informants that the FBI now claims are confidential.

However, numerous courts have held that "a government agency is not required to disclose the identity of a confidential source or information conveyed to the agency in confidence in a criminal investigation notwithstanding the possibility that the informant may have testified at a public trial." *Parker v. Dep't of Justice*, 934 F.2d 375, 379 (D.C. Cir. 1991) (collecting cases); *see also Irons*, 880 F.2d at 1456-57 (the First Circuit holding that "public testimony by 'confidential sources'" does not waive the FBI's right to withhold information furnished by a confidential source or to withhold the identity of a confidential source); *Ferguson v. F.B.I.*, 957 F.2d 1059, 1068 (2d Cir. 1992) (the Second Circuit rejecting "the idea that subsequent disclosures of the identity of a confidential source or of some of the information provided by a confidential source requires full disclosure of information provided by such a source"); *Kimberlin v. Dep't of Treasury*, 774 F.2d 204, 208-09 (7th Cir. 1985) (the Seventh Circuit holding that claims of confidentiality under FOIA were not waived because information in a memorandum was disclosed prior to and during a trial); *Scherer v. Kelley*, 584 F.2d 170, 176 n.7 (7th Cir. 1978) (holding that a source does not relinquish his or her confidentiality by testifying at a criminal trial because "[a] source would be unlikely to testify on any subject if he or she knew that by so doing every transcription made by an investigative agent regarding their conversations could be released to the party about whom the source was informing"); *Cobar v. U.S. Dep't of Justice*, 81 F. Supp. 3d 64, 73 (D.D.C. 2015)

- 16 -

(rejecting a plaintiff's contention that "official confirmation of a confidential source in any way diminishes the protection offered by Exemption 7(D)").

Exemption 7(D) affords the government a broad law enforcement exception and Mr. Hardy's declaration supports the application of this exception to this case; therefore, the Court concludes that the Park Police properly withheld portions of the 1999 records pursuant to Exemption 7(D).[4] Mr. Higgs' Motion for Summary Judgment is **DENIED** and the Park Police's Motion for Summary Judgment is **GRANTED** with regard to the exemptions it claimed under Exemption 7(D).

### 2. *Exemption 7(C): Unwarranted Invasions of Personal Privacy*

Having found that certain 1999 records were properly withheld under Exemption 7(D), the Court now turns to the remainder of the 1999 records, which were withheld under Exemption 7(C).

Exemption 7(C) provides an exemption to FOIA's disclosure requirements for "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Mr. Higgs argues that under Exemption 7(C), this Court must "balance the privacy interest of the person referenced in the record against the public interest in disclosure." [Filing No. 65 at 2-3.] He contends that the public interest in "unveiling potential governmental and in particular prosecutorial, misconduct is indubitably a powerful one," while the privacy interests are relatively low because: (1) the FBI and other government personnel "have reduced privacy interest[s]"; (2)

---

[4] In so ruling, the Court relies upon Mr. Hardy's Declaration as offering a more specific breakdown of pages than that set forth in the *Vaughn* Index. Specifically, Mr. Hardy states that the FBI asserted Exemption 7(D) as to pages 34-37, 40-45, and 210-213. The Court holds that all such assertions were proper. [Filing No. 41-3 at 16.]

deceased persons have reduced privacy interests; and (3) "even assuming that the individuals in question are alive, those individuals' privacy interests do not necessarily override the public interest in disclosure." [Filing No. 65 at 4-5.]

In its response brief, the Park Police argues that Mr. Higgs' challenges under Exemption 7(C) fail because "he cannot establish a public interest in the information." [Filing No. 66 at 1.] The Park Police contends that the "only evidence" that Mr. Higgs advances in support of his allegations of official misconduct "are his own allegations and legal theories made in his attempt to overturn his criminal conviction." [Filing No. 66 at 2.]

In his reply brief, Mr. Higgs argues that Exemption 7(C) "does not require 'proof' of misconduct in order for there to be a public interest in disclosure of misconduct" as the Park Police contends, but instead requires him to "show [] that there is evidence of potential government impropriety," which he has done in this case. [Filing No. 71 at 2.] In addition, Mr. Higgs contends that the Park Police's argument that he cannot show government impropriety because the District Court of Maryland rejected his request for relief under Rule 60(d) is "meritless," because the applicable standard - "more than bare suspicion" – "is so much lower than the 'clear and convincing evidence' standard applied in the 60(d) ruling."

As both parties agree, deciding whether the exemption found at Exemption 7(C) applies "requires balancing the privacy interests of the affected persons against the public interest in the disclosure of the information." *Baker v. F.B.I.*, 863 F.3d 682, 684 (7th Cir. 2017) (citing *U.S. Dep't of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 495 (1994)). "The Supreme Court has repeatedly held that the only public interest that is relevant to this balancing test is the shining of a light on an agency's performance of its statutory duties." *Lakin*, 352 F.3d at 1125 (citing *Reporters Comm.*, 489 U.S. at 773). The government's personal-privacy arguments, even

- 18 -

when "weighty," may be "overcome by proof that the requested disclosure would be in the public interest to a degree outweighing privacy concerns." *Baker*, 863 F.3d at 684.

As a threshold matter, the Court examines whether Mr. Higgs has set forth a sufficient public interest to allow his claims concerning Exemption 7(C) to proceed. The Park Police correctly points out that when showing public interest in the disclosure of the information, it is well established that a "prisoner's interest in attacking his own conviction is not a public interest." *Hawkins*, 347 F. App'x at 225 (citing *Peltier v. F.B.I.*, 563 F.3d 754, 764 (8th Cir. 2009); *Neely v. F.B.I.*, 208 F.3d 461, 464 (4th Cir. 2000); *Antonelli*, 721 F.2d at 619). *Hawkins*, however, is distinguishable from this case because in *Hawkins*, the court found that the "only interest advanced by" the plaintiff "was his personal desire to uncover some record that might aid a challenge to his convictions," and he offered "no hint of government misconduct that would be brought to light" by the records sought. *Hawkins*, 347 F. App'x 225. In this case, Mr. Higgs' argument is more particular than a mere challenge to his conviction. In his initial Motion for Summary Judgment in this case, Mr. Higgs argued that there was a public interest in discovering prosecutorial misconduct and specifically in:

> shedding light on whether the federal government arranged with state authorities to cease pursuing homicide charges in a separate case involving the key cooperating witness against Plaintiff – in order to prevent attacks on the witness's credibility at Plaintiff's trial – and then improperly concealed those facts from Plaintiff and the public.

[Filing No. 52 at 15.] Accordingly, Mr. Higgs has alleged a broader public interest than overturning his conviction.

Similarly, the Seventh Circuit's recent decision in *Baker* is distinguishable from Mr. Higgs' case because the plaintiff in *Baker* merely alleged that the public had an interest in knowing that the FBI had "adequately staffed the investigation with able and experienced agents." *Baker*, 863

F.3d at 684. The Seventh Circuit found this theory "far-fetched," and also considered that "the FBI did after all give Baker records of investigatory activity relating to the prosecution . . . , albeit without naming any of the personnel involved in that activity." *Id.* In this case, certain documents were redacted, while others were withheld altogether. More seriously, Mr. Higgs alleges a large scheme of Government misconduct which clearly involves a greater interest to the public than merely ensuring knowledge of the number of personnel on an investigation. Therefore, Mr. Higgs has made a more convincing showing of the public interest than was present in both *Hawkins* and *Baker* and has therefore alleged a sufficiently valid public interest to allow his claim to proceed.

A subsequent step in the Court's analysis is the extent to which Mr. Higgs bears an evidentiary burden – an analysis that requires the Court to look once again to the public interest at issue. The Park Police contends that Mr. Higgs must produce evidence that would "warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." [Filing No. 66 at 2 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174-75 (2004))]. Indeed, the Supreme Court has held that "where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties," the requester must:

> establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred . . . . Only when the FOIA requester has produced evidence sufficient to satisfy this standard will there exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records.

*Favish*, 541 U.S. at 174-75. "Allegations of government misconduct are 'easy to allege and hard to disprove,' so courts must insist on a meaningful evidentiary showing." *Id.* at 175 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 585 (1998)).

