**Nos. 18-2826, 18-2937**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

DUSTIN JOHN HIGGS,

> Plaintiff-Appellee/Cross-
> Appellant,

v.

UNITED STATES PARK POLICE,

> Defendant-Appellant/Cross-
> Appellee.

On Appeal from the United States District Court
for the Southern District of Indiana, No. 2:16-cv-96 (Magnus-Stinson,
Jane, Chief J.)

## BRIEF FOR APPELLANT/CROSS-APPELLEE

JOSEPH H. HUNT
  *Assistant Attorney General*
JOSH MINKLER
  *United States Attorney*
MATTHEW M. COLLETTE
CAROLINE D. LOPEZ
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7535*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4825*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ........................................................1

STATEMENT OF THE ISSUE ..............................................................1

PERTINENT STATUTES AND REGULATIONS ....................................1

STATEMENT OF THE CASE ...............................................................2

    A.    Factual Background.................................................................2

        1. Higgs's Conviction For Triple Homicide And Collateral Challenges To His Conviction......................2

        2. The Federal Defender Office's FOIA Request On Behalf of Higgs ............................................................5

    B.  Prior Proceedings.................................................................6

SUMMARY OF ARGUMENT ...............................................................11

STANDARD OF REVIEW....................................................................14

ARGUMENT .....................................................................................15

THE DISTRICT COURT CLEARLY ERRED IN ORDERING THE RELEASE OF PERSONALLY-IDENTIFYING INFORMATION RELATED TO PERSONS IDENTIFIED IN LAW ENFORCEMENT RECORDS FROM THE FBI'S CRIMINAL DATABASE .......................................................15

    A.    The District Court Incorrectly Declined To Recognize The Clear Privacy Interests Of The Witnesses, Suspects, Investigators And Other Individuals Identified In FBI Case Files ................................................17

    B.    The District Court Clearly Erred In Finding That There Is A Public Interest In Disclosure ..............................24

CONCLUSION ......................................................................34

CERTIFICATES OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

SHORT APPENDIX

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*ACLU v. Department of Justice,*
    655 F.3d 1 (D.C. Cir. 2011) ...................................................................32

*Antonelli v. FBI,*
    721 F.2d 615 (7th Cir. 1983) ............................................. 13, 25, 26, 30

*Becker v. I.R.S.,*
    34 F.3d 398 (7th Cir. 1994) ..............................................................15

*Boyd v. Criminal Div. of U.S. Dep't of Justice,*
    475 F.3d 381 (D.C. Cir. 2007)........................................................27, 31

*Citizens for Responsibility and Ethics in*
    *Washington v. U.S. Department of Justice,*
    746 F.3d 1082 (D.C. Cir. 2014) ...........................................................32

*Davin v. Department of Justice,*
    60 F.3d 1043 (3d Cir. 1995)........................................................20, 21, 22

*Department of Justice v. Landano,*
    508 U.S. 165 (1993) ............................................................................20

*Department of Justice v. Reporters Comm. for Freedom of the Press,*
    489 U.S. 749 (1989) ...............................................................17, 18, 24

*Frankenberry v. FBI,*
    567 F. App'x 120 (3d Cir. 2014) ..........................................................23

*Halpern v. FBI,*
    181 F.3d 279 (2d Cir. 1999)..................................................................19

*Hawkins v. DEA,*
    347 F. App'x 223 (7th Cir. 2009).........................................................25

*Higgs v. United States*,
   711 F. Supp. 2d 479 (D. Md. 2010) ..................................................3, 4

*Higgs v. United States*, Crim. No. 98-0520, Civ. No. 05-3180,
   2016 WL 6879939 (D. Md. Nov. 22, 2016) ........................................5, 30

*In re Matter of Wade*,
   969 F.2d 241 (7th Cir. 1992) ............................................ 15, 18, 26, 31

*Kaganove v. EPA*,
   856 F.2d 884 (7th Cir. 1988) *abrogated on other grounds by*
   *Milner v. Department of Navy*,
   562 U.S. 562 (2011) .......................................................................15

*Kimberlin v. Department of Treasury*,
   774 F.2d 204 (7th Cir. 1985) ........................................................27

*Lakin Law Firm, P.C. v. F.T.C.*,
   352 F.3d 1122 (7th Cir. 2003) .....................................................12, 18

*Miller v. Bell*,
   661 F.2d 623 (7th Cir. 1981) *abrogated on other grounds by*
   *Department of Justice v. Landano*,
   508 U.S. 165 (1993) .......................................................................26

*National Archives & Records Admin. v. Favish*,
   541 U.S. 157 (2002) ....................................... 9, 12, 13,16, 24, 27, 30

*Neely v. FBI*,
   208 F.3d 461 (4th Cir. 2000) .........................................................25

*Peltier v. FBI*,
   563 F.3d 754 (8th Cir. 2009) .........................................................25

*Prison Legal News v. Executive Office. for U.S. Attorneys*,
   628 F.3d 1243 (10th Cir. 2011) .....................................................19

iv

*Rubman v. U.S. Citizenship & Immigration Services,*
   800 F.3d 381 (7th Cir. 2015) ...............................................................15

*SafeCard Services, Inc. v. SEC,*
   926 F.2d 1197 (D.C. Cir. 1991) .........................................................31

*Schrecker v. Department of Justice,*
   349 F.3d 657 (D.C. Cir. 2003)...................... 12, 13, 14, 19, 20, 22, 23, 33

*Sherman v. U.S. Dep't of the Army,*
   244 F.3d 357 (5th Cir. 2001) ............................................................18

*Stein v. Department of Justice,*
   662 F.2d 1245 (7th Cir. 1981) .......................................................16, 18

*U.S. Dep't of Def. v. Federal Lab. Relations Auth.,*
   510 U.S. 487 (1994) ..........................................................................24

*United States v. Higgs,*
   95 F. App'x 37 (4th Cir.) *cert. denied,*
   543 U.S. 1004 (2004) ...........................................................................3

*United States v. Higgs,*
   138 S. Ct. 2572 (May 29, 2018) .....................................................5, 30

*United States v. Higgs,*
   193 F. Supp. 3d 495 (D. Md. 2016) ..................2, 4, 5, 11, 14, 28, 29, 30

*United States v. Higgs,*
   353 F.3d 281 (4th Cir. 2003) *cert. denied,*
   543 U.S. 999 (2004) ...........................................................................2

*United States v. Higgs,*
   663 F.3d 726 (4th Cir. 2011) *cert. denied,*
   568 U.S. 1069 (2012), .........................................................................4

**Statutes:**

Freedom of Information Act, 5 U.S.C. § 552:

5 U.S.C. § 552(a)(4)(B) .................................................................... 1, 22

5 U.S.C. § 552(b)(6) .............................................................................. 6

5 U.S.C. § 552(b)(7)(C) ............................................................... 1, 6, 16

5 U.S.C. § 552(b)(7)(D) ......................................................................... 7

28 U.S.C. § 1291.................................................................................... 1

28 U.S.C. § 1331.................................................................................... 1

28 U.S.C. § 1346.................................................................................... 1

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (U.S. Government defendant), and 5 U.S.C. § 552(a)(4)(B) (Freedom of Information Act). On June 25, 2018, the district court entered final judgment. The United States filed a timely notice of appeal on August 22, 2018. On September 5, 2018, plaintiff timely filed a cross-appeal. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether Exemption 7(C) of the Freedom of Information Act, which protects from disclosure records whose release "could reasonably be expected to constitute an unwarranted invasion of privacy," 5 U.S.C. § 552(b)(7)(C), applies to the personally-identifying information of private persons and law enforcement personnel in FBI records pertaining to a triple homicide, as well as third-party criminal history reports from an FBI criminal database.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.  Factual Background

### 1.  Higgs's Conviction For Triple Homicide And Collateral Challenges To His Conviction

This case stems from a FOIA request filed on behalf of plaintiff Dustin Higgs, who was convicted of the 1996 kidnapping and murder of three women. *See United States v. Higgs*, 193 F. Supp. 3d 495, 496-97 (D. Md. 2016).  Shortly after Higgs argued with one of the women, he grabbed a handgun and urged his two friends, Willis Haynes and Victor Gloria, to follow the women in Higgs's car. *Id.*  They ordered the women into a car, which the men drove to Patuxent National Wildlife Refuge. *Id.* at 497.  After Higgs gave Haynes a gun and told Haynes to shoot the three women, the men left the bodies in the park and threw the gun into a river. *Id.*  The Park Police tracked down Higgs based on a notation in one of the women's day planners, and Haynes and Higgs were convicted at separate trials. *Id.*

The Fourth Circuit affirmed Higgs's conviction and sentence for the kidnapping and murder of three women, *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003), *cert. denied*, *Higgs v. United States*, 543 U.S. 999 (2004), as well as the district court's denial of Higgs's motion for a

new trial, *United States v. Higgs*, 95 F. App'x 37 (4th Cir.), *cert. denied*,
*Higgs v. United States*, 543 U.S. 1004 (2004).

On November 28, 2005, Higgs filed a habeas petition, asserting twenty-five claims of error. *See Higgs v. United States*, 711 F. Supp. 2d 479, 487 (D. Md. 2010). As relevant here, Higgs alleged that the government had not turned over all *Brady* material concerning Victor Gloria, who had been present during the murder and who testified at Higgs's trial. Gloria had testified that Higgs wanted to have the women killed and that he saw Higgs hand a gun to Haynes while whispering something to Haynes. *Id.* at 506-07. On cross-examination, Higgs's counsel highlighted Gloria's criminal past and prior false statements, as well as the fact that the government had offered to seek a lighter sentence for Gloria for his own role in the triple homicides in exchange for his cooperation. *Id.* at 507-08.

In his collateral attack, Higgs alleged that the prosecution withheld evidence of a purported conspiracy with Baltimore authorities to prevent Gloria from being charged with the unrelated homicide of Martrelle Creighton in 1998, in order to prevent attacks on Gloria's credibility at Higgs's trial. *See Higgs*, 711 F. Supp. 2d at 508; *see also*

*Higgs*, 193 F. Supp. 3d. at 498-99.  The district court rejected these allegations as "pure speculation," explaining that Higgs "failed to demonstrate any causal connection between Gloria's testimony in this federal case and whatever treatment he may have received in the state jurisdictions."  *Higgs*, 711 F. Supp. 2d. at 508.  The Fourth Circuit affirmed.  *United States v. Higgs*, 663 F.3d 726 (4th Cir. 2011), *cert. denied*, 568 U.S. 1069 (2012).

In 2014, Higgs moved under Rule 60(b) to reopen the judgment denying his previous habeas petition.  Higgs made the same claim that the government had conspired with Baltimore authorities with respect Gloria's purported involvement in the Creighton murder, this time arguing that the government had committed fraud on the district court by denying his prior conspiracy allegations.  The district court denied the motion, holding that Higgs's claim that the government had committed fraud on the court was not "colorable."  *Higgs*, 193 F. Supp. 3d at 496.  After a lengthy review of the evidence from the Baltimore police files, the district court found that Higgs had not shown that Gloria received leniency in the Creighton case because of his testimony, and therefore that "[t]here was no fraud on the court during the § 2255

4

proceedings." *Id.* at 513.  The district court subsequently denied a certificate of appealability, *Higgs v. United States*, Crim. No. 98-0520, Civ. No. 05-3180, 2016 WL 6879939 (D. Md. Nov. 22, 2016). The court of appeals did the same, and the Supreme Court denied certiorari, *United States v. Higgs*, 138 S. Ct. 2572 (May 29, 2018).  As a result, Higgs remains in federal custody, currently in Southern Indiana.

