**Nos. 18-2826, 18-2937**

# IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

DUSTIN JOHN HIGGS,

Plaintiff-Appellee/Cross-Appellant,

v.

UNITED STATES PARK POLICE,

Defendant-Appellant/Cross-Appellee.

On Appeal from the United States District Court
for the Southern District of Indiana, No. 2:16-cv-96 (Magnus-Stinson, Jane, Chief J.)

## APPENDIX FOR APPELLANT/CROSS-APPELLEE

JOSEPH H. HUNT
  *Assistant Attorney General*
JOSH MINKLER
  *United States Attorney*
MATTHEW M. COLLETTE
CAROLINE D. LOPEZ
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7535*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4825*

# TABLE OF CONTENTS

**Page**

Entry Clarifying Order, ECF No. 88 .............................................. GA001

Vaughn Index, ECF No. 61-1 ........................................................ GA002

Second Decl. of David M. Hardy, ECF No. 43-1 ............................. GA013

Decl. of David M. Hardy, ECF No. 36-12 ....................................... GA034

Federal Defender's Office Letter .................................................... GA040
   (May 17, 2012), ECF No. 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DUSTIN JOHN HIGGS,                      )
        *Plaintiff*,                    )
                                        )
    *vs.*                               )      2:16-cv-96-JMS-MJD
                                        )
UNITED STATES PARK POLICE,              )
        *Defendant.*                    )

### ENTRY CLARIFYING ORDER

The Court's citations to Filing No. 71 on pages 2 and 33 of its June 25, 2018 Order, [Filing No. 73], should instead refer to Filing No. 66.  In its June 25, 2018 Order, the Court noted that the Park Police did not file a motion for summary judgment, but "drafted its briefing such that the Court assumes the Park Police believes that its prior Motion for Summary Judgment is still operative."  [Filing No. 73 at 1-2 n.1 (citing Filing No. 66 and Filing No. 66 at 1).]  Noting that the error was harmless, the Court stated that it would "consider the Park Police's Response to Mr. Higgs' Motion for Summary Judgment as a Cross-Motion for Summary Judgment."  [Filing No. 73 at 1-2 n.1.]  However, in the main body of the text, the Court erroneously cited to Filing No. 71 rather than Filing No. 66.  The substance of the Court's Order remains unchanged.

**Distribution via ECF only to all counsel of record**

- 1 -

GA001

GA002

*Higgs v. United States Park Police*
Civil Action No. 16-cv-0096
U. S. District Court for the Southern District of Illinois
Terre Haute Division

*Vaughn* **Index**

| Bates Pages/ Page Count | Date of the Document | Document Description | RIF, RIP or WIF[1] | Information Protected | Exemption Coded Categories Cited |
|---|---|---|---|---|---|
| **HIGGS-FBI-1-3** (3 pp) | 11/21/1996 | An FD-302[2] documenting an FBI interview of a third party individual. | RIP | Names and identifying information about a third party of investigative interest interviewed by the FBI as part of its investigation of the triple murder for which Plaintiff Higgs was convicted.<br><br>Names of FBI and other Government personnel.<br><br>Names and identifying information about third parties merely mentioned in the record. | b6/b7C-1, 2, 3, 4 |
| **HIGGS-FBI-4-5**[3] (2 pp) | 2/28/1996 | FBI Laboratory report documenting the analysis of bullet specimens. | RIP | Names of other Government personnel. | b6/b7C-3 |
| **HIGGS-FBI-6-23** (18 pp) | Undated | FBI Laboratory report documenting the FBI's review and analysis of rifling characteristics of particular firearms, which is used by the FBI to investigate crimes involving such firearms. | WIF | The entire report was withheld in full. Once all exempt information revealing the specific details of the FBI's collection and analysis of this information is removed, no reasonably segregable, non-exempt information exists to be released. | b7E-1 |

---

[1] "RIF" (Released in Full) refers to pages or documents that the FBI released to plaintiff without any redactions. "RIP" (Released in Part) refers to documents that the FBI released to plaintiff in part, with exempt information redacted. "WIF" (Withheld in Full) refers to documents the FBI withheld in full because all information was exempt under one or more FOIA exemptions, or because non-exempt information was inextricably intertwined with exempt information such that no reasonably segregable non-exempt information existed that could be released to plaintiff.

[2] FD-302s are internal FBI forms in which evidence is often documented, usually the results of FBI interviews. Such evidence and/or interview information may later be used as testimony or evidence in court proceedings/trials.

[3] No information was redacted on HIGGS-FBI-5.

1

GA003

| Bates Pages/ Page Count | Date of the Document | Document Description | RIF, RIP or WIF | Information Protected | Exemption Coded Categories Cited |
|---|---|---|---|---|---|
| HIGGS-FBI-24-25 (2 pp) | 6/22/1996 | FBI laboratory report documenting items recovered from a vehicle. | RIP | Names/identifying information of third parties who were merely mentioned in the record. | b6/b7C-4 |
| HIGGS-FBI-26 (1 p) | 11/18/1996 | FBI Electronic Communication ("EC")[4] from the FBI Baltimore Field Office to the FBI laboratory requesting a status update on laboratory examinations. | RIP | Names/identifying information of FBI personnel. | b6/b7C-2 |
| HIGGS-FBI-27-31 (5 pp) | 2/9/1996 | Fingerprint records for a third party individual. | WIF | This document consists entirely of information related to a third party of investigative interest to the FBI and was withheld in full to protect that person's privacy. | b6/b7C-1 |
| HIGGS-FBI-32-33 (2 pp) | 10/15/1996 | An FD-302 documenting an interview of a third party. | RIP | Names/identifying information of FBI personnel.<br><br>Names/identifying information of non-FBI government personnel.<br><br>Names/identifying information of third parties who were merely mentioned in the record.<br><br>Names/identifying information of individual(s) providing information to the FBI. | b6/b7C-2, 3, 4, 5 |

---

[4] ECs replaced the traditional FBI correspondence (i.e., Memoranda and Letters) as the primary vehicle of correspondence within the FBI. The purpose of an EC is to communicate within the FBI in a consistent format that can be uploaded by the originating Division or office, transmitted, and downloaded by recipient Divisions or offices within the FBI's internal computer network.

GA004

| Bates Pages/ Page Count | Date of the Document | Document Description | RIF, RIP or WIF | Information Protected | Exemption Coded Categories Cited |
|---|---|---|---|---|---|
| **HIGGS-FBI-34-38 (5 pp)** | 3/18/1999 | An FD-302 documenting an interview of a confidential source who provided information with an implied assurance of confidentiality. | RIP | Names/identifying information of third parties of investigative interest to the FBI.<br><br>Names/identifying information of FBI personnel.<br><br>Names/identifying information of third parties who were merely mentioned in the record.<br><br>Name/identifying information of third party (confidential source) who provided information to the FBI.<br><br>Names/identifying information of a confidential source, and information provided to the FBI by the source. | b6/b7C-1, 2, 4, 5[5] b7D-1 |
| **HIGGS-FBI-39 (1 p)** | 4/12/1999 | FBI Facsimile Cover Sheet documenting transmittal of an FD-302 from the FBI to the United States Park Police ("USPP"). | RIP | Names/identifying information of FBI personnel.<br><br>Names/identifying information of non-FBI government personnel.<br><br>Names/identifying information of individual(s) providing information to the FBI. | b6/b7C-2,3,5 |

---

[5] Bates pages HIGGS-FBI-213-214 were re-released to Plaintiff with the names of Assistant United States Attorneys ("AUSAs") Deborah Johnson and Sandra Wilkonson intact. The the FBI found no harm in releasing their names in this context

