Nos. 18-2826, 18-2937

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

DUSTIN JOHN HIGGS,
*PLAINTIFF-APPELLEE/CROSS-APPELLANT,*

v.

UNITED STATES PARKS POLICE,
*DEFENDANT-APPELLANT/CROSS-APPELLEE.*

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:16-cv-96, Hon. Jane Magnus-Stinson, Chief J.

## APPELLEE'S PRINCIPAL AND RESPONSE BRIEF

Leigh Skipper, Esq.
Chief Federal Defender
Matthew Lawry
Aren Adjoian
Cristi Charpentier
Elizabeth Hadayia
Assistant Federal Defenders
Federal Community Defender Office
Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Stephen H. Sachs
Wilmer Cutler Pickering Hale
& Dorr, LLP
5 Roland Mews
Baltimore, MD 21210
410-532-8405

Dated: December 3, 2018

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 18-2826, 18-2937

Short Caption: Higgs v. United States Park Police

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [  ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Dustin John Higgs

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Wilmer Cutler Pickering Hale & Dorr, LLP

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

N/A

ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature: s/ Matthew Lawry                Date: 12/3/2018

Attorney's Printed Name: Matthew Lawry

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ⊠  No ____

Address: Federal Community Defender Office for the Eastern District of Pennsylvania, Suite 545 West, The Curtis Center, 601 Walnut Street, Philadelphia, PA 19106

Phone Number: 215-928-0520                Fax Number: 215-928-0826

E-Mail Address: matthew_lawry@fd.org

rev. 01/15 GA

# PRELIMINARY STATEMENT REGARDING
# BRIEFING, CITATIONS, AND APPENDIX

All emphasis in this brief is supplied unless otherwise indicated.
Parallel citations are usually omitted.

Plaintiff/Appellee Dustin John Higgs is referred to herein by name or as Plaintiff. Defendant below, Appellee here, is referred to as "the government."

The government attached a short appendix to its brief, which will be cited as "SA__." The government filed a separate appendix, which will be cited as "GA__." Plaintiff is filing an appendix together with this brief. Entries in Plaintiff's appendix are cited as "PA-__."

Filings in the district court not included in any appendix are cited by a short title and the ECF number.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT REGARDING BRIEFING, CITATIONS, AND APPENDIX ...................................................................i

TABLE OF AUTHORITIES............................................................ iii

INTRODUCTION.............................................................................1

STATEMENT OF JURISDICTION......................................................2

COUNTER-STATEMENT OF THE ISSUES...........................................2

COUNTER-STATEMENT OF THE CASE ...............................................3

SUMMARY OF ARGUMENT ...........................................................21

STANDARD OF REVIEW................................................................24

ARGUMENT ...............................................................................25

I.    The District Court Properly Found That the Government Failed to Meet Its Burden of Showing That It Was Entitled to Withhold Documents Under Exemption 7(C)............................25

    A.    *The District Court Recognized That Individuals Named in the Documents Could Have Protected Privacy Interests and Correctly Found That the Government Failed to Meet Its Burden to Show That Those Individuals Were Still Alive*................................................27

    B.    *The District Court Correctly Found That There Is a Public Interest in Disclosure.* ...............................................33

    C.    *Disclosure of the Identities of the Named Individuals Would Further the Public Interest in Disclosure.*.................42

II.   The Government Failed to Meet Its Burden to Prove That Exemption 7(D) Applies. ..............................................................47

CONCLUSION ..............................................................................52

**Federal Cases**                                                    **Page(s)**

*ACLU v. U.S. Dep't of Justice*, 655 F.3d 1 (D.C. Cir. 2011) ..... 35, 37, 46

*Aguirre v. SEC*, 551 F. Supp. 2d 33 (D.D.C. 2008) ........................ 39, 41

*Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. U.S. Dep't of Justice*, 503 F. Supp. 2d 373 (D.D.C. 2007) ......................................... 27

*Am. Civil Lib. Union of N. Cal. v. U.S. Dep't of Justice*, 880 F.3d 473 (9th Cir. 2018) ............................................................. 42

*Bennett v. DEA*, 55 F. Supp. 2d 36 (D.D.C. 1999) ............................... 41

*Church of Scientology Int'l v. Dep't of Justice*, 30 F.3d 224 (1st Cir. 1994) ...................................................................... 48

*Citizens Ins. Co. of Am. v. Barton*, 39 F.3d 826 (7th Cir. 1994) .......... 30

*Cooper-Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539 (5th Cir. 2002) ..................................................................... 35

*Ctr. for Biological Diversity v. OMB*, No. 07-4997, 2008 WL 5129417 (N.D. Cal. Dec. 4, 2008) ..................................................... 43

*Davis v. Dep't of Justice*, 460 F.3d 92 (D.C. Cir. 2007) ....................... 27

*Dellums v. Powell*, 642 F.2d 1351 (D.C. Cir. 1980) ............................. 26

*Dep't of State v. Ray*, 502 U.S. 164 (1991) ........................................ 25

*Enviro Tech International, Inc. v. EPA*, 371 F.3d 370 (7th Cir. 2004) ................................................................... 24, 25

*Hawkins and Baker v. F.B.I.*, 863 F.3d 682 (7th Cir. 2017) ................. 11

*Hawkins v. DEA*, 347 F. App'x 223 (7th Cir. 2009) ....................... 11, 33

*Hidalgo v. FBI*, 541 F. Supp. 2d 250 (D.D.C. 2008) .................. 36, 39, 41

*Higgs v. United States*, 711 F. Supp. 2d 479 (D. Md. 2010) ................ 15

*In re Wade*, 969 F.2d 241 (7th Cir. 1992) ......................................... 24

*Kaganove v. EPA*, 856 F.2d 884 (7th Cir. 1988) ................................. 24

*King & Spalding LLP v. U.S. Dep't of Health and Human Serv.*, 330 F. Supp. 3d 477 (D.D.C. 2018) ..................................................... 49

*King & Spalding*, 330 F. Supp. 3d .................................................... 50

*Lawyers' Comm. for Civil Rights v. U.S. Dep't of the Treasury*, No. 07-2590, 2008 WL 448285510 (N.D. Cal. Sept. 30, 2008) ............. 44

*Lissner v. U.S. Customs Serv.*, 241 F.3d 1220 (9th Cir. 2001) ....... 36, 46

*Long v. U.S. Dep't of Justice*, 10 F. Supp. 2d 205 (N.D.N.Y. 1998) ............................................................................................ 26

*Manna v. U.S. Dep't of Justice*, 51 F.3d 1158 (3d Cir. 1995) .............. 25

*Milner v. Dep't of Navy*, 562 U.S. 562 (2011) ...................................... 25

*Multi Ag Media Ltd. Liab. Co. v. Dep't of Agriculture*, 515 F.3d 1224 (D.C. Cir. 2008) ................................................................... 37

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) .................................................................................. 12, 35, 39

*Nat'l Res. Def. Council v. U.S. Dep't of Defense*, 388 F. Supp. 2d 1086 (C.D. Cal. 2005) ................................................................. 44

*Patterson v. IRS*, 56 F.3d 832 (7th Cir. 1995) ........................... *passim*

*Perlman v. U.S. Dep't of Justice*, 312 F.3d 100 (2d Cir. 2002) ............. 46

*Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803 (9th Cir. 1995) ........... 36

*Roth v. U.S. Dep't of Justice*, 642 F.3d 1161 (D.C. Cir. 2011) ...... *passim*

*Rubman v. U.S. Citizenship & Immigration Serv.*, 800 F.3d 381 (7th Cir. 2015) ............................................................... 24, 50

*Schiller v. NLRB*, 964 F.2d 1205 (D.C. Cir. 1992) .............................. 26

*Schrecker v. U.S. Dep't of Justice*, 254 F.3d 162 (D.C. Cir. 2001) ............................................................................................ 9, 29

*Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657 (D.C. Cir. 2003) .................................................................................... 13, 31, 32

*Solar Sources, Inc. v. United States*, 142 F.3d 1033 (7th Cir. 1998) ............................................................................................ 51

*Pacific Fisheries v. United States*, 539 F.3d 1143 (9th Cir. 2008) ...................................................................................... 43, 44

*U.S. Dep't of Justice v. Landano*, 508 U.S. 165 (1993) ........................ 47