Whether Mr. Higgs has met this evidentiary burden is difficult to say. In his prior filings,[5] Mr. Higgs argues that he "alleged in separate proceedings that the federal government arranged with state authorities to cease pursuing homicide charges in a separate case against the key cooperating witness against [Mr. Higgs] – in order to prevent attacks on the witness's credibility – and then concealed those facts from [Mr. Higgs] and the public." [Filing No. 52 at 17.] However, the Court need not conduct a detailed analysis of Mr. Higgs' allegations of government misconduct because his allegations implicate a broader public interest than government negligence or misconduct – his allegations concern the manner in which the Department of Justice (the "DOJ") carries out substantive law enforcement policy.

Courts "have repeatedly recognized a public interest in the manner in which the DOJ carries out substantive law enforcement policy." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014); *see also Reporters Comm.*, 489 U.S. at 766 n.18 ("matters of substantive law enforcement policy [] are properly the subject of public concern"). Such a public interest exists "whether or not the policy in question is lawful." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 14 (D.C. Cir. 2011) (citing *Favish*, but noting that the plaintiffs "are not (or at least not only) seeking to show that the government's . . . policy is legally improper"). Put another way, "[w]hether the government's [] policy is legal or

---

[5] Mr. Higgs repeatedly cites back to his prior filings in this case in his relatively succinct memorandum in support of Summary Judgment and reply brief. [*See, e.g.*, Filing No. 65 at 4 ("Furthermore, as shown in Pl.'s Reply 6-10, the public interest in unveiling potential governmental, and in particular prosecutorial, misconduct is indubitably a powerful one").] Mr. Higgs' prior filings, in turn, relate back to a Maryland District Court opinion. [*See, e.g.*, Filing No. 52 at 15 n.7 (citing *Higgs*, 193 F. Supp. 3d 495) ("Plaintiff does not recite all of the facts pertaining to his separate fraud on the court action here; they are laid out in detail in the district court's 2016 opinion denying relief").] This forced the Court to cross reference multiple documents in attempting to discern any details regarding Mr. Higgs' argument. Especially where, as here, counsel runs no risk of exceeding the allotted page limits, such a practice serves no practical purpose and made the Court's task unnecessarily cumbersome.

illegal, proper or improper, is irrelevant to this case," *id.* at 14, and the Court finds that there is a significant public interest to be weighed.

Turning then to the privacy interests at stake in this case, the Hardy declaration alleges that six separate categories of individuals have privacy interests in this case that justify the Park Police's withholding of information: (1) third parties who provided information during the investigation;[6] (2) third parties merely mentioned in the records; (3) third parties of investigatory interest; (4) local law enforcement personnel, (5) non-FBI federal personnel; and (6) FBI special agents and support personnel. [Filing No. 43-1 at 7-13.]

As a general matter, courts have "consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (collecting cases). However, there is some variance in the degree of privacy interests depending on the type of individual. For example, the D.C. Circuit Court of Appeals long ago adopted "a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is "necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *Schrecker*, 349 F.3d at 661 (quoting *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991)). With regard to individuals under investigation, "[t]here can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of [a law enforcement] investigation." *People for the Ethical Treatment of Animals v. Nat'l*

---

[6] Several of the pages at issue in this category overlap with the information the Court has already determined was properly withheld under Exemption 7(D). Accordingly, the Court's analysis under Exemption 7(C) related to individuals who provided information during the FBI's investigation is limited to pages 38, 39, and 215. [Filing No. 41-3 at 12.]

- 22 -

*Institutes of Health, Dep't of Health & Human Servs.*, 745 F.3d 535, 542 (D.C. Cir. 2014) (citations omitted); *see also Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 978 F. Supp. 2d 1, 9 (D.D.C. 2013) ("the average FOIA request seeking law enforcement records concerning a third party implicates a substantial privacy interest: that of the third party who may wish to keep secret the fact that they were targeted in a criminal investigation"). As for government officials, courts have held that government officials "may have a somewhat diminished privacy interest," *Quinon v. F.B.I.*, 86 F.3d 1222, 1230 (D.C. Cir. 1996), but that "government officials do not surrender all rights to personal privacy when they accept a public appointment," *Schrecker,* 349 F.3d at 661; *see also Halpern v. F.B.I.*, 181 F.3d 279, 296-97 (2d Cir. 1999) (stating that "government employees and officials, particularly law enforcement personnel, have privacy interests to the extent that revelation of their identities could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs") (citations and quotations omitted).

The privacy interests at issue in this case are varying; however, they have one common component –the individuals are named in files that relate to a triple murder that occurred over twenty-two years ago "[o]n the evening of January 26, 1996." *Higgs,* 193 F. Supp. 3d at 496. "The passage of time, without more, does not materially diminish" the privacy interests recognized by Exemption 7(C). *Schrecker,* 349 F.3d at 666; *see also Halpern,* 181 F.3d at 297 (holding that privacy interests "cannot be waived through . . . the passage of time"). However, "the privacy interest in nondisclosure of identifying information may be diminished where the individual is deceased" and "death . . . is a relevant factor to be taken into account in the balancing decision whether to release information." *Schrecker,* 349 F.3d at 661 (citation and quotation omitted). The D.C. Circuit Court of Appeals has remanded cases where the record did not contain "confirmation

that the Government took certain basic steps to ascertain whether an individual was dead or alive," holding that without such confirmation the court was "unable to say whether the Government reasonably balanced the interests in personal privacy against the public interest in release of the information at issue." *Schrecker*, 349 F.3d at 660 (citation omitted). In *Schrecker*, for example, the government "affirmed that it had investigated whether the relevant individuals were deceased, relying on several clues and sources," including a *Who Was Who* book, the "100-year rule," which "presumes that an individual is dead if his or her birth date appears in the responsive record and is more than 100 years old," and internal FBI records. *Id*. at 659-60.

Where the government has failed to establish that relevant individuals are living, courts have held that "it is within the discretion of the district court to require an agency to demonstrate that the individuals upon whose behalf it claims the privacy exemption are, in fact, alive." *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1059 (3d Cir. 1995). In exercising its discretion, the district court should consider factors such as:

> the number of named individuals that must be investigated, and the age of the requested records. If the number of individuals is not excessive, the agency could be required to determine whether the individuals are alive before asserting a privacy interest on their behalf. However, after a sufficient passage of time . . . the probability of the named individuals remaining alive diminishes [and] . . . it would be unreasonable for the district court not to assume that many of the individuals named in the requested records have died, thereby negating a privacy interest unless proving otherwise.

*Id*. at 1059.

In this case, despite the passage of over two decades since the crime at issue was committed, Mr. Hardy's declaration contains no analysis of whether the individuals whose privacy interests the Park Police now asserts are dead or alive. Although twenty-two years is a considerable amount of time, it falls short of the sixty year passage of time at issue in *Davin*. As such, the Court will not presume that the individuals at issue in this case are deceased. However,

it does not appear that the number of individuals is sufficiently high such that it would be unduly onerous to require the Park Police to demonstrate that those individuals are alive. Without such a demonstration, the Court cannot conduct the necessary balancing test required under Exemption 7(C). The Court therefore concludes that the Park Police has not met its burden under Exemption 7(C) through either the Hardy declaration or the *Vaughn* Index. Given the prolonged history of this case, the Court not give the Park Police a further opportunity to support its claim.

Therefore, with the exception of documents that the Court determines are properly withheld pursuant to another provision of FOIA, Park Police is **ORDERED** to produce unredacted versions of all documents it previously withheld under Exemption 7(C). Mr. Higgs' Motion for Summary Judgment is **GRANTED** and the Park Police's Motion for Summary Judgment is therefore **DENIED** with regard to the exemptions it claimed under Exemption 7(C) that are not properly excluded under Exemption 7(D).

### C. NCIC Reports

The Park Police's *Vaughn* Index lists several documents that relate to NCIC Reports. The NCIC Reports primarily consist of printouts pertaining to and containing biographical information concerning third-party individuals, including deceased victims, although one group of documents appears to relate to Mr. Higgs as well. [Filing No. 61-1 at 5-10.] In the *Vaughn* Index, the Park Police alleges that the NCIC Reports contain information that is protected under the FOIA exceptions found at Exemption 6, Exemption 7(C), and 5 U.S.C. § 552(b)(7)(E), ("Exemption 7(E)").