### 2.  The Federal Defender Office's FOIA Request On Behalf of Higgs

In 2012, while pursuing Higgs's collateral attacks on his conviction, an investigator from the Federal Community Defender Office for the Eastern District of Pennsylvania (Federal Defender's Office or FDCO) submitted a FOIA request to the Park Police for a complete copy of everything pertaining to Higgs's homicide conviction.  SA 1.[1]  In correspondence related to the request, the Federal Defender's Office clarified that "[t]he request is being made as part of the FCDO's representation of an indigent client" and that the request's "purpose" was as part of Federal Defender's Office's "legal representation in a

---

[1] Citations to the short appendix bound with the government's opening brief will be abbreviated "SA __."  Citations to the government's appendix will be abbreviated "GA __."

criminal case." GA 42. The Park Police released some records, but ultimately referred the FOIA request regarding other records in its possession to other federal agencies, including the FBI. SA 6.[2]

### B. Prior Proceedings

**1.** On March 16, 2016, Higgs filed a complaint in the Southern District of Indiana against the Park Police under FOIA. SA 6. The parties resolved all outstanding issues except for certain withholdings by the FBI. SA 11. As relevant here, the FBI redacted or withheld information from its law enforcement investigative files to protect individuals identified in those files. The FBI withheld certain information under Exemptions 6 and 7(C), which protect against the unwarranted invasion of individuals' privacy, 5 U.S.C. § 552(b)(6), (b)(7)(C), as well as a more limited subset of information under

---

[2] The Federal Defender's Office also had filed two separate FOIA requests with the FBI that pertained to two FBI investigative files, which the FBI has denied on the basis of FOIA Exemption 7(A) (which covers records that could reasonably be expected to interfere with ongoing law enforcement proceedings), and which are currently on administrative appeal. GA 35-36. Although Higgs referenced these requests in filing his memorandum of law opposing the referral of documents to the FBI, these requests are not properly part of this litigation as neither of the requests mentioned Higgs (nor purported to be on behalf of Higgs) and, in any case, were not part of the complaint filed against the Park Police. GA 36-37.

Exemption 7(D), which protects both the identity of and the information

given by confidential informants, *id.* § 552(b)(7)(D).  The withheld

information includes interview reports and criminal histories of third

parties from an FBI criminal database (commonly known as rap

sheets), which were created between 1996 and 1999 as part of the FBI's

investigative file pertaining to Higgs and which the court collectively

referred to as the "1999 Records."  SA 11-12.

First, the FBI relied on Exemptions 6 and 7(C) to protect the

personally-identifying information of third parties of investigative

interest, third parties who provided information, third parties who were

mentioned in the files, state law enforcement personnel, and FBI and

other government personnel.  GA 2-12, 18-25.  The FBI explained that

the disclosure of this information would be a clearly unwarranted

and/or an unwarranted invasion of personal privacy, as it could subject

these individuals to harassment, intimidation, threats, and potentially

physical harm.  GA 18-25.  Second, the FBI asserted Exemption 7(D) to

protect confidential sources.  GA 4-5, 9, 18, 25-28.[3]  The FBI explained

---

[3] Although the FBI also claimed exemptions under Exemption (7)(E)
for investigative techniques and procedures with respect to certain

that, "[g]iven the nature of the crime—a violent triple murder—and the individuals' proximity to Plaintiff and his associates," these individuals would have expected confidentiality and that the exposure of this information "could subject them to reprisals such as serious bodily injury and/or death." GA 28.

**2.** The district court granted in part and denied in part the cross-motions for summary judgment. SA 33-34; GA 1. The court concluded that the FBI properly withheld documents related to confidential informants under Exemption 7(D), in light of the nature of the crime and the fact that the information provided by the confidential sources was "singular in nature." SA 13-17. The court also explained that, under this Court's precedents, claims of confidentiality under FOIA were not waived, even if some of these confidential sources may have testified at Higgs's trial. SA 16.

However, the court rejected the FBI's reliance on the personal privacy protections of Exemptions 6 and 7(C), holding that the FBI must release all of the personal information at issue: the names and

documents, GA 2, 6-11, 28-32, the FBI does not challenge the district court's ruling with respect to this basis for withholding documents on appeal.

personally-identifying information (including phone numbers and home addresses) of third parties and law enforcement personnel from the reports of interviews during its investigation and the fingerprint records and rap sheets for third parties. *See* SA 17-25. In applying the familiar standard requiring the court to balance the privacy interests at stake against the asserted public interest in disclosure, the district court acknowledged that a party's interest in attacking his conviction is not a public interest. SA 19. The court concluded, however, that Higgs's claims implicate a broader public interest in "discovering prosecutorial misconduct." *Id.*

The district court recognized that a requester alleging government misconduct must rely on more than mere suspicion and provide evidence that would lead a reasonable person that the misconduct might have occurred. SA 20 (citing *National Archives & Records Admin. v. Favish,* 541 U.S. 157, 174-75 (2002)). The court found it "difficult to say" whether Higgs had met this evidentiary burden. SA 21. However, the court determined that it "need not conduct a detailed analysis" of Higgs's allegations of misconduct because "his allegations

concern the manner in which the Department of Justice (the 'DOJ') carries out substantive law enforcement policy." *Id.*

Turning to the privacy interest, the district court recognized that court have consistently protected from disclosure the names and identifying information of individuals in law enforcement records including witnesses, investigators, suspects and informants. SA 22-23. The court declined to do so, however, because the files in which these individuals are named relate to a murder that occurred twenty-two years ago. SA 23-24. Although the court recognized that the passage of time itself does not diminish the privacy interest, it held that the FBI had not demonstrated such an interest here because it did not demonstrate that the individuals remain alive. SA 24-25. The court declined to allow the FBI to provide additional information on whether the individuals were alive, citing the "prolonged history of this case." SA 25. As a result, the court ordered the disclosure of all of the personally-identifying information (including phone numbers and home addresses) for every individual that appear in the records. *Id.*

## SUMMARY OF ARGUMENT

Since his conviction for the murder of three women, Dustin Higgs has been unsuccessfully challenging that conviction, both on direct appeal and through habeas proceedings. As relevant here, a federal district court has already twice rejected Higgs's allegations that the government conspired to conceal part of the consideration given to a witness who testified against him. That court concluded that Higgs's claim of government misconduct was not "colorable" and denied his request to seek additional discovery from the federal government. *See United States v. Higgs*, 193 F. Supp. 3d 495, 496 (D. Md. 2016). Higgs now attempts to gain access to these same documents through his FOIA request for the government's 1999 investigative files pertaining to this case, including the revelation of all of the personally-identifying information for individuals that appears in these files.

Where, as here, a requester seeks personal information about other people contained in law enforcement files under FOIA, courts must weigh the substantial privacy interests of the individuals against the public interest in disclosure. *National*

11

*Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

The district court here clearly erred in applying both of the required prongs under *Favish*, by ordering the wholesale disclosure of personal information—including names, personal contact information, and even rap sheets and fingerprint records—of individuals identified in FBI case files.  Each of these errors requires reversal.

First, the court clearly erred in wholly discounting the privacy interest of the individuals identified in the FBI's 1999 investigatory files.  Courts have uniformly recognized that this substantial privacy interest belongs to these individuals, and it cannot be waived merely because of the passage of twenty-two years or because the FBI did not undertake a burdensome investigation into the individuals' current life status without first being asked to do so by the district court.  *See Lakin Law Firm, P.C. v. F.T.C.*, 352 F.3d 1122, 1124 (7th Cir. 2003); *Schrecker v. Department of Justice*, 349 F.3d 657, 660 (D.C. Cir. 2003).  Twenty-two years is far too short period of time to have rendered improper the FBI's withholding of this personal information on the assumption that the individuals remained alive.  The district court had no basis to order

the information released, without first giving the FBI an opportunity to first investigate and then deferring to reasonable assumptions that individuals remained alive, so long as there was not affirmative evidence that they had died. *See, e.g.*, *Schrecker*, 349 F.3d at 663-65.

Second, the district court also clearly erred in finding that Higgs had established a cognizable public interest sufficient to overcome any privacy interest, much less the substantial privacy interests of individuals named in FBI files. Higgs's personal interest here—potentially discovering evidence to use in his collateral attacks on his conviction—is clearly insufficient to demonstrate a public interest in how the government is doing its job. *Antonelli v. FBI*, 721 F.2d 615, 619 (7th Cir. 1983). His efforts to avoid this principle by his recasting his claim about prosecutorial misconduct in his own trial as a broader public interest in how the government enforces the law would apply in every FOIA case brought by a convicted felon seeking access to his investigative file. Generalized and speculative claims of prosecutorial misconduct are insufficient to constitute a public interest under *Antonelli* and *Favish*. Here, not only has Higgs

13

failed to provide evidence that could support a claim that his request would shed light on likely prosecutorial misconduct, but the courts have explicitly found that his claim has no colorable basis. *See Higgs*, 193 F. Supp. 3d at 496. Without such a public interest, even a minimal privacy interest will support withholding.

Finally, even if a public interest existed here, neither the district court nor Higgs has explained how disclosure of the identities of each of the individuals' names and other personal information mentioned anywhere in the records (including phone numbers and even fingerprint cards) would further the purported public interest in investigating one instance of alleged prosecutorial misconduct, especially in light of the information already released. S*ee Schrecker*, 349 F.3d at 661 (explaining that courts must evaluate "the incremental value of the specific information being withheld"—*i.e.*, the redacted personally-identifying information—when evaluating whether the asserted public interest outweighs privacy interests).

## STANDARD OF REVIEW

When summary judgment is granted to an agency that has withheld documents under one of FOIA's statutory exemptions, this Court first

reviews the agency's declarations de novo to determine whether the district court had an adequate factual basis for its decision. *See Rubman v. U.S. Citizenship & Immigration Services*, 800 F.3d 381, 388 (7th Cir. 2015). If the district court had an adequate factual basis, this Court typically then determines "whether the decision was clearly erroneous." *Becker v. I.R.S.*, 34 F.3d 398, 402 (7th Cir. 1994). Other decisions from this Court, however, have suggested that it sometimes will review de novo the entire "legal question" of whether summary judgment was appropriate in a FOIA case. *See In re Wade*, 969 F.2d 241, 245 (7th Cir. 1992); *Kaganove v. EPA*, 856 F.2d 884, 886 (7th Cir. 1988), *abrogated on other grounds by Milner v. Department of Navy*, 562 U.S. 562, 567 (2011).

## ARGUMENT

### THE DISTRICT COURT CLEARLY ERRED IN ORDERING THE RELEASE OF PERSONALLY-IDENTIFYING INFORMATION RELATED TO PERSONS IDENTIFIED IN LAW ENFORCEMENT RECORDS FROM THE FBI'S CRIMINAL DATABASE

Exemption 7(C) protects "records or information compiled for law enforcement purposes" whose disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C.

15

§ 552(b)(7)(C).[4]  Under Exemption 7(C), courts weigh the privacy

interests of the individuals against the public interest in disclosure.

*See, e.g.*, *National Archives & Records Admin. v. Favish*, 541 U.S. 157,

172 (2002).[5]  Both private persons mentioned in law enforcement files

and law enforcement personnel have substantial privacy interests in

preventing the disclosure of their involvement in particular criminal

investigations.  *See, e.g.*, *Stein v. Department of Justice*, 662 F.2d 1245,

1260 (7th Cir. 1981).  To overcome this interest, the requester "must

show":  (1) that "the public interest sought to be advanced is a

significant one," and (2) that "the information is likely to advance the

interest."  *Favish*, 541 U.S. at 172.  Otherwise, "the invasion of privacy

is unwarranted."  *Id.*

The district court clearly erred, both by entirely discounting the

substantial, individual privacy interests at stake here and by finding

---

[4] It is undisputed that the relevant records were compiled for law enforcement purposes.  *See* SA 14.

[5] The parties and the district court also agree that, although the government asserted both Exemption 6 and Exemption 7 to protect these individuals' information, it makes sense to analyze the withholdings "under Exemption 7 because it is more protective of privacy than Exemption 6."  *See* SA 12 n.3.

that Higgs's speculative claim of prosecutorial misconduct constitutes a sufficient public interest to warrant disclosure.

### A. The District Court Incorrectly Declined To Recognize The Clear Privacy Interests Of The Witnesses, Suspects, Investigators And Other Individuals Identified In FBI Case Files

As the Supreme Court has explained, "FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed." *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 774 (1989). The purpose of FOIA "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Id.* at 773.

This case involves fundamental privacy interests that have been uniformly recognized by the courts. There is no dispute that the records at issue here include personal information about third parties who provided information during the investigation, third parties merely mentioned in the records, third parties of investigatory interest, local

law enforcement personnel, non-FBI federal personnel, and FBI special agents and support personnel. *See* SA 22. As the district court recognized, and as this Court has made clear, such individuals have substantial privacy interests. *See, e.g.*, *Stein*, 662 F.2d at 1260 (recognizing that the "names and other identifying data of agents of the FBI, informants, targets of investigations, and people tangentially related to counterintelligence investigation . . . may be withheld properly under (b)(7)(C)"); *In re Wade*, 969 F.2d 241, 246 (7th Cir. 1992) ("FBI agents' privacy interests are serious and substantial."); *see also* *Reporters Committee*, 489 U.S. at 780 (announcing categorical rule that rap sheets are almost never to be released).