GA005

| Bates Pages/ Page Count | Date of the Document | Document Description | RIF, RIP or WIF | Information Protected | Exemption Coded Categories Cited |
|---|---|---|---|---|---|
| **HIGGS-FBI-40, 41-43 (4 pp)** | 3/29/1999 | An FD-302 documenting an interview of a confidential source who provided information with an implied assurance of confidentiality. | RIP | Names/identifying information of FBI personnel.<br><br>Names/identifying information of third parties who were merely mentioned in the record.<br><br>Names/identifying information of a third party (confidential source) who provided information to the FBI.<br><br>The majority of information in this document was redacted because it would identify a confidential source and the information provided by the source. | b6/b7C-2,4,5 b7D-1 |
| **HIGGS-FBI-44-45 (2 pp)** | Undated | Document provided by a confidential source who provided information with an implied assurance of confidentiality. | WIF | This document was withheld in full because it was provided by a confidential source.<br><br>Names/identifying information of third parties who were merely mentioned in the record were also protected. | b6/b7C-4 b7D-1 |
| **HIGGS-FBI-46-48 (3 pp)** | 3/25/1999 | Duplicate of Bates pages HIGGS-FBI-41-43. | WIF | Duplicate pages | N/A |
| **HIGGS-FBI-49 (1 p)** | 2/9/1996 | Duplicate of Bates page HIGGS-FBI-28 | WIF | Duplicate page | N/A |
| **HIGGS-FBI-50 (1 p)** | Undated | Fingerprint records for a third party individual. | WIF | This document consists entirely of information related to a third party of investigative interest to the FBI and was withheld in full to protect that person's privacy. | b6/b7C-1 |
| **HIGGS-FBI-39 (1 p)** | 11/23/1997[6] | FBI Facsimile Cover Sheet documenting transmittal of National Crime Information Center ("NCIC") information form the FBI to USPP | RIP | Names/identifying information of FBI personnel.<br><br>Names/identifying information of non-FBI government personnel. | b6/b7C-2, 3 |

[6] This and many other dates in this index for NCIC printouts are approximate. The NCIC printouts are in many cases illegible or fragmented, making it difficult to determine the original date the NCIC searches were conducted/printed.

Case 2:16-cv-00096-JMS-MJD   Document 61-1   Filed 03/07/18   Page 5 of 11 PageID #: 1526

GA006

| Bates Pages/ Page Count | Date of the Document | Document Description | RIF, RIP or WIF | Information Protected | Exemption Coded Categories Cited |
|---|---|---|---|---|---|
| **HIGGS-FBI-52-77 and one page originally deemed a copy (HIGGS-FBI-739)[7] (27 pp)** | 2/16/1996 – 1/11/1997 | NCIC printouts pertaining to third party individuals. | WIF | This document consists entirely of information related to third parties and was withheld in full to protect their privacy.<br><br>Information in the document was protected because it would reveal non-public information about this law enforcement database.<br><br>Names/identifying information of FBI personnel were also protected. | b6/b7C-2,4 b7E-2 |
| **HIGGS-FBI-78 (1 p)** | Undated | NCIC printout consisting of biographical information on a third party. | WIF | This document consists entirely of information related to a third party and was withheld in full to protect that person's privacy. | b6/b7C-4 |
| **HIGGS-FBI-79 (1 p)** | Undated | NCIC printout consisting of biographical information on a third party deceased victim. | RIP | Names/identifying information of third parties who were merely mentioned in the record. | b6/b7C-4 |
| **HIGGS-FBI-80 (1 p)** | 2/6/1996 | FBI Facsimile Cover Sheet from the FBI's Program Support Section documenting the transmittal of NCIC information. | RIP | Names/identifying information of FBI and other Government personnel. | b6/b7C-2, 3 |
| **HIGGS-FBI-81-99 (19 pp)** | 1/30/1996 – 2/6/1996 | NCIC printouts pertaining to third party individuals and subject. | RIP | Names/identifying information of FBI personnel.<br><br>Names/identifying information of third parties who were merely mentioned in the records.<br><br>Law enforcement database information was redacted in order to protect the FBI's interest/law enforcement knowledge about particular individuals. | b6/b7C-2, 4 b7E-2 |
| **HIGGS-FBI-100 (1 p)** | 2/6/1996 | FBI Facsimile Cover Sheet from the FBI's Program Support Section documenting the transmittal of NCIC information. | RIP | Names/identifying information of FBI and other Government personnel. | b6/b7C-2, 3 |

---

[7] One page within this document was originally eliminated as it was presumed to be a direct copy of another page in this document; however, upon further review, the page actually contains slightly different information and should have been considered for processing. This page, like the rest of the pages in this document, is exempt from disclosure pursuant to b6/b7C-2 and 4, and b7E-2. It has been assigned Bates page number HIGGS-FBI-739 for further reference.

GA007

| Bates Pages/ Page Count | Date of the Document | Document Description | RIF, RIP or WIF | Information Protected | Exemption Coded Categories Cited |
|---|---|---|---|---|---|
| **HIGGS-FBI-101** (1 p) | 2/6/1996 | NCIC printouts pertaining to a third party. | WIF | This document consists entirely of information related to a third party and was withheld in full to protect that person's privacy.

Names/identifying information of FBI personnel were also protected.

Law enforcement database information was also protected. | b6/b7C-2, 4 b7E-2 |
| **HIGGS-FBI-102** (1 p) | 2/12/1996 | FBI Facsimile Cover Sheet from the FBI's Program Support Section documenting the transmittal of NCIC information. | RIP | Names/identifying information of FBI and other Government personnel. | b6/b7C-2, 3 |
| **HIGGS-FBI-103-104 (2 pp)** | Illegible | NCIC printouts pertaining to a third party. | WIF | This document consists entirely of information related to a third party and was withheld in full to protect that person's privacy.

Names/identifying information of FBI personnel were also protected.

Law enforcement database information was also protected. | b6/b7C-2, 4 b7E-2 |
| **HIGGS-FBI-105** (1 p) | 2/15/1996 | FBI Facsimile Cover Sheet from the FBI's Program Support Section documenting the transmittal of NCIC information. | RIP | Names/identifying information of FBI and other Government personnel. | b6/b7C-2, 3 |
| **HIGGS-FBI-106-112 (7 pp)** | 2/14/1996-2/15/1996 | NCIC printouts pertaining to third party individuals. | WIF | This document consists entirely of information related to a third party and was withheld in full to protect that person's privacy.

Names/identifying information of FBI personnel were also protected.

Law enforcement database information was also protected. | b6/b7C-2,4 b7E-2 |

GA008

| Bates Pages/ Page Count | Date of the Document | Document Description | RIF, RIP or WIF | Information Protected | Exemption Coded Categories Cited |
|---|---|---|---|---|---|
| **HIGGS-FBI-113** (1 p) | 2/27/1996 | FBI Facsimile Cover Sheet documenting transmittal of NCIC information form the FBI to USPP | RIP | Names/identifying information of FBI and other Government personnel. | b6/b7C-2, 3 |
| **HIGGS-FBI-114-119 (6 pp)** | 2/24/1996 | NCIC printouts pertaining to third party individuals. | WIF | This document consists entirely of information related to a third party and was withheld in full to protect that person's privacy.<br><br>Names/identifying information of FBI personnel were also protected.<br><br>Law enforcement database information was also protected. | b6/b7C-2,4 b7E-2 |
| **HIGGS-FBI-120** (1 p) | 2/6/1996 | Duplicate of Bates page HIGGS-FBI-80 | WIF | Duplicate page | N/A |
| **HIGGS-FBI-121-131 (11 pp)** | 2/5/1996-2/6/1996 | Duplicate of Bates pages HIGGS-FBI-81, 83-90 | WIF | Duplicate pages | N/A |
| **HIGGS-FBI-132-134 (3 pp)** | 1/31/1996 | Administrative NCIC printout pages | RIF | | N/A |
| **HIGGS-FBI-135-206 (72 pp)** | 1/30/1996-1/31/1996 | NCIC printouts pertaining to third party individuals, to include third party deceased victims. | RIP | Names/identifying information of FBI personnel.<br><br>Names/identifying information of third parties who were merely mentioned in the records.<br><br>Law enforcement database information was also protected. | b6/b7C-2,4 b7E-2 |
| **HIGGS-FBI-207-208 (2 pp)** | 10/15/1996 | Duplicate of Bates pages HIGGS-FBI-32-33 | WIF | Duplicate pages | N/A |
| **HIGGS-FBI-209**[8] (1 p) | 4/6/1996 | FBI Facsimile Cover Sheet documenting transmittal of an FD-302 from the FBI to the USPP | RIP | Names/identifying information of FBI personnel.<br><br>Names/identifying information of other Government personnel.<br><br>Names/identifying information of third parties who were merely mentioned in the record. | b6/b7C-2, 3, 5 |

[8] HIGGS-FBI-209 was originally presumed to be a duplicate of HIGGS-FBI-39. Upon further review, it was found to be slightly different and processed for release.