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989) ............................................. 26, 27, 36, 37

*United States v. Higgs*, 193 F. Supp. 3d 495 (D. Md. 2016) ......... *passim*

*United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003) ............... 3, 14, 15

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) ................................ 10

*Wiener v. FBI*, 943 F.2d 972 (9th Cir.1991) ........................................ 43

## Federal Statutes

5 U.S.C. § 552(a)(4)(B) ........................................................................ 25

5 U.S.C. § 552(b) ................................................................................. 42

5 U.S.C. § 552(b)(6) ............................................................................. 4

5 U.S.C. § 552(b)(7)(A) ........................................................................ 4

5 U.S.C. § 552(b)(7)(C) .............................................................. 4, 26, 52

5 U.S.C. § 552(b)(7)(D) ..................................................................... 52

28 U.S.C. § 2255 ........................................................................ 15, 40

## Other

Federal Rule of Civil Procedure 60(d) ............................................. 21, 40

# INTRODUCTION

The Freedom of Information Act (hereafter "FOIA") was designed to open agency action to the light of public scrutiny. An agency seeking to withhold documents requested under FOIA must justify withholding under one of FOIA's exemptions. The district court correctly rejected the government's blanket claim of withholding to protect privacy interests under Exemption 7(C), but erred in allowing withholding to protect confidential sources and information under Exemption 7(D).

When Exemption 7(C) is invoked, the court must weigh the public interest in disclosure against the potentially affected individuals' interest in privacy. The public has a substantial interest in knowing whether federal prosecutors pressured state authorities to forgo prosecuting Victor Gloria for a 1998 murder, where such a prosecution would have undermined Gloria's credibility as the star witness in an unrelated federal capital trial. The district court agreed, and correctly ruled that this interest outweighed any privacy interest affected by the disclosure, where the government made no attempt even to determine whether the potentially affected individuals are still alive.

1

The district court erred, however, in accepting the government's conclusory invocation of Exemption 7(D); the government simply did not provide any meaningful information to justify its reliance on this exemption. The government also failed to provide sufficient information to determine whether redacted portions of the documents were reasonably segregable, and the district court made no finding on that issue. This Court should remand for further proceedings as to Exemption 7(D), including in camera review of the withheld documents.

## STATEMENT OF JURISDICTION

The jurisdictional statement set forth in Appellant's Br. 1, is accurate and complete.

## COUNTER-STATEMENT OF THE ISSUES

1.      Whether the district court properly found that there was a significant public interest under FOIA in the requested disclosure, and that the government failed to make any showing that the individuals whose privacy interests it cited as a basis for opposing disclosure were still alive?

2.     Whether the district court erred in allowing the government to withhold records under Exemption 7(D) of FOIA, where the government's responses failed to justify such withholding?

## COUNTER-STATEMENT OF THE CASE

*The Proceedings Below*

Mr. Higgs was convicted of three counts of first degree murder for homicides that were committed at the Patuxent National Wildlife Refuge in Prince George's County, Maryland, in 1996. *See United States v. Higgs*, 353 F.3d 281, 289 (4th Cir. 2003), *cert. denied*, *Higgs v. United States*, 543 U.S. 999 (2004). He was sentenced to death and is now on federal death row at the United States Penitentiary in Terre Haute, Indiana.

On January 5, 2012, an investigator for Mr. Higgs's undersigned counsel sent a FOIA request to the National Park Service. Compl., Ex. A, ECF No. 1-1. Referencing the homicides, the request asked that the United States Park Police provide a "complete copy of everything pertaining to the above referenced matter." *Id.* at 1.[1] The Park Police

---

[1] The United States Park Police is a unit of the National Park Service, which is a bureau of the United States Department of the Interior. The Park Police was the lead investigative agency for the homicides.

identified a large volume of responsive documents, but stated that it would cost $11,026.00 to process the request, and that the Park Police would not proceed further without payment. Compl., Ex. B, ECF No. 1-2, at 1-2.

On May 17, 2012, undersigned counsel administratively appealed the calculation of the fee for producing the responsive documents. Compl., Ex. F, ECF No. 1-6. The following month, the appeal was granted by the Office of the Solicitor for the Department of the Interior, and counsel remitted the dramatically reduced payment. Compl., Ex.'s G, H; ECF Nos. 1-7, 1-8. Over a year later, on November 7, 2013, the Park Police sent a response stating that no documents would be released, relying on three FOIA exemptions: 5 U.S.C. § 552(b)(6); 5 U.S.C. § 552(b)(7)(A); and 5 U.S.C. § 552(b)(7)(C). Compl., Ex. J, ECF No. 1-10, at 2.

On December 6, 2013, counsel again appealed. Compl., Ex. K, ECF No. 1-11. On September 17, 2014, the Office of the Solicitor for the Department of the Interior interceded again. It remanded the matter to the Park Police to "correct procedural deficiencies," including the Park Police's failure to "actually review all of the documents that are

4

responsive to the FOIA request," before deciding that they were exempt from disclosure. Compl., Ex. M, ECF No. 1-13, at 1, 3.

On February 15, 2015, the Park Police informed Mr. Higgs that it would not disclose any records because an "enforcement proceeding" was pending, i.e., a motion for relief from judgment and other pleadings that Mr. Higgs had recently filed in the United States District Court for the District of Maryland attacking the homicide convictions. Compl., Ex. O, ECF No. 1-15, at 1. On March 11, 2015, Mr. Higgs sent a letter to the Park Police, asserting that no "enforcement proceeding" was pending since Mr. Higgs's conviction had been final since 2004, and noting that the Park Police's responses had been "characterized by excessive delay and numerous errors." Compl., Ex. R, ECF No. 1-18, at 3-4.

Having received no response to the March 11, 2015, letter, on March 16, 2016, Mr. Higgs filed a Complaint in the United States District Court for the Southern District of Indiana, where he is housed, seeking disclosure of the withheld documents pursuant to FOIA. ECF No. 1. On May 12, 2016, the Park Police responded to the March 11, 2015, letter, indicating: the Park Police had located nine boxes of

responsive documents; it had referred forty-six groups of documents that were in the possession of the Park Police but generated by outside federal agencies to those other agencies for their review; it was releasing approximately 330 pages of responsive documents; and it would "process the remaining responsive records in a series of 'rolling responses.'" Unopp. Mot. to Stay, Ex. 1, ECF No. 16-1, at 1-5. The district court granted the government's unopposed motion for a stay pending the production of additional documents. Entry & Notice, ECF No. 17.

On August 18, 2016, Plaintiff informed the court that the FBI—one of the agencies to which a referral had been made by the Park Police, and the one with the greatest volume of records—had "asserted a blanket exemption to the production of any records." Pl.'s Report, ECF No. 20, at 1. Throughout 2016 and early 2017, the Park Police produced additional documents, and reported that it was working with the other federal agencies to review documents generated by those agencies. *See* Joint Mot. for Extension of Time, ECF No. 21; Joint Statement of Issues, ECF No. 25; Joint Statement of Issues, ECF No. 27.

On April 16, 2017, Plaintiff filed a memorandum indicating that the only remaining issue in the litigation concerned the referrals of documents to other federal agencies. Pl.'s Mem. of Law, ECF No. 32, at 3. On June 7, 2017, the Park Police moved for summary judgment, arguing that it had properly processed the request and was coordinating with the federal agencies "to facilitate the release of documents to Higgs." Br. in Supp. of Def.'s Mot. for Summ. J., ECF No. 38, at 1-2.[2]

On July 31, 2017, the FBI provided some documents to Mr. Higgs, *see* FBI document production letter, PA-1-54, and thereafter filed a second declaration from FBI official David Hardy. GA13-33. Out of 738 pages of documents, ten pages were released in full; thirty-eight pages were released with redactions; 654 pages were withheld in full based on FOIA exemptions; and thirty-six pages were withheld as duplicates. GA17. At issue in this appeal are the exemptions claimed by the FBI under Exemption 7(C) for names and/or identifying information of third parties of investigative interest, FBI special agents and support

---

[2] In support of its motion for summary judgment, the government submitted declarations from Park Police FOIA Officer Janeen Tyson and FBI official David M. Hardy. Exs. in Support of Def.'s Mot. for Summ. J., ECF No. 36. Those declarations do not bear on the issues in this appeal.

personnel, non-FBI government personnel, third parties merely mentioned, third parties who provided information, and local law enforcement personnel. GA20-25. Also at issue are the exemptions claimed by the FBI under Exemption 7(D) for names, identifying information, and/or information provided by individuals under implied assurances of confidentiality. GA25-28.