As previously discussed in Part 3.B, Exemption 6 and Exemption 7(C) both relate to documents withheld under FOIA to protect an individual's privacy. Exemption 7(E) provides an exemption to FOIA's disclosure requirements for "records or information compiled for law

enforcement purposes, but only to the extent that the production of such" records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Mr. Higgs argues that the Park Police has not presented any authority to support its position that the NCIC Reports should have been withheld in their entirety. [Filing No. 65 at 6.] Mr. Higgs makes this argument with respect to the documents that have been withheld to protect privacy under Exemptions 6 and 7(C) and with respect to the documents that have been withheld to protect information about the NCIC. [Filing No. 65 at 6.] He argues that NCIC Reports are "routinely disclosed in pretrial discovery or at sentencing in federal criminal cases" and that the agency has made "no showing that its blanket withholding of NCIC documents is necessary." [Filing No. 65 at 7.]

In its response brief, the Park Police alleges that the declaration of David Hardy, an FBI Records Management Division Section Chief, provides a "detailed justification" of the basis for its application of Exemption 7(E). [Filing No. 66 at 4-5 (quoting Filing No. 43-1 at 18).] Specifically, Mr. Hardy states that providing the NCIC Reports "would provide criminals with an understanding of the type of information gathered, analyzed, and utilized by the FBI in criminal investigations, particularly in murder investigations," and "would also reveal the FBI's abilities and limitations," thus enabling criminals "to develop countermeasures to avoid detection." [Filing No. 66 at 5 (quoting Filing No. 43-1 at 18).] Further, even if Mr. Higgs were unable to overcome Exemption 7(E), the Park Police argues that Mr. Higgs cannot establish a public interest in the information under Exemptions 6 and 7(C). [Filing No. 66 at 5-6.]

- 26 -

In his reply brief, Mr. Higgs calls the Park Police's justification a "sweeping argument" that does not specifically address the concerns at issue in this case. [Filing No. 71 at 3.] In addition, Mr. Higgs distinguishes a case identified by the Park Police – *Vazquez v. U.S. Department of Justice* – by pointing out that Vazquez involved specific disclosure concerns involving particular persons who might learn that they were not under investigation, whereas the Park Police has made no such contention in this matter. [Filing No. 71 at 4.]

Exemption 7(E) "applies only to techniques and procedures 'generally unknown to the public' and only if '(1) the information was compiled for law enforcement purposes, and (2) [its] release could reasonably be expected to risk circumvention of the law.'" *Evans v. U.S. Dep't of Interior*, 135 F. Supp. 3d 799, 831 (N.D. Ind. 2015) (quoting *Blanton v. U.S. Dep't of Justice*, 63 F.Supp.2d 35, 49 (D.D.C. 1999)). The scope of Exemption 7(E) was set forth by the D.C. Circuit Court of Appeals in *Mayer Brown LLP v. I.R.S.*, in which the court stated that Exemption 7(E):

> looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.

562 F.3d 1190, 1193 (D.C. Cir. 2009). Although the court in *Mayer Brown* acknowledged "that the language of FOIA's exemptions 'must be narrowly construed,'" *id*. at 1194 (quoting *Rose,* 425 U.S. at 361), it nonetheless observed that Exemption 7(E) contains broad language. Accordingly, "[r]ather than requiring a highly specific burden of showing how the law will be circumvented," the court held that Exemption 7(E) only requires the government to "demonstrate[] logically how the release of [the requested] information might create a risk of circumvention of the law." *Id*. at 1194 (quoting *PHE, Inc. v. DOJ,* 983 F.2d 248, 251 (D.C. Cir. 1993)). In short, as the D.C. Circuit found, Exemption 7(E) "sets a relatively low bar for the agency to justify withholding." *Blackwell*

*v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011).   The government fails to meet its burden under Exemption 7(E) where it declines to set forth "any statement from which the Court could conclude that disclosure of the information might reveal a law enforcement technique or procedure." *Fowlkes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 67 F. Supp. 3d 290, 306 (D.D.C. 2014)

Given the low bar set by Exemption 7(E), it might appear that Mr. Hardy's declaration provides sufficiently detailed information of how the release of the NCIC reports might create a risk of circumvention of the law by alleging that releasing the documents would provide criminals with information concerning the FBI's abilities and limitations.   Case law dealing with NCIC reports offers little guidance on this front and neither party presented authority that directly supports its arguments concerning NCIC Reports.   Courts have held that the mere fact that an agency uses an NCIC database is insufficient to establish the requisite risk under Exemption 7(E). *Vazquez v. U.S. Dep't of Justice*, 764 F. Supp. 2d 117, 122 (D.D.C. 2011) ("It is unclear from the current record what law enforcement technique, procedure or guideline is at risk of being revealed merely by identification of an agency's utilizing the NCIC database").   However, "redacted codes, case numbers, and other computer information pertaining to the  . . . NCIC" have been found to reasonably be expected to risk circumvention of the law under Exemption 7(E). *McRae v. U.S. Dep't of Justice*, 869 F. Supp. 2d 151, 169 (D.D.C. 2012).

Here again, the Court is cognizant that it is considering documents that are approximately twenty years old.   The D.C. Circuit Court of Appeals has held that a requestor's "speculation that the mere passage of time justifies disclosure cannot overcome the sworn declaration from a law enforcement official to the contrary." *Judicial Watch, Inc. v. U.S. Dep't of State*, 2017 WL 3913212, at *6 (D.D.C. Sept. 6, 2017) (FBI explaining "that it continues to use these same 'tried-

- 28 -

and-true techniques and procedures even 15 years later'" and that disclosure of such techniques "would allow surveillance targets, including those in residential neighborhoods, to develop and employ countermeasures"). In this case, however, Mr. Hardy's declaration fails to acknowledge the passage of time since the NCIC Reports were made and fails to address the possibility that such techniques are sufficiently out of date so as to negate the possible risk of criminals gaining access thereto. Therefore, Mr. Higgs need not overcome the sworn declaration from a law enforcement official concerning the passage of time because the Park Police did not produce such a declaration.

On the issue of whether the passage of time impacts the application of Exemption 7(E), courts have analyzed the issue differently. In *Mayer Brown*, for instance, the D.C. Circuit concluded that possible "circumvention of the law" applies not only to future conduct but also to past conduct. *See Mayer Brown*, 562 F.3d at 1195. Mayer Brown involved a law firm that requested documents related to tax settlements conducted by the I.R.S. *Id.* at 1191. The court reasoned that "[t]ax evasion (like many crimes, to varying degrees) involves a cost-benefit analysis on the part of the law-breaker" and that "potential evaders, upon learning the range of settlement percentages, may decide that the range is low enough to make evasion an appealing gamble." *Id.* at 1193. The court rejected the FOIA requestor's suggestion that Exemption 7(E) was concerned only with future crimes, reasoning that "[i]nformation that encourages a past violator to remain in hiding affects that violator's decisions *in the future*" because the "decision to evade the legal consequences of the initial violation is not just made once; it is a decision that is made anew when there is additional information," thus, if "the disclosed information reveals severe costs in coming forward, it may influence future conduct." *Id.* at 1195 (emphasis in original). Applied to the case now before this Court, *Mayer Brown* would seem to support a finding that the passage of time does

- 29 -

not alter the Court's analysis of Exemption 7(E) because releasing documents could dissuade criminals who have already committed crimes from coming forward.

By contrast, in *Davin v. U.S. Dep't of Justice*, the Third Circuit held the government to a more exacting standard. 60 F.3d 1043 (3d Cir. 1995), holding modified on unrelated grounds by *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178 (3d Cir. 2007). *Davin* involved a graduate history student who, in 1986, requested FBI records pertaining to a labor group in the 1930s and 40s. *Id.* at 1046. The FBI withheld documents under FOIA Exemption 7(E) and the Third Circuit held that "[i]f the government wishes to argue that the information concerning the use of informants in the 1930's is of such a specialized nature that it is still unknown to the public, the government must introduce evidence of that fact." *Id.* at 1164. The court held that the government had failed to offer any proof on this issue and instead provided "speculation" of "political groups' increased ability to detect informants within their ranks." *Id.* at 1164. Accordingly, the case was remanded in order for the government to "provide the district court with additional facts to support exempted documents and portions of documents under Exemption 7(E)." *Id.* at 1164.