Moreover, the "privacy interest at stake in FOIA . . . belongs to the individual, not the agency holding the information." *Sherman v. U.S. Dep't of the Army*, 244 F.3d 357, 363 (5th Cir. 2001) (citing *Reporters Committee*, 489 U.S. at 763-65). As a result, "[t]he government cannot waive individual[] . . . privacy interests" under FOIA, "whatever it does or fails to do." *Lakin Law Firm, P.C. v. F.T.C.*, 352 F.3d 1122, 1124 (7th Cir. 2003); *see also, e.g.*, *Sherman*, 244 F.3d at 363-364 & n.12 (collecting cases from the Second, Sixth, Ninth, and D.C. Circuits);

18

*Prison Legal News v. Executive Office for U.S. Attorneys*, 628 F.3d 1243, 1249 (10th Cir. 2011).

The district court nevertheless held that none of the individuals in this case have a privacy interest subject to the protection of Exemption 7(C).  The court based this decision solely on one factor:  the passage of time.  Because the crime occurred twenty-two years ago (although many of the documents were created several years after that date), the district court reasoned that the government had not shown a sufficient privacy interest because it had not put forth evidence that the individuals are still alive.  SA 24-25.

The district court's decision is fundamentally flawed.  Privacy interests "cannot be waived through . . . the passage of time." *Halpern v. FBI*, 181 F.3d 279, 297 (2d Cir. 1999); *Schrecker*, 349 F.3d at 666 (same).  And, as the district court itself acknowledged, twenty-two years is not enough time to "presume that the individuals at issue in this case are deceased." SA 24.  But the court nonetheless effectively established just such a presumption by imposing upon the FBI a burden to demonstrate that every individual in the records is alive.  And the court

compounded the error by ordering the wholesale release of the information on all of the individuals. *See* SA 24-25.

The court's conclusion that it "cannot conduct the necessary balancing test required under Exemption 7(C)" due to the lack of evidence one way or the other as to life status, SA 25, did not provide a basis for granting Higgs's motion for summary judgment solely on the ground that none of the individuals had been proven to be alive (and even though none had been proven to be deceased). Rather, the court was required to first allow the FBI to investigate whether the individuals were alive and to defer to reasonable presumptions about lifespan in the absence of contrary evidence. *See Schrecker*, 349 F.3d at 665.

Congress intended "to provide workable rules of FOIA disclosure," a rationale that extends to the question of when it is appropriate to require an agency to investigate the life status of individuals named in law enforcement files. *See Davin v. Department of Justice*, 60 F.3d 1043, 1059 (3d Cir. 1995) (quoting *Department of Justice v. Landano*, 508 U.S. 165, 180 (1993)) (cleaned up). That is because it would be highly burdensome for the FBI to have to determine whether all of the

individuals named in investigative files are alive every time there is a FOIA request.

Here, at most, only twenty-two years have passed since the creation of the requested law enforcement files relating to the investigations of Higgs's role in the murder of three women in 1996. That is far too short a time to justify a holding that the FBI improperly withheld the personal information of individuals named in those records. A person who was thirty in 1996 would be fifty-two today, and a person who was fifty would be seventy-two, both well within the range of modern life expectancy. The FBI made a reasonable presumption that, absent evidence to the contrary raised by Higgs or already known by the FBI, the individuals identified in the records at issue here remain alive. The premise of the district court's decision—that the FBI acted improperly in declining to undertake a burdensome investigation as to the life status of each individual in the records—is incorrect.

The fact that district courts may have discretion in certain circumstances to require an agency to determine whether individuals are alive or dead, *see, e.g.*, *Davin*, 60 F.3d at 1059, does not support the district court's order requiring release of the records here. FOIA gives

the district court jurisdiction to "order the production of any agency records *improperly withheld* from the complainant." 5 U.S.C. § 552(a)(4)(B) (emphasis added). Thus, even if the court has discretion to order an agency to conduct an inquiry into the life status of individuals, it cannot conclude that the agency has improperly withheld records (and order immediate disclosure) without first providing the agency the opportunity to conduct the inquiry.

Indeed, no court of appeals has authorized the type of order the district court issued here, *i.e.*, the release individuals' confidential information due to the passage of time, without giving the government an opportunity to investigate life status. To the contrary, the two court of appeals' opinions on which the district court relied, SA 23-24, both remanded to allow the government to substantiate whether the individuals involved were alive. *See Schrecker*, 349 F.3d at 660; *Davin*, 60 F.3d at 1059.

As a practical matter, the order here will require the release of sensitive, personally-identifying information, including phone numbers, home addresses, and in some instances rap sheets and fingerprint records, of many individuals who undoubtedly are alive. These

individuals' information should be protected while the FBI completes an investigation. Provided that the FBI subsequently conducts a reasonable investigation and applies routine assumptions as to longevity, it remains the "Government's rebuttable presumption that an individual is alive" even if the FBI cannot definitively prove life. *See Schrecker*, 349 F.3d at 665; *see also Frankenberry v. FBI*, 567 F. App'x 120, 122-23 (3d Cir. 2014) (per curiam). For example, the D.C. Circuit has upheld the FBI's use of the 100-year rule to assume that an individual was alive, even when the government could not establish life status based on the available biographical information. *Schrecker*, 349 F.3d at 663-665. It is only when the death of an individual can be confirmed by contrary evidence (or presumed because of a significantly longer passage of time) that courts have discretion to assume that individuals no longer have a privacy interest in shielding their association with law enforcement files.

The district court's only rationale for this ruling was that it did not want to "give the Park Police a further opportunity to support its claim" in light of the "the prolonged history of this case." SA 25. But ordering the disclosure of individuals' personal information simply due to the

length of the litigation cannot be squared with the fundamental principle that the privacy interest belongs to the individuals named in the FBI's investigative files. *See supra* p. 18-19. Nor can it support a holding that the FBI has improperly withheld the information by failing to anticipate the court's decision to exercise its discretion to compel an inquiry into the status of each individual named in the records.

**B.    The District Court Clearly Erred In Finding That There Is A Public Interest In Disclosure**

In Exemption 7(C) cases in which a privacy interest exists, "the person requesting the information [must] establish a sufficient reason for the disclosure" by showing that: (1) "the public interest sought to be advanced is a significant one" and (2) "the information [sought] is likely to advance that interest." *Favish*, 541 U.S. at 172. Moreover, "the only relevant 'public interest in disclosure' . . . is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.'" *U.S. Dep't of Def. v. Federal Lab. Relations Auth.*, 510 U.S. 487, 495 (1994) (quoting *Reporters Comm.*, 489 U.S. at 775) (second alteration in original). Higgs failed to assert a

24

cognizable public interest in the disclosure of the personal information he requests here.

**1.** Courts have uniformly recognized that a prisoner's "interest in ensuring that his convictions were not obtained as a result of a violation of the Constitution" is "insufficient" to demonstrate a public interest. *Antonelli v. FBI*, 721 F.2d 615, 619 (7th Cir. 1983); *see also Hawkins v. DEA*, 347 F. App'x 223, 225 (7th Cir. 2009) (per curiam) (holding that "a prisoner's interest in attacking his own conviction is not a public interest"); *Neely v. FBI*, 208 F.3d 461, 464 (4th Cir. 2000) (same); *Peltier v. FBI*, 563 F.3d 754, 763-64 (8th Cir. 2009) (same). But that is precisely what Higgs has done here: his counsel expressly represented that he was filing the FOIA request "as part of the FCDO's representation of an indigent client" and that the request's "purpose" was as part of "legal representation in a criminal case." GA 42. That Higgs may believe the information withheld would helpful to his criminal case does not translate into a *public* interest in disclosure—*i.e.*, one that would reveal an agency's performance of its duties or otherwise inform citizens of what their government is doing. Without such a

25

public interest, even a minimal privacy interest will support withholding. *Cf. Wade*, 969 F.2d at 247.

Higgs's efforts to avoid this principle by relying on an asserted interest in how the government conducts prosecutions likewise fails. General concerns about how the government enforces the law or prosecutes cases exist in every case, and are plainly insufficient. *Cf. Miller v. Bell*, 661 F.2d 623, 630 (7th Cir. 1981), *abrogated on other grounds by Landano*, 508 U.S. at 174-78 (rejecting a claim that "serv[ing] as a watchdog over the adequacy and completeness of an FBI investigation" constitutes a public interest because it "would apply to every FBI criminal investigation, severely vitiating the privacy and confidentiality provisions of exemptions 7(C) and (D)"); *Antonelli*, 721 F.2d at 619 ("The contention that 'the public shares Antonelli's interest in ensuring that his convictions were not obtained as a result of a violation of the Constitution' . . . is insufficient."). Nor has Higgs alleged any general, substantive DOJ policy beyond prosecutorial misconduct that he contends would be revealed by the FBI documents.

Instead, Higgs's basis for requesting the documents falls squarely within a typical challenge to a criminal conviction: he has raised one

specific instance of alleged misconduct relating to his homicide conviction. However, "a single instance of a *Brady* violation in [this] case would not suffice to show a pattern of government wrongdoing as could overcome the significant privacy interest at stake." *See Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007). Allowing a prisoner to recast his allegations of prosecutorial misconduct in his particular case as a broader public interest in the manner in which the government carries out substantive law enforcement would countermand the longstanding doctrine prohibiting inmates from claiming that attacking their convictions serves a public interest.

Nor does Higgs's speculative claim of prosecutorial misconduct in his particular case suffice. Mere allegations are not enough to establish this kind of public interest; rather, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174; *see also, e.g.*, *Kimberlin v. Department of Treasury*, 774 F.2d 204, 208 (7th Cir. 1985) ("[S]elf-serving assertions of government

wrongdoing and coverup do not rise to the level of justifying disclosure."). Higgs has not met that burden here.

Indeed, Higgs unsuccessfully raised the same misconduct claims in seeking habeas review of his criminal conviction before a federal district court in Maryland. *Compare Higgs*, 193 F. Supp. 3d at 496, *with* Higgs's Reply in Support of Cross-Motion for Summary Judgment at 9-10, 19-402, *Higgs v. U.S. Park Police*, No. 2:16-cv-00096 (S.D. Ind. Apr. 7, 2015), ECF No. 58 (relying on and attaching Rule 60(b) motion and exhibits from his habeas proceedings as evidence of misconduct for purposes of the public interest analysis relevant to the current FOIA request). The district court in Maryland concluded that Higgs had not offered a "colorable" claim that the government committed fraud in denying knowledge of the same alleged prosecutorial misconduct Higgs raises here. *Compare Higgs*, 193 F. Supp. 3d at 496, *with* SA 18, 21.

The district court in that case thoroughly explained why the evidence on which Higgs relied did not support Higgs's theory that the federal government had exerted "federal pressure that changed the course" of the state's investigation of the unrelated Creighton homicide. *See Higgs*, 193 F. Supp. 3d at 511; *see generally id.* at 508-14. That court

28

concluded instead that the "reasonable inference" from the Baltimore Police File was that the Baltimore authorities came to their own conclusions in identifying a different suspect (Miller) as the murderer based on the following facts: (1) "three eyewitnesses with no obvious motive to lie to police independently identified Miller as the likely murderer (two doing so by name), and . . . suggested Gloria was not even involved in the altercation" in interviews that occurred before the Baltimore authorities spoke to the federal authorities, *id.* at 510; (2) the Baltimore police "continued to treat Gloria as a suspect in the Creighton murder even after discussing the case with" federal authorities, *id.* at 512; and (3) additional evidence came to light after the conversation with federal authorities that pointed to Miller, *id.* Finally, the court found that, even if Higgs's allegations about the Creighton investigation were true, any *Brady* violation based on a theory that Gloria had "received consideration for his testimony beyond that disclosed by the Government could not have further undermined his already low credibility," and would not have had a material effect on his conviction. *Id.* at 514 (emphasis removed).