GA009

| Bates Pages/ Page Count | Date of the Document | Document Description | RIF, RIP or WIF | Information Protected | Exemption Coded Categories Cited |
|---|---|---|---|---|---|
| **HIGGS-FBI-210-214 (5 pp)** | 3/22/1999 | An FD-302 documenting an interview of a confidential source who provided information with an implied assurance of confidentiality. | RIP | Names/identifying information of third parties of investigative interest to the FBI.<br><br>Names/identifying information of FBI personnel.<br><br>Names/identifying information of other Government personnel.<br><br>Names/identifying information of third parties who were merely mentioned in the records.<br><br>Name/identifying information of a third party (confidential source) who provided information to the FBI.<br><br>The identity of a confidential source and the information provided to the FBI by the source. | b6/b7C-1, 2, 3,[9] 4, 5<br>b7D-1 |
| **HIGGS-FBI-215 (1 pp)** | X/X/1997[10] | FBI Facsimile Cover Sheet documenting transmittal of NCIC information form the FBI to USPP | RIP | Names/identifying information of FBI personnel.<br><br>Names/identifying information of other Government personnel.<br><br>Names/identifying information of third parties who were merely mentioned in the record. | b6/b7C-2, 3, 4 |
| **HIGGS-FBI-216-227 (12 pp)** | 1/9/1997-1/10/1997 | NCIC printouts pertaining to third party individuals. | WIF | This document consists entirely of information related to a third party and was withheld in full to protect that person's privacy.<br><br>Names/identifying information of FBI personnel were also protected.<br><br>Law enforcement database information was also protected. | b6/b7C-2,4<br>b7E-2 |

[9] HIGGS-FBI-213 and HIGGS-FBI-214 were re-released to Plaintiff with AUSA Johnson's name unredacted.
[10] On this document, only the year is legible.

GA010

| Bates Pages/ Page Count | Date of the Document | Document Description | RIF, RIP or WIF | Information Protected | Exemption Coded Categories Cited |
|---|---|---|---|---|---|
| HIGGS-FBI-228-229 (2 pp) | 10/15/1996 | Duplicate of Bates pages HIGGS-FBI-32-33 | WIF | Duplicate pages | N/A |
| HIGGS-FBI-230-283 (46 pp) | 1/20/1996 – 3/22/1996 | NCIC printouts pertaining to third party individuals. | WIF | This document consists entirely of information related to a third party and was withheld in full to protect that person's privacy.  Names/identifying information of FBI personnel were also protected.  Law enforcement database information was also protected. | b6/b7C-3, 4 b7E-2 |
| HIGGS-FBI-284-288 (4 pp) | 6/6/1996 | NCIC printout pertaining to subject | RIP | Names/identifying information of other Government personnel. | b6/b7C-3 |
| HIGGS-FBI-289-492 (204 pp) | 2/5/1996 – 2/21/1997 | NCIC printouts pertaining to third party individuals. | WIF | This document consists entirely of information related to a third party and was withheld in full to protect that person's privacy.  Names/identifying information of other Government personnel and local law enforcement personnel were also protected.  Law enforcement database information was also protected. | b6/b7C-3, 4, 6 b7E-2 |
| HIGGS-FBI-493 (1 pp) | Undated | NCIC printouts pertaining to third party deceased victim. | RIF | | N/A |
| HIGGS-FBI-494-733 (240) | 1/29/1996 – 10/27/1998 | NCIC printouts pertaining to third party individuals. | WIF | This document consists entirely of information related to a third party and was withheld in full to protect that person's privacy.  Names/identifying information of FBI and other Government personnel were also protected.  Law enforcement database information was also protected. | b6/b7C-2, 3, 4 b7E-2 |

GA011

| Bates Pages/ Page Count | Date of the Document | Document Description | RIF, RIP or WIF | Information Protected | Exemption Coded Categories Cited |
|---|---|---|---|---|---|
| **HIGGS-FBI-734** (1 p) | Unknown | United States Department of State ("DOS"), Diplomatic Security Service, Protective Intelligence Division Facsimile cover sheet. | RIP | Names/identifying information of other Government personnel, protected per the request of the U.S. Department of State | b6/b7C-3 per DOS |
| **HIGGS-FBI-735-738** (4 pp) | 2/2/1996 | NCIC printouts pertaining to third party individuals. | WIF | This document consists entirely of information related to a third party and was withheld in full to protect that person's privacy.<br><br>Law enforcement database information was also protected. | b6/b7C-4 b7E-2 |

10

# Pages Originally Eliminated from the FBI's Production but Subsequently Released to Plaintiff

GA012

| Bates Pages/ Page Count | Date of the Document | Document Description | RIF, RIP or WIF | Information Protected | Exemption Coded Categories Cited |
|---|---|---|---|---|---|
| HIGGS-FBI-740 | Unknown | This page is almost completely illegible. It appears to be an FBI facsimile cover sheet. | RIP | Names/identifying information of FBI personnel.<br><br>Names/identifying information of third parties merely mentioned in the record. | b6/b7C-2,4 |
| HIGGS-FBI-741 | Unknown | This page is completely illegible. | RIF | | N/A |
| HIGGS-FBI-742 | Unknown | This page is completely illegible. | RIF | | N/A |
| HIGGS-FBI-743 | Unknown | This page is completely illegible. | RIF | | N/A |
| HIGGS-FBI-744 | Unknown | This page is completely blank. | RIF | | N/A |
| HIGGS-FBI-745 | Unknown | This page is completely illegible except for a small administrative marking presumably placed by USPP. | RIF | | N/A |

| Explanation of Page Dispositions | |
|---|---|
| Pages RIF | 15[11] |
| Pages RIP | 40[12] |
| Pages WIF pursuant to one or more FOIA Exemption: | 655[13] |
| Pages WIF as duplicates | 34 |
| Pages deemed to be direct copies of other pages, eliminated from the FBI's production | 62[14] |
| TOTAL PAGES | 806 |

---

[11] This includes five pages (HIGGS-FBI 741 – 745) originally eliminated from the FBI's production because they were found to be either blank or illegible. The FBI has now released these pages to Plaintiff.

[12] HIGGS-FBI-209 was originally eliminated as a duplicate of Bates page HIGGS-FBI-39. Upon further review, it was found to be slightly different, processed, and released in part to Plaintiff. Additionally, HIGGS-FBI-740 was originally eliminated from the FBI's production since it was deemed illegible. It too has now been processed and released in part to Plaintiff.

[13] Bates page HIGGS-FBI-739 was originally eliminated as a duplicate. Upon further review, this page is not a direct copy. It has been processed and is being withheld in full.

[14] These pages were behind the page they were copies of, appearing to be the result of inadvertent duplicative printing. Therefore, the FBI did not consider them for review. Specifically, they were copies of HIGGS-FBI-28, 32-38, 40-46, 50, 90, 98-99, 101, 103, 137,152, 154-155, 369, 383, 424, 429-430, 445-449, 508, 545-555, 563, 725, 731-733, and 736.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

|  |  |  |
|---|---|---|
| DUSTIN JOHN HIGGS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:16-cv-0096 |
| v. | ) | |
| | ) | |
| UNITED STATES PARK POLICE, | ) | |
| | ) | |
| Defendant. | ) | |

**SECOND DECLARATION OF DAVID M. HARDY**

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section (RIDS), Records Management Division (RMD), in Winchester, Virginia.   I have held this position since August 1, 2002.   Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law.   In that capacity, I had direct oversight of Freedom of Information Act (FOIA) policy, procedures, appeals, and litigation for the Navy.   From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters.   I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 249 employees who staff a total of ten (10) FBIHQ units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA, as amended by the

-1-

GA013

OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974;

Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures;

judicial decisions; and Presidential and Congressional directives.   The statements contained in

this declaration are based upon my personal knowledge, upon information provided to me in my

official capacity, and upon conclusions and determinations reached and made in accordance

therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information pursuant to the provisions of the FOIA, 5

U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.   Specifically, I am aware of the

United States Park Police's referral to the FBI following Plaintiff's submission of a Freedom of

Information Act and Privacy Act ("FOIPA") request to that agency, and the FBI's response to

Plaintiff.

(4)     This declaration incorporates my previous declaration dated May 30, 2017

(hereinafter "First Hardy Declaration").   The FBI submits this declaration in support of the

United States Park Police's motion for summary judgment.   In accordance with *Vaughn v.

Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration provides justifications for the FBI's

withholding of information pursuant to FOIA Exemptions (b)(6), (b)(7)(C), (b)(7)(D) and,

(b)(7)(E).   *See* 5 U.S.C. §§ 552(b)(6), (b)(7)(C), (b)(7)(D) and, (b)(7)(E).

## BACKGROUND INFORMATION

(5)     Dustin Higgs, the Plaintiff and subject of the referred records, was convicted on

three counts of first-degree murder and kidnapping on January 4, 2001.   Three young women

-2-

GA014

were shot to death at the direction of Higgs on January 27, 1996 while on federal land in Prince George's County, Maryland.   Trial testimony and court records showed the three women had attended the same party as Higgs.   Higgs approached one of the women and trial testimony indicated he was angry when his advances were rebuffed.   The three young women later left the party and Higgs followed them out.   Higgs and his friend offered the three women a ride and they accepted.   Higgs drove to a desolate road where he stopped the vehicle, ordered the three women out, handed a gun to his friend, and instructed him to kill the women.   At sentencing, U.S. District Judge Messitte indicated there is no question of Higgs' guilt and stated "[Higgs] will always be remembered as a cold-blooded killer."   The records, at issue, originated from the FBI's and United States Park Police's investigation of Higgs and his involvement in the kidnapping and triple murder of the three young women.

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

(6)     Upon receipt of the United States Park Police's referral package, the FBI carefully reviewed, processed, and released to Plaintiff all non-exempt portions of the records.   The FBI conducted a thorough review of each referred page and redacted information or withheld pages pursuant to FOIA Exemptions (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).   Listed below are the claimed FOIA exemptions and an explanation of each withholding.

## EXEMPTION (b)(7) THRESHOLD

(7)     Exemption (b)(7) of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes if disclosure could reasonably be expected to cause one of the six sets of harms enumerated in the subpart of the exemption.   *See* 5 U.S.C. §

-3-

GA015

552 (b)(7). In this case, the harm that could reasonably be expected to result from disclosure concerns: information which, if disclosed, could reasonably be expected to invade personal privacy interests; reveal the identity of confidential sources; and disclose law enforcement techniques which, if released, could be used to circumvent the law.

(8)     Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 U.S.C. §§ 533 and 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency. Under this investigative authority, the responsive records herein were compiled for the purpose of investigating the murders of three young women who were killed while on federal land. Such an investigation involves the enforcement of federal laws within the law enforcement duties of the FBI. As responsive records were created or compiled as part of the FBI's investigation of the triple murder, they were compiled for a law enforcement purpose and readily satisfy the threshold requirement of Exemption (b)(7). The remaining inquiries concern disclosure and whether the release of responsive information could reasonably be expected to invade personal privacy interests; reveal confidential source information; and/or disclose investigative techniques and procedures.

## EXPLANATION OF CODED FORMAT USED FOR THE JUSTIFICATION OF DELETED MATERIAL

(9)     All referred records have been processed to achieve maximum disclosure

-4-

GA016

consistent with the access provisions of the FOIA.   Every effort was made to provide Plaintiff with all reasonably segregable portions of releasable material.   No reasonably segregable, non-exempt portions have been withheld.   The FBI reviewed and processed a total of 738 pages.   Of the 738 pages, 10 pages were released in full; 38 pages were released in part with redactions pursuant to statutory exemptions; 654 pages were withheld in full in accordance with statutory exemptions; and 36 pages were withheld in full because they were duplicates of other pages.[1] Each processed page has been Bates-numbered sequentially – "HIGGS-FBI-1" through "HIGGS-FBI-738."   The documents contain, on their faces, coded categories of exemptions applied by the FBI which detail the nature of the information withheld pursuant to the FOIA. The coded categories are designed to aid the Court and Plaintiff in reviewing the FBI's explanations of claimed FOIA exemptions.

(10)    Each redaction/ withholding is accompanied by a code that identifies the FOIA exemption applied and further subcategorizes the type of information that the exemption was applied to protect; the coded categories are listed below.   For example, if coded category "(b)(7)(C)-2" appears on the page, the "(b)(7)(C)" designation refers to FOIA Exemption (b)(7)(C).   The subcategory "2" narrows the main category to the more specific subcategory of "Names and/or Identifying Information of FBI Special Agents and Support Personnel."   On pages released in part, the coded category is notated next to the redaction to which it applies. Pages withheld in their entirety were replaced by a Deleted Page Information Sheet ("DPIS")

---

[1] By policy, the FBI withholds duplicate pages in order to speed the processing of requests and reduce duplication costs for requesters.

GA017

which identifies the reason and/or the applicable coded category/ies applied to withhold the page in full, as well as the Bates page number for the withheld page. The coded categories of exemptions used in the processing of the referral documents are as follows:

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION PROTECTED** |
| **Categories (b)(6) and (b)(7)(C)** | **CLEARLY UNWARRANTED AND UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| **(b)(6)-1 and (b)(7)(C)-1** | Names and/or Identifying Information of Third Parties of Investigative Interest |
| **(b)(6)-2 and (b)(7)(C)-2** | Names and/or Identifying Information of FBI Special Agents/Support Personnel |
| **(b)(6)-3 and (b)(7)(C)-3** | Names and/or Identifying Information of Non-FBI Federal Government Personnel |
| **(b)(6)-4 and (b)(7)(C)-4** | Names and/or Identifying Information of Third Parties Merely Mentioned |
| **(b)(6)-5 and (b)(7)(C)-5** | Names and/or Identifying Information of Third Parties Who Provided Information |
| **(b)(6)-6 and (b)(7)(C)-6** | Names and/or Identifying Information of Local Law Enforcement Personnel |
| **Category (b)(7)(D)** | **CONFIDENTIAL SOURCE INFORMATION** |
| **(b)(7)(D)-1** | Names/Identifying Information, and/or Information Provided by Individual(s) Under an Implied Assurance of Confidentiality |
| **Category (b)(7)(E)** | **INVESTIGATIVE TECHNIQUES AND PROCEDURES** |
| **(b)(7)(E)-1** | Collection/Analysis of Information |
| **(b)(7)(E)-2** | Database Identifiers/Printouts |

GA018

## EXEMPTIONS (b)(6) AND (b)(7)(C)
## CLEARLY UNWARRANTED AND UNWARRANTED
## INVASION OF PERSONAL PRIVACY

(11)    Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).   All information that applies to a particular person falls within the scope of Exemption 6.

(12)    Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

(13)    The FBI asserts Exemption (b)(6) in conjunction with Exemption (b)(7)(C). Although the balancing test for Exemption (b)(6) uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption (b)(7)(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion.   The privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

(14)    For purposes of this analysis, a public interest exists only when information would shed light on the FBI's performance of its mission to protect and defend the United States against terrorists and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and provide leadership and criminal justice services to federal, state, municipal,

-7-

GA019

and international agencies and partners.   Here, in each instance where information was withheld pursuant to Exemptions (b)(6) and (b)(7)(C), the FBI determined the individual's privacy interests outweighed the public interest in the information.

**(b)(6)-1 and (b)(7)(C)-1:**    **Names and/or Identifying Information of Third Parties of Investigative Interest**

(15)    Exemptions (b)(6) and (b)(7)(C) have been asserted to protect the names and/or identifying information[2] of third-party individuals who are of investigative interest to the FBI and/or other law enforcement agencies.    Being linked with any law enforcement investigation carries a strong negative connotation and a stigma.   To release the identities of these individuals to the public could subject them to harassment or embarrassment, as well as undue public attention.   Accordingly, the FBI has determined these individuals maintain a substantial privacy interest in protecting their identities.

(16)    In deciding whether to release the names and personal information concerning these third parties, the FBI then considered whether there was a public interest in disclosure greater than their substantial privacy interests.   The FBI determined that the individuals' identities would not significantly increase the public's understanding of how the FBI conducts its internal operations and investigations.   Accordingly, the FBI concluded disclosure would unwarrantedly invade their personal privacy interests.   Thus, the FBI withheld this information pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). [3]

---

[2] Identifying information withheld concerning these third parties may include addresses, dates of birth, social security numbers, and other personally identifying information.
[3] Exemptions (b)(6)-1 and (b)(7)(C)-1 have been cited on the following pages:   HIGGS-FBI-1-3, 27-31, 35-8, 50, and 210-13.