On December 13, 2017, Mr. Higgs filed a cross-motion for summary judgment. Pl.'s Cross-Mot. for Summ. J., ECF No. 51. By that point, the only remaining contested issue was the "adequacy of the response from the FBI." Pl.'s Br. in Supp. of Cross-Mot. for Summ. J., PA-56. Mr. Higgs argued, inter alia, that the second Hardy declaration was insufficiently detailed, PA-64-65; that the privacy interests of at least some of the persons on whose basis the FBI claimed exemptions were likely diminished on various grounds, PA-68, 70-72; and that given the lack of specificity of the declaration, it was impossible to determine if the FBI had properly relied on Exemption 7(D) as a basis for withholding documents. PA-72. In particular, Mr. Higgs argued that the privacy interests of deceased persons are reduced, and that "unless the agency has taken 'basic steps to ascertain whether an individual

8

was dead or alive,' it is impossible to determine the significance of [any] asserted privacy interest." PA-68 (quoting *Schrecker v. U.S. Dep't of Justice*, 254 F.3d 162, 167 (D.C. Cir. 2001)) ("*Schrecker I*"); *see* PA-70 (similar).

On January 26, 2018, the government responded, asserting that the second Hardy declaration was sufficiently detailed and that the FBI had properly claimed exemptions to disclosure. Reply in Supp. of Def.'s Mot. for Summ. J., PA-79-102. The government did not respond to Plaintiff's argument that the agency had a responsibility to take basic steps to ascertain whether the persons on whose behalf it asserted a privacy interest were dead or alive. *Id.*

Plaintiff filed his reply on February 20, 2018. Pl.'s Reply in Supp. of Cross-Mot. for Summ. J., PA-103-20. Plaintiff again contended that the declaration was insufficiently detailed, PA-103-05, and that the government response was inadequate because it had taken no "steps to determine whether the individuals whose identities have been withheld are deceased or alive." PA-107.

On March 6, 2018, the district court held a telephonic hearing. Following the hearing, it ordered the government to file a complete

*Vaughn* index.[3] Minute Entry from Hr'g, ECF No. 60, at 2. On March 7, 2018, the government filed the *Vaughn* index. GA2-12.

On March 30, 2018, Plaintiff again moved for summary judgment. In support, Plaintiff again argued that some persons have reduced privacy interests, and in particular that "deceased persons have reduced privacy interests, and the agency has not explained what steps, if any, it took to determine whether the individuals whose identities have been withheld are deceased or alive." Pl.'s Suppl. Br. in Supp. of Mot. for Summ. J., PA-125. In response, the government argued that Plaintiff had failed to show a public interest in disclosure. Resp. to Pl.'s Suppl. Briefing, PA-130-31. On June 25, 2018, the district court issued an order granting in part and denying in part both parties' motions for summary judgment. SA1-34.

The parties cross-appealed. The government has challenged on appeal only that aspect of the district court's order that required the government to produce records included in what the district court

---

[3] A *Vaughn* index is an itemized index—named after the decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) —that correlates each withheld document (or portion thereof) with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification.

termed the "1999 Records" that the FBI withheld based on Exemption

7(C). Mr. Higgs appeals from that part of the district court's order that

upheld the government's withholding of documents from the 1999

records based on Exemption 7(D).

With respect to records withheld under Exemption 7(C), the

district court first analyzed whether Mr. Higgs had set forth a sufficient

public interest. SA19-22. The court acknowledged that it is "well

established that a 'prisoner's interest in attacking his own conviction is

not a public interest.'" SA19 (quoting *Hawkins v. DEA*, 347 F. App'x

223, 225 (7th Cir. 2009)). The court, however, distinguished this case

from *Hawkins* and *Baker v. F.B.I.*, 863 F.3d 682 (7th Cir. 2017),

because "Mr. Higgs' argument is more particular than a mere challenge

to his convictions." SA19. Instead, Mr. Higgs asserted a public interest

in

> shedding light on whether the federal government arranged
> with state authorities to cease pursuing homicide charges in
> a separate case involving the key cooperating witness against
> Plaintiff—in order to prevent attacks on the witness's
> credibility at Plaintiff's trial—and then improperly concealed
> those facts from Plaintiff and the public.

SA19 (quoting PA-69).

With respect to a public interest in revealing government misconduct, the district court found that Plaintiff had the burden of showing "'evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'" SA20 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174-75 (2004)). While it was unclear to the court whether Plaintiff met that burden, SA21, it recognized a separate public interest "'in the manner in which the DOJ carries out substantive law enforcement policy.'" A21 (quoting *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014)) (hereafter "*CREW*"). The district court found that this was a "significant public interest to be weighed." SA22.

The district court noted that the different categories of persons described in the government's filings have varying degrees of privacy interests, SA22-23, but that those privacy interests "have one common component—the individuals are named in files that relate to a triple murder that occurred over twenty-two years ago." SA23. While the passage of time alone does not materially affect privacy interests, death of the person whose privacy interest is asserted is a relevant factor. *Id.*

(citing *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661, 666 (D.C. Cir. 2003)) ("*Schrecker II*"). Although the "number of individuals involved" is not "sufficiently high such that it would be unduly onerous to require the Park Police to demonstrate that those individuals are alive," SA25, the declaration submitted by the government "contains no analysis of whether the individuals whose privacy interests the Park Police now asserts are dead or alive." SA24.[4] Accordingly, the district court concluded

> that the Park Police has not met its burden under Exemption 7(C) through either the Hardy declaration or the *Vaughn* Index. Given the prolonged history of this case, the Court [will] not give the Park Police a further opportunity to support its claim.

SA25.

With respect to Exemption 7(D), the government asserted that it was entitled to withhold all confidential source information based on the nature of the crime and the sources' provision of information that was "singular in nature." GA27-28. Without any additional information, and declining sub silentio Plaintiff's request that the court conduct in

---

[4] Indeed, none of the government's submissions even touched on the issue, though Plaintiff repeatedly raised it below.

camera review, the district court found that "the nature of the crime at issue and the sources' relation to the crime are both factors that weigh in favor of confidentiality in this case." SA15. Accordingly, the court ruled that all of the withholding pursuant to Exemption 7(D) was proper. SA17 & n.4.

*Victor Gloria and the Martrelle Creighton Homicide Investigation*

In the FOIA litigation, Plaintiff alleged that the public interest supporting disclosure of the withheld records related to the government's dealings with one of the witnesses at his criminal trial. Victor Gloria was the most significant witness at Plaintiff's criminal trial, testifying to a number of damaging facts. He testified that the three victims were women who were socializing at Plaintiff's apartment on the night of the killings when Plaintiff got into an argument with one of them, after which Plaintiff decided to have them killed. *Higgs*, 353 F.3d at 289-90. Gloria further testified that, after the three women left the apartment, Plaintiff got a gun and told co-defendant Willis Haynes to get the three women into Plaintiff's vehicle; drove the three women to a secluded location along Route 197 while having whispered

conversations with Haynes; and then pulled over and handed Haynes the gun with which to carry out the killings. *Id.* at 290.

At Plaintiff's trial, Gloria was both the government's key witness and the only witness with first-hand knowledge of the crime, or to allege a motive for the murders. *See id.* at 289 n.1. Plaintiff was convicted and sentenced to death. Gloria pled guilty and was sentenced to seven years' incarceration as an accessory after the fact. *Id.*

During federal post-conviction proceedings under 28 U.S.C. § 2255, Mr. Higgs's counsel learned that Gloria had been a suspect in an unrelated Baltimore murder but was not prosecuted in that case. Mr. Higgs alleged that Gloria was not charged with that homicide in order to preserve his status as the key witness against Mr. Higgs, and sought discovery and relief. The government denied that Gloria had received any undisclosed benefits; Mr. Higgs's requests for discovery and relief were denied. *Higgs v. United States*, 711 F. Supp. 2d 479, 507-09, 557 (D. Md. 2010), *aff'd*, 663 F.3d 726, 730 (4th Cir. 2011), *cert. denied*, 568 U.S. 1069 (2012).