This Court concludes that the approach taken by the Third Circuit most logically interprets FOIA. First, there is nothing in *Mayer Brown* to indicate that it applies outside of the tax evasion context. To the contrary, the D.C. Circuit's reasoning on this point paints a picture of habitual and calculating tax evaders and states that the "fact that a tax evader has circumvented the law in the past does not mean she cannot also circumvent the law in the future by avoiding the legally proscribed consequences of her actions." *Mayer Brown*, 562 F.3d at 1195. This may make good sense in the context of tax evasion, but it makes significantly less sense in the context of murder. Applied to the case now before this Court, M*ayer Brown* would compel a finding that the passage

of time does not alter the Court's analysis of the NCIC Reports under Exemption 7(E) because releasing such documents could dissuade criminals who have already committed murders from coming forward. This conclusion is sufficiently far-flung that it ceases to be "a reasonably expected risk" under Exemption 7(E).

By contrast, *Davin* recognizes that the passage of time rendered certain law enforcement techniques well-known or out of date. Indeed, given the significant technological strides that have occurred in law enforcement techniques over the last two decades, the Court is skeptical that an FBI file from the late 1990s contains information that would shape the conduct of murderers operating in 2018. Accordingly, the Court finds that the Park Police has not met its burden with regard to the NCIC Reports. Mr. Higgs' Motion for Summary Judgment is therefore **GRANTED** and the Park Police's Motion for Summary Judgment is **DENIED** with regard to the exemptions it claimed under Exemption 7(E) related to the NCIC Reports. The Park Police is **ORDERED** to produce unredacted versions of all portions of NCIC Reports it previously withheld under Exemption 7(E) on or before **Friday, July 13, 2018**.

### D.      Ballistics Reports

The Park Police's *Vaughn* Index lists one category of documents concerning rifling characteristics. The Park Police alleges that such Ballistics Reports may be withheld in full under the FOIA Exemption found at Exemption 7(E). [Filing No. 61-1 at 1.] As previously discussed in Part 3.C, Exemption 7(E) relates to records that would disclose law enforcement techniques and procedures. 5 U.S.C. § 552(b)(7)(E).

Mr. Higgs argues that the Park Police has failed to show that there are non-public aspects of ballistics testing that may be withheld and has made an inadequate showing that these documents are not segregable. [Filing No. 65 at 7.]

- 31 -

In its response brief, the Park Police alleges that disclosure of rifling characteristics "even after all of these years, risks circumvention of law now in relation to the FBI's current activities and methodologies." [Filing No. 66 at 6.]

In his reply brief, Mr. Higgs argues that the Park Police's argument on this point is comprised of "empty words that are not subject to meaningful analysis by either Plaintiff or the Court" and "is therefore insufficient to meet the agency's burden." [Filing No. 71 at 4.]

As previously stated, Exemption 7(E) "applies only to techniques and procedures 'generally unknown to the public.'" *Evans*, 135 F. Supp. 3d at 831 (quoting *Blanton,* 63 F.Supp.2d at 49). In 1977, the United States District Court for the Northern District of Illinois looked to the conference committee's statement delineating the scope of Exemption 7(E), as follows: "The conferees wish to make clear that the scope of this exception against disclosure of 'investigative techniques and procedures' should not be interpreted to include routine techniques and procedures already well known to the public, such as ballistics tests, fingerprinting, and other scientific tests or commonly known techniques." *Ferguson v. Kelley*, 448 F. Supp. 919, 922 (N.D. Ill. 1977) (quoting Conference Report No. 93-1200, 93d Cong. 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin. News, pp. 6285, 6291). Numerous courts have cited the same provision of the 1974 Conference Committee Report noting that ballistics tests are outside of Exemption 7(E)'s coverage. *See, e.g.*, *Davin*, 60 F.3d at 1064 (citing H.R. Conf.Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6291); *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1064 n.36 (D.C. Cir. 1981), abrogated on other grounds by *Milner v. Dep't of Navy*, 562 U.S. 562 (2011) (quoting the 1974 conference report); *Ferri v. Bell*, 645 F.2d 1213, 1224 (3d Cir. 1981) (same); *Sladek v. Bensinger*, 605 F.2d 899, 903 n.5 (5th Cir. 1979) (same); *Cox v. U.S. Dep't of Justice*, 576 F.2d 1302, 1310 (8th Cir. 1978) (same); *Dunaway v.*

*Webster*, 519 F. Supp. 1059, 1082-83 (N.D. Cal. 1981) (same); *Caplan v. Bureau of Alcohol, Tobacco & Firearms*, 445 F. Supp. 699, 706 n.10 (S.D.N.Y.), aff'd, 587 F.2d 544 (2d Cir. 1978) (same); *Frankenberry v. F.B.I.*, 2010 WL 8510349, at *20 (M.D. Pa. Sept. 10, 2010), report and recommendation adopted in part, rejected in part by 2012 WL 983556 (M.D. Pa. Mar. 22, 2012) (same).

The Court recognizes that the language of Exemption 7(E) was amended in 1986. However, the "techniques and procedures" alluded to in the 1974 Conference Committee Report remain a part of FOIA to this day. *See* 5 U.S.C. § 552(b)(7)(E). Moreover, there is no indication that the 1986 Amendments to FOIA or any subsequent amendments justify withholding ballistics tests. *See Henderson v. Office of the Dir. of Nat'l Intelligence*, 151 F. Supp. 3d 170, 176 (D.D.C. 2016) (explaining that the purpose of the 1986 amendment to Exemption 7(E) was to expand the provision's protection to non-investigative documents); *Carp v. I.R.S.*, 2002 WL 373448, at *5 (D.N.J. Jan. 28, 2002) (recent case citing the 1974 Amendments).

Accordingly, the Court holds that the Park Police has not met its burden with regard to the ballistics tests at issue in this case. Mr. Higgs' Motion for Summary Judgment is therefore **GRANTED** and the Park Police's Motion for Summary Judgment is **DENIED** with regard to the exemptions it claimed under Exemption 7(E) related to Ballistics Reports. The Park Police is **ORDERED** to produce unredacted versions of all portions of pages 6 through 23 of the file at issue that it previously withheld under Exemption 7(E) on or before **Friday, July 13, 2018**.

**IV.**
**CONCLUSION**

For the reasons explained herein, Mr. Higgs' Motion for Summary Judgment [64] is **GRANTED** in part and **DENIED** in part, and the Park Police's Motion for Summary Judgment [71] is **GRANTED** in part and **DENIED** in part as follows:

- Mr. Higgs' Motion is **DENIED** and Park Police's Motion is **GRANTED** with regard to the exemptions claimed under FOIA's confidential source exemption at 5 U.S.C. § 552(b)(7)(D);

- Mr. Higgs' Motion is **GRANTED** and the Park Police's Motion is **DENIED** with regard to the exemptions claimed under FOIA's unwarranted invasion of personal privacy exemption at 5 U.S.C. § 552(b)(7)(C), and the Park Police is **ORDERED** to produce unredacted versions of all documents it previously withheld under Exemption 7(C) on or before **Friday, July 13, 2018**;

- Mr. Higgs' Motion is **GRANTED** and the Park Police's Motion is **DENIED** with regard to the exemptions claimed under FOIA's law enforcement techniques and procedures exemption at 5 U.S.C. § 552(b)(7)(E) related to the NCIC Reports, and the Park Police is **ORDERED** to produce unredacted versions of all portions of NCIC Reports it previously withheld under Exemption 7(E) on or before **Friday, July 13, 2018;**

- Mr. Higgs' Motion is **GRANTED** and the Park Police's Motion is **DENIED** with regard to the exemptions claimed under FOIA's law enforcement techniques and procedures exemption at 5 U.S.C. § 552(b)(7)(E) related to the Ballistics Reports, and the Park Police is **ORDERED** to produce unredacted versions of all portions of the Ballistics Reports it previously withheld under Exemption 7(E) on or before **Friday, July 13, 2018.**

Final Judgment shall issue accordingly.