The district court denied a certificate of appealability on this issue, *United States v. Higgs*, Crim. No. 98-0520, Civ. No. 05-3180, 2016 WL 6879939 (D. Md. Nov. 22, 2016); the court of appeals did the same; and the Supreme Court denied certiorari, *United States v. Higgs*, 138 S. Ct. 2572 (May 29, 2018). The district court's analysis supporting this denial, which Higgs unsuccessfully attempted to challenge on further appeal, makes clear that a "reasonable person" would not believe that this same evidence—on which Higgs relies again here—indicates that any "Government impropriety might have occurred," and therefore it cannot support a finding that there is a public interest here. *Cf. Favish*, 541 U.S. at 174.

Having been denied discovery in his collateral attacks on his conviction, *see Higgs*, 193 F. Supp. 3d at 515, Higgs now improperly seeks to use FOIA to gain access to the same documents. *See Antonelli*, 721 F.2d at 619 ("The primary purpose of the FOIA was not to benefit private litigants or to serve as a substitute for civil discovery.") (quotation marks omitted). As described above, Higgs cannot show the "substantial public interest" required to defeat the privacy interests

here.  *See Wade*, 969 F.2d at 246; *see also SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1205-06 (D.C. Cir. 1991).

The district court's decision to the contrary is fundamentally flawed. The court recognized that an interest in challenging an underlying conviction was insufficient, SA 19, and further acknowledged that it "is difficult to say" whether Higgs met his evidentiary burden under *Favish* to show that the alleged prosecutorial conspiracy had, in fact, occurred, *see* SA 19-21.  Yet the district court inexplicably concluded that Higgs did not have to meet this burden because these same allegations—*i.e.*, a prosecutorial conspiracy—"concern the manner in which the Department of Justice (the 'DOJ') carries out substantive law enforcement policy."  SA 21.  This assertion turns *Favish* on its head. Having failed to present even a colorable claim that there was any prosecutorial misconduct in his individual case, Higgs cannot depend on these same allegations to assert that there is some general substantive law enforcement policy governing the prosecutors' conduct that would be revealed by the documents in the FBI's investigative file in this case. *See Boyd*, 475 F.3d at 387-88.

Nor do the two D.C. Circuit cases on which the court relies have any bearing on the analysis in this case. *See* SA 21-22. The requested records in those cases involved "a wide-ranging public corruption investigation as part of [the FBI's] ongoing efforts to root out systemic corruption within the highest levels of government," *Citizens for Responsibility and Ethics in Washington v. Department of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) (alteration in original), and an inquiry into the use of warrantless cell phone tracking, *ACLU v. Department of Justice*, 655 F.3d 1, 12-13 (D.C. Cir. 2011). By contrast, the request here is typical of the ones brought by prisoners seeking their criminal investigation files: it focuses on a theory of prosecutorial misconduct in an attempt to undermine the conviction of an individual defendant. As described above, an interest in the actions of a particular prosecutor in a particular case does not implicate substantive law enforcement policy and therefore is insufficient under even this theory of public interest under FOIA.

**2.** Moreover, even if a public interest existed here, neither the district court nor Higgs has explained how disclosure of the identities of each of the individuals' names and other personal information in the

records would further that interest, especially in light of the information already released. *See Schrecker*, 349 F.3d at 661 (explaining that courts must evaluate "the incremental value of the specific information being withheld" when evaluating whether the asserted public interest outweighs privacy interests).

Higgs has asserted that he needs the records to shed light on his claim that the government engaged in misconduct in conjunction with Gloria's potential prosecution in Baltimore. At no point, however, did Higgs explain how the identity and personal contact information of *all* of the individuals identified in the records, from people merely mentioned in the records to FBI support personnel, would reveal the specific government misconduct with respect to the treatment of one witness at trial that Higgs alleges here. For example, no rationale has been offered for how the names and identifying information of government personnel who analyzed the bullet specimens in this case, *see* GA 2, or of witnesses and government personnel who participated in FBI interviews in 1996, *see, e.g.*, GA 3, could shed light on what prosecutors told Baltimore authorities about a witness's role in an unrelated homicide that occurred in 1998. Because the purported

public interest cannot serve to outweigh all of these individuals' privacy interests, the district court erred in requiring the information to be released.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

JOSEPH H. HUNT
  *Assistant Attorney General*
JOSH MINKLER
  *United States Attorney*

MATTHEW M. COLLETTE

 *s/ Caroline D. Lopez*
CAROLINE D. LOPEZ
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7535*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4825*
  *caroline.d.lopez@usdoj.gov*

October 2018

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,478 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2013 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Caroline D. Lopez*
Caroline D. Lopez

# CERTIFICATE OF COMPLIANCE

The appendix and short appendix include the materials required by

Circuit Rule 30(a) and (b).

*s/ Caroline D. Lopez*
Caroline D. Lopez

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2018, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I further certify that I will cause 15 paper copies of this brief to be received by the Clerk within seven days of the Notice of Docket Activity generated upon acceptance of the brief, in compliance with 7th Circuit Rule 31(b) and ECF Procedure (h)(2).

Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Caroline D. Lopez*
Caroline D. Lopez

**ADDENDUM**

# TABLE OF CONTENTS

5 U.S.C. § 552(a)(4)(B) ................................................................. A1

5 U.S.C. § 552(b)(6), (7) ............................................................. A1

**5 U.S.C. § 552**

**§ 552. Public information; agency rules, opinions, orders, records, and proceedings**

(a) Each agency shall make available to the public information as follows:

\* \* \* \*

 (4)

   (B)   On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. \* \* \* \*

\* \* \* \*

(b)This section does not apply to matters that are—

 (6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

 (7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information \*\*\* (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source  \* \* \* \*

# SHORT APPENDIX

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DUSTIN JOHN HIGGS,               )
    *Plaintiff*,                    )
                                    )
    *vs.*                           )        2:16-cv-96-JMS-MJD
                                    )
UNITED STATES PARK POLICE,        )
    *Defendant.*                    )

**<u>ORDER</u>**

Plaintiff Dustin Higgs filed this suit against Defendant U.S. Park Police (the "<u>Park Police</u>")

pursuant to the Freedom of Information Act ("<u>FOIA</u>"), asking this Court to review whether the

Park Police complied with FOIA in response to Mr. Higgs' request for all documents in the

agency's possession related to a triple homicide that occurred in 1996. [Filing No. 1.]  Presently

pending before the Court is Mr. Higgs' Cross Motion for Summary Judgment. [Filing No. 64.]  In

addition, given the unique procedural background of this case,[1] the Court will treat the Park

---

[1] Both parties had initially moved for summary judgment in this matter. [Filing No. 35 and Filing No. 51.]  However, in its February 27, 2018 Order, the Court denied the pending Motions for Summary Judgment as moot and ordered supplemental briefing given that the Defendant's response to the FOIA request had changed over time.  The Court stated that, "[s]hould the parties wish the briefs submitted pursuant to this order to constitute Motions for Summary Judgment, they should file such motions with their brief." [Filing No. 63.]

SA001

Police's filing entitled "Reply In Support of Motion for Summary Judgment" as a Motion for Summary Judgment. [Filing No. 71.]

# I.
## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

---

Mr. Higgs did so and filed a Motion for Summary Judgment contemporaneous with his brief. [Filing No. 64.] The Park Police filed a Response to Mr. Higgs' Motion, and styled it "Reply In Support of Motion for Summary Judgment." [Filing No. 66.] However, the Park Police did not file a motion with its brief. Notwithstanding this, the Park Police drafted its briefing such that the Court assumes the Park Police believes that its prior Motion for Summary Judgment is still operative. [Filing No. 66 at 1.] The Park Police's failure to comply with the Court's Order, [Filing No. 63], and with the Local Rules for the United States District Court for the Southern District of Indiana, *see* Local Rule 7.1, is harmless in this case, as Mr. Higgs had a full opportunity to respond to the Park Police's arguments and, indeed, did so in his reply brief. Moreover, the Court may, in its discretion dispense with strict adherence to its local rules. *See Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). As such, the Court will consider the Park Police's Response to Mr. Higgs' Motion for Summary Judgment as a Cross-Motion for Summary Judgment.

- 2 -

SA002

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative.  *Montgomery v. American Airlines Inc*., 626 F.3d 382, 389 (7th Cir. 2010).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016).  The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them.  *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017).  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

SA003

The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II.
### BACKGROUND

The background of this case involves Mr. Higgs' conviction for three counts of first degree murder that were committed at the Patuxent National Wildlife Refuge in Prince George's County, Maryland in 1996.  Both parties acknowledge that the identity of a FOIA requestor is not relevant to an analysis of the propriety of an agency's response to a FOIA request.  [Filing No. 38 at 8.]  As such, the Court will refrain from setting forth a more detailed recitation of Mr. Higgs' various attempts to appeal his conviction, except to note that Mr. Higgs was sentenced to death and is currently incarcerated on federal death row at the United States Penitentiary in Terre Haute, Indiana.

The facts of this case are not in dispute, and they begin on or about January 5, 2012, when Jessica Johnson, an investigator from the Federal Community Defender Office for the Eastern District of Pennsylvania, submitted a FOIA request (the "2012 Request") to William Line at the National Park Service.  [Filing No. 1-1.]  The 2012 FOIA Request referenced case #96-002243, described as "[t]riple homicides on route 197 in Patuxent Research Refuge on January 27, 1996," and requested that the Park Police furnish:

> a complete copy of everything pertaining to the above referenced matter including by way of illustration only and not limitation: files, transcripts, documents, notes, bench notes, worksheets, chain of custody forms, memorandums, reports, interviews, pictures/photographs, drawings, tests, test results, diagrams, tape recording(s), and any and all other information related to this case.

[Filing No. 1-1 at 1.]

- 4 -

SA004

Upon receipt of the 2012 Request, the Park Police emailed it to the Park Police's Criminal Investigation Branch ("CIB"), which began its search. [Filing No. 36-1 at 2.] By January 17, 2012, CIB had identified nine boxes of documents that it deemed responsive to the 2012 Request, including interviews, mug shots, investigative reports, photographs, and newspaper clippings. [Filing No. 1-1 at 2-3.] On February 7, 2012, the Park Police sent Ms. Johnson a letter estimating that it would "cost a total of $11,026.00 to process" the 2012 Request, giving remittance information for the payment, and indicating that the Park Police would not proceed further without receipt of the advance payment. [Filing No. 1-2 at 1-2.]

On May 12, 2012, Aren Adjoian, acting on behalf of Mr. Higgs, appealed the Park Police's calculation of the fee required to fulfill the 2012 Request. [Filing No. 1-6.] The following month, the appeal was granted, [Filing No. 1-7], and the Community Defender Office remitted $910.00 to the Park Police, [Filing No. 1-8.] On August 23, 2012, the Park Police again began to process records that it deemed responsive to the 2012 Request, [Filing No. 36-1 at 3].

Over a year later, on November 7, 2013, the Park Police sent Mr. Higgs a response which stated that documents responsive to the 2012 Request could not be released pursuant to 3 FOIA exemptions: 5 U.S.C. § 552(b)(7)(A), 5 U.S.C. § 552(b)(6); and 5 U.S.C. 552(b)(7)(C). [Filing No. 1-10 at 2.] On December 6, 2013, Mr. Higgs appealed the Park Police's November 7, 2013 Final Response. [Filing No. 1-11.] On September 17, 2014, the Office of the Solicitor for the Department of the Interior remanded the matter to the Park Police due to "procedural deficiencies," finding that the Park Police did not actually review documents that were responsive to the 2012 Request. [Filing No. 1-13 at 1-6.]

On February 15, 2015, the Park Police informed Mr. Higgs that it had determined that an enforcement proceeding remained pending due to Mr. Higgs' appeal of his criminal conviction.

- 5 -

SA005

[Filing No. 1-15.]  On March 11, 2015, Mr. Higgs sent a letter to the Park Police alleging that the Park Police's handling of the matter "has been characterized by extensive delay and numerous errors," and contending that the Park Police's conclusion regarding enforcement proceedings was in error because Mr. Higgs' "conviction became final in 2004, when his petition for a writ of certiorari was denied on direct appeal."  [Filing No. 1-18.]

On March 16, 2016, Mr. Higgs filed suit in this matter, alleging that the Park Police had wrongfully withheld documents to which Mr. Higgs has a legal right and that the Park Police had no legal basis under FOIA for doing so.  [Filing No. 1.]  Mr. Higgs alleged that the Park Police never responded to his March 11, 2015 letter.  [Filing No. 1 at 8.]