-8-

GA020

**(b)(6)-2 and (b)(7)(C)-2:**     **Names and/or Identifying Information of FBI Special Agents/Support Personnel**

(17)     Exemptions (b)(6) and (b)(7)(C) have been asserted to protect the names of FBI Special Agents ("SAs") who are responsible for conducting, supervising, and/or maintaining the investigative activities in this and other investigations.   These responsibilities include conducting interviews and compiling information, as well as reporting on the status of investigations.   Assignments of SAs to any particular investigation are not by choice.   Publicity (adverse or otherwise) regarding any particular investigation to which they have been assigned may seriously prejudice their effectiveness in conducting other investigations.   FBI SAs, as individuals, also have privacy interests in being free from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the FBI.   FBI SAs conduct official inquiries into various criminal and national security cases. They come into contact with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives.   It is possible for an individual targeted by such law enforcement actions to carry a grudge which may last for years.   These individuals may seek revenge on the agents and other federal employees involved in a particular investigation.   The publicity associated with the release of an agent's identity in connection with a particular investigation could trigger hostility.

(18)     The names and identifying information of FBI support employees have also been withheld pursuant to Exemptions (b)(6) and (b)(7)(C).   Support personnel are assigned to handle

-9-

GA021

tasks related to the inquiry into the allegations made against the Plaintiff as reflected in the documents responsive to his request.   These individuals are in positions of access to information regarding official law enforcement investigations, counter-terrorism and national security investigations.   Therefore, they could become targets of harassing inquiries for unauthorized access to FBI investigations if their identities were released.   Accordingly, FBI support personnel have personal privacy interests in not having their identities disclosed.

(19)   The FBI examined documents containing the names and/or identifying information of FBI SAs and support personnel to determine whether there was any public interest that outweighed these individuals' substantial privacy interests and concluded there was none.   Specifically, the FBI determined that disclosure of the name and identifying information of FBI SAs and support personnel, by themselves, would not shed light on the operations and activities of the FBI.   Therefore, the FBI determined the privacy interests of the SAs and support personnel outweighed any public interest in disclosure, and that disclosure would unwarrantedly invade their personal privacy interests.   Thus, the FBI withheld this information pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).[4]

**(b)(6)-3 and (b)(7)(C)-3:   Names and/or Identifying Information of Non-FBI Federal Government Personnel**

(20)   Exemptions (b)(6) and (b)(7)(C) have been asserted to protect the names and/or identifying information of non-FBI federal government personnel whose names appear within

---

[4] Exemption (b)(6)-2/(b)(7)(C)-2 have been cited on the following pages:   HIGGS-FBI-1, 3, 26, 32, 34, 39, 40, 43, 52-77, 80, 82-90, 91-6, 98-9, 100-17, 135-56, 158-206, 210, 214, 216-226, 319, 397, and 452.

-10-

the records.   These employees are acting in their official capacities and aided the FBI in the law enforcement investigative activities reflected in these records.   The rationale for protecting non-FBI federal employees is the same as for FBI employees.   Disclosure of their identities and identifying information could subject them to unauthorized inquiries and harassment that would constitute a clearly unwarranted invasion of their personal privacy.

(21)   And as with FBI employees, the FBI determined that the disclosure of these non-FBI federal employees' names and/or identifying information would not shed light on the operations and activities of the FBI, and would unwarrantedly invade their personal privacy interests.   Thus, the FBI withheld this information pursuant to Exemptions (b)(6) and (b)(7)(C).[5]

**(b)(6)-4 and (b)(7)(C)-4:**      **Names and/or Identifying Information of Third Parties Merely Mentioned**

(22)   Exemptions (b)(6) and (b)(7)(C) have been asserted to withhold the names and/or identifying information of third parties merely mentioned in the referred records.   These individuals were not of investigative interest to the FBI.   These private citizens have substantial privacy interests.   Disclosure of their names and/or other personal information about them would reveal they were at one time connected with an FBI investigation, which could subject them to possible harassment or criticism, and focus derogatory inferences and suspicion on them.

(23)   In contrast, disclosure of their identities, by themselves, would not shed any light

---

[5] Exemptions (b)(6)-3 and (b)(7)(C)-3 have been asserted on the following pages: HIGGS-FBI-1, 4, 28, 30, 32-3, 38-9, 43, 51, 80, 100, 102, 105, 113, 210, 213-15, 282, 284, 288, 290, 294, 299-300, 302, 335, 340, 342, 351, 356, 358, 363-364, 390, 392, 394-5, 399, 410, 417-19, 421, 426, 429, 445, 448, 450, 454, 463, 465, 495, 498-500, 505, 510-15, 517, 520, 522-23, 525, 540, 545-46, 553, 564, 569-70, 589, 591, 608, 629, 649, 661, 667, 695-96, 725, and 734.

-11-

GA023

on the operations and activities of the FBI.  Therefore, the FBI determined these individuals'

privacy interest substantially outweighed any public interest in disclosure, and disclosure would

unwarrantedly invade their personal privacy interests.  Thus, the FBI withheld this information

pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).[6]

### (b)(6)-5 and (b)(7)(C)-5:  Names and/or Identifying Information of Third Parties Who Provided Information

(24)   Exemptions (b)(6) and (b)(7)(C) have been asserted, sometimes in conjunction

with (b)(7)(D), to protect the names and/or identifying information of individuals who were

interviewed during the course of the FBI's murder investigation.  These individuals have

substantial privacy interests.  Such individuals often fear that their identities will be exposed and

consequently, that they will be harassed, intimidated, or threatened with legal action, economic

reprisal, or even physical harm or death.  Disclosure of their identities could indeed subject them

to such adverse consequences.

(25)   In contrast, the FBI concluded that disclosure of these individuals' identities, by

themselves, would not shed light on the operations and activities of the FBI.  Accordingly, the

FBI concluded that disclosure would unwarrantedly invade their personal privacy interests.

Thus, the FBI withheld this information pursuant to Exemptions (b)(6) and (b)(7)(C).[7]

### (b)(6)-6 and (b)(7)(C)-6:  Names and/or Identifying Information of Local Law Enforcement Personnel

---

[6] Exemptions (b)(6)-4 and (b)(7)(C)-4 have been asserted on the following pages:  HIGGS-FBI-2, 24, 32-38, 40, 42, 43, 44-45, 52-77, 78, 79, 81, 82-99, 101, 103-4, 106-12, 114-19, 135-7, 142-54, 155, 158-205, 210, 211-26, 230-266, 268-81, 283, 289-335, 339-424, 426-553, 563-70, 575-733, and 735-738.

[7] Exemptions (b)(6)-5 and (b)(7)(C)-5 have been asserted on the following pages:  HIGGS-FBI-32-43, 210-13, and 215.

-12-

GA024

(26)    Exemptions (b)(6) and (b)(7)(C) have been asserted to protect the names and/or identifying information of local law enforcement personnel whose names appear within the referred records.   These employees are acting in their official capacities and aided the FBI in Plaintiff's criminal investigation.   The rationale for protecting non-FBI federal employees is the same as for FBI employees.   Disclosure of their identities and identifying information could subject them to unauthorized inquiries and harassment, and would constitute a clearly unwarranted invasion of their personal privacy.

(27)    And as with FBI employees, the FBI determined that disclosure of the identities of local law enforcement personnel would not shed light on the operations and activities of the FBI.   Accordingly, the FBI determined disclosure would unwarrantedly invade their personal privacy interests.   Thus, the FBI withheld this information pursuant to Exemptions (b)(6) and (b)(7)(C).[8]

## EXEMPTION (b)(7)(D)
## CONFIDENTIAL SOURCE INFORMATION

(28)    Exemption (b)(7)(D) protects records or information compiled for law enforcement purposes when disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a state, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

---

[8] Exemptions (b)(6)-6 and (b)(7)(C)-6 have been asserted on the following pages:   HIGGS-FBI-425, 466, and 468.

-13-

GA025

5 U.S.C. § 552(b)(7)(D).

(29)     As background, numerous confidential sources report to the FBI on a regular basis and are "informants" within the common meaning of the term.   Some of these sources provide information under an express assurance of confidentiality while others are interviewed under circumstances from which an assurance of confidentiality can reasonably be inferred. These individuals are considered to be confidential sources since they furnished information with the understanding that their identities and the information provided will not be released outside the FBI.   Information provided by these individuals is singular in nature, and if released, could reveal their identity.