Many years later, Plaintiff's counsel obtained a copy of the police file regarding the Baltimore murder in which Gloria had been a suspect.

That murder was the homicide of Martrelle Creighton, in the Inner Harbor area of Baltimore, on July 18, 1998. The murder was precipitated by an argument between two groups of young men about a group of young women. One of the groups of men consisted of Creighton and his friends. The other group of men consisted of Gloria, Kevin Miller, and twin brothers Keith and Kevin Scott. After the young women would not talk to anyone in Creighton's group, they struck up a conversation with Gloria's group. Creighton became upset and started yelling at the young women and Gloria's group. At that point:

> An altercation ensued. Someone in Gloria's group punched Creighton in the neck, apparently with a knife or sharp object of some kind, striking Creighton's carotid artery. More punches may or may not have been thrown; other people may have fought one another; members of Gloria's group ran away shortly thereafter and Creighton soon died of his wound.

*United States v. Higgs*, 193 F. Supp. 3d 495, 500 (D. Md. 2016).

Witness accounts of the altercation varied. Clarence White, a friend of Creighton's, told police on the night of the stabbing that a man with "light skin"—a description consistent with Gloria—"swung at Creighton, at which point Creighton 'grabbed his neck and was bleeding bad.'" Compl., Ex. P, ECF No. 1-16, at 65. David Bishop, another friend of Creighton's, stated on the night of the stabbing that he saw both a

man matching Miller's description and a "light skin dude" punch Creighton. *Id.* at 75-76. Sisters Barbara and Charnetta Bailey implicated Miller as the man who fought with Creighton and claimed that Gloria ran away before the altercation, but they had turned to walk away and had their backs turned for part of the incident. *Id.* at 80-98.

The police eventually interviewed Miller and the Scott twins. All three told the police that Gloria punched Creighton and then ran away. ECF No. 1-16, at 100-28. Miller also claimed that Gloria punched Creighton and then ran away. *Id.* at 130-48. The Baltimore Police never interviewed Gloria.

The United States Park Police—the lead investigative agency for the Route 197 murders—became aware of Gloria's involvement in the Creighton murder on February 2, 1999, as indicated by a note in the Baltimore Police file. ECF No. 1-16, at 153. The Baltimore Police file contains other notes suggesting contact with an FBI special agent described as the "Case Agent for Victor Gloria," *id.* at 161, and indicating that at some point, a member of the Baltimore Police Department traveled, or at least planned to travel, to the office of the

United States Park Police, presumably in order to meet with a Park Police officer regarding Gloria. *See id.* at 169 (undated handwritten note with the words "Directions to U.S. Park Police" written across the top).

The Creighton file further reveals that the chief homicide prosecutor in the Baltimore City State's Attorney's Office, Mark Cohen, was in direct communication with Assistant United States Attorney Deborah Johnston, who prosecuted Plaintiff at trial. A note documenting a Johnston-Cohen conversation, authored by Cohen on April 12, 1999, recounts that Johnston suggested to Cohen that Miller and the Scott twins might be falsely implicating Gloria. The note also shows that Cohen was inclined to charge Gloria, but deferred his decision until after he received "background" information from federal agents regarding the unrelated investigation into the Route 197 homicides. Cohen's note states in full:

4/12/99

Bobby

Re Victor Gloria

1   I spoke to AUSA Deborah Johnston concerning Victor Gloria on 4/12/99. She told me that Gloria pled guilty to AAF in triple murder case + that his plea agreement is sealed. The two Co-Δ's Willis Haynes + Dustin Higgs have trial date

18

of 2-7-2000. Because plea agreement is sealed, she could not tell me if Gloria is going to testify agt. Co-Δ.

2   AUSA Johnston stated that it is possible that Co-Δ's - Scott, Scott + Miller are blaming Gloria because they are friends of Δ's in her case especially Haynes. She suggested we talk to

  ①   Joe Green Park Police

    B - [phone number]

  ②   Brad Sheafe - FBI

    B - [phone number]

  -they could give us background on case

3   After we talk to these officers, we will decide on next course of action, that is, either writ Gloria + charge him or talk to his lawyer about the case.

4   Please call me

Mark Cohen

ECF No. 1-16, at 171.[5]

Shortly thereafter Detective Robert Patton noted in a report that "[p]er the U.S. Attorney's office Victor Gloria had plead guilty and is slatted to testify against his co-defendants, Willis Haymes and Dustin Higgs who are reportedly are close friends with the Scott brothers and Kevin Miller." ECF No. 1-16, at 173 (text reproduced as it appears in

---

[5] The note is addressed to "Bobby," presumably Baltimore Homicide Detective Robert Patton, the lead investigator.

original). Detective Patton's report continued by noting that the United States Attorney's Office conveyed to Baltimore authorities its theory, ostensibly based on the unrelated federal investigation, that Miller and the Scott twins were falsely implicating Gloria as a form of retaliation due to their friendship with Haynes and Petitioner:

> The U.S. Attorney's Office was advised by A.S.A. Cohen that Kevin Miller and the Scott brothers had implicated Victor Gloria in the captioned Homicide. The U.S. Attorney reported that during course of their Investigation they received information that the Scott brothers and Kevin Miller were close friends with Victor Gloria's co-defendant, Willis Haymes and Dustin Higgs and were aware that Victor Gloria was a Federal witnesses and planned to testify against Hymes and Higgs. The U.S. Attorney believes that the implication of Victor Gloria by Kevin Miller and the Scott brothers is their form of retaliation against Gloria.

*Id.* at 174 (text reproduced as it appears in original).[6]

---

[6] Miller and the Scott twins were not implicated in the Route 197 murders. Thus:

> It seems highly doubtful that AUSA Johnston would have known through the course of the *Higgs/Haynes* investigation that Haynes and Higgs knew the Scott twins and Miller and therefore was able to deduce the Scotts and Miller were conspiring against Gloria on behalf of Haynes/Higgs. . . . [I]t seems plausible that the AUSA's knowledge of the friendship and theory of the conspiracy came from her questioning Gloria himself about the Creighton murder.

*Higgs*, 193 F. Supp. 3d at 511 n.12.

Baltimore authorities embraced this theory, expressing their belief that "the A.U.S.A. is on track with their [sic] assumption." *Id.* They did so although that theory fails to account for the fact that White—a friend of the victim who would not have shared the motive to frame Gloria purportedly held by Miller and the Scott twins—also initially described a man matching Gloria's description as having punched Creighton in the neck. *See id.* at 65.

Although the Baltimore Police file contains abundant evidence that additional communications with federal authorities occurred (i.e., handwritten notes with names and phone numbers, driving directions, and a directive to speak with federal agents to discuss the federal case), the district court denied Petitioner's request for discovery regarding the content of such communications, and his request for relief under Federal Rule of Civil Procedure 60(d). *Higgs*, 193 F. Supp. 3d at 513-14.

## SUMMARY OF ARGUMENT

The government sought to withhold numerous documents requested by Plaintiff, in whole or in part, on the basis of FOIA Exemptions 7(C) and 7(D). The government had the burden of demonstrating that it was entitled to rely on the claimed exemptions.

*Patterson v. IRS*, 56 F.3d 832, 836 (7th Cir. 1995). The district court considered numerous submissions made by the parties, including a lengthy declaration from FBI official David Hardy, GA13-33, and a *Vaughn* index, GA2-12.

Having carefully reviewed all these submissions, the district court found that the government was not entitled to rely on Exemption 7(C). First, it found that the substantial public interest in the manner in which the Department of Justice carries out substantive law enforcement policy would be promoted by the requested disclosures. SA21-22. Second, it found that the government had failed to make any showing that the individuals whose privacy interests it purported to protect under Exemption 7(C) were still alive. In light of the government's failure to make such a showing over the protracted history of the case, the district court ordered the government to produce unredacted versions of documents it had withheld under Exemption 7(C).