Date: 6/25/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DUSTIN JOHN HIGGS,             )
    *Plaintiff*,              )
                              )
    *vs.*                   )     2:16-cv-96-JMS-MJD
                              )
UNITED STATES PARK POLICE,   )
    *Defendant.*           )

## JUDGMENT

For the reasons set forth in the Court's separately issued opinion, the Court enters **FINAL JUDGMENT** in Defendant's favor and against Plaintiff with respect to 5 U.S.C. § 552(b)(7)(D), and in Plaintiff's favor and against Defendant with respect to 5 U.S.C. § 552(b)(7)(C) and 5 U.S.C. § 552(b)(7)(E).

**SO ORDERED**.

Date: 6/25/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Laura A. Briggs, Clerk

BY: _____

Deputy Clerk, U.S. District Court

**Distribution via ECF only to all counsel of record**

# *** PUBLIC DOCKET ***

APPEAL,CLOSED

U.S. District Court
Southern District of Indiana (Terre Haute)
CIVIL DOCKET FOR CASE #: 2:16-cv-00096-JMS-MJD

| | |
|---|---|
| HIGGS v. UNITED STATES PARK POLICE | Date Filed: 03/16/2016 |
| Assigned to: Judge Jane Magnus-Stinson | Date Terminated: 06/25/2018 |
| Referred to: Magistrate Judge Mark J. Dinsmore | Jury Demand: None |
| Cause: 05:552 Freedom of Information Act | Nature of Suit: 895 Freedom of Information Act |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

DUSTIN JOHN HIGGS                represented by   Matthew C. Lawry
                                                 FEDERAL COMMUNITY
                                                 DEFENDER
                                                 Capital Habeas Unit
                                                 Curtis Center, Suite 545 West
                                                 601 Walnut St.
                                                 Philadelphia, PA 19106
                                                 215-928-0520
                                                 Fax: 215-928-0826
                                                 Email: matthew_lawry@fd.org
                                                 ATTORNEY TO BE NOTICED

V.

**Defendant**

UNITED STATES PARK POLICE        represented by   Gina M. Shields
                                                 UNITED STATES ATTORNEY'S
                                                 OFFICE (Indianapolis)
                                                 10 West Market Street
                                                 Suite 2100
                                                 Indianapolis, IN 46204
                                                 317-226-6333
                                                 Fax: 317-226-6125
                                                 Email: Gina.Shields@usdoj.gov
                                                 ATTORNEY TO BE NOTICED

| Date Filed | # | Docket Text |
|---|---|---|
| | | |

| 03/16/2016 | 1 | COMPLAINT against UNITED STATES PARK POLICE, filed by DUSTIN JOHN HIGGS. (No fee paid with this filing) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Civil Cover Sheet, # 20 Proposed Summons) (Lawry, Matthew) Modified on 3/17/2016 (GSO). (Entered: 03/16/2016) |
|---|---|---|
| 03/16/2016 | 2 | ***STRICKEN per Entry at 9 *** NOTICE of Lawsuit & Request for Waiver of Service for Summons Supplied by DUSTIN JOHN HIGGS. (Lawry, Matthew) Modified on 3/29/2016 (GSO). (Entered: 03/16/2016) |
| 03/16/2016 | 3 | NOTICE of Appearance by Matthew C. Lawry on behalf of Plaintiff DUSTIN JOHN HIGGS. (Lawry, Matthew) (Entered: 03/16/2016) |
| 03/16/2016 | 4 | Corporate Disclosure Statement by DUSTIN JOHN HIGGS. (Lawry, Matthew) (Entered: 03/16/2016) |
| 03/16/2016 | 5 | MOTION for Leave to Proceed in forma pauperis , filed by Plaintiff DUSTIN JOHN HIGGS. (Attachments: # 1 Text of Proposed Order)(Lawry, Matthew) (Entered: 03/16/2016) |
| 03/16/2016 | 6 | MOTION to Waive Filing Fee, filed by Plaintiff DUSTIN JOHN HIGGS. (Attachments: # 1 Text of Proposed Order)(Lawry, Matthew) (Entered: 03/16/2016) |
| 03/17/2016 | 7 | NOTICE of Filing Exhibits by DUSTIN JOHN HIGGS (Attachments: # 1 Exhibit Affidavit of Indigency, # 2 Exhibit Inmate Account Statement) (Lawry, Matthew) (Entered: 03/17/2016) |
| 03/17/2016 | 8 | MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (GSO) (Entered: 03/17/2016) |
| 03/29/2016 | 9 | Entry Concerning Selected Matters - The plaintiff's requests to proceed in forma pauperis [dkt 5 and 6] are granted. The clerk shall issue summons to appropriate officials. The Marshal for this District or his Deputy shall serve the summons with a copy of the 1 complaint at the expense of the United States. The 2 notice and waiver issued by counsel for the plaintiff on March 16, 2016 is stricken. (See Entry.) Signed by Judge Jane Magnus-Stinson on 3/29/2016. Copies distributed pursuant to distribution list. (GSO) (Entered: 03/29/2016) |
| 03/29/2016 | 10 | Summons Issued as to Defendant UNITED STATES PARK POLICE. (Attachments: # 1 USM 285 Form - United States Attorney General, # 2 USM 285 Form - Office of the United States Attorney, # 3 USM 285 Form - Robert D. Maclean)(GSO) (Entered: 03/29/2016) |
| 03/29/2016 | 11 | Documents for service by USM - 1 Complaint and 10 Summons. Paper copies to USM. (Attachments: # 1 Exhibits Continued, # 2 Exhibits Continued and Summons) (GSO) (Entered: 03/30/2016) |
| 04/15/2016 | 12 | RETURN of USM Service by DUSTIN JOHN HIGGS. UNITED STATES PARK POLICE (c/o U.S. Attorney General) served on 4/14/2016. (RSF) |

| | | (Entered: 04/15/2016) |
|---|---|---|
| 04/19/2016 | 13 | RETURN of USM Service, sent on behalf of Plaintiff DUSTIN JOHN HIGGS. Defendant UNITED STATES PARK POLICE (c/o Robert D. Maclean, Chief of Police) served on 4/19/2016. (GSO) (Entered: 04/20/2016) |
| 05/13/2016 | 14 | NOTICE of Appearance by Jill Z. Julian on behalf of Defendant UNITED STATES PARK POLICE. (Julian, Jill) (Entered: 05/13/2016) |
| 05/13/2016 | 15 | NOTICE of Initial Extension of Time, filed by Defendant UNITED STATES PARK POLICE (Julian, Jill) (Entered: 05/13/2016) |
| 06/08/2016 | 16 | Unopposed MOTION to Stay Litigation, filed by Defendant UNITED STATES PARK POLICE. (Attachments: # 1 Exhibit 1-Ltr to Aren Adjoian, # 2 Text of Proposed Order)(Julian, Jill) (Entered: 06/08/2016) |
| 07/20/2016 | 17 | ENTRY AND NOTICE - The defendant's motion to stay litigation 16 is granted, subject to the following. (See Entry.) Signed by Judge Jane Magnus-Stinson on 7/20/2016. (BRR) (Entered: 07/20/2016) |
| 07/27/2016 | 18 | NOTICE of Partial Response, filed by Defendant UNITED STATES PARK POLICE, re 17 Order on Motion to Stay. (Julian, Jill) (Entered: 07/27/2016) |
| 08/16/2016 | 19 | NOTICE of Complete and Final Rolling FOIA Responses, filed by Defendant UNITED STATES PARK POLICE (Julian, Jill) (Entered: 08/16/2016) |
| 08/18/2016 | 20 | REPORT Plaintiff's Report by DUSTIN JOHN HIGGS. (Lawry, Matthew) (Entered: 08/18/2016) |
| 09/01/2016 | 21 | Joint MOTION for Extension of Time to October 6, 2016 in which to 17 Order on Motion to Stay and Joint Statement of Issues that Remain, filed by Defendant UNITED STATES PARK POLICE. (Attachments: # 1 Text of Proposed Order)(Julian, Jill) (Entered: 09/01/2016) |
| 09/02/2016 | 22 | ORDER - granting 21 Motion for Extension of Time. The time in which the parties must file a proposed schedule for the resolution of the remaining issues is enlarged by 30 days, to and including, October 6, 2016. Signed by Judge Jane Magnus-Stinson on 9/2/2016. (BRR) (Entered: 09/02/2016) |
| 10/03/2016 | 23 | Joint MOTION for Extension of Time to December 15, 2016 in which to 17 Order on Motion to Stay , filed by Defendant UNITED STATES PARK POLICE. (Attachments: # 1 Text of Proposed Order)(Julian, Jill) (Entered: 10/03/2016) |
| 10/04/2016 | 24 | ORDER - granting 23 Motion for Extension of Time. The parties must file a proposed schedule for the resolution of any remaining issues is enlarged to and including, December 15, 2016. Signed by Judge Jane Magnus-Stinson on 10/4/2016. (RSF) (Entered: 10/04/2016) |
| 12/15/2016 | 25 | Statement (Joint) of Issues that Remain and Motion for Enlargement of Time to Propose Scheduling Order by UNITED STATES PARK POLICE. (Attachments: # 1 Text of Proposed Order)(Julian, Jill) (Entered: 12/15/2016) |
| | | |