On May 12, 2016, the Park Police responded to Mr. Higgs' March 11, 2015 letter, informing him that the Park Police had located 9 boxes of materials responsive to the 2012 Request, and had referred 46 groups of documents to other federal agencies.  [Filing No. 16-1.]  In addition, the Park Police released approximately 330 pages of responsive documents to Mr. Higgs and informed him that it would "process the remaining responsive records in a series of 'rolling responses.'" [Filing No. 16-1 at 5.]  Accordingly, this Court stayed the case pending the production of additional documents.  [Filing No. 17.]

By August 18, 2016, Mr. Higgs informed the Court that the "agency with the largest volume of records – the FBI – has asserted a blanket exemption to the production of any records." [Filing No. 20 at 1.]

Throughout the remainder of 2016 and into 2017, the Park Police continued to work with other federal agencies in reviewing documents in those agencies' possession that are responsive to the 2012 Request.  [Filing No. 21; Filing No. 25; Filing No. 27.]

SA006

On April 6, 2017, Mr. Higgs filed a Memorandum of Law, indicating that the "only issue that remains in this litigation is whether the referrals made by [the Park Police] regarding documents generated by outside federal agencies constitute an improper withholding of agency records." [Filing No. 32 at 3.]

On June 7, 2017, the Park Police filed a Motion for Summary Judgment, [Filing No. 35], arguing that there was no improper withholding of agency records because "the U.S. Park Police has properly processed the request, and continued to make efforts to coordinate with these six Federal agencies to facilitate the release of documents to Higgs," [Filing No. 38 at 1-2].

On August 30, 2017, the Park Police filed a declaration by David Hardy, an FBI Records Management Division Section Chief, [Filing No. 43-1], and informed the Court that Mr. Hardy's declaration was filed in support of the FBI release of documents that had occurred on July 31, 2017, and provides information regarding "certain redactions" and the withholding of "certain information under specific exemptions under FOIA," [Filing No. 43.]

On December 13, 2017, Mr. Higgs filed a Cross-Motion for Summary Judgment, [Filing No. 51], alleging that "the only remaining issue [Mr. Higgs] contests is the adequacy of the response from the FBI," [Filing No. 52 at 2].

On March 6, 2018, the Court held a telephonic hearing in this matter, during which the parties agreed to stipulate to the following facts:

> (1) all issues regarding the Park Police's response to Mr. Higgs'[FOIA] request have been resolved other than those related to the Park Police's referral of 806 pages of documents to the [FBI];
>
> (2) Mr. Higgs is not seeking to raise in this litigation the legality of the FBI's responses to two requests for records that were made by Mr. Adjoyan; and
>
> (3) neither the Park Police nor the FBI contend that Mr. Higgs was required to exhaust his administrative remedies with regard to the referred documents.

[Filing No. 60 at 1.]  In addition, the parties agreed "that the Park Police has accepted and is standing upon the FBI's response to Mr. Higgs regarding the 806 pages of referred documents."[2] [Filing No. 60 at 1.]

The Court subsequently denied the pending Motions for Summary Judgment as moot, observing that the issues before this Court had evolved significantly since the Motions had been filed.  [Filing No. 63.]

On March 7, 2018, pursuant to an Order from this Court, [Filing No. 60 at 2], the Park Police submitted a complete *Vaughn* Index, [Filing No. 61-1].  In the newly submitted *Vaughn* Index, the Park Police listed forty-five categories of documents and provided a description of each document, information from the document that the Park Police contends is protected, and an exemption code.  [Filing No. 61-1].

Subsequently, Mr. Higgs clarified that he no longer seeks certain documents listed in the *Vaughn* Index.  [Filing No. 65 at 1.]  As a result, of the forty-five categories of documents listed in the *Vaughn* Index, twenty-two are no longer relevant to the Court's inquiry in this matter.  Still at issue are twenty-three categories of documents.

On March 30, 2018, Mr. Higgs filed a Motion for Summary Judgment in this matter, arguing that the Park Police impermissibly withheld twenty-three categories of documents – some in part and some in full.  [Filing No. 65.]  The Park Police moved for Summary Judgment and seeks a finding that the government properly withheld the same documents.  Both Motions are now ripe for the Court's review.

---

[2] As a result, the Court will refer to the "Park Police" throughout this order, rather than to the "FBI."

SA008

## III.
### DISCUSSION

At the outset, the Court observes that as the six year history of this matter set forth herein demonstrates, the Park Police's initial series of responses could be interpreted as impeding Mr. Higgs' pursuit of the requested records rather than complying in good faith with FOIA. That said, such conduct is not at issue here. Instead, the Court's analysis is limited to the Park Police and Mr. Higgs' arguments concerning the twenty-three categories of documents still at issue. Prior to conducting this analysis, however, the Court sets forth the statutory backdrop against which it will consider all such arguments – FOIA.

### A. FOIA and the *Vaughn* Index

In introducing the 1974 Amendments to FOIA, Senator Edward Kennedy observed that:

> We should keep in mind that it does not take marching armies to end republics. . . . If the people of a democratic nation do not know what decisions their government is making, do not know the basis on which those decisions are being made, then their rights as a free people may gradually slip away, silently stolen when decisions which affect their lives are made under the cover of secrecy.

House Committee on Gov't Operations and Senate Committee on the Judiciary, Freedom of Information Act and Amendments of 1974, 157 (Comm. Print 1975). The basic purpose of FOIA is therefore "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 386 (7th Cir. 2015) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).

In *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, Justice Stevens set forth the history of FOIA, beginning with its origin in 1946 as part of the Administrative Procedures Act. 489 U.S. 749, 754 (1989). In 1966, Congress amended FOIA to implement "a general philosophy of full agency disclosure," *id.* (quoting *Dep't of Air Force v. Rose*, 425 U.S.

- 9 -

SA009

352, 360 (1976); S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)) and to require "every agency 'upon any request for records which . . . reasonably describes such records' to make such records 'promptly available to any person,'" *id*. at 754-55 (quoting 5 U.S.C. § 552(a)(3)).   Congress exempted nine categories of documents from FOIA's "broad disclosure requirements." *Id*. at 755.

Although FOIA favors disclosure, its exemptions are meant to have "meaningful reach and application." *Catledge v. Mueller*, 323 F. App'x 464, 466 (7th Cir. 2009) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)).   For example, the Seventh Circuit has observed that "personal identifying information is regularly exempt from disclosure.  And that is as it should be, for the core purpose of the FOIA is to expose what the government is doing, not what its private citizens are up to." *Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 715 F.3d 631, 651 (7th Cir. 2013) (quoting *Lakin Law Firm, P.C. v. F.T.C.*, 352 F.3d 1122, 1124 (7th Cir. 2003)).   In addition, the Seventh Circuit has clarified that "FOIA's purpose is to ensure an informed citizenry, not to serve as a discovery tool." *Hawkins v. Drug Enf't Admin.*, 347 F. App'x 223, 224-25 (7th Cir. 2009) (citing *Bensman v. United States Forest Service*, 408 F.3d 945, 958 (7th Cir. 2005); *Antonelli v. F.B.I.*, 721 F.2d 615, 619 (7th Cir. 1983)).

Importantly, FOIA established a system for judicial review of agency determinations, as follows:

> If an agency improperly withholds any documents, the district court has jurisdiction to order their production. Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, [] FOIA expressly places the burden "on the agency to sustain its action" and directs the district courts to "determine the matter de novo."

*Reporters Comm.*, 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)).   The Seventh Circuit has characterized the challenge faced by District Courts in reviewing the denial of a FOIA request as

- 10 -

SA010

a task that can sometimes be "monumental." *Rubman*, 800 F.3d at 388 (quoting *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1038 (7th Cir. 1998)).

"When asserting that requested information is exempt from disclosure, agencies usually follow the procedures prescribed in *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973)," under which an agency may meet its "initial burden of demonstrating why it should not disclose the information" by providing "a 'detailed analysis' of the request and the reasons for invoking an exemption." *Antonelli*, 721 F.2d at 617. This is usually done via "a so-called *Vaughn* index—a list of each redacted or withheld document cross-referenced with the exemption that the agency asserts is applicable." *Henson v. Dep't of Health & Human Servs.*, __ F.3d __, 2018 WL 2994878, at *1 (7th Cir. June 15, 2018) (citations omitted).

Currently before the Court is Mr. Higgs' challenge to a *Vaughn* Index that the Park Police submitted on March 7, 2018. [Filing No. 61-1]. In his Motion, Mr. Higgs groups the documents still at issue into three categories, each of which the Court will discuss, in turn:

1) "interview reports from 1999 and associated records" (the "1999 Records");

2) National Crime Information Center ("NCIC") reports (collectively, the "NCIC Reports"); and

3) documents that relate to rifling characteristics (the "Ballistics Reports").

**B.     1999 Records**

The Park Police's *Vaughn* Index lists several documents that Mr. Higgs broadly characterizes as interview reports from 1999 and associated records. The 1999 Records include FD-302s, which are "internal FBI forms" in which "evidence is often documented, usually the result of FBI interviews." [Filing No. 61-1 at 1.] Specifically, the 1999 Records consist of four FBI interviews of confidential sources "who provided information with an implied assurance of

- 11 -

SA011

confidentiality," [Filing No. 61-1 at 1-10 (detailing FBI pages 34-38, FBI pages 40-43, FBI pages 44-45, and FBI pages 210-14)], and two fax cover sheets [Filing No. 61-1 at 3-7 (detailing FBI page 39 and FBI page 209)].  In the *Vaughn* Index, the Park Police allege that the 1999 Records contain information that is protected under three FOIA exceptions found at 5 U.S.C. § 552(b)(6), ("Exemption 6"); 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"); and 5 U.S.C. § 552(b)(7)(D) ("Exemption 7(D)").

Exemption 6 provides an exemption to FOIA's disclosure requirements for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(6).   Exemptions 7(C) and 7(D) provide exemptions to FOIA's disclosure requirements for "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7).  In arguing that the Park Police failed to show that the 1999 Reports are exempt from disclosure, Mr. Higgs contends that because his burden "is heavier under Exemption 7 [than Exemption 6], it makes sense to analyze the claim under that Exemption."[3]  [Filing No. 65 at 2.]  Given that Exemptions 7(C) and 7(D) have differing standards, the Court sets forth the parties' arguments related to each exemption separately.

---

[3] The Court agrees with the parties' method of dispensing with an analysis under Exemption 6 and instead analyzing the Park Police's claimed exemptions under Exemption 7 because it is more protective of privacy than Exemption 6.  *See, e.g.*, *Stevens v. United States Dep't of Homeland Sec.*, 2014 WL 5796429, at *6 (N.D. Ill. Nov. 4, 2014) (analyzing claimed exemptions under Exemption 7(C) rather than Exemption 6 because "[a]lthough similar, Exemption 7(C) is more protective of privacy than Exemption 6") (citation omitted); *Marzen v. U.S. Dep't of Health & Human Servs.*, 632 F. Supp. 785, 806 (N.D. Ill. 1986) ("Exemption 7(C) is slightly broader on its face than Exemption 6 in that Exemption 7(C) protects against 'unwarranted invasions' of personal privacy whereas Exemption 6 protects against 'clearly unwarranted invasions'"); *see also Reporters Comm.*, 489 U.S. at 755-56 (presenting a detailed analysis of the differences between Exemption 6 and Exemption 7(C) and stating that "the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files").

*1.   Exemption 7(D):  Confidential Sources*

The Court begins its analysis of the exemptions set forth in the FBI's *Vaughn* Index by turning first to FOIA's most broad law enforcement exemption – Exemption 7(D).  *See generally Irons v. F.B.I.*, 880 F.2d 1446, 1451-52 (1st Cir. 1989) (describing Exemption 7(D) as a "a broad exemption for law enforcement" that was enacted in 1974 and broadened in 1986 "to ease considerably a Federal law enforcement agency's burden in invoking it.") (quoting 199 Cong. Rec. S16504 (daily ed. October 15, 1986)).

Exemption 7(D) provides an exemption to FOIA's disclosure requirements for "records or information compiled for law enforcement purposes, but only to the extent that the production of such" records:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).

Mr. Higgs argues that, unlike Exemption 7(C), discussed *infra*, Exemption 7(D) requires no balancing of interests but rather, the "primary issue is whether the source was indeed confidential." [Filing No. 65 at 2-3.]  Mr. Higgs states that the agency "must prove the expectation of confidentiality based on the circumstances of the specific case," [Filing No. 65 at 2-3], but all the Park Police has done is "state blandly that the source's relationship to the crime permits an inference of confidentiality," [Filing No. 65 at 5 (citations omitted)].