(30)     By providing information to the FBI, confidential sources put themselves in positions that could subject them to acts of reprisal or harassment, or that could draw an unnecessary amount of public attention if the FBI disclosed their cooperation.   The FBI has learned through experience that individuals, who assist, cooperate with, and provide information to the FBI must be free to do so without fear of reprisal.   The FBI has also learned that individuals who provide information must be free to furnish the information with complete candor and without the understandable tendency to hedge or withhold information for fear their names or cooperation with the FBI will later be made public.   Individuals who provide information to the FBI should be secure in the knowledge that their assistance and identities will be held in confidence.   The release of a source's identity would forever eliminate that source as a future means of obtaining information.   Furthermore, when the identity of one source is revealed, the revelation has a chilling effect on the activities and cooperation of other sources,

-14-

GA026

not just in that case, but in future cases as well.

### (b)(7)(D)-1:   Names, Identifying Information, and/or Information Provided by Individual(s) Under an Implied Assurance of Confidentiality

(31)    The FBI protected the names, identifying information about, and information provided by individuals who provided information under circumstances in which assurances of confidentiality can be inferred.   These individuals provided valuable information concerning subjects who were of investigative interest.   Based on the nature of the crime and the individuals' proximity to the investigative subjects, the FBI inferred the information provided by these individuals was furnished under the belief their cooperation with law enforcement would remain confidential.

(32)    The FBI protected the identifying information as well as information provided by these individuals under Exemption (b)(7)(D).[9]   The individuals provided information on two subjects who were the targets of a triple murder investigation.   These individuals had access to and/or knowledge of the investigative targets.   This type of access automatically exposes the individuals to potentially significant harm, or even death, should their association and cooperation with the FBI become publicly known.   They provided information that was singular in nature concerning the activities of both subjects.   Disclosure of the sources' identities and the specific information they provided could have devastating consequences because revealing their cooperation could subject them, as well as their families, to harassment, serious bodily injury, and/or death.   These individuals provided valuable information to the FBI concerning its

---

[9] The FBI also relied on Exemptions (b)(6) and (b)(7)(C) to protect the sources' identities.

-15-

GA027

investigation, and in doing so, have placed themselves in harm's way should their identity and cooperation with the FBI become known.    In the FBI's experience, sources who provide information regarding violent crimes, particularly murder, do so at great peril.    Given the nature of the crime – a violent triple murder – and the individuals' proximity to Plaintiff and his associates, the FBI has a legitimate reason to conclude the disclosure of their identities could subject them to reprisals such as serious bodily injury and/or death should their cooperation become known.    Therefore, it is reasonable for the FBI to infer these individuals provided information with an expectation of confidentiality.    Thus, the FBI protected the sources' identities and the information they provided pursuant to Exemption (b)(7)(D).[10]

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(33)    Exemption 7(E) protects "records or information compiled for law enforcement purposes [when disclosure] would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. 5 U.S.C. § 552(b)(7)(E).    This exemption affords categorical protection to techniques and procedures used in law enforcement investigations; it protects techniques and procedures that are not well-known to the public as well as non-public details about the use of well-known techniques and procedures.

### (b)(7)(E)-1    Collection and/or Analysis of Information

---

[10] Exemption (b)(7)(D)-1 has been asserted on the following pages: HIGGS-FBI-34-37, 40-45, and 210-213.

-16-

GA028

(34)     Exemption (b)(7)(E) has been asserted to protect methods used by the FBI in collecting and analyzing information obtained for investigative purposes.   More specifically, the investigative technique concerns the FBI's examination of firearms.   The withheld pages detail the FBI's review and analysis of rifling characteristics for the firearm used in the triple murder. Though it is well known the FBI studies rifling characteristics of firearms, the specific details about the collection and analysis of that information is not well known.   Releasing such information would disclose the FBI's methodologies used in collecting and analyzing firearm information, as well as highlight the type of information considered pertinent in examining a firearm for evidentiary purposes.   Disclosure would afford criminal subjects the opportunity to develop countermeasures to circumvent the effectiveness of this investigative technique.   The relative utility of this technique could be diminished if details were released to the public. Investigative subjects could accumulate this information, educate themselves on the types of information obtained, and develop countermeasures to avoid detection and circumvent the law; thereby, neutralizing the technique's effectiveness.   Accordingly, the FBI withheld this information pursuant to FOIA Exemption (b)(7)(E).[11]

### (b)(7)(E)-2     Database Identifiers/Printouts

(35)     Exemption (b)(7)(E) has been asserted to protect database search results located through non-public databases used for official law enforcement purposes by the FBI.   These non-public databases serve as repositories for investigative data.   They are essentially "one-stop" shops that allow law enforcement to query information and develop investigative leads

---

[11] Exemption (b)(7)(E)-1 has been asserted on the following pages:   HIGGS-FBI-6-23.   .

-17-

GA029

withheld pages consist of criminal and informational printouts from one particular database used by FBI personnel as well as task force members from other federal agencies.   Though it is known the FBI utilizes a database to gather criminal information, the details about that database and the specific information it furnishes is not well known.   Disclosure of the printouts or information compiled from the search results would provide criminals with an understanding of the type of information gathered, analyzed, and utilized by the FBI in criminal investigations, particularly in murder investigations.   It would also reveal the FBI's abilities and limitations in regards to what types of investigative information it can track and later query when developing investigative/law enforcement strategies.   Releasing this information would allow criminals access to key investigative data and afford them the opportunity to develop countermeasures to avoid detection.   It would alert them as to the type of information collected and provide insight into the FBI's analysis of such information, allowing them the opportunity to structure their activities in a manner that deprives the FBI of critical investigative data.   In addition, revealing details about the database as well as the specific stored data could jeopardize the FBI's investigative mission by making the database a target for criminals who seek to corrupt or delete data.   Accordingly, disclosure of the specific information would impede the FBI's use of the database and potentially aid criminals in developing countermeasures to circumvent the law, rendering the investigative technique ineffective.   Thus, the FBI withheld database printouts pursuant to FOIA Exemption (b)(7)(E).[12]   In this case, the majority of database printouts

---

[12] Exemption (b)(7)(E)-2 was asserted on the following pages:   HIGGS-FBI-52-77, 81-99, 101, 103-4, 106-12, 114-19, 135-37, 142-55, 158-205, 216-26, 230-66, 268-83, 289-492, 494-553, 563-70, 575-733, and 735-738.

-18-

GA030

concerned/contained information about third-party individuals and were withheld entirely pursuant to Exemptions (b)(6) and (b)(7)(C), in addition to Exemption (b)(7)(E).

## SEGREGABILITY

(36)   All referred records have been reviewed and processed to achieve maximum disclosure consistent with the access provisions of the FOIA.   Every effort was made to provide Plaintiff with all reasonably segregable portions of releasable material.   No reasonably segregable, non-exempt portions have been withheld.   The FBI reviewed and processed a total of 738 pages.   Of the 738 pages, 10 pages were released in full; 38 pages were released in part; 654 pages were withheld in full in accordance with a statutory exemption; and 36 pages were withheld because they are duplicates to other pages.

(37)   <u>Pages Released In Full</u>.   Following exemption and segregability review, the FBI determined that 10 pages could be released in full as there was no foreseeable harm to an interest protected by a FOIA exemption.

(38)   <u>Pages Released in Part</u>.   Following exemption and segregability review, the FBI determined that 38 pages could be released in part with redactions pursuant to the identified FOIA exemptions cited on the pages.   These pages are comprised of a mixture of material that could reasonably be segregated for release, material that was redacted because release would trigger foreseeable harm to one or more of the interests protected by the FOIA exemptions cited on these pages, and information that was inextricably intertwined with such material and therefore could not reasonably be segregated for release.

(39)   <u>Pages Withheld In Full</u>.   Following exemption and segregability review, the FBI

-19-

GA031

therefore could not reasonably be segregated for release.

(39)   Pages Withheld In Full.   Following exemption and segregability review, the FBI determined that 690 pages must be withheld in their entireties.   Of these, 654 pages were withheld in full pursuant to FOIA exemptions after the FBI concluded that all information on the pages were fully covered by one or more FOIA exemptions or that any non-exempt information on these pages was so intertwined with exempt material that no information could reasonably be segregated for release.   Any further segregation of this intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences that taken separately or together would have minimal or no informational content.   The remaining 36 pages that were withheld in full are duplicates of other pages processed by the FBI.   In order to provide consistent, timely, and efficient responses to FOIA requests, it is the FBI's practice to not process duplicate pages.