The government does not dispute that the district court had an adequate factual basis for its decision. Accordingly, it must show clear error by the district court, but fails to do so. As to the public interest at

stake, the government argues the uncontested principle that a FOIA plaintiff's private interest in disclosure cannot overcome a privacy interest. The government, however, fails to show any error, much less clear error, in the district court's finding that there is a public interest in disclosure in this case. As to the privacy interest, the government complains that it was not given an opportunity to show or argue that the individuals in question are still alive. In fact, however, the issue was raised numerous times during the litigation; the government had every opportunity to respond, but chose not to do so. After four years of government delay in responding to the FOIA request and two years of litigation, the district court did not err, much less clearly err, in holding the government to the inadequate showing already made in its submissions.

As to Exemption 7(D), the government's submissions failed to supply the district court with an adequate factual basis to decide which, if any, of the government's withholdings and redactions were justified on the basis of implied assurances of confidentiality. Because the government's submissions provided an inadequate factual basis, this Court should reverse and remand.

## STANDARD OF REVIEW

When summary judgment has been granted in a FOIA case, this Court ordinarily determines whether the district court had an adequate factual basis for its decision, then reviews the decision for clear error. *See* Appellant's Br. 14-15 (citing *Rubman v. U.S. Citizenship & Immigration Serv.*, 800 F.3d 381, 388 (7th Cir. 2015)). If the district court did not have an adequate factual basis for its decision, this Court will remand for the district court to conduct further proceedings. *Patterson*, 56 F.3d at 840.

Despite having cited *Rubman*, the government indicates that other decisions from this Court have reviewed the legal question de novo. Appellant's Br. 15 (citing *In re Wade*, 969 F.2d 241, 245 (7th Cir. 1992); *Kaganove v. EPA*, 856 F.2d 884, 886 (7th Cir. 1988), *abrogated on other grounds by Milner v. Dep't of Navy*, 562 U.S. 562, 567 (2011)). In *Enviro Tech International, Inc. v. EPA*, 371 F.3d 370 (7th Cir. 2004), this Court reiterated that it typically first reviews the sufficiency of the factual basis for the district court's decision and then reviews for clear error. *Id.* at 373. While this Court acknowledged that there had been some disagreement on this point in its prior decisions, *id.* at 374 (citing

*Wade* and *Kaganove*), it concluded that "[r]eview for clear error remains the norm for FOIA cases in this circuit." *Id.* Mr. Higgs submits that the standard set forth in *Enviro Tech* is controlling.

## ARGUMENT

I. The District Court Properly Found That the Government Failed to Meet Its Burden of Showing That It Was Entitled to Withhold Documents Under Exemption 7(C).

The purpose of the FOIA is "to facilitate public access to Government documents," and the statute reflects "a general philosophy of full agency disclosure." *Manna v. U.S. Dep't of Justice*, 51 F.3d 1158, 1163 (3d Cir. 1995) (internal quotation marks omitted). The statute "was designed to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). As such, the Supreme Court has "insisted that the exemptions be given a narrow compass," *Milner v. Dep't of Navy*, 562 U.S. 562, 571 (2011) (quoting *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989)), and there is a "strong presumption in favor of disclosure," *Ray*, 502 U.S. at 173.

The agency has the burden of showing that its withholding is lawful. *See* 5 U.S.C. § 552(a)(4)(B); *Patterson*, 56 F.3d at 836 ("The

government agency bears the burden of justifying its decision to withhold the requested information."). It also bears the burden of establishing that a claimed exemption applies. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989). As part of meeting that burden, when an agency relies on exemptions from disclosure, it is typically required to prepare a *Vaughn* index that correlates each withheld document (or portion thereof) with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification. *See id.* at 827; *Schiller v. NLRB*, 964 F.2d 1205, 1209-10 (D.C. Cir. 1992). Such an index allows courts "to make a rational decision [about] whether the withheld material must be produced without actually viewing the documents themselves . . . [and] to produce a record that will render [its] decision capable of meaningful review on appeal." *Dellums v. Powell*, 642 F.2d 1351, 1360 (D.C. Cir. 1980). It also helps to "create balance between the parties." *Long v. U.S. Dep't of Justice*, 10 F. Supp. 2d 205, 209 (N.D.N.Y. 1998).

FOIA's Exemption 7(C) allows an agency to withhold law enforcement information the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5

U.S.C. § 552(b)(7)(C). Under the balancing test that applies to

Exemption 7(C), the agency must first identify and evaluate the privacy

interest, if any, implicated in the requested records. *E.g.*, *Akin, Gump,*

*Strauss, Hauer & Feld, L.L.P. v. U.S. Dep't of Justice*, 503 F. Supp. 2d

373, 383 (D.D.C. 2007). Where a protected privacy interest is identified,

courts then engage in a balancing of the privacy interest against the

public interest in disclosure. For the interest in disclosure to be

balanced, it must relate to the FOIA's "core purpose" of "shed[ding] light

on an agency's performance of its statutory duties." *Reporters Comm.*,

489 U.S. at 773.

> A. *The District Court Recognized That Individuals Named in the Documents Could Have Protected Privacy Interests and Correctly Found That the Government Failed to Meet Its Burden to Show That Those Individuals Were Still Alive.*

Contrary to the government's assertion, *see* Appellant's Br. 17, the

district court expressly recognized that individuals named in the

requested documents could have protected privacy interests, and that

those interests do not go away with the passage of time. SA22-23. Once

such an individual dies, however, the individual's privacy interest is

diminished. *Davis v. Dep't of Justice*, 460 F.3d 92, 97-98 (D.C. Cir.

2007); *see* SA23-24.

It is undisputed that the documents at issue go back twenty years and more, and that the government made no attempt below either to show that any of the individuals are alive, or to argue that it would be unduly burdensome for the government to determine whether the individuals are alive or dead, or even to argue that there was a basis for presuming that they are still alive.[7] On this critical issue, the government made no factual showing, no legal argument, nothing. "Given the prolonged history of this case," the district court accordingly found that the government "has not met its burden under Exemption 7(C)," and declined to give the government "a further opportunity to support its claim." SA25.

The government complains, however, that the district court should not have ruled that it had failed to meet its burden "without first providing the agency the opportunity to conduct [an] inquiry," Appellant's Br. 22, into whether the individuals at issue are alive or dead. That complaint rings hollow.

---

[7] The government now asserts that it would be burdensome in general for the FBI to make such an inquiry. Appellant's Br. 20-21. But it did not make such an assertion below, and the district court did not believe the inquiry would have been onerous on the facts of this case. *See* SA25.

As set forth in the Counter-Statement of the Case at 3-5, in response to the original FOIA request, the Park Police dragged its feet and committed repeated errors, forcing Plaintiff after four years to file a lawsuit in order to obtain a response that even remotely complied with the disclosure requirements of the FOIA.[8] As the lawsuit progressed, the issues were narrowed down to the FBI's response to the referral from the Park Police and, in particular, the exemptions to disclosure claimed by the FBI.

On December 13, 2017, after reviewing the government's filings, including the second Hardy declaration, Plaintiff filed a cross-motion for summary judgment. In support, Plaintiff argued inter alia that the privacy interests of deceased persons are reduced, and that "unless the agency has taken 'basic steps to ascertain whether an individual was dead or alive,' it is impossible to determine the significance of [any] asserted privacy interest." PA-68 (quoting *Schrecker I*, 254 F.3d at 167); *see* PA-70 (similar). In his subsequent pleadings, Plaintiff renewed that argument. *See* PA-107, PA-125.

---

[8] *See* SA9 ("[T]he Park Police's initial series of responses could be interpreted as impeding Mr. Higgs' pursuit of the requested records rather than complying in good faith with FOIA.").

The government filed several pleadings after Mr. Higgs first raised the issue in December 2017. *See* PA-79-102; the *Vaughn* index, GA2-12; PA-121-29. In none of those filings did the government make any factual or legal assertions regarding whether any of the individuals were deceased, and how that would affect such individuals' privacy interests. In particular, the government did not make any of the arguments it makes here, i.e., that the FBI reasonably presumed that the "individuals identified in the records here remain alive," Appellant's Br. 21, or that the FBI should be allowed to "conduct[] a reasonable investigation and appl[y] routine assumptions as to longevity." *Id.* at 23. Moreover, even after the district court ruled, the government did not ask the district court to alter the judgment or for relief from the judgment to give it a chance to cure its failures.