| 12/16/2016 | 26 | ORDER - The parties must file a proposed schedule for the resolution of any remaining issues is enlarged to and including, January 30, 2017. Signed by Judge Jane Magnus-Stinson on 12/16/2016.(RSF) (Entered: 12/16/2016) |
|---|---|---|
| 01/27/2017 | 27 | Statement (Joint) of Issues and MOTION for Enlargement of Time to Propose Scheduling Order by UNITED STATES PARK POLICE. (Attachments: # 1 Text of Proposed Order)(Julian, Jill) Modified on 1/30/2017 (DW). (Entered: 01/27/2017) |
| 01/30/2017 | 28 | ORDER granting 27 Motion for Extension of Time. The parties must file a proposed schedule for the resolution of any remaining issues is enlarged to and including, March 3, 2017. Signed by Judge Jane Magnus-Stinson on 1/30/2017. (DW) (Entered: 01/30/2017) |
| 03/03/2017 | 29 | MOTION to Enter Joint Proposed Scheduling Order, filed by Plaintiff DUSTIN JOHN HIGGS. (Attachments: # 1 Text of Proposed Order)(Lawry, Matthew) (Entered: 03/03/2017) |
| 03/07/2017 | 30 | SCHEDULING ORDER - granting 29 Joint Motion to Enter a Scheduling Order. Plaintiff will file a memorandum in support of his position within 30 days of this Court's order; Defendant will file a response within 30 days of the filing of Plaintiff's memorandum; and Plaintiff will file a reply within 15 days of the filing of Defendant's response. Signed by Judge Jane Magnus-Stinson on 3/7/2017. (RSF) (Entered: 03/07/2017) |
| 04/06/2017 | 31 | APPENDIX in Support of Plaintiff's Memorandum of Law by DUSTIN JOHN HIGGS. (Attachments: # 1 Exhibit Exhibit 1 - 6/10/16 Ltr from DEA to Plaintiff, # 2 Exhibit Exhibit 2 - 3/28/16 Ltr from Plaintiff to FBI, # 3 Exhibit Exhibit 3 - 6/29/16 Ltr from FBI to Plaintiff, # 4 Exhibit Exhibit 4 - 7/12/16 Ltr from FBI to Plaintiff, # 5 Exhibit Exhibit 5 - Plaintiff's first FBI administrative appeal, # 6 Exhibit Exhibit 6 - Plaintiff's second FBI administrative appeal, # 7 Exhibit Exhibit 7 - 6/16/16 Ltr from DOI to Plaintiff)(Lawry, Matthew) (Entered: 04/06/2017) |
| 04/06/2017 | 32 | BRIEF/MEMORANDUM in Support , filed by Plaintiff DUSTIN JOHN HIGGS. (Lawry, Matthew) (Entered: 04/06/2017) |
| 05/04/2017 | 33 | MOTION for Extension of Time to June 7, 2017 in which to 32 Brief/Memorandum in Support , filed by Defendant UNITED STATES PARK POLICE. (Attachments: # 1 Text of Proposed Order)(Julian, Jill) (Entered: 05/04/2017) |
| 05/05/2017 | 34 | ORDER - granting 33 Motion for Extension of Time. The U.S. Park Police must file a response to the Plaintiff's Memorandum of Law, Dkt. 32 , is enlarged to and including, June 7, 2017. Signed by Judge Jane Magnus-Stinson on 5/5/2017. (RSF) (Entered: 05/05/2017) |
| 06/07/2017 | 35 | MOTION for Summary Judgment , filed by Defendant UNITED STATES PARK POLICE. (Julian, Jill) (Entered: 06/07/2017) |
| 06/07/2017 | 36 | EXHIBIT in Support of Def's MSJ by UNITED STATES PARK POLICE. (Attachments: # 1 Exhibit 1-Declaration of Janeen Taylor, # 2 Att1- |

|  |  |  |
|---|---|---|
|  |  | FirstReleaseofRecs051216, # 3 Att2-SecReleaseofRercs052016, # 4 Att3-ThirdReleaseofRecs061016, # 5 Att4-FourthReleaseofRecs063016, # 6 Att5-FifthReleaseofrecs071416, # 7 Att6-SixthReleaseofRecs072116, # 8 Att7-SeventhReleaseofRecs072716, # 9 Att8-EighthReleaseofRecs080416, # 10 Att9-NinthReleaseofRecs121516, # 11 Att10-TenthReleaseofRecs060217, # 12 Exhibit 2-Declaration of David Hardy, # 13 Exhibit A-FBIFOIAReq032816, # 14 Exhibit B-FBIAckReq1347918-000Apr122016, # 15 Exhibit C-FBILtrtoAdjoianReq134919-00Apr122016, # 16 Exhibit D-FBIRespReq134918-000Jul122016, # 17 Exhibit E-AppealfromFBIRespAug262016, # 18 Exhibit F-FBIAckofAppealSep092016, # 19 Exhibit G-FBIFOIAReq032816, # 20 Exhibit H-FBIAckReq1347920-000Apr122016, # 21 Exhibit I-FBILtrtoAdjoianReq1347920-00Apr122016, # 22 Exhibit J-FBIRespReq1347920-00Jun292016, # 23 Exhibit K-AppealfromFBIResp1347920Aug262016)(Julian, Jill) (Entered: 06/07/2017) |
| 06/07/2017 | 37 | NOTICE Exhibit L-FBIAckofAppeal090716 (Exhibits in Suppof of MSJ-Doc.36), filed by Defendant UNITED STATES PARK POLICE (Julian, Jill) (Entered: 06/07/2017) |
| 06/07/2017 | 38 | BRIEF/MEMORANDUM in Support re 35 MOTION for Summary Judgment , filed by Defendant UNITED STATES PARK POLICE. (Julian, Jill) (Entered: 06/07/2017) |
| 06/15/2017 | 39 | Unopposed MOTION for Extension of Time to August 21, 2017 to File a Consolidated Reply In Support of His Memorandum of Law and Response to Defendant's Motion for Summary Judgment, filed by Plaintiff DUSTIN JOHN HIGGS. (Attachments: # 1 Text of Proposed Order)(Lawry, Matthew) (Entered: 06/15/2017) |
| 06/16/2017 | 40 | ORDER granting 39 Motion for Extension of Time. Plaintiff will file a consolidated reply in support of his position and response to the Defendant's motion for summary judgment no later than August 21, 2017. Signed by Judge Jane Magnus-Stinson on 6/16/2017. (DW) (Entered: 06/16/2017) |
| 08/18/2017 | 41 | Unopposed MOTION for Extension of Time to September 20, 2017 to File His Consolidated Reply in Support of His Memorandum of Law and Response to Defendant's Motion for Summary Judgment, filed by Plaintiff DUSTIN JOHN HIGGS. (Attachments: # 1 Text of Proposed Order)(Lawry, Matthew) (Entered: 08/18/2017) |
| 08/22/2017 | 42 | ORDER granting 41 Motion for Extension of Time. Plaintiff will file a consolidated reply in support of his position and response to the Defendant's motion for summary judgment no later than September 20, 2017. Signed by Judge Jane Magnus-Stinson on 8/22/2017. (DW) (Entered: 08/22/2017) |
| 08/30/2017 | 43 | NOTICE of Filing of FBI Declaration by UNITED STATES PARK POLICE (Attachments: # 1 Hardy declaration) (Julian, Jill) (Entered: 08/30/2017) |
| 09/11/2017 | 44 | Unopposed MOTION for Extension of Time to November 6, 2017 to File Consolidated Motion for Summary Judgment, Reply in Support of His Memorandum of Law and Response to Defendant's Motion for Summary |