In its response brief, the Park Police alleges that the FBI was "selective in its application of this Exemption" and points to a declaration by David Hardy, an FBI Records Management Division Section Chief, who stated that the confidential sources "provided information on two

- 13 -

subjects who were the targets of a triple murder investigation" and that the disclosure of their "identities and the specific information they provided could have devastating consequences because revealing their cooperation could subject them, as well as their families, to harassment, serious bodily injury, and/or death." [Filing No. 66 at 2 (quoting Filing No. 43-1 at 15-16).]

In reply, Mr. Higgs reiterates his argument that the Park Police's "bland statements" in support of confidentiality do not pass muster under Exemption 7(D). [Filing No. 71 at 3.]

At the outset, the Court notes that there appears to be no dispute that the documents at issue in this case were compiled for law enforcement purposes. Accordingly, for the purposes of the Court's analysis of Exemption 7(D) and Exemption 7(C), the Court will follow suit and assume that the Park Police has proven the threshold law enforcement purpose. *See Barmes v. I.R.S.*, 60 F. Supp. 2d 896, 902 (S.D. Ind. 1998) ("To withhold a document pursuant to Exemption 7(D), an agency must make a threshold showing that it was compiled for law enforcement purposes") (citation omitted); *Stevens v. United States Dep't of Homeland Sec.*, 2014 WL 5796429, at *6 (N.D. Ill. Nov. 4, 2014) (holding that the government must satisfy the standard under Exemption 7(C) if it could establish that the material was compiled for law enforcement purposes).

Twenty-five years ago, the Supreme Court rejected "the proposition that the category of all FBI criminal investigative sources is exempt." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 178 (1993) (stating that "[h]ad Congress meant to create such a rule, it could have done so much more clearly.") Instead, an agency must establish that a particular source spoke with an understanding that the communication would remain confidential. *Id*. at 172. An analysis of whether an informant spoke with implied confidentiality "proceeds from the perspective of an informant, not the law enforcement agency." *Billington v. U.S. Dep't of Justice*, 233 F.3d 581,

SA014

585 (D.C. Cir. 2000).  When a document containing confidential source information is requested, the Supreme Court has held that

> it generally will be possible to establish factors such as the nature of the crime that was investigated and the source's relation to it. Armed with this information, the requester will have a more realistic opportunity to develop an argument that the circumstances do not support an inference of confidentiality. To the extent that the Government's proof may compromise legitimate interests, of course, the Government still can attempt to meet its burden with in camera affidavits.

*Landano*, 508 U.S. at 180.  In addition to "the character of the crime at issue," and "the source's relation to the crime," courts should consider "whether the source received payment, and whether the source has an 'ongoing relationship' with the law enforcement agency and typically communicates with the agency 'only at locations and under conditions which assure the contact will not be noticed.'"  *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (citing *Landano*, 508 U.S. at 179).

In his affidavit, Mr. Hardy analyzes the particular crime at issue, characterizing it as a "violent triple murder" and states that the confidential sources provided information that was "singular in nature" concerning the activities of two of the suspects in the triple murder.  [Filing No. 43-1 at 15-16.]  Mr. Hardy does not specify whether the confidential sources received payment, nor does he specify the manner in which the purported informants communicated with the FBI.  Mr. Hardy's declaration does not allow the Court to analyze confidentiality under each factor set forth in *Roth*, 642 F.3d at 1184.  However, the nature of the crime at issue and the sources' relation to the crime are both factors that weigh in favor of confidentiality in this case.  Given the breadth of Exemption 7(D)'s protections, the Court concludes that the FBI properly withheld documents or portions of documents pursuant to Exemption 7(D).

The fact that Mr. Higgs may know the identity of one or more of the confidential informants does not change the Court's analysis.  Mr. Hardy does not indicate the extent of the informants'

- 15 -

SA015

involvement in the criminal case against Mr. Higgs.  Therefore, there is a possibility that the informants identified by the FBI and alluded to in Mr. Hardy's declaration may have been involved in the criminal case against Mr. Higgs' and perhaps even publicly testified in Mr. Higgs' trial.  In other words, Mr. Higgs may know the identity of one or more of the informants that the FBI now claims are confidential.

However, numerous courts have held that "a government agency is not required to disclose the identity of a confidential source or information conveyed to the agency in confidence in a criminal investigation notwithstanding the possibility that the informant may have testified at a public trial."  *Parker v. Dep't of Justice*, 934 F.2d 375, 379 (D.C. Cir. 1991) (collecting cases); *see also Irons*, 880 F.2d at 1456-57 (the First Circuit holding that "public testimony by 'confidential sources'" does not waive the FBI's right to withhold information furnished by a confidential source or to withhold the identity of a confidential source); *Ferguson v. F.B.I.*, 957 F.2d 1059, 1068 (2d Cir. 1992) (the Second Circuit rejecting "the idea that subsequent disclosures of the identity of a confidential source or of some of the information provided by a confidential source requires full disclosure of information provided by such a source"); *Kimberlin v. Dep't of Treasury*, 774 F.2d 204, 208-09 (7th Cir. 1985) (the Seventh Circuit holding that claims of confidentiality under FOIA were not waived because information in a memorandum was disclosed prior to and during a trial); *Scherer v. Kelley*, 584 F.2d 170, 176 n.7 (7th Cir. 1978) (holding that a source does not relinquish his or her confidentiality by testifying at a criminal trial because "[a] source would be unlikely to testify on any subject if he or she knew that by so doing every transcription made by an investigative agent regarding their conversations could be released to the party about whom the source was informing"); *Cobar v. U.S. Dep't of Justice*, 81 F. Supp. 3d 64, 73 (D.D.C. 2015)

- 16 -

(rejecting a plaintiff's contention that "official confirmation of a confidential source in any way diminishes the protection offered by Exemption 7(D)").

Exemption 7(D) affords the government a broad law enforcement exception and Mr. Hardy's declaration supports the application of this exception to this case; therefore, the Court concludes that the Park Police properly withheld portions of the 1999 records pursuant to Exemption 7(D).[4] Mr. Higgs' Motion for Summary Judgment is **DENIED** and the Park Police's Motion for Summary Judgment is **GRANTED** with regard to the exemptions it claimed under Exemption 7(D).

### 2.  *Exemption 7(C):  Unwarranted Invasions of Personal Privacy*

Having found that certain 1999 records were properly withheld under Exemption 7(D), the Court now turns to the remainder of the 1999 records, which were withheld under Exemption 7(C).

Exemption 7(C) provides an exemption to FOIA's disclosure requirements for "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Mr. Higgs argues that under Exemption 7(C), this Court must "balance the privacy interest of the person referenced in the record against the public interest in disclosure." [Filing No. 65 at 2-3.] He contends that the public interest in "unveiling potential governmental and in particular prosecutorial, misconduct is indubitably a powerful one," while the privacy interests are relatively low because:  (1) the FBI and other government personnel "have reduced privacy interest[s]"; (2)

---

[4] In so ruling, the Court relies upon Mr. Hardy's Declaration as offering a more specific breakdown of pages than that set forth in the *Vaughn* Index.  Specifically, Mr. Hardy states that the FBI asserted Exemption 7(D) as to pages 34-37, 40-45, and 210-213.  The Court holds that all such assertions were proper.  [Filing No. 41-3 at 16.]

- 17 -

SA017

deceased persons have reduced privacy interests; and (3) "even assuming that the individuals in question are alive, those individuals' privacy interests do not necessarily override the public interest in disclosure." [Filing No. 65 at 4-5.]

In its response brief, the Park Police argues that Mr. Higgs' challenges under Exemption 7(C) fail because "he cannot establish a public interest in the information." [Filing No. 66 at 1.] The Park Police contends that the "only evidence" that Mr. Higgs advances in support of his allegations of official misconduct "are his own allegations and legal theories made in his attempt to overturn his criminal conviction." [Filing No. 66 at 2.]

In his reply brief, Mr. Higgs argues that Exemption 7(C) "does not require 'proof' of misconduct in order for there to be a public interest in disclosure of misconduct" as the Park Police contends, but instead requires him to "show [] that there is evidence of potential government impropriety," which he has done in this case. [Filing No. 71 at 2.] In addition, Mr. Higgs contends that the Park Police's argument that he cannot show government impropriety because the District Court of Maryland rejected his request for relief under Rule 60(d) is "meritless," because the applicable standard - "more than bare suspicion" – "is so much lower than the 'clear and convincing evidence' standard applied in the 60(d) ruling."

As both parties agree, deciding whether the exemption found at Exemption 7(C) applies "requires balancing the privacy interests of the affected persons against the public interest in the disclosure of the information." *Baker v. F.B.I.*, 863 F.3d 682, 684 (7th Cir. 2017) (citing *U.S. Dep't of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 495 (1994)). "The Supreme Court has repeatedly held that the only public interest that is relevant to this balancing test is the shining of a light on an agency's performance of its statutory duties." *Lakin*, 352 F.3d at 1125 (citing *Reporters Comm.*, 489 U.S. at 773). The government's personal-privacy arguments, even

- 18 -

when "weighty," may be "overcome by proof that the requested disclosure would be in the public interest to a degree outweighing privacy concerns."  *Baker*, 863 F.3d at 684.

As a threshold matter, the Court examines whether Mr. Higgs has set forth a sufficient public interest to allow his claims concerning Exemption 7(C) to proceed.   The Park Police correctly points out that when showing public interest in the disclosure of the information, it is well established that a "prisoner's interest in attacking his own conviction is not a public interest." *Hawkins*, 347 F. App'x at 225 (citing *Peltier v. F.B.I.*, 563 F.3d 754, 764 (8th Cir. 2009); *Neely v. F.B.I.*, 208 F.3d 461, 464 (4th Cir. 2000); *Antonelli*, 721 F.2d at 619).   *Hawkins*, however, is distinguishable from this case because in *Hawkins*, the court found that the "only interest advanced by" the plaintiff "was his personal desire to uncover some record that might aid a challenge to his convictions," and he offered "no hint of government misconduct that would be brought to light" by the records sought.  *Hawkins*, 347 F. App'x 225.   In this case, Mr. Higgs' argument is more particular than a mere challenge to his conviction.   In his initial Motion for Summary Judgment in this case, Mr. Higgs argued that there was a public interest in discovering prosecutorial misconduct and specifically in:

> shedding light on whether the federal government arranged with state authorities to cease pursuing homicide charges in a separate case involving the key cooperating witness against Plaintiff – in order to prevent attacks on the witness's credibility at Plaintiff's trial – and then improperly concealed those facts from Plaintiff and the public.

[Filing No. 52 at 15.]   Accordingly, Mr. Higgs has alleged a broader public interest than overturning his conviction.

Similarly, the Seventh Circuit's recent decision in *Baker* is distinguishable from Mr. Higgs' case because the plaintiff in *Baker* merely alleged that the public had an interest in knowing that the FBI had "adequately staffed the investigation with able and experienced agents."  *Baker*, 863

- 19 -

SA019

F.3d at 684.  The Seventh Circuit found this theory "far-fetched," and also considered that "the FBI did after all give Baker records of investigatory activity relating to the prosecution . . . , albeit without naming any of the personnel involved in that activity."  *Id.*  In this case, certain documents were redacted, while others were withheld altogether. More seriously, Mr. Higgs alleges a large scheme of Government misconduct which clearly involves a greater interest to the public than merely ensuring knowledge of the number of personnel on an investigation.  Therefore, Mr. Higgs has made a more convincing showing of the public interest than was present in both *Hawkins* and *Baker* and has therefore alleged a sufficiently valid public interest to allow his claim to proceed.

A subsequent step in the Court's analysis is the extent to which Mr. Higgs bears an evidentiary burden – an analysis that requires the Court to look once again to the public interest at issue.  The Park Police contends that Mr. Higgs must produce evidence that would "warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." [Filing No. 66 at 2 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174-75 (2004))].  Indeed, the Supreme Court has held that "where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties," the requester must:

> establish more than a bare suspicion in order to obtain disclosure.  Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred . . . . Only when the FOIA requester has produced evidence sufficient to satisfy this standard will there exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records.

*Favish*, 541 U.S. at 174-75.  "Allegations of government misconduct are 'easy to allege and hard to disprove,' so courts must insist on a meaningful evidentiary showing."  *Id*. at 175 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 585 (1998)).