## CONCLUSION

(40)   The FBI carefully reviewed the United States Park Police's referral and provided all reasonably segregable, non-exempt information to Plaintiff.   Exempt information was redacted/withheld pursuant to FOIA Exemptions (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).   The FBI determined that the information withheld from Plaintiff in this case, if disclosed, would cause a clearly unwarranted invasion of the personal privacy, or could reasonably be expected to constitute an unwarranted invasion of personal privacy; could reasonably be expected to disclose the identities of confidential sources and the information they provided; and would disclose techniques and procedures for law enforcement investigations.   All reasonably segregable, non-

-20-

GA032

exempt information was released and the justification for the withholdings were detailed in this declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of August, 2017.

David M. Hardy
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

-21-

GA033

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

|  |  |  |
|---|---|---|
| DUSTIN JOHN HIGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:16-cv-0096 |
| | ) | |
| UNITED STATES PARK POLICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DECLARATION OF DAVID M. HARDY**

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), formerly at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C., and currently relocated to Winchester, Virginia. I have held this position since August 1, 2002. Prior to joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the United States Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 248 employees who staff a total of ten (10) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests

1

GA034

for access to Federal Bureau of Investigation ("FBI") records and information pursuant to the FOIA, 5 U.S.C. § 552; Privacy Act of 1974; Executive Order ("E.O.") 13,526; Presidential, Attorney General and FBI policies and procedures; judicial decisions; and other Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by E.O. 13,526, 75 Fed. Reg. 707 (2010), and the preparation of declarations in support of FOIA Exemption 1 claims asserted under the FOIA, 5 U.S.C. § 552(b)(1). I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to E.O. 13,526 §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information pursuant to the provisions of the FOIA, 5 U.S.C. § 552 and the Privacy Act ("PA") of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's response to a referral of documents from the U.S. Park Police, as well as the FBI's response to two FOIA requests submitted directly to the FBI and referenced in Plaintiff's Memorandum of Law, ECF No. 32.

(4)     The FBI submits this declaration to provide the status of the referral of documents sent to it by the U.S. Park Police and to address Plaintiff's apparent challenge to the FBI's responses to the FOIA requests submitted directly to it, which are not mentioned in Plaintiff's Complaint in this matter. *See* ECF No. 1.

(5)     The introduction to Plaintiff's Memorandum of Law, ECF No. 32, reflects his view that the responses to the U.S. Park Police's referral of documents to other agencies,

2

GA035

including the FBI, constitute an improper withholding of records.  *Id*. at 1.  With respect to the

FBI specifically, Plaintiff avers the FBI's purported response to the U.S. Park Police's referral –

which Plaintiff claims was a withholding in full based on FOIA Exemption (b)(7)(A), 5 U.S.C. §

552(b)(7)(A) – was improper.  *Id*. at 8-12.  He attached various documents to his memorandum,

including correspondence between the Federal Community Public Defender Office for the

Eastern District of Pennsylvania and RIDS, and between the Federal Community Public

Defender Office of the Eastern District of Pennsylvania and DOJ's Office of Information Policy

("OIP"), which adjudicates FOIA appeals of FBI FOIA requests.  *See* ECF No. 31-2 – 31-6.  It

appears Plaintiff believes these letters concern the FBI's response to the U.S. Park Police's

referral of records in this matter.  If so, he is mistaken.

(6)     These letters, which reference FBI FOIA Request Nos. 1347918 and 134720,

concern a FOIA request the Federal Community Public Defender submitted directly to the FBI,

seeking access to records contained in two FBI investigative files (70A-BA-88402 and 166E-

BA-91840).[1]  The FBI split the request into two matters with unique reference numbers and is

attaching the full administrative paper trail for both matters, since the attachments to Plaintiff's

memorandum of law are incomplete.  *See* **Exhibits A - L**.  These two FOIA matters are pending

decisions on the administrative appeals filed by the requester, the Federal Community Defender

Office for the Eastern District of Pennsylvania, which appealed the FBI's denial of them based

on FOIA Exemption (b)(7)(A), 5 U.S.C. § 552(b)(7)(A).

(7)     Plaintiff did not reference either of these requests in his Complaint, nor did he

plead any claims against DOJ or the FBI in that Complaint[2]; name DOJ or the FBI as a defendant

---

[1]  FBI FOIA Request No. 1347918 was assigned to the request for 70A-BA-88402 and Request No. 1347920 was assigned to the request for 166E-BA-91840.

[2]  For FOIA purposes, DOJ is the "agency" that is the proper defendant for any challenge to the disposition of a FOIA request by any of its components, such as the FBI.

GA036

in the matter; serve process on DOJ or the FBI; or take any action evidencing an intent to sue DOJ or the FBI over the FBI's response to the two FOIA requests submitted by the Federal Community Defender Office for the Eastern District of Pennsylvania.

(8)     Moreover, the FBI believes the Plaintiff would not have Constitutional standing to sue it over these requests.  Neither of the requests mentions Plaintiff, asserts that the Federal Community Public Defender Office was representing him or acting on his behalf in submitting the requests, or provides a privacy waiver executed by Plaintiff that would permit the FBI to provide records about him to a third party (here, the Federal Community Defender Office).  ***See Exhibits A and G***.  Indeed, the two requests cannot be located by reference to Plaintiff's name in the FBI's FOIA Document Processing System ("FDPS") because they do not reference him.  Similarly, neither of the appeals that the Federal Community Public Defender Office filed with DOJ-OIP mentions Plaintiff.  ***See* Exhibits E and K**.

(9)     With respect to the U.S. Park Police's actual referral of records to the FBI, the FBI has not responded to Plaintiff regarding those records.  On or about April 21, 2017, the FBI was contacted about the status of these records.  A search of FDPS failed to locate the referred records.  Accordingly, the U.S. Park Police and the FBI began to coordinate on April 21st to get those records to the FBI.

(10)    On or about May 7, 2017, the FBI received a copy of the U.S. Park Police's referral which included 806 pages of documents.  The FBI has begun the process of reviewing these records for possible release pursuant to the FOIA.  The FBI's current processing policy is to review at a rate of 500 pages per month.  This allows the FBI to more equitably serve all individuals that submit FOIA requests to the FBI instead of unfairly allocating its limited resources on requests with large numbers of documents.  In line with this policy, the FBI

GA037

requests at least two months to process this U.S. Park Police referral.  This does not include the time it takes the FBI to intake the documents (organize, scan, and upload into the FBI's electronic FOIA Document Processing System ("FDPS")) and research the current status of any FBI investigations associated with these records.  In addition to the two months processing time, the FBI also requests until May 31, 2017 to complete this initial research and intake.  Furthermore, the FBI requests an additional month to draft a *Vaughn* declaration justifying any FBI withholdings within the records at issue, should this be required.  In summation, the FBI respectfully requests until July 31, 2017 to complete its processing of these records and until August 31, 2017 to file a *Vaughn* declaration addressing any redactions made within the records, should this be required by the court.

## CONCLUSION

(11)     As described above, the FOIA requests the Plaintiff specifically references in his Memorandum of Law at ECF No. 32 are requests made directly to the FBI, and are not the referral of records by the U.S. Park Police.  The FOIA requests are not part of this lawsuit and indeed do not even mention Plaintiff or claim to have been submitted on his behalf.  With respect to the U.S. Park Police referred records, the FBI obtained copies of them on or about May 7, 2017, and as described above, will need until July 31, 2017 to review and process these records.  Additionally, should a *Vaughn* declaration be required to explain any FBI withholdings within these records, the FBI respectfully requests until August 31, 2017 to draft and file such a declaration with the court.

5

GA038

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct, and that Exhibits A through L attached hereto are true and correct copies.