Because the government failed to raise any of these contentions below, it should be held to have waived them. *See, e.g.*, *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1179-80 (D.C. Cir. 2011) ("[H]aving failed to raise the argument in the district court . . . , the government is barred from doing so for the first time on appeal.") (citation omitted); *Citizens Ins. Co. of Am. v. Barton*, 39 F.3d 826, 828-29 (7th Cir. 1994)

(argument not raised below waived for purposes of appeal). Even if the government's argument is not waived, the government has failed to show that the district court erred in finding that the government had not met its burden, much less that it clearly erred.

The government asserts that before the district court ruled, it "was required to first allow the FBI to investigate whether the individuals were alive and to defer to reasonable presumptions about lifespan in the absence of contrary evidence." Appellant's Br. 20 (citing *Schrecker II*, 349 F.3d at 665). Neither *Schrecker II* nor any other authority we are aware of supports the cited proposition.

In *Schrecker II*, faced with responsive documents that included over 24,000 pages, *id.* at 664, the agency searched available databases in an effort to determine whether any of the named persons were deceased, consulted available institutional knowledge, and then applied a hundred-year rule (that persons born less than a hundred years ago were still alive) for persons whose death was not otherwise determined. *Id.* at 662-64. In *Schrecker II*, the district court found that the government had "taken the necessary basic steps to ascertain whether an individual was dead or alive." *Id.* at 661 (internal quotation marks

omitted). The court of appeals affirmed. *Id.* at 663-65. Nothing in

*Schrecker II* supports the government's contention that it may sit on its

hands until and unless ordered by the court to conduct an investigation.

The government had ample opportunity to respond to Plaintiff's

argument that individuals whose privacy interests the government

relied on as a basis for withholding documents could be deceased. As set

forth in the Counter-Statement of the Case, the district court ordered

the government to file a *Vaughn* index after the issue had been raised,

and the government did so. The government never requested time to do

what it now says is required—conduct an FBI investigation to

determine if any of the relevant individuals are deceased. It never

offered any legal ground why the district court should not accept

Plaintiff's argument, or why the district court should not proceed to a

final disposition of the case, as it clearly contemplated doing.

In these circumstances, the district court did not err—much less

clearly err—in concluding that the government "has not met its burden

under Exemption 7(C)." SA25. This is particularly true "[g]iven the

protracted history of this case." *Id.* The Park Police essentially

stonewalled the initial FOIA request for four years. After the instant

suit was filed, the parties and the court narrowed the issues and brought the case to a resolution. The government now asks for a remand so that it can take steps it had every opportunity to take during the litigation below, when the issue was timely and repeatedly raised by Plaintiff. A remand for further proceedings and further delay is unnecessary and unwarranted.

### B. The District Court Correctly Found That There Is a Public Interest in Disclosure.

There is no actual disagreement about the legal principles governing whether there is a public interest in disclosure, as the district court explained:

> As both parties agree, deciding whether the exemption found at Exemption 7(C) applies "requires balancing the privacy interests of the affected persons against the public interest in the disclosure of the information." "The Supreme Court has repeatedly held that the only public interest that is relevant to this balancing test is the shining of a light on an agency's performance of its statutory duties."

SA18 (citations omitted).

Further, the district court accepted and applied the principle that a "'prisoner's interest in attacking his own conviction is not a public interest.'" SA19 (quoting *Hawkins*, 347 F. App'x at 225). Neither Plaintiff nor the district court relied on such a personal interest as a

basis for disclosure. Thus, the government's arguments that such a personal interest is insufficient, *see* Appellant's Br. 25-27, are irrelevant. Like the district court, this Court should focus on the public interest asserted in this case, which, as the district court found, is substantial.

Plaintiff sought to "shine a light" on the Department of Justice's performance of its duties, specifically on its interactions with investigators and prosecutors in the State of Maryland, who were investigating a separate homicide at which the key witness against Mr. Higgs—Victor Gloria—was present, and in which Gloria was implicated. This separate investigation into the homicide in Baltimore of Martrelle Creighton was active from July 29, 1998—the date of the homicide—through much of 1999. *See United States v. Higgs*, 193 F. Supp. 3d 495, 499-505 (D. Md. 2016).

Well after Mr. Higgs's capital murder trial and initial post-conviction proceedings were completed, he obtained files from the Baltimore Police Department revealing that in 1999—as the Higgs case was being prepared for trial—there were numerous contacts referencing Gloria between the federal authorities and the state authorities. *See id.*

at 503-04. The contents of those files raised the question whether the federal government encouraged and induced state authorities to cease pursuing homicide charges against Gloria—in order to prevent attacks on Gloria's credibility at Plaintiff's capital trial—and then improperly concealed those facts from Plaintiff and the public. Plaintiff sought disclosure under FOIA to "shine a light" on that question; the district court correctly held that there is a substantial public interest in such disclosure.

Plaintiff's FOIA request implicated two well-recognized public interests: (1) informing the public about potential government and prosecutorial misconduct, *see, e.g.*, *Favish*, 541 U.S. at 174-75 (allegations of government misconduct); *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 13 (D.C. Cir. 2011) (finding public interest in "shedding light on the scope and effectiveness of cell phone tracking as a law enforcement tool"); *Roth*, 642 F.3d at 1175-76 (assuming existence of public interest in whether government complied with *Brady* and noting that the fact that the plaintiff "had been sentenced to the ultimate punishment strengthens the public interest"); *Cooper-Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 554 (5th Cir. 2002) (public interest in

monitoring specific OSHA investigation was sufficient to overcome privacy interests); *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001) (finding public interest in integrity of agency investigation); *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 811-12 (9th Cir. 1995) (public interest in names of subjects of investigatory interest because disclosure would shed light on FBI actions and to what extent FBI "abused its law enforcement mandate by overzealously investigating a political protest movement"); *Hidalgo v. FBI*, 541 F. Supp. 2d 250, 255-56 (D.D.C. 2008) ("[T]he public has a strong interest in ascertaining the truth of . . . serious allegations of government misconduct . . . ."); and (2) "matters of substantive law enforcement policy," *Reporters Comm.*, 489 U.S. at 766 n.18. That public interest is promoted where, for example, disclosure "would likely reveal much about the diligence of the [agency's] investigation and the DOJ's exercise of its prosecutorial discretion." *CREW*, 746 F.3d at 1093.

The district court relied on the second type of public interest in concluding that disclosure was justified. SA21-22. Significantly, the public interest in "matters of substantive law enforcement" is present "independent of any impropriety," and hence "[w]hether government

impropriety might be exposed in the process is beside the point."

*CREW*, 746 F.3d at 1095; *accord ACLU*, 655 F.3d at 14.

The government contends that the district court's public interest analysis is erroneous in two respects: (1) it would allow a prisoner to do an end run around the principle that attacking a specific conviction does not serve the public interest; and (2) Plaintiff purportedly cannot carry the evidentiary burden required under *Favish* for claims of the public interest of exposing government misconduct. Neither argument withstands scrutiny.

1.      While courts will not allow disclosure under FOIA for the purpose of assisting a private person to obtain information that could help her challenge her conviction, it is equally clear that where there is a public interest, the identity of the requester and the uses that the requester might make of the information are irrelevant. *See Reporters Comm.*, 489 U.S. at 771 (the "identity of the requesting party has no bearing on the merits of his or her FOIA request"); *Multi Ag Media Ltd. Liab. Co. v. Dep't of Agriculture*, 515 F.3d 1224, 1231 n.2 (D.C. Cir. 2008) (although plaintiff "may not want the information to check up on the government itself, the use for which the requester seeks the

information is not relevant for purposes of determining the public interest"). Furthermore, the fact the plaintiff has been "sentenced to the ultimate punishment strengthens the public interest." *Roth*, 642 F.3d at 1176.

In the absence of some showing that the district court erred in identifying the public interest, then, the government's argument carries no weight. The most the government attempts to do in that regard is to draw factual distinctions between this case, on the one hand, and *CREW* and *ACLU*, on the other. Appellant's Br. 32. No doubt, the interests involved in the three cases are not identical. However, the government's argument that there is no public interest in knowing whether the Department of Justice prevailed on state authorities not to charge Gloria with murder in a separate case, in order to preserve Gloria's credibility as a witness against Mr. Higgs in a capital homicide prosecution, is unconvincing.