|  |  |  |
|---|---|---|
|  |  | Judgment, filed by Plaintiff DUSTIN JOHN HIGGS. (Attachments: # 1 Text of Proposed Order)(Lawry, Matthew) (Entered: 09/11/2017) |
| 09/12/2017 | 45 | ORDER granting 44 Motion for Extension of Time. Plaintiff will file a consolidated motion for summary judgment, reply in support of his position and response to the Defendant's motion for summary judgment no later than November 6, 2017. Defendant will file a combined reply in support of its motion for summary judgment and response to Plaintiff's motion within 30 days after service of Plaintiff's filing. Plaintiff will file a reply in support of his motion for summary judgment within 15 days after service of Defendant's filing. Signed by Judge Jane Magnus-Stinson on 9/12/2017. (DW) (Entered: 09/12/2017) |
| 10/30/2017 | 46 | Unopposed MOTION for Extension of Time to December 6, 2017 to File Consolidated Motion for Summary Judgment, Reply in Support of Memorandum of Law and Response to Defendant's Motion for Summary Judgment, filed by Plaintiff DUSTIN JOHN HIGGS. (Attachments: # 1 Text of Proposed Order)(Lawry, Matthew) (Entered: 10/30/2017) |
| 11/02/2017 | 47 | ORDER granting 46 Motion for Extension of Time. Plaintiff will file a consolidated motion for summary judgment, reply in support of his position and response to the Defendant's motion for summary judgment no later than December 6, 2017. Defendant will file a combined reply in support of its motion for summary judgment and response to Plaintiff's motion within 30 days after service of Plaintiff's filing. Plaintiff will file a reply in support of his motion for summary judgment within 15 days after service of Defendant's filing. Signed by Judge Jane Magnus-Stinson on 11/2/2017. (DW) Modified on 11/2/2017 (DW). (Entered: 11/02/2017) |
| 11/29/2017 | 48 | Unopposed MOTION for Extension of Time to December 13, 2017 to file his consolidated motion for summary judgment, reply in support of his memorandum of law and response to Defendant's motion for summary judgment, filed by Plaintiff DUSTIN JOHN HIGGS. (Attachments: # 1 Text of Proposed Order)(Lawry, Matthew) (Entered: 11/29/2017) |
| 12/04/2017 | 49 | ORDER - granting 48 Motion for Extension of Time. Plaintiff will file a consolidated motion for summary judgment, reply in support of his position and response to the Defendant's motion for summary judgment no later than December 13, 2017. Defendant will file a combined reply in support of its motion for summary judgment and response to Plaintiff's motion within 30 days after service of Plaintiff's filing. Plaintiff will file a reply in support of his motion for summary judgment within 15 days after service of Defendant's filing.. Signed by Judge Jane Magnus-Stinson on 12/4/2017. (RSF) (Entered: 12/04/2017) |
| 12/13/2017 | 50 | Appendix of Exhibits in Support of Motion re 35 MOTION for Summary Judgment Plaintiff's Cross-Motion for Summary Judgment, filed by Plaintiff DUSTIN JOHN HIGGS. (Attachments: # 1 Exhibit 1 - Letter from David Hardy, # 2 Exhibit 2 - Letter from Christina Troiani, # 3 Exhibit 3_Part 1- 47 page excerpt of documents produced by Defendant, # 4 Exhibit 3_Part 2 - 47 |

| | | |
|---|---|---|
| | | page excerpt (continued), # 5 Exhibit 3_Part 3 - 47 page excerpt (continued), # 6 Exhibit 3_Part 4 - 47 page excerpt (continued), # 7 Exhibit 3_Part 5 - 47 page excerpt (continued), # 8 Exhibit 3_Part 6 - 47 page excerpt (continued), # 9 Exhibit 4 - 26 page set of handwritten notes produced by Defendant, # 10 Exhibit 5 - October 5, 2000 excerpt of testimony)(Lawry, Matthew) (Entered: 12/13/2017) |
| 12/13/2017 | 51 | MOTION for Summary Judgment Cross-Motion for Summary Judgment, filed by Plaintiff DUSTIN JOHN HIGGS. (Lawry, Matthew) (Entered: 12/13/2017) |
| 12/13/2017 | 52 | BRIEF/MEMORANDUM in Support re 51 MOTION for Summary Judgment Cross-Motion for Summary Judgment, 35 MOTION for Summary Judgment Plaintiff's Consolidated Reply in Support of Plaintiff's Position, Response to Defendant's Motion for Summary Judgment, and Brief in Support of Cross-Motion for Summary Judgment, filed by Plaintiff DUSTIN JOHN HIGGS. (Lawry, Matthew) (Entered: 12/13/2017) |
| 01/11/2018 | 53 | MOTION for Extension of Time to February 12, 2018 , filed by Defendant UNITED STATES PARK POLICE. (Attachments: # 1 Text of Proposed Order) (Julian, Jill) (Entered: 01/11/2018) |
| 01/16/2018 | 54 | ORDER - The Court, having considered the motion and being duly advised in the premises, now finds that this motion 53 should be, and hereby is, GRANTED in part. The U.S. Park Police must file a response to the Plaintiff's Brief, dkt 52 , is enlarged to and including, January 26, 2018. Signed by Judge Jane Magnus-Stinson on 1/16/2018. (DW) (Entered: 01/16/2018) |
| 01/26/2018 | 55 | BRIEF/MEMORANDUM in Support re 35 MOTION for Summary Judgment and Response to Plaintiff's Cross Motion, filed by Defendant UNITED STATES PARK POLICE. (Julian, Jill) (Entered: 01/26/2018) |
| 02/07/2018 | 56 | MOTION for Extension of Time to File Reply to February 19, 2018 re 51 MOTION for Summary Judgment Cross-Motion for Summary Judgment , filed by Plaintiff DUSTIN JOHN HIGGS. (Attachments: # 1 Text of Proposed Order)(Lawry, Matthew) (Entered: 02/07/2018) |
| 02/08/2018 | 57 | ORDER granting 56 Motion for Extension of Time to File Reply to 2/20/2018 re 51 MOTION for Summary Judgment Cross-Motion for Summary Judgment.. Signed by Judge Jane Magnus-Stinson on 2/8/2018. (DW) (Entered: 02/08/2018) |
| 02/20/2018 | 58 | REPLY in Support of Motion re 51 MOTION for Summary Judgment Cross-Motion for Summary Judgment , filed by Plaintiff DUSTIN JOHN HIGGS. (Attachments: # 1 Exhibit A, # 2 Exhibit B - Part 1, # 3 Exhibit B - Part 2, # 4 Exhibit C)(Lawry, Matthew) (Entered: 02/20/2018) |
| 02/27/2018 | 59 | ORDER - The Court believes a hearing in this matter is necessary. The Court sets a telephonic hearing on the Cross-Motions for Summary Judgment for 3/6/2018 at 10:00 AM before Judge Jane Magnus-Stinson. (See Order.) Signed by Judge Jane Magnus-Stinson on 2/27/2018.(RSF) (Entered: 02/27/2018) |
| 03/06/2018 | 60 | MINUTE ORDER for proceedings held before Judge Jane Magnus-Stinson: |