- 20 -

Whether Mr. Higgs has met this evidentiary burden is difficult to say.  In his prior filings,[5] Mr. Higgs argues that he "alleged in separate proceedings that the federal government arranged with state authorities to cease pursuing homicide charges in a separate case against the key cooperating witness against [Mr. Higgs] – in order to prevent attacks on the witness's credibility – and then concealed those facts from [Mr. Higgs] and the public." [Filing No. 52 at 17.] However, the Court need not conduct a detailed analysis of Mr. Higgs' allegations of government misconduct because his allegations implicate a broader public interest than government negligence or misconduct – his allegations concern the manner in which the Department of Justice (the "DOJ") carries out substantive law enforcement policy.

Courts "have repeatedly recognized a public interest in the manner in which the DOJ carries out substantive law enforcement policy." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014); *see also Reporters Comm.*, 489 U.S. at 766 n.18 ("matters of substantive law enforcement policy [] are properly the subject of public concern").  Such a public interest exists "whether or not the policy in question is lawful." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 14 (D.C. Cir. 2011) (citing *Favish*, but noting that the plaintiffs "are not (or at least not only) seeking to show that the government's . . . policy is legally improper").  Put another way, "[w]hether the government's [] policy is legal or

---

[5] Mr. Higgs repeatedly cites back to his prior filings in this case in his relatively succinct memorandum in support of Summary Judgment and reply brief. [*See, e.g.*, Filing No. 65 at 4 ("Furthermore, as shown in Pl.'s Reply 6-10, the public interest in unveiling potential governmental, and in particular prosecutorial, misconduct is indubitably a powerful one").]  Mr. Higgs' prior filings, in turn, relate back to a Maryland District Court opinion. [*See, e.g.*, Filing No. 52 at 15 n.7 (citing *Higgs*, 193 F. Supp. 3d 495) ("Plaintiff does not recite all of the facts pertaining to his separate fraud on the court action here; they are laid out in detail in the district court's 2016 opinion denying relief").]  This forced the Court to cross reference multiple documents in attempting to discern any details regarding Mr. Higgs' argument. Especially where, as here, counsel runs no risk of exceeding the allotted page limits, such a practice serves no practical purpose and made the Court's task unnecessarily cumbersome.

SA021

illegal, proper or improper, is irrelevant to this case," *id*. at 14, and the Court finds that there is a significant public interest to be weighed.

Turning then to the privacy interests at stake in this case, the Hardy declaration alleges that six separate categories of individuals have privacy interests in this case that justify the Park Police's withholding of information: (1) third parties who provided information during the investigation;[6] (2) third parties merely mentioned in the records; (3) third parties of investigatory interest; (4) local law enforcement personnel, (5) non-FBI federal personnel; and (6) FBI special agents and support personnel.  [Filing No. 43-1 at 7-13.]

As a general matter, courts have "consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (collecting cases).  However, there is some variance in the degree of privacy interests depending on the type of individual.  For example, the D.C. Circuit Court of Appeals long ago adopted "a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is "necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *Schrecker*, 349 F.3d at 661 (quoting *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991)).  With regard to individuals under investigation, "[t]here can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of [a law enforcement] investigation." *People for the Ethical Treatment of Animals v. Nat'l*

---

[6] Several of the pages at issue in this category overlap with the information the Court has already determined was properly withheld under Exemption 7(D). Accordingly, the Court's analysis under Exemption 7(C) related to individuals who provided information during the FBI's investigation is limited to pages 38, 39, and 215. [Filing No. 41-3 at 12.]

- 22 -

*Institutes of Health, Dep't of Health & Human Servs.*, 745 F.3d 535, 542 (D.C. Cir. 2014) (citations omitted); *see also Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 978 F. Supp. 2d 1, 9 (D.D.C. 2013) ("the average FOIA request seeking law enforcement records concerning a third party implicates a substantial privacy interest: that of the third party who may wish to keep secret the fact that they were targeted in a criminal investigation"). As for government officials, courts have held that government officials "may have a somewhat diminished privacy interest," *Quinon v. F.B.I.*, 86 F.3d 1222, 1230 (D.C. Cir. 1996), but that "government officials do not surrender all rights to personal privacy when they accept a public appointment," *Schrecker*, 349 F.3d at 661; *see also Halpern v. F.B.I.*, 181 F.3d 279, 296-97 (2d Cir. 1999) (stating that "government employees and officials, particularly law enforcement personnel, have privacy interests to the extent that revelation of their identities could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs") (citations and quotations omitted).

The privacy interests at issue in this case are varying; however, they have one common component –the individuals are named in files that relate to a triple murder that occurred over twenty-two years ago "[o]n the evening of January 26, 1996." *Higgs*, 193 F. Supp. 3d at 496. "The passage of time, without more, does not materially diminish" the privacy interests recognized by Exemption 7(C). *Schrecker*, 349 F.3d at 666; *see also Halpern*, 181 F.3d at 297 (holding that privacy interests "cannot be waived through . . . the passage of time"). However, "the privacy interest in nondisclosure of identifying information may be diminished where the individual is deceased" and "death . . . is a relevant factor to be taken into account in the balancing decision whether to release information." *Schrecker*, 349 F.3d at 661 (citation and quotation omitted). The D.C. Circuit Court of Appeals has remanded cases where the record did not contain "confirmation

- 23 -

that the Government took certain basic steps to ascertain whether an individual was dead or alive," holding that without such confirmation the court was "unable to say whether the Government reasonably balanced the interests in personal privacy against the public interest in release of the information at issue." *Schrecker*, 349 F.3d at 660 (citation omitted).  In *Schrecker*, for example, the government "affirmed that it had investigated whether the relevant individuals were deceased, relying on several clues and sources," including a *Who Was Who* book, the "100-year rule," which "presumes that an individual is dead if his or her birth date appears in the responsive record and is more than 100 years old," and internal FBI records.  *Id*. at 659-60.

Where the government has failed to establish that relevant individuals are living, courts have held that "it is within the discretion of the district court to require an agency to demonstrate that the individuals upon whose behalf it claims the privacy exemption are, in fact, alive." *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1059 (3d Cir. 1995).  In exercising its discretion, the district court should consider factors such as:

> the number of named individuals that must be investigated, and the age of the requested records.  If the number of individuals is not excessive, the agency could be required to determine whether the individuals are alive before asserting a privacy interest on their behalf. However, after a sufficient passage of time . . . the probability of the named individuals remaining alive diminishes [and] . . . it would be unreasonable for the district court not to assume that many of the individuals named in the requested records have died, thereby negating a privacy interest unless proving otherwise.

*Id*. at 1059.

In this case, despite the passage of over two decades since the crime at issue was committed, Mr. Hardy's declaration contains no analysis of whether the individuals whose privacy interests the Park Police now asserts are dead or alive.  Although twenty-two years is a considerable amount of time, it falls short of the sixty year passage of time at issue in *Davin*.  As such, the Court will not presume that the individuals at issue in this case are deceased.  However,

it does not appear that the number of individuals is sufficiently high such that it would be unduly onerous to require the Park Police to demonstrate that those individuals are alive. Without such a demonstration, the Court cannot conduct the necessary balancing test required under Exemption 7(C). The Court therefore concludes that the Park Police has not met its burden under Exemption 7(C) through either the Hardy declaration or the *Vaughn* Index. Given the prolonged history of this case, the Court not give the Park Police a further opportunity to support its claim.

Therefore, with the exception of documents that the Court determines are properly withheld pursuant to another provision of FOIA, Park Police is **ORDERED** to produce unredacted versions of all documents it previously withheld under Exemption 7(C). Mr. Higgs' Motion for Summary Judgment is **GRANTED** and the Park Police's Motion for Summary Judgment is therefore **DENIED** with regard to the exemptions it claimed under Exemption 7(C) that are not properly excluded under Exemption 7(D).

### C.    NCIC Reports

The Park Police's *Vaughn* Index lists several documents that relate to NCIC Reports. The NCIC Reports primarily consist of printouts pertaining to and containing biographical information concerning third-party individuals, including deceased victims, although one group of documents appears to relate to Mr. Higgs as well. [Filing No. 61-1 at 5-10.] In the *Vaughn* Index, the Park Police alleges that the NCIC Reports contain information that is protected under the FOIA exceptions found at Exemption 6, Exemption 7(C), and 5 U.S.C. § 552(b)(7)(E), ("Exemption 7(E)").

As previously discussed in Part 3.B, Exemption 6 and Exemption 7(C) both relate to documents withheld under FOIA to protect an individual's privacy. Exemption 7(E) provides an exemption to FOIA's disclosure requirements for "records or information compiled for law

- 25 -

SA025

enforcement purposes, but only to the extent that the production of such" records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Mr. Higgs argues that the Park Police has not presented any authority to support its position that the NCIC Reports should have been withheld in their entirety. [Filing No. 65 at 6.] Mr. Higgs makes this argument with respect to the documents that have been withheld to protect privacy under Exemptions 6 and 7(C) and with respect to the documents that have been withheld to protect information about the NCIC. [Filing No. 65 at 6.] He argues that NCIC Reports are "routinely disclosed in pretrial discovery or at sentencing in federal criminal cases" and that the agency has made "no showing that its blanket withholding of NCIC documents is necessary." [Filing No. 65 at 7.]

In its response brief, the Park Police alleges that the declaration of David Hardy, an FBI Records Management Division Section Chief, provides a "detailed justification" of the basis for its application of Exemption 7(E). [Filing No. 66 at 4-5 (quoting Filing No. 43-1 at 18).] Specifically, Mr. Hardy states that providing the NCIC Reports "would provide criminals with an understanding of the type of information gathered, analyzed, and utilized by the FBI in criminal investigations, particularly in murder investigations," and "would also reveal the FBI's abilities and limitations," thus enabling criminals "to develop countermeasures to avoid detection." [Filing No. 66 at 5 (quoting Filing No. 43-1 at 18).] Further, even if Mr. Higgs were unable to overcome Exemption 7(E), the Park Police argues that Mr. Higgs cannot establish a public interest in the information under Exemptions 6 and 7(C). [Filing No. 66 at 5-6.]

- 26 -

In his reply brief, Mr. Higgs calls the Park Police's justification a "sweeping argument" that does not specifically address the concerns at issue in this case.  [Filing No. 71 at 3.]  In addition, Mr. Higgs distinguishes a case identified by the Park Police – *Vazquez v. U.S. Department of Justice* – by pointing out that Vazquez involved specific disclosure concerns involving particular persons who might learn that they were not under investigation, whereas the Park Police has made no such contention in this matter.  [Filing No. 71 at 4.]

Exemption 7(E) "applies only to techniques and procedures 'generally unknown to the public' and only if '(1) the information was compiled for law enforcement purposes, and (2) [its] release could reasonably be expected to risk circumvention of the law.'"  *Evans v. U.S. Dep't of Interior*, 135 F. Supp. 3d 799, 831 (N.D. Ind. 2015) (quoting *Blanton v. U.S. Dep't of Justice,* 63 F.Supp.2d 35, 49 (D.D.C. 1999)).  The scope of Exemption 7(E) was set forth by the D.C. Circuit Court of Appeals in *Mayer Brown LLP v. I.R.S.*, in which the court stated that Exemption 7(E):

> looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.

562 F.3d 1190, 1193 (D.C. Cir. 2009).  Although the court in *Mayer Brown* acknowledged "that the language of FOIA's exemptions 'must be narrowly construed,'" *id*. at 1194 (quoting *Rose,* 425 U.S. at 361), it nonetheless observed that Exemption 7(E) contains broad language.  Accordingly, "[r]ather than requiring a highly specific burden of showing how the law will be circumvented," the court held that Exemption 7(E) only requires the government to "demonstrate[] logically how the release of [the requested] information might create a risk of circumvention of the law." *Id*. at 1194 (quoting *PHE, Inc. v. DOJ,* 983 F.2d 248, 251 (D.C. Cir. 1993)).  In short, as the D.C. Circuit found, Exemption 7(E) "sets a relatively low bar for the agency to justify withholding." *Blackwell*

- 27 -

SA027

*v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011). The government fails to meet its burden under Exemption 7(E) where it declines to set forth "any statement from which the Court could conclude that disclosure of the information might reveal a law enforcement technique or procedure." *Fowlkes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 67 F. Supp. 3d 290, 306 (D.D.C. 2014)

Given the low bar set by Exemption 7(E), it might appear that Mr. Hardy's declaration provides sufficiently detailed information of how the release of the NCIC reports might create a risk of circumvention of the law by alleging that releasing the documents would provide criminals with information concerning the FBI's abilities and limitations. Case law dealing with NCIC reports offers little guidance on this front and neither party presented authority that directly supports its arguments concerning NCIC Reports. Courts have held that the mere fact that an agency uses an NCIC database is insufficient to establish the requisite risk under Exemption 7(E). *Vazquez v. U.S. Dep't of Justice*, 764 F. Supp. 2d 117, 122 (D.D.C. 2011) ("It is unclear from the current record what law enforcement technique, procedure or guideline is at risk of being revealed merely by identification of an agency's utilizing the NCIC database"). However, "redacted codes, case numbers, and other computer information pertaining to the . . . NCIC" have been found to reasonably be expected to risk circumvention of the law under Exemption 7(E). *McRae v. U.S. Dep't of Justice*, 869 F. Supp. 2d 151, 169 (D.D.C. 2012).