Executed this ____30th____ day of ____May____, 2017.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

6

GA039

# FEDERAL COMMUNITY DEFENDER OFFICE
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### *Capital Habeas Unit*

FEDERAL COURT DIVISION DEFENDER ASSOCIATION OF PHILADELPHIA

SUITE 545 WEST -- THE CURTIS CENTER
601 WALNUT STREET
PHILADELPHIA, PA 19106

*ELLEN T. GREENLEE*
DEFENDER

PHONE NUMBER (215) 928-0520
FAX NUMBER    (215) 928-0826
FAX NUMBER    (215) 861-3508

*LEIGH M. SKIPPER*
CHIEF FEDERAL DEFENDER

May 17, 2012

FOIA Appeals Officer
United States Department of the Interior
1849 C. Street, N.W., Mail Stop 6556-MIB
Washington, D.C. 20240

Via Fax: (202) 208-6677

Re:     FREEDOM OF INFORMATION APPEAL

Dear FOIA Appeals Officer:

In accordance with 43 CFR § 2.30, I write to appeal the United States Park Police's final response to a Freedom of Information Act request made by my office on behalf of a client. Pursuant to 43 CFR § 2.30(b), I have included copies of all correspondence between my office and the United States Park Police, which consists of the following:[1]

1. Letter from Jessica Johnson, dated 1/5/12
2. Letter from Teresa C. Chambers, dated 2/7/12
3. Letter from Jessica Johnson, dated 2/24/12
4. Letter from Teresa C. Chambers, dated 4/9/12
5. Letter from Aren Adjoian, dated 4/30/12

This appeal is limited to the amount of fees that the Park Police may properly charge in order to

---

[1]Please note that I unfortunately do not have signed copies of the 1/5/12 and 2/24/12 letters generated by my office. I nonetheless believe that the attached, unsigned, versions are otherwise identical to the letters sent to the Park Police. Should there be any discrepancies between the letters attached here and the signed versions received by the Park Police, the signed versions would of course represent the actual correspondence that was sent.

1

GA040

fulfill the FOIA request at issue.  In its initial response to the FOIA request, the Park Police required advance payment of $11,026.00 in order to process the request.  The Park Police offered the following explanation for its charges:

> This estimate covers the cost of the manual search for the requested records, which appears to be approximately 7,000 pages, and the review of whether the records are exempt from disclosure.  Search costs are computed at $60.00 per hour managerial salary for two hours, or a total of $120.00; and at the professional level of $42.00 per hour for 238 hours, or a total of $9,996.00, as well as the cost of duplication of $910.00 (duplication cost is $00.13 per page).

See 2/7/12 Letter from Teresa C. Chambers, attached.

The undersigned's office responded by noting that because the Federal Community Defender Office "is a noncommercial entity and this request is being made for noncommercial purposes," this request "falls under 5 U.S.C. § 552(a)(4)(A)(ii)(III), which dictates that 'fees shall be limited to reasonable standard charges for document search and duplication.'" See 2/24/12 Letter from Jessica Johnson, attached.  As such, this office requested a revised estimate, comprising only search and duplication costs, as the FOIA statute explicitly requires.

The Park Police replied with their final response, in which they continued to maintain that they would require $11,026 in advance payment for search, duplication, and review costs before they would process the request.  In support of their final response, the Park Police cited to the OMB Fee Guidelines, 52 Fed. Reg. at 10,013-14, 10,017-18 (1982); Dale v. IRS, 238 F. Supp. 2d 99, 107 (D.D.C. 2002); and Department of Justice Guide to the Freedom of Information Act, at 107. See 4/9/12 Letter from Teresa C. Chambers, attached.

The undersigned asserts that the Park Police is in error in attempting to charge fees associated with the review of the records contemplated by this request.  FOIA provides for a uniform schedule of fees for production of documents for all agencies subject to its provisions:

> (I) fees shall be limited to reasonable standard charges for document search, duplication, and review, when records are requested for commercial use;
>
> (II) fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by an educational or noncommercial scientific institution, whose purpose is scholarly or scientific research; or a representative of the news media; and
>
> (III) for any request not described in (I) or (II), fees shall be limited to reasonable standard charges for document search and duplication.

5 U.S.C. § 552(a)(4)(A)(ii)(I)-(III).

This request clearly falls under category (III), which explicitly limits fees to search and

2

GA041

duplication costs.  The request is being made by the Federal Community Defender Office (FCDO) on behalf of a client.  The FCDO is a public defender agency that operates under the Criminal Justice Act of 1964, 18 U.S.C. § 3006A, and that exists for the purpose of representing indigent clients in criminal cases.  The request is being made as part of the FCDO's representation of an indigent client – whom we have been appointed to represent by a federal judge – in challenging his criminal conviction.  Whether the "requester" for purposes of this request is properly considered the FCDO or its client is immaterial.  In either event, the request is obviously being made for a noncommercial purpose; namely, legal representation in a criminal case.

The authorities cited by the Park Police in its attempt to charge costs associated with document review support, rather than undermine, the FCDO's position.  The Office of Management and Budget has defined "commercial use" as a use that "furthers the commercial, trade or profit interests of the requester or person on whose behalf the request is made."  See 52 Fed. Reg. at 10,013-10,014.  Nothing about this request furthers a commercial, trade, or profit interest, either on behalf of the FCDO or its client.

Further, while the Park Police is correct that Dale v. IRS dictates that the "requester" is properly considered to be the party on whose behalf the request is made, rather than his attorney, that is entirely irrelevant.  As noted above, neither the FCDO nor its client is a commercial entity, and neither the FCDO nor its client is making this request for a commercial purpose.  Significantly, in Dale, the law office representing the requester was claiming that it was entitled to a fee waiver (the FCDO, by contrast, is not seeking a fee waiver).  See Dale, 238 F.Supp. 2d at 106.  The District Court rejected Dale's argument, instead holding that the client is properly considered the requester, and as such, he would be required to pay search and duplication costs.  Id. at 107.  These are the precise costs that the FCDO has agreed to pay.  The Dale opinion makes no mention of review costs, and the Park Police's reliance on that opinion is entirely misplaced.[2]

Because the Park Police may only properly charge for search and duplication costs under FOIA, the undersigned hereby requests a revised estimate of costs comprising only these two categories of fees.  Further, this revised estimate should take into account the fact that no fees may be charged "for the first two hours of search time or for the first one hundred pages of duplication."  5 U.S.C. § 552(a)(4)(A)(iv)(II).

Finally, it is apparent that the search costs associated with this request will be minimal, given how the OMB has defined that term:

> The term "search" includes all time spent looking for material that is responsive to a request, including page-by-page or line-by-line identification of material within documents.  Agencies should ensure that searching for material is done in the

---

[2]The Park Police's citation to the DOJ guide to FOIA is also made for the proposition that the requester must be considered the client, rather than his attorney.  As noted above, the FCDO concedes this point, which has no relevance to this request.

3

GA042

most efficient and least expensive manner so as to minimize costs for both the agency and the requester. For example, agencies should not engage in line-by-line search when merely duplicating an entire document would prove the less expensive and quicker method of complying with a request. "Search" should be distinguished, moreover, from "review" of material in order to determine whether the material is exempt from disclosure (see subparagraph 6f below [defining "review"]).

OMB Fee Guidelines at subparagraph 6(d); see also OMB Fee Guidelines at Section 6(d):

Several commentators objected to the inclusion of line-by-line searches as an example of search. It is not often that an agency would need to read a document line-by-line to locate records responsive to a request, and agencies should not artificially raise search costs by unnecessarily spending time reading a document for responsive records when it would be cheaper and faster simply to reproduce the entire document. Our intention was to provide guidance on the *scope* of what constitutes FOIA search and we were careful to distinguish line-by-line search from review. We have accordingly modified the section to make it clear that agencies should not conduct line-by-line searches when whole document reproduction would be cheaper and faster.

Given that the Park Police were quickly able to identify the universe of documents that are responsive to this request at 7,000 pages, it is clear that the search efforts are complete or near-complete. Whatever remaining costs are associated with line-by-line reading and redacting of documents clearly fall under the purview of "review" costs, for which the Park Police may not properly charge fees.

Thus, for all of the preceding reasons, the undersigned respectfully requests that the Park Police be directed to provide a revised estimate of fees in response to this request. Should you require any additional information, please do not hesitate to contact me by email at aren_adjoian@fd.org, by phone at (215) 928-0520, or by fax at (215) 928-0826. Thank you for your time and attention to this matter.

Sincerely,

Aren Adjoian, Esq.

cc:    Teresa C. Chambers, Chief of Police
       Randolph Myers, Senior Attorney

4

GA043

## CERTIFICATE OF COMPLIANCE

The appendix and short appendix include the materials required by Circuit Rule 30(a) and (b).

s/ Caroline D. Lopez
Caroline D. Lopez

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2018, I electronically filed the foregoing appendix with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Caroline D. Lopez*
Caroline D. Lopez