2. As discussed above, and as the district court found, where the public interest at issue is in disclosing "matters of substantive law enforcement policy," then the evidentiary burden set forth in *Favish*

does not apply. SA21-22. The government has shown no error in that ruling, much less clear error, as it is consistent with *CREW* and *ACLU*.

Even if Plaintiff were required to meet the evidentiary burden of *Favish*, however, he could do so. *Favish* held that when the public interest asserted is to show government misconduct, the "requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174. Plaintiff meets that standard.

Plaintiff alleged in federal post-conviction proceedings that the federal government arranged with state authorities to cease pursuing homicide charges in a separate case against the key cooperating witness against Plaintiff—in order to prevent attacks on the witness's credibility—and then concealed those facts from Plaintiff and the public. The court that considered those allegations found that Plaintiff had "obtained considerable evidence to support his motion." *Higgs*, 193 F. Supp. 3d at 514 n.15. Where, as here, an investigation has "uncovered several potential improprieties by [agency] staff," *Aguirre v. SEC*, 551 F. Supp. 2d 33, 56 (D.D.C. 2008), the *Favish* standard is satisfied. *See Hidalgo v. FBI*, 541 F. Supp. 2d 250, 255-56 (D.D.C. 2008)

(disclosure required "where the plaintiff has made enough of a showing to raise questions about possible agency misconduct").

In the federal post-conviction proceedings, the Maryland district court ultimately ruled that Plaintiff had failed to prove by "clear and convincing evidence" that the government had committed a fraud on the court.[9] *Higgs*, 193 F. Supp. 3d at 506. To the extent that the government is arguing that Plaintiff's failure to persuade the Maryland district court that he had proved a fraud on the court by clear and convincing evidence means that he has also failed to satisfy the *Favish* standard, it is mistaken.

By its own terms, the *Favish* standard—evidence that would "warrant a belief by a reasonable person" that the alleged impropriety *might* have occurred—is obviously a far lower standard than the "clear and convincing evidence" standard applied by the Maryland district court. Indeed, that court's finding that Plaintiff had "obtained considerable evidence" to support his motion would appear to satisfy

---

[9] Mr. Higgs was required to meet the exacting standard for fraud on the court under Federal Rule of Civil Procedure 60(d) because the government failed to disclose its interactions with state authorities in the Creighton investigation throughout Mr. Higgs's original post-conviction litigation under 28 U.S.C. § 2255.

*Favish*. Courts have found *Favish*'s "evidence sufficient to warrant belief that impropriety might have occurred" and like standards satisfied based on similar showings. *See, e.g.*, *Roth*, 642 F.3d at 1180 (reasonable person could believe that other men were real killers and FBI was "withholding information that could corroborate that theory"); *Aguirre*, 551 F. Supp. 2d at 56 (*Favish* standard met where an investigation "uncovered several potential improprieties by [agency] staff"); *Hidalgo*, 541 F. Supp. 2d at 255-56 (disclosure required "where the plaintiff has made enough of a showing to raise questions about possible agency misconduct"); *Bennett v. DEA*, 55 F. Supp. 2d 36, 42 (D.D.C. 1999) (disclosure required where Plaintiff uncovered information "suggesting extensive government misconduct, and the information sought is necessary to confirm whether Plaintiff's findings are backed by the record").

Here, the facts set forth in the Counter-Statement of the Case support a reasonable belief that misconduct might have occurred, as the Maryland district court acknowledged by stating that Plaintiff had "obtained considerable evidence" of such misconduct. *Higgs*, 193 F. Supp. 3d at 514 n.15. Because there is a significant public interest in

this case, the government has not satisfied its "burden of justifying withholding" under Exemption 7(C). *See Am. Civil Lib. Union of N. Cal. v. U.S. Dep't of Justice*, 880 F.3d 473, 483 (9th Cir. 2018).

> C. *Disclosure of the Identities of the Named Individuals Would Further the Public Interest in Disclosure.*

Finally, the government argues that Plaintiff has failed to show that disclosure of the identities of individuals named in the records would further the public interest in disclosure. Appellant's Br. 32-33. The government speculates that the identities of *some* of the individuals named in the records might be irrelevant to the public interest in government misconduct, *id.*, as if this were a basis for denying all disclosure. But it is the government that has always been in possession of the relevant records, and that has made no attempt at any point to make such distinctions. The government had the burden to do so, and the district court correctly held it had failed to meet that burden.

It is in fact likely that disclosure of the identities of individuals would further the public interest. It is difficult to know for sure, however, because the government also failed to satisfy its burden to show that all reasonably segregable portions of the records had been provided. 5 U.S.C. § 552(b). The governing principles regarding

segregability were discussed by the Ninth Circuit in *Pacific Fisheries v.*

*United States*, 539 F.3d 1143 (9th Cir. 2008):

> The burden is on the agency to establish that all reasonably
> segregable portions of a document have been segregated and
> disclosed. 5 U.S.C. § 552(a)(4)(B), (b). Courts must apply that
> burden with an awareness that the plaintiff, who does not
> have access to the withheld materials, is at a distinct
> disadvantage in attempting to controvert the agency's claims.
> The agency can meet its burden by offering an affidavit with
> reasonably detailed descriptions of the withheld portions of
> the documents and alleging facts sufficient to establish an
> exemption. The affidavits must not be conclusory. Rather they
> should disclose as much information as possible without
> thwarting the claimed exemption's purpose.

*Id.* at 1148-49 (citations and internal quotation marks omitted); *see also*

*Wiener v. FBI*, 943 F.2d 972, 979 (9th Cir.1991) (holding that the FBI's

explanation was not sufficiently specific when it "provide[d] no

information about particular documents and portions of documents that

might be useful in contesting nondisclosure").

The agency's analysis of segregability below, *see* GA31-32, is

conclusory. Because the second Hardy declaration is conclusory and

does not adequately demonstrate that all reasonably segregable,

nonexempt information has been disclosed, the government failed to

meet its burden. *See, e.g.*, *Ctr. for Biological Diversity v. OMB*, No. 07-

4997, 2008 WL 5129417, at *9 (N.D. Cal. Dec. 4, 2008) (agency

improperly used "boilerplate segregability language without a 'detailed justification' for the withholding of the portions of exempt records"); *Lawyers' Comm. for Civil Rights v. U.S. Dep't of the Treasury*, No. 07-2590, 2008 WL 4482855, at *10 (N.D. Cal. Sept. 30, 2008) (agency improperly relied on conclusory assertion that there was no reasonably segregable information).

The agency contended below that the second Hardy declaration is not conclusory because, if the entire document is read, it states that the agency conducted a detailed review and concluded that it had "released everything that could reasonably be segregated." PA-99. But that is the archetype of a conclusory statement. *See Nat'l Res. Def. Council v. U.S. Dep't of Defense*, 388 F. Supp. 2d 1086, 1106 (C.D. Cal. 2005) (burden not met where agency relied on a "boilerplate statement . . . , which conclusorily asserts [that] all reasonably segregable information has been released"). As it stands, the record is "insufficient because it did not provide [the requester] or the district court with specific enough information to determine whether the [agency] had properly segregated and disclosed factual portions of those documents that the [agency] claimed were exempt." *Pac. Fisheries*, 539 F.3d at 1149.

The agency's showing is particularly inadequate when the overlapping exemptions are considered in connection with the claim of segregability. Consider how this could work with a hypothetical document that contains direct evidence of agency misconduct. Assume that there is a document that reads as follows:

> SA John Doe asked local law enforcement agent Richard Roe not to prosecute Victor Gloria because Gloria is an important witness for Doe.

The agency would redact all of the names in the document based on Exemptions 6 and 7(C) to protect the named individuals' privacy. The result would look like this:

> SA ███████ asked local law enforcement agent ███████ not to prosecute ███████ because █████ is an important witness for ███.

At that point, the agency could decide that the non-redacted material was not "reasonably segregable," and withhold the entire document, citing (b)(6)-1, 2, 6, and (b)(7)(C)-1, 2, 6.