|  |  |  |
|---|---|---|
|  |  | Telephone Conference held on 3/6/2018 in this matter. Defendant United States Park Police (the "Park Police") appeared by counsel, Jill Julian. Plaintiff Dustin Higgs appeared by counsel, Matthew Lawry. Accordingly, the Court ruled that the Park Police shall file a complete Vaughn index with this Court. The Park Police shall do so no later than Monday, March 12, 2018. Thereafter, should the parties require supplemental briefing, the parties shall have until Wednesday, March 14, 2018 in which to file a jointly proposed briefing schedule for the Court's consideration. (SEE ORDER FOR MORE DETAILS.) Signed by Judge Jane Magnus-Stinson. (Court Reporter Jean Knepley.)(MRI) (Entered: 03/06/2018) |
| 03/07/2018 | 61 | NOTICE of Filing by UNITED STATES PARK POLICE (Attachments: # 1 Vaughn Index) (Julian, Jill) (Entered: 03/07/2018) |
| 03/14/2018 | 62 | MOTION TO ENTER BRIEFING ORDER, filed by Defendant UNITED STATES PARK POLICE. (Attachments: # 1 Text of Proposed Order)(Julian, Jill) (Entered: 03/14/2018) |
| 03/16/2018 | 63 | ORDER - The Motion to Enter Briefing Order 62 is GRANTED. Mr. Higgs shall file any supplemental brief regarding the Vaughn Index within 14 days of the date of this Order. The Park Police shall have 14 days after filing of the Mr. Higgs' brief to file a response. Mr. Higgs may file his reply within 7 days after the filing of the Park Police's response. The pending Motions for Summary Judgment 35 51 are DENIED AS MOOT (SEE ORDER). Signed by Judge Jane Magnus-Stinson on 3/16/2018. (DW) (Entered: 03/16/2018) |
| 03/30/2018 | 64 | MOTION for Summary Judgment , filed by Plaintiff DUSTIN JOHN HIGGS. (Lawry, Matthew) (Entered: 03/30/2018) |
| 03/30/2018 | 65 | BRIEF/MEMORANDUM in Support re 64 MOTION for Summary Judgment Supplemental Brief in Support of Motion for Summary Judgement, filed by Plaintiff DUSTIN JOHN HIGGS. (Lawry, Matthew) (Entered: 03/30/2018) |
| 04/13/2018 | 66 | RESPONSE in Opposition re 64 MOTION for Summary Judgment , filed by Defendant UNITED STATES PARK POLICE. (Julian, Jill) (Entered: 04/13/2018) |
| 04/13/2018 | 67 | MOTION for Extension of Time to File Reply to April 27, 2018 re 64 MOTION for Summary Judgment , filed by Plaintiff DUSTIN JOHN HIGGS. (Attachments: # 1 Text of Proposed Order)(Lawry, Matthew) (Entered: 04/13/2018) |
| 04/16/2018 | 68 | ORDER granting 67 Motion for Extension of Time to File Reply to 4/27/2018 re 64 MOTION for Summary Judgment . Signed by Judge Jane Magnus-Stinson on 4/16/2018. (DW) (Entered: 04/16/2018) |
| 04/24/2018 | 69 | MOTION to Substitute Attorney , filed by Defendant UNITED STATES PARK POLICE. (Attachments: # 1 Text of Proposed Order)(Shields, Gina) (Entered: 04/24/2018) |
| 04/26/2018 | 70 | ORDER granting 69 Motion to Substitute Attorney. Attorney Jill Z. Julian withdrawn.. Signed by Magistrate Judge Mark J. Dinsmore on 4/26/2018. |

| | | (JRB) (Entered: 04/26/2018) |
|---|---|---|
| 04/27/2018 | 71 | REPLY in Support of Motion re 64 MOTION for Summary Judgment , filed by Plaintiff DUSTIN JOHN HIGGS. (Lawry, Matthew) (Entered: 04/27/2018) |
| 05/29/2018 | 72 | PROCEDURES AND PRACTICES before Judge Jane Magnus-Stinson. (MRI) (Entered: 05/29/2018) |
| 06/25/2018 | 73 | ORDER - For the reasons explained herein, Mr. Higgs' Motion for Summary Judgment 64 is GRANTED in part and DENIED in part, and the Park Police's Motion for Summary Judgment 71 is GRANTED in part and DENIED in part as follows: Mr. Higgs' Motion is DENIED and Park Police's Motion is GRANTED with regard to the exemptions claimed under FOIA's confidential source exemption at 5 U.S.C. § 552(b)(7)(D); Mr. Higgs' Motion is GRANTED and the Park Police's Motion is DENIED with regard to the exemptions claimed under FOIA's unwarranted invasion of personal privacy exemption at 5 U.S.C. § 552(b) (7)(C), and the Park Police is ORDERED to produce unredacted versions of all documents it previously withheld under Exemption 7(C) on or before Friday, July 13, 2018; Mr. Higgs' Motion is GRANTED and the Park Police's Motion is DENIED with regard to the exemptions claimed under FOIA's law enforcement techniques and procedures exemption at 5 U.S.C. § 552(b)(7)(E) related to the NCIC Reports, and the Park Police is ORDERED to produce unredacted versions of all portions of NCIC Reports it previously withheld under Exemption 7(E) on or before Friday, July 13, 2018; Mr. Higgs' Motion is GRANTED and the Park Police's Motion is DENIED with regard to the exemptions claimed under FOIA's law enforcement techniques and procedures exemption at 5 U.S.C. § 552(b)(7)(E) related to the Ballistics Reports, and the Park Police is ORDERED to produce unredacted versions of all portions of the Ballistics Reports it previously withheld under Exemption 7 (E) on or before Friday, July 13, 2018 (SEE ORDER FOR ADDITIONAL INFORMATION). Signed by Judge Jane Magnus-Stinson on 6/25/2018. (DWH) (Entered: 06/25/2018) |
| 06/25/2018 | 74 | CLOSED JUDGMENT - For the reasons set forth in the Court's separately issued opinion, the Court enters FINAL JUDGMENT in Defendant's favor and against Plaintiff with respect to 5 U.S.C. § 552(b)(7)(D), and in Plaintiff's favor and against Defendant with respect to 5 U.S.C. § 552(b)(7)(C) and 5 U.S.C. §552(b)(7)(E). Signed by Judge Jane Magnus-Stinson on 6/25/2018.(DWH) (Entered: 06/25/2018) |
| 07/06/2018 | 75 | Emergency MOTION to Stay (Unopposed), filed by Defendant UNITED STATES PARK POLICE. (Attachments: # 1 Text of Proposed Order)(Shields, Gina) (Entered: 07/06/2018) |
| 07/09/2018 | 76 | ORDER: Defendant's Unopposed Emergency Motion to Stay 75 is DENIED, and the July 13, 2018 deadline set forth in the Court's prior order 73 is VACATED. Defendant is ORDERED to produce unredacted versions of all documents it previously withheld under Exemption 7(C), all portions of NCIC Reports it previously withheld under Exemption 7(E), and all portions of the Ballistics Reports it previously withheld under Exemption 7(E) on or before |

|            |     | Wednesday, October 24, 2018. Further extensions may be requested if the Solicitor General does not promptly determine whether an appeal should be filed (SEE ORDER FOR ADDITIONAL INFORMATION). Signed by Judge Jane Magnus-Stinson on 7/9/2018. (DWH) (Entered: 07/09/2018) |
| ---------- | --- | --- |
| 08/22/2018 | 77  | NOTICE OF APPEAL as to 73 Order on Motion for Summary Judgment, 74 Judgment, filed by Defendant UNITED STATES PARK POLICE. (No fee paid with this filing) (Shields, Gina) Modified on 8/22/2018 to create link to additional document (LBT). (Entered: 08/22/2018) |
| 08/22/2018 | 78  | DOCKETING STATEMENT by UNITED STATES PARK POLICE re 77 Notice of Appeal (Shields, Gina) (Entered: 08/22/2018) |
| 08/22/2018 | 79  | PARTIES' SHORT RECORD re 77 Notice of Appeal - Instructions for Attorneys/Parties attached. (LBT) (Entered: 08/22/2018) |

Case #: 2:16-cv-00096-JMS-MJD