Here again, the Court is cognizant that it is considering documents that are approximately twenty years old. The D.C. Circuit Court of Appeals has held that a requestor's "speculation that the mere passage of time justifies disclosure cannot overcome the sworn declaration from a law enforcement official to the contrary." *Judicial Watch, Inc. v. U.S. Dep't of State*, 2017 WL 3913212, at *6 (D.D.C. Sept. 6, 2017) (FBI explaining "that it continues to use these same 'tried-

- 28 -

SA028

and-true techniques and procedures even 15 years later'" and that disclosure of such techniques "would allow surveillance targets, including those in residential neighborhoods, to develop and employ countermeasures"). In this case, however, Mr. Hardy's declaration fails to acknowledge the passage of time since the NCIC Reports were made and fails to address the possibility that such techniques are sufficiently out of date so as to negate the possible risk of criminals gaining access thereto. Therefore, Mr. Higgs need not overcome the sworn declaration from a law enforcement official concerning the passage of time because the Park Police did not produce such a declaration.

On the issue of whether the passage of time impacts the application of Exemption 7(E), courts have analyzed the issue differently. In *Mayer Brown*, for instance, the D.C. Circuit concluded that possible "circumvention of the law" applies not only to future conduct but also to past conduct. *See Mayer Brown*, 562 F.3d at 1195. Mayer Brown involved a law firm that requested documents related to tax settlements conducted by the I.R.S. *Id.* at 1191. The court reasoned that "[t]ax evasion (like many crimes, to varying degrees) involves a cost-benefit analysis on the part of the law-breaker" and that "potential evaders, upon learning the range of settlement percentages, may decide that the range is low enough to make evasion an appealing gamble." *Id.* at 1193. The court rejected the FOIA requestor's suggestion that Exemption 7(E) was concerned only with future crimes, reasoning that "[i]nformation that encourages a past violator to remain in hiding affects that violator's decisions *in the future*" because the "decision to evade the legal consequences of the initial violation is not just made once; it is a decision that is made anew when there is additional information," thus, if "the disclosed information reveals severe costs in coming forward, it may influence future conduct." *Id.* at 1195 (emphasis in original). Applied to the case now before this Court, *Mayer Brown* would seem to support a finding that the passage of time does

- 29 -

not alter the Court's analysis of Exemption 7(E) because releasing documents could dissuade criminals who have already committed crimes from coming forward.

By contrast, in *Davin v. U.S. Dep't of Justice*, the Third Circuit held the government to a more exacting standard.  60 F.3d 1043 (3d Cir. 1995), holding modified on unrelated grounds by *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178 (3d Cir. 2007).  *Davin* involved a graduate history student who, in 1986, requested FBI records pertaining to a labor group in the 1930s and 40s.  *Id*. at 1046.  The FBI withheld documents under FOIA Exemption 7(E) and the Third Circuit held that "[i]f the government wishes to argue that the information concerning the use of informants in the 1930's is of such a specialized nature that it is still unknown to the public, the government must introduce evidence of that fact."  *Id*. at 1164.  The court held that the government had failed to offer any proof on this issue and instead provided "speculation" of "political groups' increased ability to detect informants within their ranks."  *Id*. at 1164.  Accordingly, the case was remanded in order for the government to "provide the district court with additional facts to support exempted documents and portions of documents under Exemption 7(E)."  *Id*. at 1164.

This Court concludes that the approach taken by the Third Circuit most logically interprets FOIA.  First, there is nothing in *Mayer Brown* to indicate that it applies outside of the tax evasion context.  To the contrary, the D.C. Circuit's reasoning on this point paints a picture of habitual and calculating tax evaders and states that the "fact that a tax evader has circumvented the law in the past does not mean she cannot also circumvent the law in the future by avoiding the legally proscribed consequences of her actions."  *Mayer Brown*, 562 F.3d at 1195.  This may make good sense in the context of tax evasion, but it makes significantly less sense in the context of murder. Applied to the case now before this Court, M*ayer Brown* would compel a finding that the passage

- 30 -

of time does not alter the Court's analysis of the NCIC Reports under Exemption 7(E) because releasing such documents could dissuade criminals who have already committed murders from coming forward.  This conclusion is sufficiently far-flung that it ceases to be "a reasonably expected risk" under Exemption 7(E).

By contrast, *Davin* recognizes that the passage of time rendered certain law enforcement techniques well-known or out of date.  Indeed, given the significant technological strides that have occurred in law enforcement techniques over the last two decades, the Court is skeptical that an FBI file from the late 1990s contains information that would shape the conduct of murderers operating in 2018.  Accordingly, the Court finds that the Park Police has not met its burden with regard to the NCIC Reports.  Mr. Higgs' Motion for Summary Judgment is therefore **GRANTED** and the Park Police's Motion for Summary Judgment is **DENIED** with regard to the exemptions it claimed under Exemption 7(E) related to the NCIC Reports.  The Park Police is **ORDERED** to produce unredacted versions of all portions of NCIC Reports it previously withheld under Exemption 7(E) on or before **Friday, July 13, 2018**.

### D.      Ballistics Reports

The Park Police's *Vaughn* Index lists one category of documents concerning rifling characteristics.  The Park Police alleges that such Ballistics Reports may be withheld in full under the FOIA Exemption found at Exemption 7(E).  [Filing No. 61-1 at 1.]  As previously discussed in Part 3.C, Exemption 7(E) relates to records that would disclose law enforcement techniques and procedures.  5 U.S.C. § 552(b)(7)(E).

Mr. Higgs argues that the Park Police has failed to show that there are non-public aspects of ballistics testing that may be withheld and has made an inadequate showing that these documents are not segregable.  [Filing No. 65 at 7.]

- 31 -

SA031

In its response brief, the Park Police alleges that disclosure of rifling characteristics "even after all of these years, risks circumvention of law now in relation to the FBI's current activities and methodologies." [Filing No. 66 at 6.]

In his reply brief, Mr. Higgs argues that the Park Police's argument on this point is comprised of "empty words that are not subject to meaningful analysis by either Plaintiff or the Court" and "is therefore insufficient to meet the agency's burden." [Filing No. 71 at 4.]

As previously stated, Exemption 7(E) "applies only to techniques and procedures 'generally unknown to the public.'" *Evans*, 135 F. Supp. 3d at 831 (quoting *Blanton,* 63 F.Supp.2d at 49). In 1977, the United States District Court for the Northern District of Illinois looked to the conference committee's statement delineating the scope of Exemption 7(E), as follows: "The conferees wish to make clear that the scope of this exception against disclosure of 'investigative techniques and procedures' should not be interpreted to include routine techniques and procedures already well known to the public, such as ballistics tests, fingerprinting, and other scientific tests or commonly known techniques." *Ferguson v. Kelley*, 448 F. Supp. 919, 922 (N.D. Ill. 1977) (quoting Conference Report No. 93-1200, 93d Cong. 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin. News, pp. 6285, 6291). Numerous courts have cited the same provision of the 1974 Conference Committee Report noting that ballistics tests are outside of Exemption 7(E)'s coverage. *See, e.g.*, *Davin*, 60 F.3d at 1064 (citing H.R. Conf.Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6291); *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1064 n.36 (D.C. Cir. 1981), abrogated on other grounds by *Milner v. Dep't of Navy*, 562 U.S. 562 (2011) (quoting the 1974 conference report); *Ferri v. Bell*, 645 F.2d 1213, 1224 (3d Cir. 1981) (same); *Sladek v. Bensinger*, 605 F.2d 899, 903 n.5 (5th Cir. 1979) (same); *Cox v. U.S. Dep't of Justice*, 576 F.2d 1302, 1310 (8th Cir. 1978) (same); *Dunaway v.*

SA032

*Webster*, 519 F. Supp. 1059, 1082-83 (N.D. Cal. 1981) (same); *Caplan v. Bureau of Alcohol, Tobacco & Firearms*, 445 F. Supp. 699, 706 n.10 (S.D.N.Y.), aff'd, 587 F.2d 544 (2d Cir. 1978) (same); *Frankenberry v. F.B.I.*, 2010 WL 8510349, at \*20 (M.D. Pa. Sept. 10, 2010), report and recommendation adopted in part, rejected in part by 2012 WL 983556 (M.D. Pa. Mar. 22, 2012) (same).

The Court recognizes that the language of Exemption 7(E) was amended in 1986. However, the "techniques and procedures" alluded to in the 1974 Conference Committee Report remain a part of FOIA to this day. *See* 5 U.S.C. § 552(b)(7)(E). Moreover, there is no indication that the 1986 Amendments to FOIA or any subsequent amendments justify withholding ballistics tests. *See Henderson v. Office of the Dir. of Nat'l Intelligence*, 151 F. Supp. 3d 170, 176 (D.D.C. 2016) (explaining that the purpose of the 1986 amendment to Exemption 7(E) was to expand the provision's protection to non-investigative documents); *Carp v. I.R.S.*, 2002 WL 373448, at \*5 (D.N.J. Jan. 28, 2002) (recent case citing the 1974 Amendments).

Accordingly, the Court holds that the Park Police has not met its burden with regard to the ballistics tests at issue in this case. Mr. Higgs' Motion for Summary Judgment is therefore **GRANTED** and the Park Police's Motion for Summary Judgment is **DENIED** with regard to the exemptions it claimed under Exemption 7(E) related to Ballistics Reports. The Park Police is **ORDERED** to produce unredacted versions of all portions of pages 6 through 23 of the file at issue that it previously withheld under Exemption 7(E) on or before **Friday, July 13, 2018**.

**IV.**
**CONCLUSION**

For the reasons explained herein, Mr. Higgs' Motion for Summary Judgment [64] is **GRANTED** in part and **DENIED** in part, and the Park Police's Motion for Summary Judgment [71] is **GRANTED** in part and **DENIED** in part as follows:

- 33 -

SA033

- Mr. Higgs' Motion is **DENIED** and Park Police's Motion is **GRANTED** with regard to the exemptions claimed under FOIA's confidential source exemption at 5 U.S.C. § 552(b)(7)(D);

- Mr. Higgs' Motion is **GRANTED** and the Park Police's Motion is **DENIED** with regard to the exemptions claimed under FOIA's unwarranted invasion of personal privacy exemption at 5 U.S.C. § 552(b)(7)(C), and the Park Police is **ORDERED** to produce unredacted versions of all documents it previously withheld under Exemption 7(C) on or before **Friday, July 13, 2018**;

- Mr. Higgs' Motion is **GRANTED** and the Park Police's Motion is **DENIED** with regard to the exemptions claimed under FOIA's law enforcement techniques and procedures exemption at 5 U.S.C. § 552(b)(7)(E) related to the NCIC Reports, and the Park Police is **ORDERED** to produce unredacted versions of all portions of NCIC Reports it previously withheld under Exemption 7(E) on or before **Friday, July 13, 2018;**

- Mr. Higgs' Motion is **GRANTED** and the Park Police's Motion is **DENIED** with regard to the exemptions claimed under FOIA's law enforcement techniques and procedures exemption at 5 U.S.C. § 552(b)(7)(E) related to the Ballistics Reports, and the Park Police is **ORDERED** to produce unredacted versions of all portions of the Ballistics Reports it previously withheld under Exemption 7(E) on or before **Friday, July 13, 2018.**

Final Judgment shall issue accordingly.

**Distribution via ECF only to all counsel of record**

SA034