This illustrates the problems with the agency's response. First, Doe and Gloria would have diminished privacy interests if either is deceased and because Doe is a law enforcement officer who may have

committed misconduct, and Gloria was convicted of a crime.[10] Second, the public interest in the document, including the names of the persons in the document, is high because it constitutes evidence of agency misconduct, i.e., what the agency is "up to." Third, once the agency uses the "reasonably segregable" concept to withhold the entire document, neither Plaintiff nor the reviewing court has any idea what the document contained, or whether the evidence of agency misconduct is a strong enough public interest to overcome the privacy interest of any of the persons involved.

Because the government failed to carry its burdens to show that it was entitled to rely on Exemption 7(C) and to provide all reasonably segregable portions of the records, the district court's ruling requiring the government to produce unredacted versions of all documents it withheld under Exemption 7(C) should be affirmed.

---

[10] *See ACLU*, 655 F.3d at 7 (persons convicted of crime have reduced privacy interest); *Perlman v. U.S. Dep't of Justice*, 312 F.3d 100, 107 (2d Cir. 2002), *vacated*, 541 U.S. 970, *reinstated on remand*, 380 F.3d 110 (2d Cir. 2004) (employee's rank and the evidence of wrongdoing against the employee are among the relevant factors in conducting the Exemption 7(C) balancing analysis); *Lissner*, 241 F.3d at 1223 (privacy interests of public law enforcement officers reduced, particularly to the extent that records might disclose official misconduct).

II.    The Government Failed to Meet Its Burden to Prove That Exemption 7(D) Applies.

The government withheld sixteen pages of records in whole or in part based at least in part on Exemption 7(D). GA4-5, 9. However, the documents that were released in part were so heavily redacted as to be essentially meaningless. *See, e.g.*, PA-16-32, 44-47. Because the district court did not have an adequate factual basis for its decision, this Court should reverse and remand. *Patterson*, 56 F.3d at 840.

The agency invoking Exemption 7(D) bears the burden of proving that it applies. *Roth*, 642 F.3d at 1184. Where an agency claims—as here—that a source had an implied assurance of confidentiality, it must prove the expectation of confidentiality based on the circumstances of the specific case. *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 179 (1993). Under *Landano*, the District of Columbia Court of Appeals has explained:

> [I]t is not enough for the agency to claim that all sources providing information in the course of a criminal investigation do so on a confidential basis. Instead, the [agency] must "point to more narrowly defined circumstances that . . . support the inference" of confidentiality. When no express assurance of confidentiality exists, courts consider a number of factors to determine whether the source nonetheless "spoke with an understanding that the communication would remain confidential." These factors include "the character of the crime

47

> at issue," "the source's relation to the crime," whether the source received payment, and whether the source has an "ongoing relationship" with the law enforcement agency and typically communicates with the agency "only at locations and under conditions which assure the contact will not be noticed."

*Roth*, 642 F.3d at 1184 (quoting *Landano*, 508 U.S. at 172, 179).

In order to establish that the source is actually entitled to be treated as confidential, the agency must do more than "state blandly that the source's relationship to the crime permits an inference of confidentiality." *Church of Scientology Int'l v. Dep't of Justice*, 30 F.3d 224, 234 (1st Cir. 1994). Here, all that the government did was to "state blandly" that the nature of the crime and the source's relationship to it permit an inference of confidentiality. *See* GA4, 5, 9 (asserting that reports documented interviews of "confidential source[s] who provided information with an implied assurance of confidentiality"); GA27-28 (asserting that based on nature of crime and sources' relation to it, "it is reasonable for the FBI to infer these individuals provided information with an expectation of confidentiality."). Those statements were the same kind that the court found insufficient in *Church of Scientology*.

Of the factors discussed in *Roth*, the only factor established by the government's submissions is the nature of the crime. With respect to the sources' relation to the crime, Mr. Hardy declared that the sources

"had access to and/or knowledge of" the targets of a triple murder investigation. GA27. The information provided is simply insufficient. If the information provided was "the kind that 'could be traced to a particular source if released to the public,'" *King & Spalding LLP v. U.S. Dep't of Health and Human Serv.*, 330 F. Supp. 3d 477, 494 (D.D.C. 2018) (quoting *Labow v. U.S. Dep't of Justice*, 831 F.3d 523, 532 (D.C. Cir. 2016)), that would weigh in favor of implied confidentiality. Absent more facts, however, this Court "is in no position to evaluate the validity" of the agency's claim or the "proximity of the source to the crime." *Id.*

The government has not asserted either that any of its sources were paid, or that they had any kind of ongoing relationship with the FBI. Given that the government has presented no evidence to establish either of those factors, they do not "weigh in favor of a finding of implied confidentiality here." *Id.*

The district court nevertheless allowed the withholding of documents under Exemption 7(D) with no further showing by the government, based solely on the "nature of the crime at issue and the sources' relation to the crime." SA15. The district court erred because it

lacked an "adequate factual basis for the decision rendered." *Rubman*, 800 F.3d at 388 (internal quotation marks and citations omitted).

As explained above, the government has relied on conclusory statements to support its contention that not only the identities of the informants but also almost all of the information they supplied may be withheld under Exemption 7(D). Because the government failed to provide sufficient information for the district court to reach an appropriate decision on this issue, the district court erred in granting summary judgment on this issue. *See King & Spalding*, 330 F. Supp. 3d at 496 (finding withholding improper where agency failed to justify invocation of Exemption 7(D)).

Moreover, as discussed in § I.C, *supra*, the government failed to provide information from which it could be determined whether any exempt portions of the documents are reasonably segregable. The district court did not review any of the documents in camera, and made no finding as to segregability. For this reason also, remand is required. *See Patterson*, 56 F.3d at 840 ("[a] district court that simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof, errs.") (quoting *Krikorian v. Dep't of*

*State*, 984 F.2d 461, 467 (D.C. Cir. 1993)) (brackets in *Patterson*; internal quotation marks and citation omitted).

Because the agency failed to justify withholding under Exemption 7(D), this Court should reverse and remand for further proceedings. In the district court, Plaintiff repeatedly requested that the district court conduct in camera review of the documents withheld under Exemption 7(D). *See* PA-72, PA-112, 118. In camera review would likely enable the district court to determine whether any withholding under Exemption 7(D) is appropriate. *See Roth*, 642 F.3d at 1185-86 (in camera review revealed that some documents were properly withheld, while others were not); *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1038-39 (7th Cir. 1998) (district court had adequate factual basis for decision based on its in camera review).

## CONCLUSION

For the reasons set forth above, this Court should affirm the district court's decision with respect to the exemptions claimed under 5 U.S.C. § 552(b)(7)(C), and reverse and remand for further proceedings with respect to the exemptions claimed under 5 U.S.C. § 552(b)(7)(D).

Respectfully submitted,

/s/ Matthew Lawry
Matthew Lawry
Aren Adjoian
Cristi Charpentier
Elizabeth Hadayia
Assistant Federal Defenders
Federal Community Defender Office
Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Stephen H. Sachs
Wilmer Cutler Pickering Hale
& Dorr, LLP
5 Roland Mews
Baltimore, MD 21210
410-532-8405

Dated: December 3, 2018

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2)(B) and Seventh Circuit Rule 32(c) because it contains 10,329 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5),the type style requirements of Fed. R. App. P. 32(a)(6), and Seventh Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Century.

/s/ Matthew C. Lawry
Matthew C. Lawry

## CERTIFICATE OF COMPLIANCE

Pursuant to Circuit Rule 30(d), I certify that the materials required by Circuit Rule 30(a) are included in Defendant-Appellant's short appendix, and the materials required by Circuit Rule 30(b) are included in the separate appendix submitted by Plaintiff-Appellee/Cross Appellant.

/s/ Matthew Lawry
Matthew Lawry

Dated:  December 3, 2018

## CERTIFICATE OF SERVICE

I, Matthew Lawry, hereby certify that on December 3, 2018, I electronically filed the foregoing brief with the Clerk of Court for the Seventh Circuit by using the appellate CM/ECF system. I further certify that I will cause 15 paper copies of the brief to be received by the Clerk within seven days of the Notice of Docket Activity generated upon acceptance of the brief, in compliance with Seventh Circuit Rule 31(b) and ECF Procedure (h)(2).

Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Matthew C. Lawry
Matthew C. Lawry