Nos. 18-2826, 18-2937

———————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

———————————————

DUSTIN JOHN HIGGS,
*Plaintiff-Appellee/Cross-Appellant,*

v.

UNITED STATES OF AMERICA,
*Defendant-Appellant/Cross-Appellee.*

———————————————

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:16-cv-96, Hon. Jane Magnus-Stinson, Chief J.

———————————————

**APPENDIX TO APPELLEE'S PRINCIPAL AND RESPONSE BRIEF**

Leigh Skipper, Esq.
Chief Federal Defender
Matthew Lawry
Aren Adjoian
Cristi Charpentier
Elizabeth Hadayia
Assistant Federal Defenders
Federal Community Defender Office
Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Stephen H. Sachs
Wilmer Cutler Pickering Hale
& Dorr, LLP
5 Roland Mews
Baltimore, MD 21210
410-532-8405

Dated: November 30, 2018

# **Index to Appendix**

FBI document production letter, July 31, 2017 ...................................................................PA-1

Brief in Support of Cross-Motion for Summary Judgment, December,13, 2017..................PA-55

Reply in Support of Defendant's Motion for Summary Judgment, January 26, 2018 ..........PA-79

Plaintiff's Reply In Support of Cross-Motion for Summary Judgment
(Without attachments), February 20, 2018 .........................................................................PA-103

Plaintiff's Supplemental Brief in Support of Motion for Summary Judgment, March 30,
2018......................................................................................................................................PA-121

Response to Plaintiff's Supplemental Briefing, April 13, 2018 .........................................PA-130



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

July 31, 2017

*VIA FEDERAL EXPRESS*

MATTHEW C. LAWRY
FEDERAL COMMUNITY DEFENDER OFFICE
EASTERN DISTRICT OF PENNSYLVANIA
601 WALNUT STREET
CURTIS CENTER, SUITE 545-WEST
PHILADELPHIA, PA 19106

> *Dustin John Higgs v. United States Park Police; U.S.*
> *District Court for the Southern District of Indiana,*
> *Terre Haute Division* (Civil Action No.: 2:16-cv-96)
> Subject: HIGGS, DUSTIN JOHN

Dear Mr. Lawry,

The enclosed documents were referred to the FBI from the U.S. Park Police in connection with civil action no. 16-cv-0096. The documents were reviewed under the Freedom of Information Act (FOIA), Title 5, United States Code, Section 552. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Explanation of Exemptions:

| **Section 552** | | **Section 552a** |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☑ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

**738 pages** were reviewed and **47 pages** are being released.

☐ Documents were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

    ☐ This information has been referred to the OGA(s) for review and direct response to you.
    ☐ We are consulting with another agency. The FBI will correspond with you regarding this information when the consultation is completed.

☑
    In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists.

PA-1

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist. Enclosed for your information is a copy of the Explanation of Exemptions.

Although your request is in litigation, we are required by 5 USC § 552 (a)(6)(A) to provide you the following information concerning your right to appeal. You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within sixty (60) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s). If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☑ See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

Enclosure

The FBI withheld in full a total of 691 pages, 36 of which were duplicates of other processed pages and 655 pages were withheld in accordance with statutory exemptions. Please refer to the Deleted Page Information Sheet for additional information.

To minimize costs to both you and the FBI, duplicate copies of the same document were not processed.

This material is being provided to you at no charge.

PA-2

<center>**EXPLANATION OF EXEMPTIONS**</center>

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)  related solely to the internal personnel rules and practices of an agency;

(b)(3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)  geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)  information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,  or reduce crime or apprehend criminals;

(k)(1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)  required by statute to be maintained and used solely as statistical records;

(k)(5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

<div align="right">FBI/DOJ</div>

<div align="right">PA-3</div>

FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
Civil Action # 16-cv-0096

Total Withheld Page(s) = 655

| Bates Page Reference "HIGGS-FBI" | Reason for Withholding (i.e., exemptions with coded rationale, duplicate, sealed by order of court, etc.) |
|---|---|
| 6-23 | (b)(7)(E)-1 |
| 27 | (b)(6)/(b)(7)(C)-1 |
| 28 | (b)(6)/(b)(C)-1, 3 |
| 29 | (b)(6)/(b)(7)(C)-1 |
| 30 | (b)(6)/(b)(C)-1, 3 |
| 31 | (b)(6)/(b)(7)(C)-1 |
| 36-37 | (b)(6)/(b)(7)(C)-1, 4, 5; (b)(7)(D)-1 |
| 41 | (b)(6)/(b)(7)(C)-5; (b)(7)(D)-1 |
| 42 | (b)(6)/(b)(7)(C)-4, 5; (b)(7)(D)-1 |
| 44-45 | (b)(6)/(b)(7)(C)-4; (b)(7)(D)-1 |
| 46 | Duplicate of 41 |
| 47 | Duplicate of 43 |
| 48 | Duplicate of 42 |
| 49 | Duplicate of 28 |
| 50 | (b)(6)/(b)(7)(C)-1 |
| 52-77 | (b)(6)/(b)(7)(C)-2, 4; (b)(7)(E)-2 |
| 78 | (b)(6)/(b)(7)(C)-4 |
| 82-89 | (b)(6)/(b)(7)(C)-2, 4; (b)(7)(E)-2 |
| 91-96 | (b)(6)/(b)(7)(C)-2, 4; (b)(7)(E)-2 |
| 97 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 98-99 | (b)(6)/(b)(7)(C)-2, 4; (b)(7)(E)-2 |
| 101 | (b)(6)/(b)(7)(C)-2, 4; (b)(7)(E)-2 |
| 103-104 | (b)(6)/(b)(7)(C)-2, 4; (b)(7)(E)-2 |
| 106-112 | (b)(6)/(b)(7)(C)-2, 4; (b)(7)(E)-2 |
| 114-117 | (b)(6)/(b)(7)(C)-2, 4; (b)(7)(E)-2 |
| 118-119 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 120 | Duplicate of 80 |
| 121 | Duplicate of 90 |
| 122 | Duplicate of 90 |
| 123 | Duplicate of 89 |
| 124 | Duplicate of 88 |
| 125 | Duplicate of 87 |
| 126 | Duplicate of 81 |
| 127 | Duplicate of 83 |
| 128 | Duplicate of 86 |
| 129 | Duplicate of 85 |
| 130 | Duplicate of 84 |
| 131 | Duplicate of 90 |
| 135-137 | (b)(6)/(b)(7)(C)-2, 4; (b)(7)(E)-2 |
| 142-154 | (b)(6)/(b)(7)(C)-2, 4; (b)(7)(E)-2 |

| | |
|---|---|
| 158-205 | (b)(6)/(b)(7)(C)-2, 4; (b)(7)(E)-2 |
| 207-208 | Duplicate of 32-33 |
| 209 | Duplicate of 39 |
| 211-212 | (b)(6)/(b)(7)(C)-1, 4, 5; (b)(7)(D)-1 |
| 216-226 | (b)(6)/(b)(7)(C)-2, 4; (b)(7)(E)-2 |
| 227 | Duplicate of 216 |
| 228-229 | Duplicate of 32-33 |
| 230-266 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 267 | Duplicate of 264 |
| 268-281 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 282 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 283 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 289 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 290 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 291-293 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 294 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 295-298 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 299-300 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 301 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 302 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 303-318 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 319 | (b)(6)/(b)(7)(C)-2, 4; (b)(7)(E)-2 |
| 320-334 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 335 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 336-339 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 340 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 341 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 342 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 343-350 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 351 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 352-355 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 356 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 357 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 358 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 359-362 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 363-364 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 365-389 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 390 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 391 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 392 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 393 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 394-395 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 396 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 397 | (b)(6)/(b)(7)(C)-2, 4; (b)(7)(E)-2 |
| 398 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 399 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 400-409 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 410 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 411-416 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 417-419 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |

| | |
|---|---|
| 420 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 421 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 422-424 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 425 | (b)(6)/(b)(7)(C)-6; (b)(7)(E)-2 |
| 426 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 427-428 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 429 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 430-444 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 445 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 446-447 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 448 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 449 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 450 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 451 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 452 | (b)(6)/(b)(7)(C)-2, 4; (b)(7)(E)-2 |
| 453 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 454 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 455-462 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 463 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 464 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 465 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 466 | (b)(6)/(b)(7)(C)-4, 6; (b)(7)(E)-2 |
| 467 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 468 | (b)(6)/(b)(7)(C)-4, 6; (b)(7)(E)-2 |
| 469-492 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 494 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 495 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 496-497 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 498-500 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 501-504 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 505 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 506-509 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 510 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 511-513 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 514-515 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 516 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 517 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 518-519 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 520 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 521 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 522-523 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 524 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 525 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 526-539 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 540 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 541-544 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 545-546 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 547-552 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 553 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 554 | Duplicate of 550 |

| | |
|---|---|
| 555 | Duplicate of 551 |
| 556 | Duplicate of 552 |
| 557 | Duplicate of 553 |
| 558 | Duplicate of 545 |
| 559 | Duplicate of 546 |
| 560 | Duplicate of 547 |
| 561-562 | Duplicate of 548-549 |
| 563 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 564 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 565-568 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 569-570 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 571 | Duplicate of 445 |
| 572 | Duplicate of 446 |
| 573-574 | Duplicate of 447-448 |
| 575-588 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 589 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 590 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 591 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 592-607 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 608 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 609-628 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 629 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 630-648 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 649 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 650-660 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 661 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 662-666 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 667 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 668-694 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 695-696 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 697-724 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 725 | (b)(6)/(b)(7)(C)-3, 4; (b)(7)(E)-2 |
| 726-733 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |
| 735-738 | (b)(6)/(b)(7)(C)-4; (b)(7)(E)-2 |

xxxxxxxxxxxxxxxxxxxxxxx
X    Deleted Page(s)
X X   No Duplication Fee
X X    For this Page
xxxxxxxxxxxxxxxxxxxxxxx

*[handwritten: Box 2 ___]*

FD-302 (Rev. 3-10-82)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription     11/21/96

[____] black male, dob [____]
telephone [____]
[____] was interviewed by SA [____]
United States Park Police. [____] had been
contacted at his place of employment, [____]
[____] and agreed to be interviewed.
[____] was taken to the FBI Office located at 11700 Beltsville
Drive, Suite 200, Calverton, Md. where the interview was
conducted.

b6 -1, 2, 3
b7C -1, 2, 3

[____] was advised that the nature of the interview was
the investigation regarding the murders of three females in
Laurel, Maryland on 1/27/96. [____] advised he has no knowledge
of the murders and could only recall watching the news media
accounts on television. [____] stated he did not know the three
females and did not have any contact with them. [____] was
requested to recall where he was at the time of the murders and
he advised that on 1/27/96 [____]
[____] explained that on this date [____]
[____]
said he remembers seeing the television reports regarding the
murders on Super Bowl Sunday, in view of the fact he had won a
$50 dollar bet on the game. [____] refused to advise
interviewing personnel the identity of [____]
the identities of any individuals who might have stayed with him.
[____] could not provide any further information regarding his
whereabouts on 1/26/96, 1/27/96 and 1/28/96, again stating [____]
[____]

b6 -1
b7C -1

[____] was requested to explain his relationship with
Dustin Higgs. [____] stated he met Higgs a long time ago and
described Higgs as [____] was asked to
clarify what he meant by this and advised it had to do with
business. [____] said he was friends with Higgs when they both
resided in the Laurel, Maryland area and would not expand on
their relationship. [____] stated Higgs [____]

b6 -1
b7C -1

Investigation on   11/21/96   at   Laurel, Md.    File #   70A-BA-88402

by   SA [____]      Date dictated   11/21/96

b6 -2
b7C -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

HIGGS-FBI-1

Box 2 3216

(Rev. 11-15-83)

70A-BA-88402

b6 -1
b7C -1

Continuation of FD-302 of [                    ] , On ___11/21/96___ , Page ___2___

[        ] and he drove a dark colored Mazda MPV. [        ] said [    ]   b6 -1, 4
[                                                    ] was requested to   b7C -1, 4
identify any of Higgs' associates and he could only name one
individual named [                    ] was asked if he knew an
individual named [                ] and he replied he has not.

[            ] stated he has not had any contact with Dustin   b6 -1
Higgs since Higgs was arrested in the spring of 1996.   b7C -1

[            ] was shown a book of photographs collected by the
U.S. Park Police and was requested to review these photographs
and determine if he has any knowledge of the persons depicted.
Subsequent to his review, [        ] advised the following:

    Photograph #29 - [        ] stated this individual is named b6 -1, 4
[        ] and he works at a store in [                              ]   b7C -1, 4

    Photograph #43 - [        ] stated this individual is [      ]

    Photograph #D - [        ] stated this individual is named b6 -1, 4
[                                                        ] Dustin b7C -1, 4
Higgs.

    It should be noted that [        ] did not select the   b6 -1
photograph of Dustin Higgs or the photograph of himself, which   b7C -1
were included in the photograph book.

    [          ] told interviewing personnel that [          ]   b6 -1
[                                              ] said he was [          ]   b7C -1
and could not identify the individual [                            ]
[                        ] advised [                            ]
[          ] was just attempting to scare the individual residing in
the house and if [        ] wanted him dead, he would have been dead.
[          ] would not further describe any more details regarding the
shooting.

    [          ] was asked if he was responsible for the murders   b6 -1
and advised he was not and again stated he has no knowledge   b7C -1
whatsoever of the crime or the identities of the responsible
persons.

HIGGS-FBI-2

Box2 3217

FD-302a (Rev. 11-15-83)

70A-BA-88402

b6 -1
b7C -1

Continuation of FD-302 of [ ] On  11/21/96  Page  3

Following the interview, [ ] was taken back to his    b6 -1, 2
place of employment by SA [ ]                          b7C -1, 2

HIGGS-FBI-3

βℑΗ3/4

To: [ ]
[ ] CRIMINAL INVESTIGATIONS BRANCH
UNITED STATES PARK POLICE
1100 OHIO DRIVE, SW
WASHINGTON, D.C. 20242

Date: February 28, 1996

b6 -3
b7C -3

FBI File No.

Lab No.
70A-BA-88402

60208011 S EA GJ
Reference: Communication dated February 8, 1996  60214004 S EA

Your No.    W34 (NCR-PPCB)/
            2243-96/MCL#009
Re: UNKNOWN SUBJECT(S):
    TAMIKA BLACK,
    MISHANN CHINN,
    TANJI JACKSON, - VICTIMS,
    DEATH INVESTIGATION

b6 -3
b7C -3

Specimens received: Specimens personally delivered by [ ]
[ ] (U.S. Park Police) on February 7, 1996, under
cover of letter dated February 8, 1996 (60208011 S EA
GJ).

Q1    Bullet (item 09)

Q2    Bullet (item 40)

Q3    Bullet (item 63a)

Q4    Bullet (item 63b)

Specimen personally delivered by [ ]                    b6 -3
(U.S. Park Police), on February 14,1996 (60214004 S EA):.  b7C -3

Q5    Bullet (item 18)

1 - FBI, Baltimore (70A-BA-88402)

Page 1                                        (over)

This Report Is Furnished For Official Use Only

HIGGS-FBI-4
PA-11

60208011 S EA
60214004 S EA


<u>RESULT OF EXAMINATION</u> :

<u>FIREARMS</u>:

Specimens Q1 through Q5 are five (5) lead wadcutter bullets like those loaded into .38 Special caliber cartridges of Remington Arms Company manufacture. These specimens are similar to each other in all remaining observable physical characteristics.  The Q1 through Q5 bullets have been fired from the barrel(s) rifled with five (5) grooves, right twist. The similarity of the rifling class characteristics present in these bullets indicates that they could have been fired from the same barrel.  However, due to a lack of corresponding individual microscopic marks (striations) it could not be definitely established whether specimens Q1 through Q5 were all fired from the same barrel or from different barrels having the same rifling class characteristics.

The Q1 through Q5 bullets are being retained in the Laboratory for future comparison purposes.  Accordingly, any firearms, fired ammunition components, or unfired cartridges which are recovered and considered suspect may be submitted for comparison with specimens Q1 through Q5.

Among the firearms which produce rifling impressions like those present in the Q1 through Q5 bullets are .38/357 caliber revolvers manufactured for Smith & Wesson, Ruger, Taurus, ALFA, Harrington & Richardson, Iver Johnson, INA, Sportarms and U.S. Revolver.

<u>METALS ANALYSIS</u>:

Metals analysis examinations are continuing and you will be subsequently advised of the results.

<u>DISPOSITION OF EVIDENCE</u>:

The submitted evidence will be retained in the Laboratory until completion of all examinations.


Page 2

HIGGS-FBI-5
PA-12

Date:

To: SAC, Baltimore

FBI File No. 70A-BA-88402

Lab No.    60730011 S EA BG HE

Reference:    Communication dated June 22, 1996

Your No.    70A-BA-88402

Re:    UNSUB (S) ;
TAMIKA DENISE BLACK - VICTIM (DECEASED) ;
MISHANN DANIA CHINN - VICTIM (DECEASED) ;
TANJI YVONNE JACKSON - VICTIM (DECEASED) ;
PATUXENT WILDLIFE RESEARCH CENTER,
Beltsville, Maryland;
1/27/96;
CGR - MURDER

Specimens received:    August 7, 1996

Specimens:

ITEMS RECOVERED FROM 1986 FORD TAURUS D.C. TAGS          b6 -4
[_____] VIN#[_____]          b7C -4

Q199-200    Clothing items from rear seat (item 4)

Q201-203    Clothing items from trunk (item 7)

Q204    Clothing item from front seat (item 10)

Q205    Vacuuming from front passenger seat area
        (item 8)

Q206    Vacuuming from front driver's seat area
        (item 9)

Q207    Vacuuming from  passenger's rear seat area
        (item 11)

Q208    Vacuuming from driver's rear seat area
        (item 12)

HIGGS-FBI-24
PA-13

Q209    Vacuuming from trunk (item 13)

K19     Sample of seat fabric (item 14)

K20     Sample of floor mat (item 15)

K21     Sample of carpet (item 16)

K22     Sample of door fabric (item 17)

K23     Sample of trunk mat (item 18)

K24     Sample of trunk wheel well (item 19)

K25     Floor mat from driver's side floor (item 20)

K26     Stain from rear passenger side floor (item 21)

ALSO SUBMITTED ITEMS:

Contents from front driver's seat area (item 1)

Contents from front passenger's seat area (item 2)

Contents from rear driver's seat area (item 3)

Contents from passengers rear seat area (item 5)

Contents from trunk (item 6)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** PRIORITY                    **Date:** 11/18/1996

**To:** Laboratory            **Attn:** DNA Analysis Unit
                                        Latent Fingerprint Sec.

**From:** Baltimore
         Squad 9
         **Contact:**                                           b6 -2
                                                                b7C -2

**Approved By:**

**Drafted By:**

**Case ID #:** 70A-BA-88402   (Pending)

**Title:** Unsubs;
        Tamika Black - Victim(Deceased)
        Mishann Chinn - Victim(Deceased)
        Tanji Jackson - Victim(Deceased);
        CGR-Homicide;
        OO:BA

### ARMED AND DANGEROUS

**Synopsis:** To ascertain status of Baltimore's request to conduct appropriate Laboratory Division examinations.

**Details:** On 8/12/96, Baltimore sent two(2) teletypes to the Laboratory Division requesting the following examinations be conducted:

  1) To conduct the appropriate examinations on victim's underwear in order to determine if any foreign body fluids were present.

  2) To place victim's outer clothing on mannequins and take color photographs. Forward 8x10 developed copies to Baltimore in order that they can be displayed to witnesses.

  It is requested that the Laboratory Division advise Baltimore of the current status of the requested examinations.

♦♦

1

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription ___10/15/96___

[          ] black male, [          ]  b6 -4, 5
[          ]  b7C -4, 5
telephone-not in service, was interviewed at the residence [          ]

[          ]  b6 -5

[          ] was advised that the nature of the inquiry was  b7C -5
his relationship with Dustin Higgs.

[          ] stated that he is currently employed at the

[          ] He has been employed in this capacity for the
last [          ] years. [          ] resides at the above referenced  b6 -4, 5
address with [          ] who is employed [          ]  b7C -4, 5

[          ] said he first met Higgs approximately [          ]
[          ] and was introduced to him by [          ]
explained that [          ] Higgs were both attending Montgomery
County Community College and that is where they met. Higgs was  b6 -4, 5
residing on Piney Branch Road [          ]  b7C -4, 5
Higgs, attending night clubs and parties [          ] stated
that Higgs' friends included [          ] advised
Higgs was not employed and believes he was being supported by his
parents.

[          ] said that two years ago, Higgs moved to the  b6 -4, 5
Laurel, Maryland area [          ]  b7C -4, 5
Since Higgs' move, [          ] has only seen Higgs once every two to
three months. [          ] said the last time he saw Higgs was at a

[          ] has heard through the news media that Higgs was  b6 -5
involved in the murders of the three young females earlier in the  b7C -5
year. He has not heard any information from Higgs' friends and
associates that Higgs was responsible for the murders. [          ] has

---

Investigation on __10/15/96__ at _Beltsville, Md._ File # _70A-BA-88402_

SA [          ]  b6 -2, 3
by [          ] Date dictated _10/15/96_  b7C -2, 3

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;

HIGGS-FBI-32
PA-16

302a (Rev. 11-15-83)

7OA-BA-88402                                                b6 -5
                                                            b7C -5

                                                            b6 -4, 5
                                                            b7C -4, 5

not spoken to Higgs [                    ], but advised that
[          ] has spoken to Higgs on the telephone, stating Higgs has
contacted [      ] from jail. [      ] does not know the context of
these conversations.
                                                            b6 -4, 5
                                                            b7C -4, 5

          Regarding Higgs' friends, [        ] advised he met [        ]
                                                            He
met [        ] through Higgs and has heard [      ] is no longer in the
country.

          [        ] did not know the three girls who were murdered   b6 -4, 5
and does not have any information that Higgs might have known  b7C -4, 5
them. [      ] said Higgs drove a Mazda MPV, dark blue in color [      ]
[                                        ] Higgs in possession of a
handgun, described as a small silver revolver. [      ]

          [        ] advised he has no knowledge of the murders and    b6 -5
could not provide any information as to whom investigators could       b7C -5
contact in order to obtain additional leads. [      ] stated if any
information became available, he would contact interviewees.

          [                ] provided [      ] with a book containing   b6 -3, 5
various photographs. [        ] was requested to review this book and  b7C -3, 5
select any individuals he has knowledge of.

          [        ] provided the following as he reviewed the book:

                    #5 - Higgs
                    #11 - [        ] friend of Higgs                    b6 -4, 5
                    #33 -                                               b7C -4, 5
                    #40 - No name, but has seen [            ]
                    #53 - [      ]
                    #12 - No name, friend of Higgs at college
                    #29 - [      ]                                      b6 -4, 5
                    #28 -                                               b7C -4, 5

          Following the review, the interview was terminated and
[          ] was requested to have [        ] contact the FBI or the Park
Police.

. (Rev. 10-6-95)

- 1 -

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription    03/18/1999

originally of                                    Southeast          b6 -5
Washington, D.C., most recently of                                 b7C -5

was interviewed at the U.S. District
Courthouse in Greenbelt, Maryland.  After being advised of the
identity of the interviewing agent and the nature of the interview,
he provided the following information:                    b6 -4. 5
                                                          b7C -4, 5
                                                          b7D -1

                                                          b6 -4, 5
          met              approximately two weeks afte  b7C -4, 5
arriving                                                  b7D -1

Investigation on    03/18/1999    at  Greenbelt, Maryland

File #  70A-BA-88402/166E-BA-91840              Date dictated   03/18/1999

by    SA                                                  b6 -2
                                                          b7C -2

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

HIGGS-FBI-34
PA-18

70A-BA-88402/166E-BA-91840

b6 -5
b7C -5

Continuation of FD-302 of _____ , On  03/18/1999 , Page   2

b6 -4
b7C -4

b6 1, 5
b7C 1, 5
b7D -1

As a result of this relationship, information about
past criminal activity would often come up in the course of
conversations

b6 1, 5
b7C 1, 5
b7D -1

b6 1, 4, 5
b7C 1, 4, 5
b7D -1

HIGGS-FBI-35
PA-19

70A-BA-88402/166E-BA-91840

b6 -5
b7C -5

·Ⴎtion of FD-302 of _____ , On 03/18/1999 , Page ___5___

At the conclusion of the interview, [____] was advib6 -1, 3, 5
AUSA [_____] that if he ever felt he was in danger, b7C -1, 3, 5
immediately inform his attorney, who would then contact the proper
authorities. Additionally, [____] was advised that, [_____]

Also present during the interview were [_____] attorney,
[_____], AUSAs [_____]
and U.S. Park Police Detectives [_____]

b6 -3, 4, 5
b7C -3, 4, 5



# FBI FACSIMILE

# COVERSHEET

**PRECEDENCE**

☐ Immediate
☐ Priority
☑ Routine

**CLASSIFICATION**

☐ Top Secret
☐ Secret
☐ Confidential
☐ Sensitive
☑ Unclassified

Time Transmitted: 1300
Sender's Initials: ___
Number of Pages: 5
(including coversheet)

To: _USPP_
Name of Office

Date: 4/12/99

b6 -3, 5
b7C -3, 5

Facsimile Number: _____

Attn: _____
Name          Room    Telephone

From: _FBI AMOC_
Name of Office

Subject: [_____] 302 For Your REVIEW & COMMENTS

Special Handling Instructions: As PASS To [_____]

b6 -2, 3
b7C -2, 3

Originator's Name: SA [_____]        Telephone: [_____]

Originator's Facsimile Number: [_____]

Approved: ___

Brief Description of Communication Faxed: _____

HIGGS-FBI-39
PA-21

~~1746~~

-1-

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    03/29/1999

a black male born    b6 -5

, formerly of    b7C -5

   b7D -1

After being advised of the identity of the interviewing agent and the nature of the interview, he provided the following information:

   b6 -5
   b7C -5
   b7D -1

   b6 -4, 5
   b7C -4, 5
   b7D -1

Investigation on    03/25/1999    at    Lompoc, California

File #    70A-BA-88402/166E-BA-91840      Date dictated    03/29/1999

by    SA        b6 -2
   b7C -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

HIGGS-FBI-40
PA-22

70A-BA-88402/166E-BA-91840

b6 -5
b7C -5

Continuation of FD-302 of _____ , On 03/25/1999 , Page 4

b6 -4, 5
b7C -4, 5
b7D -1

At the conclusion of the interview, [_____] was advised
that, [

b6 -2, 5
b7C -2, 5
b7D -1

Also present during the interview was U.S. Park Police

b6 -3
b7C -3



# FBI FACSIMILE
# COVERSHEET

PRECEDENCE          CLASSIFICATION
☐ Immediate          ☐ Top Secret      Time Transmitted: _____
☐ Priority           ☐ Secret          Sender's Initials: _____
☐ Routine            ☐ Confidential    Number of Pages: __21__
                     ☐ Sensitive       (Including Cover Page)
                     ☐ Unclassified

To: _____ U.S. Park Police _____     Date: _1/23/97_
        (Name of Office)

                                                                    b6 -3
Facsimile Number: _____                                   b7C -3

    Attn: _____
         (Name    Room   Telephone)

From: _PROGRAMS SUPPORT SECTION - INVESTIGATIVE AND OPERATIONAL_
        (Name of Office)                    ASSISTANCE UNIT

Subject: _____

_____

_____

Special Handling Instructions: _____

_____

Originator's Name: [          ]          Telephone: [          ]

Originator's Facsimile Number: [          ]                          b6 -2
                                                                    b7C -2

Approved: _____

HIGGS-FBI-51
PA-24

1 WALES RECORD(S) FOUND, TO GENERATE NCIC INQUIRY
PAGE TO DESIRED ID RECORD, PRESS THE ENTER KEY
************************************************* P/

BLACK, TAMIKA D

OPERATOR'S PERMIT RECORD                    PERMIT: 579960541
NAME   : BLACK, TAMIKA D                       DOB: 07/23/76  SEX: F  SSN: 579960054
ADDRESS: 100 TUCKERMAN ST NW                WASHINGTON
EXPIRES: 02/24/99   TYPE: REGULAR

b6 -4
b7C -4



HIGGS-FBI-79
PA-25



# PROGRAMS SUPPORT SECTION

**Date:** 2/6/96          **FAX:** [ ]          b6 -2
                                                 b7C -2

**From:** Front Office _____
　　　.Communications Unit _____
　　　Investigative & Operational
　　　　Assistance Unit ✓
　　　Statistical Unit _____
　　　Education/Training Services Unit _____

**Contact:** [ ] _____    **Phone:** [ ]

**Number of pages:** 14 (including cover sheet)

**To:** [ ]          b6 -3
                      b7C -3

STILL MISSING
DEC 95 - JAN 96
ON VEHs, SOCs.

b6 -2
b7C -2

TITLE: LOG 384

NAME:

ROOM/EXT: 11704    DATE: 2/ 5/96

TOTAL P.02

O 64   16595885 95213     1LO1Q 3    09CQXKI.QW   .DCNPDOOP1.NAM/HIGGS, DUSTIN JOHN     .DOB/031072.RAC/B.SEX/M.SOC/130567
                   354

64   16595887 95213     1LO1Q 3    09CQXKI
                   DCNPDOOP1
                   NO NCIC WANT SOC/130587354
                   NO NCIC WANT DOB/031072 NAM/HIGGS, DUSTIN JOHN SEX/M RAC/B

b6 -2, 4
b7C -2, 4
b7E -2

IGGS-FBI-81

TIT    E: LOG 384                          NAME:[     ]          ROOM/EXT: 11704[    ]  DATE:  2/ 6/96  b6 -2
                                                                                                    b7C -2

O 6      02424318 96020         1L01Q3578    1CZ040Y.QW   .DCMPDOOA1.NAM/HIGGS,DUSTIN      .DOB/031072.RAC/B.SEX/M.OLN/130567
                                354

                                                                                                    b6 -4
                                                                                                    b7C -4
                                                                                                    b7E -2

                                                                                                    b6 -2
                                                                                                    b7C -2

FILE: LOG 384                              NAME:[     ]          ROOM/EXT: 11704/6242   DATE:  2/ 6/96

    54   02480620 96020         1L01Q3578    1CZ047F.QW   .DCMPDOOA1.NAM/HIGGS,DUSTIN      .DOB/031072.RAC/B.SEX/M.SOC/130567
         354
                                                                                                    b6 -4
                                                                                                    b7C -4
                                                                                                    b7E -2

HIGGS-FBI-90



# PROGRAMS SUPPORT SECTION

Date: 3/5/95        FAX

From: Front Office
Communications Unit
Investigative & Operational
Assistance Unit
Statistical Unit
Education/Training Services Unit

Contact:        Phone:

Number of pages (including cover sheet):

To:

STOP PUTTING
DEC 95 & JAN 96
ON VERY SOON.

This is it



# PROGRAMS SUPPORT SECTION

Date: 2/12/96                FAX: [redacted]          b6 -2
                                                       b7C -2

From: Front Office _____
      Communications Unit _____
      Investigative & Operational
      Assistance Unit ✓
      Statistical Unit _____
      Education Training Services Unit _____

Contact: [redacted]         Phone: [redacted]

Number of pages: 2 (including cover sheet)

To: [redacted]                                         b6 -3
                                                       b7C -3

HIGGS-FBI-102
PA-30

*144 completed 2/15/96*



# PROGRAMS SUPPORT SECTION

**Date:** 2/15/96          **FAX:** [                    ]          b6 -2
                                                                    b7C -2

**From:** Front Office _____
         Communications Unit _____
         Investigative & Operational
            Assistance Unit ✓
         Statistical Unit _____
         Education/Training Services Unit _____

**Contact:** [              ]     **Phone:** [              ]

**Number of pages:** 2 (including cover sheet)

**To:** [              ]                                              b6 -3
                                                                    b7C -3

*HAVE A NICE DAY-O!*

HIGGS-FBI-105
PA-31

FD-xxx (x/1/91)



# FBI FACSIMILE COVERSHEET

**PRECEDENCE**
- ☐ Immediate
- ☐ Priority
- ☐ Routine

**CLASSIFICATION**
- ☐ Top Secret
- ☐ Secret
- ☐ Confidential
- ☐ Sensitive
- ☐ Unclassified

Time Transmitted: _____
Sender's Initials: _____
Number of Pages: __5__
(Including Cover Page)

To: __U.S. PARK POLICE__
(Name of Office)

Date: __2/27/96__

b6 -3
b7C -3

Facsimile Number: _____

Attn: _____
(Name    Room    Telephone)

From: __INVESTIGATIVE AND OPERATIONAL ASSISTANCE UNIT__
(Name of Office)

Subject: _____

_____

_____

Special Handling Instructions: _____

b6 -2
b7C -2

Originator's Name: [_____] _____    Telephone: [_____]

Originator's Facsimile Number: [_____] _____

Approved: _____                    FBI/DOJ

```
NN      NN  CCCCCCCCC   IIIIIIIIII   3333333333      11      3333333333   2222222222    0000000
NNN     NN  CCCCCCCCCC  IIIIIIIIII   333333333333    111     333333333333 22222222222  0000000000
NNNN    NN  CC       CC     II       33        33    1111    33        33 22        22 00      0000
NN NN   NN  CC              II                 33      11              33           22 00      00 00
NN  NN  NN  CC              II                 33      11              33           22 00   00 00
NN   NN NN  CC              II              3333       11           3333           22  00   00  00
NN    NNNN  CC              II                33       11             33          22   00   00
NN     NNN  CC       CC     II       33       33       11     33       33 22        22 00      00
NN      NN  CCCCCCCCCC  IIIIIIIIII   333333333333  111111111  333333333333 22222222222 0000000000
NN      NN  CCCCCCCCC   IIIIIIIIII   3333333333    111111111  3333333333   2222222222   00000000
```

+ROOM 1302    NCI31320 LESSUNCIC        X END    J0B02078+        END      END      END      END      END      END      END
*12.36.37 PM 31 JAN 96 PRT2-HQ01 EXEC-HQ01 1.1.1 P400    *       END      END      END      END      END      END      END

```
JJJJJJJJJ   2222222222   000000000  7777777777  8888888888              XX       XX
JJJJJJJJJJ  2222222222   000000000  7777777777  8888888888              XX       XX
        JJ     22      22 00       0000 77     77  88      88              XX       XX
        JJ         22       00   00  00   77     88      88              XX     XX
        JJ         22    00    00  00   77       88      88              XX   XX
        JJ         22    00    00  00   77       88888888                XX
        JJ      22       00    00  00   77       88888888                XX  XX
JJ      JJ     22         000     00      77      88      88              XX    XX
JJ      JJ     22         000      00     77      88      88              XX    XX
JJJJJJJJJ   2222222222   000000000  77  888888888888            XX       XX
 JJJJJJJ    2222222222    0000000   77   8888888888             XX       XX
```

```
BBBBBBBBBB  IIIIIIIIII   NN      NN                              8888888888
BBBBBBBBBBBB IIIIIIIIII   NNN     NN                             8888888888
BB       BB     II        NNNN    NN                             88        88
BB       BB     II        NN NN   NN                             88        88
BBBBBBBBBB      II        NN  NN  NN                             88888888
BBBBBBBBBB      II        NN   NN NN                             88888888
BB       BB     II        NN    NNNN                             88        88
BB       BB     II        NN     NNN                             88        88
BBBBBBBBBBBB IIIIIIIIII   NN      NN                             8888888888
BBBBBBBBBB  IIIIIIIIII   NN       N                              8888888888
```

HIGGS-FBI-132

```
XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS
XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS
XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS
XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS
```

DATE:          31 JAN 96  AT  12:36:27

DEPARTMENT:  DFAULT:JDL*

JOB ID:      299     REPORT NO. 99

FILE ID:

INPUT PROCESSING TIME:    00:00:02

OUTPUT PROCESSING TIME:   00:00:15

REPORT COMPLETION CODE:   0

    PAGES TO BIN:          6

    PAGES TO TRAY:         1

    PAPER PATH HOLES:      0

    LINES PRINTED:         168

    ONLINE IDLE (SEC):     0

    BLOCKS READ:           0

    BLOCKS SKIPPED:        0

    RECORDS READ:          107

    DJDE RECORDS READ:     1

    MAXIMUM COPY COUNT:    1

    OVERPRINTS:            0

    COLLATE:               YES

    SF/MF:                 MULTI

    SIMPLEX/DUPLEX:        BOTH

JDE,JDL USED:            01,DFAULT

ACCTINFO:                   LOG SEARCH

INITIAL FONT LIST:      L0112B

INITIAL FORM LIST:      -NONE

INITIAL CME LIST:       -NONE

```
XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS
XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS
XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS
XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS
```

HIGGS-FBI-133
PA-34

XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS
XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS
XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS
XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS

DATE:          31 JAN 96   AT   12:36:32

DEPARTMENT:   DFAULT:JDL*

JOB ID:        299     REPORT NO. 101

FILE ID:

INPUT PROCESSING TIME:    00:00:16

OUTPUT PROCESSING TIME:   00:00:00

REPORT COMPLETION CODE:   0

      PAGES TO BIN:           1

      PAGES TO TRAY:          1

      PAPER PATH HOLES:       0

      LINES PRINTED:          70

      ONLINE IDLE (SEC):      13

      BLOCKS READ:            0

      BLOCKS SKIPPED:         0

      RECORDS READ:           3

      DJDE RECORDS READ:      1

      MAXIMUM COPY COUNT:     1

      OVERPRINTS:             0

      COLLATE:               YES

      SF/MF:                 MULTI

      SIMPLEX/DUPLEX:        DUPLEX

JOE,JDL USED:              05,DFAULT

ACCTINFO:                 NCI31320 OUT

INITIAL FONT LIST:        1141BP

INITIAL FORM LIST:        -NONE

(DJDE MODIFIED)

INITIAL CME LIST:         -NONE

XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS
XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS
XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS
XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS XEROX LPS

TITLE: LOG 384    9/19/95

NAME: ☐

ROOM/EXT: 11704☐    DATE: 1/30/96

O 77  03491983 95272    1LO1PG1R95929034309.QW.MDO171401.NAM/BLACK, TAMIKA D.DOB/072376

I 77  03491983 95272    1LO1PG1R95929034309
MDO171401
NO NCIC WANT DOB/072376 NAM/BLACK, TAMIKA D

HIGGS-FBI-138

b6 -2
b7C -2

TITLE: LOG 384  12/11/95          NAME: [ ]          ROOM/EXT: 11704 [ ]   DATE:  1/31/96

```
O 64  10131851 95345       1LO1QLEE    OPZ11YI.QW  .DCMPDOOU1.NAM/JACKSON,TANJI Y.DOB/072574.RAC/B.SEX/F.SOC/219845874.OLN/2198458
                           74

1 64  10131852 95345       1LO1QLEE    OPZ11YI
                           DCMPDOOU1
                           NO NCIC WANT DLN/          219845874
                           NO NCIC WANT SOC/219845874
                           NO NCIC WANT DOB/072574 NAM/JACKSON,TANJI Y SEX/F RAC/B
```

HIGGS-FBI-139

PA-37

b6 -2
b7C -2

TITLE: LOG 384                      NAME: [    ]            ROOM/EXT: 11704[    ]  DATE: 1/30/96

O 64  20483039 96027        1LO1Z     ODM1SDA.ZW  .DCPPDOOS6.NAM/CHINN, MISHANN DANIA        .DOB/091672.RAC/B.SEX/F.OLN/579969
                            829

1 64  20483043 96027        1LO1Z     ODM1SDA
                            DCPPDOOS6
                            NO NCIC WANT OLN/          579969829
                            NO NCIC WANT DOB/091672 NAM/CHINN, MISHANN DANIA SEX/F RAC/B

HIGGS-FBI-140

PA-38

b6 -2
b7C -2

TITLE: LOG 384     NAME: ☐     ROOM/EXT: 11704☐   DATE: 1/30/96

O 64  20491724 96027     1LO1Q      ODM1SGO.QW  .DCPPDOOS6.NAM/CHINN, MISHANN DANIA      .DOB/091672.RAC/B.SEX/F

1 64  20491725 96027     1LO1Q      ODM1SGO
DCPPDOOS6
NO NCIC WANT DOB/091672 NAM/CHINN, MISHANN DANIA SEX/F RAC/B

HIGGS-FBI-141

PA-39

TITLE: LOG 384　　　　　　　　　　NAME: [ ]　　　　　ROOM/EXT: 11704[ ]　　DATE: 1/31/96

```
O 77   03491983 35272      1L01PG1R95929034309.QW.MD0171401.NAM/BLACK, TAMIKA D.DOB/072376
1 77   03491983 95272      1L01PG1R95929034309    MD0171401    NO NCIC WANT DOB/072376 NAM/BLACK, TAMIKA D
```

HIGGS-FBI-155

TITLE: LOG 384
NAME: [ ]
ROOM/EXT: 11704/[ ]
DATE: 1/31/

b6 -2
b7C -2

```
****************************************************************************************
***********   PERIOD COVERED BY THIS RUN -- 092095 THRU 092095 -------------------->     12 HITS   ***********
****************************************************************************************

****************************************************************************************
***********   THIS IS PART NUMBER  1 OUT OF  1 TOTAL PART(S).    ***********************
****************************************************************************************

****************************************************************************************
***********   ALL TIME PERIODS TO BE SEARCHED PER THIS REQUEST HAVE BEEN SEARCHED --- HAVE A NICE DAY     ***********
****************************************************************************************
```

HIGGS-FBI-156

PA-41

DATA LOCATED FOR CTN/ 3110401651
12,822,754 RECORDS IN -- 174,146 RECORDS PROCESSED -- 12 HIT(S)
********************************************************
ALL PARTS HAVE BEEN COMPLETED FOR CTN/ 3110401651
********************************************************

HIGGS-FBI-157

TITLE: LOG 384                                   NAME: [    ]                    ROOM/EXT: 11704,[    ]   DATE·  1/30/96

0  77   04235948  96012                1LO1ECCA96112042422.QW.MD016D472.NAM/JACKSON,  TANGI  YVONNE.SEX/F.RAC/B.DOB/072574

1  77   04235951  96012                1LO1ECCA96112042422
                                       MD016D472
                                       NO NCIC WANT DOB/072574 NAM/JACKSON, TANGI YVONNE SEX/F RAC/B

HIGGS-FBI-206

FD-302 (Rev. 10-6-95)

-1-

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription    03/22/1999

_____, a white male born [_____]    b6 -5
                                                           b7C -5
                                                           b7D -1

[_____] was interviewed at the U.S. District Courthouse in
Greenbelt, Maryland.  After being advised of the identity of the
interviewing agent and the nature of the interview, he provided the
following information:

                                                           b6 -4, 5
                                                           b7C -4, 5
                                                           b7D -1

                                                           b6 -1, 4, 5
                                                           b7C -1, 4, 5
                                                           b7D -1

The following morning, [_____] was making his [_____]

                                                           b6 -1, 4, 5
                                                           b7C -1, 4, 5
Investigation on    03/19/1999    at Greenbelt, Maryland    b7D -1

File # 70A-BA-88402/166E-BA-91840    Date dictated    03/22/1999

by    SA [_____]                                b6 -2
                                                           b7C -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

HIGGS-FBI-210
PA-44

70A-BA-88402/166E-BA-91840

b6 -5
b7C -5

Continuation of FD-302 of _____ , On 03/19/1999 , Page 4

b6 -1, 4, 5
b7C -1, 4, 5
b7D -1

[ ] does not believe he is currently in any danger in

b6 -4, 5
b7C -4, 5
b7D -1

At the conclusion of the interview, [ ] was advised by AUSA [ ] that if he ever felt he was in danger, to immediately inform his attorney, who would then contact the proper authorities. Additionally, [ ] was advised that [ ]

b6 -1, 3, 5
b7C -1, 3, 5

FD-302a (Rev. 10-6-95)

70A-BA-88402/166E-BA-91840

b6 -5
b7C -5

Continuation of FD-302 of ⬚ , On 03/19/1999 , Page 5

Also present during the interview were ⬚
⬚ AUSA ⬚ and U.S. Park Police

b6 -3, 4, 5
b7C -3, 4, 5

HIGGS-FBI-214
PA-46



# FACSIMILE COVERSHEET

## PRECEDENCE
☐ Immediate
☐ Priority
☐ Routine

## CLASSIFICATION
☐ Top Secret
☐ Secret
☐ Confidential
☐ Sensitive
☐ Unclassified

Time Transmitted: _____
Sender's Initials: _____
Number of Pages: ___7___
(Including Cover Page)

To: _U.S. _____     Date: __1/1/97__
(Name of Office)

**b6 -3**
**b7C -3**

Facsimile Number: _____

Attn: _____
(Name  Room  Telephone)

From: __PROGRAMS SUPPORT SECTION - INVESTIGATIVE _ _ _ _RATIONAL__
(Name of Office)                  ASSISTANCE UNIT

**b6 -4**
**b7C -4**

Subject: __LIC/__ _____

Special Handling Instructions: _____

Originator's Name: [ ____ ]        Telephone [ ____ ]
**b6 -2**
**b7C -2**

Originator's Facsimile Number: [ ____ ]

Approved: _____                    FBI/DOJ



b6 -3
b7C -3

QUERY RESPONSE  DMV DRIVER                 TIME 0816  DATE
QUERY FORMAT  NAM/HIGGS DUSTIN JOHN                    DOB/
OLN MD###-###-###-###
ADDRESS CHANGE      08/17/94
NAME DUSTIN JOHN HIGGS                    RACE 1-BLACK
DOB FROM BIRTHDATE 06 MAY 1924            HGT 6'02"  WGT 111
                                         COUNTY PG    ST M

TOTAL CURRENT POINTS  04
SUSPENDED/REVOKED  YES

SPECIAL ATTENTION  NONE
LICENSE DATA
   CLASS      LICENSE ISSUE   EXPIR
              TYPE   DATE     DATE    RESTRICTIONS
   CLASS                      DE

NEXT PAGE

QUERY RESPONSE  DMV DRIVER                 TIME 0816  DATE
QUERY FORMAT  NAM/HIGGS DUSTIN JOHN                    DOB/
SPECIAL RESTRICTIONS
RANK CODE DESCRIPTION                              BEGIN DATE
          NBE ISSUED 060793                        060793
          NBS 060793 LOST STOLEN                   061794
          NBS 061794 LOST STOLEN                   080174

VIOLATION DATA
             VIOLATION DESCRIPTION            CONVICT FTR TICKET
DATE                                          DATE    NUMBER
061793 6540-A0 LICENSE ISSUED OUT OF
        ST LIC SURRENDERED VOIDED
        4247 DISTRICT OF COLUMBIA   FAIL TO
        COMPLY REISSUE BUS LETTER MAILED
        OPERATED SUSPENDED VIOLATED DISTRICT
        OF COLUMBIA RECIP AGREEMENT
NEXT PAGE

QUERY RESPONSE  DMV DRIVER                 TIME 0816  DATE
QUERY FORMAT  NAM/HIGGS DUSTIN JOHN                    DOB/

HIGGS-FBI 294
PA-48

MARYLAND RAP SHEET

NAME: HIGGS, DUSTIN JOHN          SID- 1476147     FBI- 217824TA2
DATE      AGENCY / ID                    CITATION                  DISPOSITION

03/16/94 MDBPD0000                       01-238103                 RELEASED TO
         BALTIMORE CITY PD               DISORDERLY PUB DISOBEY PD ANOTHER SCENE
         TRK: 050099282
         OCA: 460-908

05/00/94 DISTRICT COURT 01/050099282                               ROR
07/08/94 DISTRICT COURT 01/050099282    01                         NOLLE PROSEQUI
NEXT PAGE      P/N

A096481                   MARYLAND RAP SHEET               DATE: 06/06/94
   PAGE: 00004                                              TIME: 08:15
NAME: HIGGS, DUSTIN JOHN             SID- 1476147     FBI- 217824TA2
DATE      AGENCY / ID                    CITATION                  DISPOSITION

03/10/93 MD0160600                       01-2700360                 TURNED OVER T
         TAKOMA PARK PD MONTGOMERY CNT   HANDGUN ON PERSON: CARRY/ COMMISSIONER
         TRK: 003901801                  02-2700360
         OCA: 6707                       DEADLY WEAPON ON SCHOOL P

03/10/93 DISTRICT COURT 06/003901801                               ROR
05/21/93 DISTRICT COURT 06/003901801    01                         BOUND OVER
                                        02                         BOUND OVER

03/31/93 MD016015J                       01-2700360                 CRIMINAL INFO
         CIRCUIT CT MONTGOMERY CNTY      CARRYING HANDGUN
         000685B                         00-
                                        01 TOTAL NUMBER CHARGES
                                        00 TOTAL UNLISTED CHARGES
         MD016015J/000685B3             01                          GUILTY
NEXT PAGE      P/N

A096481                   MARYLAND RAP SHEET               DATE: 06/06/94
   PAGE: 00005                                              TIME: 08:15
NAME: HIGGS, DUSTIN JOHN             SID- 1476147     FBI- 217824TA2
DATE      AGENCY / ID                    CITATION                  DISPOSITION

09/22/93 MD016015J/000685B3             01                          SENTENCE
                                                                   03Y00M00D00
                                                                   SUSPENDED
                                                                   02Y06M00D1
                                                                   PROBATION
                                                                   02Y00M00D00

09/22/93 MD0160156                                                 RECEIVED
         PAR & PROB TERM I ROCKVILLE
         OCA: 8411155

09/23/93 MD0170656                                                 RECEIVED
         P AND P BELTSVILLE
         OCA: 8411155

11/05/93 MD016013C                                                 RECEIVED
NEXT PAGE      P/N

A096481                   MARYLAND RAP SHEET               DATE: 06/06/94
   PAGE: 00006                                              TIME: 08:15
NAME: HIGGS, DUSTIN JOHN             SID- 1476147     FBI- 217824TA2
DATE      AGENCY / ID                    CITATION                  DISPOSITION

         MONT CO DETN RECORDS TERM 1 R
         OCA: X0195/94

HIGGS-FBI-285
PA-49

OWNER OLN
H-200-155-429-184
NAME: DUSTIN JOHN HIGGS          RACE: 1-BLACK       SEX: M  HIGGS 031072
ADDR: 13801 BRIARWOOD DR APT 1724    HGT: 6'02  WGT: 171
CITY: LAUREL              COUNTY: PG    STATE: MD  ZIP: 20708
NEXT-PAGE    P/N                                              TERM LEM
   MILES RESPONSE - MVA REGISTRATION INDIV. TIME 0814  DATE 060696  PAGE 02
   QUERY FORMAT:    OLN/H200155429184

TITLE-FLG /NONE
SERIAL-FLG/NONE
END-OF-DISPLAY  P/1                                           TERM LEM
I06001S        MARYLAND CJIS - IDENTIFICATION/INDEX SYSTEM  DATE: 06/06/1996
   PAGE: 01             CENTRAL REPOSITORY INQUIRY              TIME: 08:15
SID 1476147    CRIMINAL    FBI 217824TA2                        UPDATED 0418
NAME                    RAC SEX  DOB     POB  HGT  WGT  EYES  HAIR
HIGGS, DUSTIN JOHN          B   M  031072  NY  602  174  BRO   BLK  MED
FINGERPRINT CLASSIFICATIONS:  PATTERN TYPE RIGHT WWN\\  HENRY
  NCIC:                                LEFT WW///
ARMED                   COMMENT
STREET-ADDRESS   NUMBER  DIR  STREET NAME  SUF  CITY      STATE  ZIP
                 13801        BRIARWOOD    DR   PRI GEORGE  MD    20708
COUNTRY OF CITIZENSHIP: UNITED STATES OF AMERICA
ALIAS-NAME:    HIGGS, DUSTON JOHN
APPENDED-ID:  CAUTION      DOB    SCARS/MARKS   SOC-SEC    MISC-NUMBER
                                  SC R LEG     130567354   MDH200155429
REFERENCE:DATE TYPE NUMBER      DESCRIPTION
        031093 PBA 0707         TAK PK PD-MCO-HANDGUN-SCHOOL PROPERTY/FRD
        041996 DIS 950960059408 C
END-OF-DISPLAY P/1
AD96401               MARYLAND RAP SHEET              DATE: 06/06/96
   PAGE: 00001                                        TIME: 08:16
THIS DATA IS ISSUED THROUGH THE MARYLAND CRIMINAL JUSTICE INFORMATION SYSTEM
(CJIS). THIS RECORD IS FOR OFFICIAL USE ONLY, AND SUBJECT TO BOTH FEDERAL
AND STATE LAWS AND REGULATIONS. QUESTIONS ABOUT SPECIFIC ENTRIES OR DISPOS-
ITIONS SHOULD BE DIRECTED TO THE CONTRIBUTING AGENCY. ISSUED BY AUTHORITY OF
THE SECRETARY OF THE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES.
***** THIS INFORMATION IS VALID FOR 10 DAYS FROM THIS DATE - 06/06/96

SID- 1476147     FBI- 217824TA2
NAME- HIGGS, DUSTIN JOHN              DOB- 03/10/72      SEX-        RACE
DATE     AGENCY / ID                  CITATION                 DISPOSITION
───────────────────────────────────────────────────────────────────────
03/21/96 MD0170000                    01-2790440              RELEASED TO
         SHERIFFS OFFICE PRINCE GEORGE FORGERY-PRIV DOCUMENTS  ANOTHER AGENCY
         TRK: 961001135474           02-2790440
         OCA: 264426                 UTTERING FALSE DOCUMENT
                                     03-270342
                                     THEFT: $300 PLUS VALUE
                                     04-270342

NEXT PAGE    P/N
AD96401               MARYLAND RAP SHEET              DATE: 06/06/96
   PAGE: 00002                                        TIME: 08:16
NAME HIGGS, DUSTIN JOHN              SID- 1476147   FBI- 217824TA2
DATE     AGENCY / ID                 CITATION                  DISPOSITION
───────────────────────────────────────────────────────────────────────
                                     THEFT: $300 PLUS VALUE

05/22/96 DISTRICT COURT 05/961001135                          COMMIT/DE
05/28/96 DISTRICT COURT 05/961001135                          COMMIT/DE
05/21/96 DISTRICT COURT 05/961001135   01                     MILES
                                       02
                                       03

HIGGS-FBI 2461
PA-50

SUSPENDED
033495 4221-DISTRICT COURT-FAIL TO APPEAR                    M031161 M031161 7698
        SUSPENSION WITHDRAWN
060/94 2932-EXCEEDING MAXIMUM SPEED          032495  01  M031161
        LIMIT BY 1-9 MPH
121595 4216-DISTRICT COURT FAIL TO APPEAR              P178892 P178892 7698
        SUSPENSION LETTER MAILED
NEXT-PAGE     P/N                                                  TERM
        MILES RESPONSE - MVA DRIVER          TIME 0010  DATE 060696  PAGE
        QUERY FORMAT:    NAM/HIGGS, DUSTIN JOHN           DOB/0310 YRS/99
* VIOLATION DATA *
VIOL.           VIOLATION DESCRIPTION          CONVICT PTS TICKET    DISPOSITION
DATE                                           DATE        NUMBER
010896 4217-DISTRICT COURT-FAIL TO APPEAR              P178892 P178892 7698
        SUSPENDED
041896 4247-DISTRICT OF COLUMBIA - FAIL TO                   0009  924838795
        COMPLY RECIP BUS LETTER MAILED
041896 4247-DISTRICT OF COLUMBIA - FAIL TO                   0009  927518649
        COMPLY RECIP BUS LETTER MAILED
041896 4247-DISTRICT OF COLUMBIA - FAIL TO                   0009  924864
        COMPLY RECIP BUS LETTER MAILED
051896 4250-SUSPENDED-VIOLATED DISTRICT                      924838795
        OF COLUMBIA RECIP AGREEMENT
NEXT-PAGE     P/N                                                  TERM
        MILES RESPONSE - MVA DRIVER          TIME 0010  DATE 060696  PAGE
        QUERY FORMAT:    NAM/HIGGS, DUSTIN JOHN           DOB/0310 YRS/99
* VIOLATION DATA *
VIOL.           VIOLATION DESCRIPTION          CONVICT PTS TICKET    DISPOSITION
DATE                                           DATE        NUMBER
051096 4250-SUSPENDED-VIOLATED DISTRICT                      927518649
        OF COLUMBIA RECIP AGREEMENT
051096 4250-SUSPENDED-VIOLATED DISTRICT                      924864824
        OF COLUMBIA RECIP AGREEMENT
* SUSPENSION / REVOCATION *
EFFECTIVE         TYPE          TIME      SUSPENSION
  DATE                         PERIOD      CODE
01/08/96   SUSPENSION                      4217
05/10/96   SUSPENSION          000         4250
05/10/96   SUSPENSION          000         4250
05/10/96   SUSPENSION          000         4250
SBJ-RECORD/NONE
NEXT-PAGE     P/N                                                  TERM
        MILES RESPONSE - MVA DRIVER          TIME 0010  DATE 060696  PAGE
        QUERY FORMAT:    NAM/HIGGS, DUSTIN JOHN           DOB/0310 YRS/99
APS-RECORD/NONE
END-OF-DISPLAY  P/1                                                TERM
MILES NCIC RESPONSE         TIME 0011     DATE 060696     PAGE 01
MDPPD0100
NO NCIC WANT SOC/130867854
NO NCIC WANT DOB/031076 NAM/HIGGS, DUSTIN JOHN SEX/M RAC/B
END OF MESSAGE  P/1    LENP
        MILES RESPONSE - MVA REGISTRATION INDIV. TIME 0014  DATE 060696  PAGE
        QUERY FORMAT:    OLN/H20015429184
        LIC.NO. KEY STICKER EXPIRE TITLE       V.I.N.        YR MAKE ST EXCLS
        769329M M   6410548 06/97  24305111  JM3LV5225N0440210   92 MAZD YR  N
        GR.WGT GR.COMB.WGT   POLICY NUMBER            INSURANCE COMPANY
        -3706      NON A     0598420B-09-03           6750-MD AUTO INS FUND
        PREV. PREV. *    V E H I C L E    *  I N S P E C T I O N
        KEY   LIC. * EXPIRE DATE      STATUS      * DATE      STATUS
                      0/ 0              N           04/16
        OWNER OLN
        M-JAS 122-0014-452
        NAME: CONSTANCE

********** END **********

NEXT PAGE      P/1
MILES NCIC RESPONSE          TIME 0817      DATE 060696      PAGE 01
MDPPD0100
ATN:[                    ]

THIS RECORD IS BASED ONLY ON THE FBI NUMBER IN YOUR REQUEST-217824TA2.
BECAUSE ADDITIONS OR DELETIONS MAY BE MADE AT ANY TIME, A NEW COPY
SHOULD BE REQUESTED WHEN NEEDED FOR SUBSEQUENT USE.
                    - FBI IDENTIFICATION RECORD -
WHEN EXPLANATION OF A CHARGE OR DISPOSITION IS NEEDED, COMMUNICATE
DIRECTLY WITH THE AGENCY THAT FURNISHED THE DATA TO THE FBI.
NAME                                    FBI NO.          DATE REQUESTED
HIGGS,DUSTIN JOHN                       217824TA2        06/06/96
SEX  RACE  BIRTH DATE  HEIGHT  WEIGHT  EYES  HAIR  BIRTH PLACE
M    B     03/10/72    601     160     BRO   BLK   NEW YORK
FINGERPRINT CLASS
PM PI CO 20 14
DI PM 14 17 14
NEXT PAGE      P/N      LENP
MILES NCIC RESPONSE          TIME 0817      DATE 060696      PAGE 02
1-ARRESTED OR RECEIVED 03/10/93
    AGENCY-MONTGOMERY CO PD TAKOMA PARK (MD0160600)
        AGENCY CASE-6707
        CHARGE 1-HANDGUN - WEARING
        CHARGE 2-HANDGUN - SCHOOL PROPERTY
2-ARRESTED OR RECEIVED 09/07/93
    AGENCY-US PARK POLICE WASHINGTON (DCPPD0000)
        AGENCY CASE-9100789
        CHARGE 1-PPW-A-POSSESSION OF GUN
        CHARGE 2-UF-UNREG FIREARM
        CHARGE 3-UA-UNREG AMMO
    COURT-
                DISPOSITION-
        CHARGE-PPW-A-POSSESSION OF GUN
        SENTENCE-
        GOVERNMENT DISMISS THIS CASE ON 05-04-94
                DISPOSITION-
        CHARGE-UF-UNREG FIREARM
NEXT PAGE      P/N      LENP
MILES NCIC RESPONSE          TIME 0817      DATE 060696      PAGE 03
        SENTENCE-
        GOVERNMENT DISMISS THIS CASE ON 05-04-94
                DISPOSITION-
        CHARGE-UA-UNREG AMMO
        SENTENCE-
        GOVERNMENT DISMISS THIS CASE ON 05-04-94
3-ARRESTED OR RECEIVED 05/29/94
    AGENCY-POLICE DEPARTMENT BALTIMORE (MDAPD0000)
        AGENCY CASE-460998    NAME USED-HIGGS,DUSTON JOHN
        CHARGE 1-DISORDERLY CONDUCT IN PUBLIC PLACE
ALL ARREST ENTRIES CONTAINED IN THIS FBI RECORD ARE BASED ON
FINGERPRINT COMPARISONS AND PERTAIN TO THE SAME INDIVIDUAL.
THE USE OF THIS RECORD IS REGULATED BY LAW.  IT IS PROVIDED
OFFICIAL USE ONLY AND MAY BE USED ONLY FOR THE PURPOSE REQUESTED.
END OF RECORD
END OF MESSAGE  P/1      LENP

HIGGS-FBI-288
PA-52

Ron Tamta Block
Tag= 0344WS,
Block: 0349WS

Dag95272

*** NLET RESPONSE #08743 RECEIVED FOR TERM TODM *** FROM MDMSP0000
LIC/40243M ,KEY/A .
TYP/INDIVIDUAL,
TITLE-RECO/NO TITLE NUMBER LISTED FOR THIS INQUIRY .
LIC-RECORD/NONE ,
* NO RECORD FOUND * - PLEASE SEND "AM" TO MD002015V - RECORD NOT AUTOMATE

temp tag

*** NLET RESPONSE #08928 RECEIVED FOR TERM TODM *** FROM MDMSP0000
LIC/40243M ,KEY/EPO.
TYP/INDIVIDUAL,
TITLE-RECO/NO TITLE NUMBER LISTED FOR THIS INQUIRY .
LIC-RECORD/NONE ,
* NO RECORD FOUND * - PLEASE SEND "AM" TO MD002015V - RECORD NOT AUTOMATE

HIGGS-FBI-493
PA-53

b6 -3 per DOS
b7C -3

# Diplomatic Security Service
# Protective Intelligence Division

## Fax Transmittal Sheet

DATE _____ TIME _____

b6 -3 per DOS
b7C -3

TO _____

ORGANIZATION _____

TELEPHONE _____ FAX _____

FROM          Supervisory Special Agent _____
              U.S. Department of State
              Diplomatic Security Service
              SA-10 5th Floor
              Washington, D.C.  20522-1003

b6 -3 per DOS
b7C -3

              Telephone
              Fax
              Secure Fax

HIGGS-FBI-734
PA-54

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

|  |  |  |
|---|---|---|
| DUSTIN JOHN HIGGS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 2:16-cv-00096-JMS-MJD |
| v. | : | |
| UNITED STATES PARK POLICE, | : | |
| Defendant. | : | |

**PLAINTIFF'S CONSOLIDATED REPLY
IN SUPPORT OF PLAINTIFF'S POSITION,
RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT, AND
BRIEF IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Dustin Higgs, by undersigned counsel, respectfully files his consolidated reply in support of his position, response to Defendant's motion for summary judgment, and brief in support of cross-motion for summary judgment.

On March 7, 2017, the Court entered a Scheduling Order, directing Plaintiff to file a memorandum in support of his position within 30 days; Defendant to file a response within 30 days thereafter; and Plaintiff to file a reply within 15 days of Defendant's response. [Filing No. 30.] On April 6, 2017, pursuant to the Scheduling Order, Plaintiff filed his memorandum of law and an Appendix in support thereof. [Filing Nos. 31, 32.]

After receiving an unopposed extension of time, Defendant filed a motion of summary judgment, together with a brief and exhibits in support thereof, on June 7, 2017. [Filing Nos. 36-38.] On June 16, 2017, the Court granted Plaintiff an unopposed extension of time to file a

consolidated reply in support of his position and response to Defendant's motion for summary judgment no later than August 21, 2017.  [Filing No. 40.]

After Plaintiff filed his memorandum of law, Defendant made an additional release of records on June 2, 2017, [Filing No. 36-11.]  On July 31, 2017, the FBI provided 47 heavily redacted pages of records out of a total of either 738 or 806 pages of records that were referred to the FBI by Defendant.  [Filing No. 50-1].[1]  On August 30, 2017, Defendant filed a Vaughn declaration from the FBI.  [Filing No. 43-1].

Based on the more recent productions of records and the provision of the Vaughn declaration, the remaining issues are substantially different than they were in early April. Plaintiff addresses the remaining issues below.

## I.   REPLY IN SUPPORT OF PLAINTIFF'S POSITION

In Plaintiff's memorandum of law, he asserted that the primary remaining issue was Defendant's referral of records generated by other federal agencies to those agencies, many of which had provided no response or an inadequate response.  Plaintiff's Mem. 4-13. Subsequently, however, many of those agencies provided records, most recently including the FBI, and Defendant has provided additional explanation for the withholding of certain records. [Filing No. 36-1, Tyson Decl., ¶¶ 31-37.]  Based on the disclosures subsequent to the filing of Plaintiff's memorandum, the only remaining issue Plaintiff contests is the adequacy of the response from the FBI.

At the time of the filing of the memorandum, undersigned counsel had received two complete denials of records from the FBI.  [Filing Nos. 31-3 & 31-4.]  As indicated in the

_____

[1] While Exhibit 1 indicates that the FBI reviewed 738 pages of documents, [Filing No. 50-1 at 1], prior filings indicated that it included 806 pages of documents.  *See* Def's Br. 6; [Filing No. 36-12 at 4, Hardy Decl., ¶ 10.]  As far as undersigned counsel is aware, the discrepancy is unexplained.

memorandum, it was unclear to Plaintiff whether those responses related to the referral of records by Defendant to the FBI or to a separate FOIA request made directly to the FBI. Plaintiff's Mem. 8 n.3.  Defendant has now clarified that those responses related to the separate FOIA request, and the FBI has since provided a response related to the referral.  While the FBI's response to the referral is not a complete denial, it is similarly inadequate.

The purpose of the FOIA is "to facilitate public access to Government documents," and the statute reflects "a general philosophy of full agency disclosure."  *Manna v. U.S. Dep't of Justice*, 51 F.3d 1158, 1163 (3d Cir. 1995) (internal quotation marks omitted).  The statute "was designed to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'"  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  As such, there is a "strong presumption in favor of disclosure."  *Ray*, 502 U.S. at 173.

As discussed in a slightly different context in Plaintiff's memorandum of law, the agency has the burden of showing that its withholding is lawful.  *See* 5 U.S.C. § 552(a)(4)(B); *Patterson v. IRS*, 56 F.3d 832, 836 (7th Cir. 1995) ("The government agency bears the burden of justifying its decision to withhold the requested information."); *see also* Plaintiff's Mem. 9-10.  As part of meeting that burden, when an agency relies on exemptions from disclosure, it is typically required to prepare an itemized index – known as a Vaughn index, based on the decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) – that correlates each withheld document (or portion thereof) with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification.  *See id.* at 827; *Schiller v. NLRB*, 964 F.2d 1205, 1209-10 (D.C. Cir. 1992).  Such an index allows courts "to make a rational decision [about] whether the withheld material must be produced without actually viewing the documents themselves . . . [and] to

produce a record that will render [its] decision capable of meaningful review on appeal." *Dellums v. Powell*, 642 F.2d 1351, 1360 (D.C. Cir. 1980).  It also helps to "create balance between the parties."  *Long v. U.S. Dep't of Justice*, 10 F. Supp. 2d 205, 209 (N.D.N.Y. 1998). If a court finds that an index is not sufficiently detailed, it will often require one that is more detailed.  *See Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1065 (3d Cir. 1995) (remanding for further proceedings and suggesting that another, more detailed Vaughn Index be required).

Alternatively, where it remains difficult to determine if the agency has met its burden, a court may conduct in camera review of the documents at issue.  *See* 5 U.S.C. § 552(a)(4)(B). Courts have broad discretion in deciding whether to do so.  *See, e.g.*, *Loving v. Dep't of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008).  Where, as we argue below is true here, the agency's explanation is insufficiently detailed to permit meaningful review, in camera review is a viable option for determining whether the documents are exempt.  *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998).

Here, the FBI has now provided a declaration that purports to satisfy the requirement to provide a detailed index of its claimed exemptions.  As set forth in § II.C.2, below, Plaintiff submits that the Vaughn index is inadequate.  Accordingly, Plaintiff requests that the Court either order Defendant to provide a more detailed index, conduct an in camera review of the withheld records, or grant Plaintiff summary judgment, requiring Defendant to produce all of the records at issue.[2]

---

[2] Defendant points out that Plaintiff has not moved for summary judgment.  Def's Br. 2 n.1. Plaintiff did not understand the Court's prior orders to require or even anticipate that Plaintiff would file a motion for summary judgment together with his memorandum of law.  Though Plaintiff contends that a more detailed Vaughn index or declaration should be prepared, Plaintiff is also moving for summary judgment concurrent with this filing.

## II.   RESPONSE TO MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT.

### A.   Statement as to the Material Facts.

In response to Defendant's motion for summary judgment, Plaintiff does not contend that there are material facts in dispute.  Except as indicated below, Plaintiff agrees with Defendant's Statement of Facts Not in Dispute, Def's Br. 2-6.  In addition, Plaintiff submits that the following facts are not in dispute.

1.   As recited in Def's Br. 6, ¶ 14, on or about March 28, 2016, Aren Adjoian submitted a FOIA request for records contained in two FBI investigative files.  [Filing No. 36-13.]  (hereinafter the "FBI FOIA Request").  The FBI designated the request for one of those files as Request No. 1347918 and the other as Request No. 1347920.  [Filing No. 36-12, Hardy Decl. 3 nn.1, 2.]

2.   The FBI FOIA Request was denied in total on the ground that all of the requested records are purportedly exempt from disclosure.  [Filing No. 36-16] (denying Request No. 1347918); [Filing No. 36-22] (denying Request No. 1347920).  Both of the denials were administratively appealed.  [Filing Nos. 36-17 & 36-23.]

3.   The appeal of Request No. 1347918 is still pending.  On or about April 12, 2017, Appeal No. DOJ-AP-2016-005159 – the appeal of Request No. 1347920 – was denied.  [Filing No. 50-2.]  As such, the statements in Def's Br. 6 and [Filing No. 36-12 at 3] that both appeals are still pending are erroneous.

4.   On or about July 31, 2017, the FBI produced 47 pages of heavily redacted records.  [Filing No. 50-1.]  The production indicated that the FBI had reviewed a total of 738 pages of records, *id.* at 1, while previous filings indicated that Defendant had referred to the FBI

a total of 806 pages of records.  *See* Def's Br. 6; [Filing No. 36-12 at 4, Hardy Decl., ¶ 10.]  As far as undersigned counsel is aware, this discrepancy is unexplained.

5.        On or about August 30, 2017, the FBI produced a second declaration by David Hardy, providing some additional information concerning its basis for withholding and redacting the records at issue.  [Filing No. 43-1, 2d Hardy Decl.]

B.        **Summary Judgment Standard of Review**

Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Only disputes over facts that could affect the outcome of the case under the governing law will preclude the entry of summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The parties must support their positions by relying on materials that are in the record.  *See* Fed. R. Civ. P. 56(c).  Where, as here, there are cross-motions for summary judgment, the court construes all inferences "in favor of the party against whom the motion under consideration is made."  *Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005) (internal quotation marks and citations omitted).

C.        **Argument**

Defendant asserts that it has produced most of what Plaintiff has requested.  Def's Br. 1-2, 10-12.  It has not produced everything that Plaintiff has requested, however, as the FBI's recent production makes clear.  "Dismissal of a FOIA suit as moot is appropriate where the agency has produced everything requested, but an action is not moot simply because an agency has decided that its partial disclosures are enough."  *Furrow v. Federal Bureau of Prisons*, 420 F. App'x 607, 610 (7th Cir. 2011).

Defendant argues that the FBI FOIA Request (as opposed to Defendant's referral to the FBI of FBI records in Defendant's possession) is not properly before this Court.  Def's Br. 12-

15.  As should be clear from Plaintiff's memorandum of law, Plaintiff has not attempted to place the denial of the FBI FOIA Request before this Court, but rather could not determine from the FBI's responses if it was responding solely to the FBI FOIA Request or also to Defendant's referral.  *See* Plaintiff's Mem. at 8 n.3.[3]

The circumstances now are different from what they were when Plaintiff filed his memorandum of law and even from when Defendant filed its motion for summary judgment and brief in support.  Plaintiff has now received responses from all of the agencies to which Defendant made referrals, and Defendant has provided additional explanation for some of the agency decisions to withhold records.  The only active remaining dispute pertains to the FBI referral.

Pursuant to the referral, the FBI has now produced a fraction of the FBI records in the possession of Defendant, and those records have been heavily redacted.  As discussed below, the agency's explanation is inadequate to sustain its burden as a matter of law.  Defendant is therefore not entitled to summary judgment.

---

[3] Although the denial of the FBI FOIA Request is not before the Court as part of this litigation, the reasons given for denying the FBI FOIA Request are noteworthy as they relate to the FBI's denial of access to the majority of records included within Defendant's referral.  The records maintained independently by the FBI undoubtedly involve substantial overlap with the records generated by the FBI but maintained by Defendant.  Despite this, the FBI has offered completely different rationales for denying access to the records it maintains and the records referred to it by Defendant.  Regarding the FBI FOIA Request, the FBI has relied solely upon Exemption (b)(7)(A), which pertains to records compiled for law enforcement purposes that could reasonably be expected to interfere with enforcement proceedings.  *See* [Filing No. 36-16] (denying Request No. 1347918); [Filing No. 36-22] (denying Request No. 1347920).  The FBI did not rely on *any* of the exemptions it now claims are relevant to deny production of the referred documents.  *See* 2d Hardy Decl. at 6 (relying on exemptions (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E)).  This inconsistent, scattershot approach reflects an apparent FBI policy of maximum withholding by whatever means necessary, not the "general philosophy of full agency disclosure" that FOIA demands.  *Manna*, 51 F.3d at 1163 (internal quotation marks omitted).

To the contrary, Defendant has not sustained its burden to justify the withholding of the records referred to the FBI.  Accordingly, the Court should grant Plaintiff summary judgment.

At a minimum, the FBI should be required to produce a more detailed Vaughn index with respect to the withheld records, to enable Plaintiff and the Court to determine whether the agency's justification passes muster, or the Court should conduct in camera review.

### 1.    The FBI and the United States Park Police have drastically different views regarding their disclosure obligations under FOIA.

As an initial matter, Plaintiff notes that the approach that the FBI has taken to its disclosure obligations is very different from the approach taken by the United States Park Police. The Park Police has provided Plaintiff with thousands of pages of documents – comprising the vast majority of its file – with only minimal redactions.  Those redactions primarily consist of blacking out dates of birth and social security numbers, while otherwise leaving the responsive documents undisturbed.  Plaintiff submits as an attachment the first 47 pages from the first Park Police disclosure on May 12, 2016, as a representative example to give the Court a sense of the differing approaches adopted by the Park Police and the FBI.  *See* [Filing Nos. 50-3 through 50-8.]  In contrast to the FBI, the Park Police has provided documents that include names, addresses, telephone numbers, and essentially all of the investigative content developed by the Park Police. *See id.*  This difference in approaches is significant for two reasons.

First, it generally undermines the FBI's overarching claims that the release of two-decade-old investigative files would harm privacy interests.  *See, e.g.*, 2d Hardy Decl. at 8 ("Exemptions (b)(6) and (b)(7)(C) have been asserted to protect the names and/or identifying information of third-party individuals who are of investigative interest to the FBI and/or other law enforcement agencies.  Being linked with any law enforcement investigation carries a strong negative connotation and a stigma.  To release the identities of these individuals to the public

could subject them to harassment or embarrassment, as well as undue public attention."); *id.* at 9 ("Publicity (adverse or otherwise) regarding any particular investigation to which [FBI Special Agents] have been assigned may seriously prejudice their effectiveness in conducting other investigations.  FBI SAs, as individuals, also have privacy interests in being free from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the FBI."); *id.* at 18 ("Disclosure of the printouts or information compiled from the search results would provide criminals with an understanding of the type of information gathered, analyzed, and utilized by the FBI in criminal investigations, particularly in murder investigations.  It would also reveal the FBI's abilities and limitations in regards to what types of investigative information it can track and later query when developing investigative/law enforcement strategies.").  Plainly, the Park Police does not share the FBI's view about the potential for "harassment," "embarrassment," or "prejudice" that would flow from the disclosure of names in twenty-year-old investigative reports, or about the potential damage that would accrue from providing "criminals" with an understanding of how murder investigations are conducted.

Second, the Park Police's broad disclosure specifically undermines the FBI's rationale for withholding documents in this case.  Virtually all of the documents being withheld by the FBI are being withheld, in whole or in part, based upon its invocation of Exemptions (b)(6), (b)(7)(C), or (b)(7)(E).  *See* [Filing No. 50-1 at 4-7.]  These exemptions pertain to the unwarranted invasion of personal privacy and investigative techniques and procedures.  *See* 2d Hardy Decl. at 6.  The FBI's arguments supporting these exemptions lose all persuasive force when it is a virtual certainty that many or even most of the names and identifying information that would supposedly invade individuals' personal privacy have already been disclosed in the

Park Police records as part of this very litigation.  The same is true for the investigative techniques and procedures used in this case.  The Park Police was the lead investigative agency in this case, and it has gone so far as to disclose its officers' handwritten notes, some of which reference their contacts with the FBI.  *See, e.g.*, [Filing No. 50-9 at 25-26.][4]

**2.     The Vaughn declaration is insufficiently detailed.**

To be adequate, a Vaughn declaration or index must "enable the District Court to make a rational decision whether the withheld material must be produced without actually viewing the documents themselves . . . [and] to produce a record that will render the District Court's decision capable of meaningful review on appeal."  *Dellums v. Powell*, 642 F.2d 1351, 1360 (D.C. Cir. 1980).  This means that the declaration must be sufficiently specific:

> A withholding agency must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information. . . .  Categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.

*King v. U.S. Dep't of Justice*, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis in original) (footnote omitted).

These requirements are particularly applicable when the agency provides a "categorical" index of the type set forth in the second Hardy Declaration.  As the Third Circuit has explained, governing precedent, including *King*, "requires that the agency provide the 'connective tissue' between the document, the deletion, the exemption and the explanation.  It is insufficient for the agency to simply cite categorical codes, and then provide a generic explanation of what the *codes* signify."  *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1051 (3d Cir. 1995) (emphasis original).  Accordingly, "an agency using justification codes must also include specific factual information

---

[4] Once again, this exhibit merely constitutes a representative example of the hundreds of pages of handwritten notes that the Park Police has disclosed during this litigation.

concerning the documents withheld and correlate the claimed exemptions to the withheld documents." *Id.* (collecting decisions); *see Church of Scientology Intern. v. U.S. Dep't of Justice*, 30 F.3d 224, 230-32 (1st Cir. 1994) (index and declaration inadequate to justify "withholding lengthy documents in their entirety"); *Samahon v. FBI*, 40 F. Supp. 3d 498, 510 (E.D. Pa. 2014) ("[W]ithout more information specific to the circumstances of this case, it is impossible to assess the precise nature of the particular privacy interests at stake or to consider the public interest that might be served by the disclosure.").

Leaving aside the discrepancy about a possible additional 68 pages of records, the FBI has withheld 655 out of a total of 738 pages of records on the basis of categorical assertions that, for example, any record containing the name or identifying information of any person – including persons of investigative interest, who provided information, who were personnel of the FBI or any other government agency, or persons merely mentioned – is exempt from disclosure. 2d Hardy Decl. 8-13. Similarly, the FBI has withheld pages of records that could identify individuals who received implied assurances of confidentiality. *Id.* at 15-16. Here, as in *Davin*, "the index provides no information about particular documents that might be useful in evaluating the propriety of the decision to withhold." *Davin*, 60 F.3d at 1051.

Accordingly, the Vaughn declaration is insufficiently detailed. Therefore, the Court may determine that the government has failed to meet its burden to justify the withholding of the requested documents, *Patterson*, 56 F.3d at 836, and grant summary judgment to Plaintiff. *E.g.*, *Samahon*, 40 F. Supp. 3d at 531. Alternatively, the Court may require the agency to provide a more specific declaration or index, or conduct in camera review of the documents. *King*, 803 F.2d at 225.

3.      **The government's proffered reasons do not justify withholding of the requested documents.**

a.      **Exemptions (b)(6) and (b)(7)(C)**

In the second Hardy Declaration, the government attempts to lump together exemptions claimed under (b)(6) and (b)(7)(C) to justify withholding hundreds of pages of records, in whole or in part, to the extent that the records reveal the name and/or identifying information of *any* third parties of investigative interest; FBI agents or support personnel; other personnel of the Federal government; third parties merely mentioned; third parties who provided information; or local law enforcement personnel.  2d Hardy Decl. 7-13.

In other words, the FBI would eliminate at the outset any name of any person who had any part in the investigation.  Such a sweeping claim is antithetical to the purpose and structure of FOIA.  *See* § I, above.  Moreover, it is improper to lump (b)(6) and (b)(7)(C) together, since the standards and requirements for the two exemptions are distinct.  Accordingly, Plaintiff addresses each claimed exemption separately.

i.      **Exemption (b)(6)**

Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The requirement that disclosure be "clearly unwarranted" directs courts to "tilt the balance (of disclosure interests against privacy interests) in favor of disclosure."  *Ditlow v. Shultz*, 517 F.2d 166, 169 (D.C. Cir. 1975).  "Congress's choice of the 'clearly unwarranted' standard was a 'considered and significant determination,' made despite repeated objections by government witnesses to the heavy burden it creates.  Thus, under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere

in the Act." *Washington Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 261

(D.C. Cir. 1982) (quoting *Rose*, 425 U.S. at 378 n.16).

Where the government claims Exemption 6 as a basis for withholding, courts must

conduct two inquiries to determine if it has sustained its burden:

> First, we must determine whether the [requested records] are personnel, medical, or "similar" files covered by Exemption 6.  If so, we must then determine whether their disclosure "would constitute a clearly unwarranted invasion of personal privacy." *Id.*  This second inquiry requires us to balance the privacy interest that would be compromised by disclosure against any public interest in the requested information.

*Multi Ag Media Ltd. Liab. Co. v. Dep't of Agriculture*, 515 F.3d 1224, 1228 (D.C. Cir. 2008).

While the coverage of "similar" files has been given a broad reading, the term has not

been construed as justifying withholding of documents simply because they identify government

employees or the subjects of an investigation.  *See Aguirre v. SEC*, 551 F. Supp. 2d 33, 54

(D.D.C. 2008); *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C.

2005) (records containing names and work telephone numbers of Justice Department paralegals

were not "similar" files), *motion to amend denied*, 421 F. Supp. 2d 104, 107-10 (D.D.C. 2006),

*appeal dismissed voluntarily*, No. 06-5055, 2006 WL 1214937 (D.C. Cir. Apr. 28, 2006);

*Gordon v. FBI*, 390 F. Supp. 2d 897, 902 (N.D. Cal. 2004) (documents containing names of

government employees did not disclose personal information about them), *summary judgment*

*granted*, 388 F. Supp. 2d 1028 (N.D. Cal. 2005); *Providence Journal Co. v. U.S. Dep't of Army*,

781 F. Supp. 878, 883 (D.R.I. 1991) (investigative report of criminal charges is not a "similar"

file), *modified & aff'd on other grounds*, 981 F.2d 552 (1st Cir. 1992).  Here, the agency has not

shown that the records requested are "similar" files within the meaning of (b)(6).

To the extent that any part of the requested records is construed as covered by Exemption

6, the Court must determine "whether disclosure of the files 'would compromise a substantial, as

opposed to *de minimis*, privacy interest,'" and then balance any such interest against the public interest in disclosure. *Multi Ag Media*, 515 F.3d at 1229.

The agency has asserted that every person whose name is mentioned in any investigative report has a substantial privacy interest. 2d Hardy Decl. 7-13. While this may be true for some of the persons involved, the lack of specificity in the agency's response makes it impossible to tell. For example, many agency staff may have no substantial privacy interest in their names, *see Gonzales*, 404 F. Supp. 2d at 257; *Gordon*, 390 F. Supp. 2d at 902.[5] Furthermore, the identities of many of the individuals involved in the investigation were made public during Plaintiff's trial and remain matters of public record.[6] And, as described above, it is a near certainty that the identities of many if not most of the individuals currently being withheld have already been disclosed by Defendant during this very litigation. Moreover, any privacy interest of deceased persons is diminished. *Davis v. Dep't of Justice*, 460 F.3d 92, 97-98 (D.C. Cir. 2007). Accordingly, unless the agency has taken "basic steps to ascertain whether an individual was dead or alive," *Schrecker v. U.S. Dep't of Justice*, 254 F.3d 162, 167 (D.C. Cir. 2001), it is impossible to determine the significance of the asserted privacy interest.

---

[5] We discuss below whether law enforcement personnel are entitled to privacy protection under Exemption 7(C).

[6] The unreasonableness of the FBI's withholding approach in this regard is exemplified by its redaction of the names of Assistant United States Attorneys who participated in the investigation. *See, e.g.*, [Filing No. 50-1 at 46]. Not only are these names already a matter of public record by virtue of the AUSAs' participation in Mr. Higgs's trial, but the United States Attorney's Office for the District of Maryland routinely issues *press releases* commending its prosecutors for their work on important cases. *See, e.g.*, https://www.justice.gov/usao-md/pr/laurel-man-sentenced-4-years-federal-prison-illegal-gun-possession-depicted-social-media ("Acting United States Attorney Stephen M. Schenning commended the FBI, Howard County Police Department, and the Howard County State's Attorney's Office for their work in the investigation. Mr. Schenning thanked Assistant U.S. Attorneys Sandra Wilkinson and Lauren Perry, who prosecuted the case.") (last visited December 12, 2017).

To the extent that a substantial privacy interest is threatened by the requested disclosure, that interest must be balanced against the public interest in disclosure.  The general public interest in disclosure is to "shed[] light on an agency's performance of its statutory duties."  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).  In this case, there is a more specific public interest in shedding light on whether the federal government arranged with state authorities to cease pursuing homicide charges in a separate case involving the key cooperating witness against Plaintiff – in order to prevent attacks on the witness's credibility at Plaintiff's trial – and then improperly concealed those facts from Plaintiff and the public.  In a motion to set aside judgment for fraud on the court under Federal Rule of Civil Procedure 60 following post-conviction proceedings stemming from Plaintiff's underlying convictions, Plaintiff alleged that this had taken place; while the court ruled that Plaintiff had "obtained considerable evidence to support his motion," *United States v. Higgs*, 193 F. Supp. 3d 495, 514 n.15 (D. Md. 2016), *cert. of appealability denied*, No. 98-cr-520-PJM, 2016 WL 6879939 (D. Md. Nov. 22, 2016), *app. dismissed*, No. 16-15 (4th Cir. Feb. 23, 2017), it denied relief on the ground that Plaintiff had failed to prove that actions taken by the federal government resulted in the state authorities' decision not to charge the witness.  *Higgs*, 193 F. Supp. 3d at 513.[7]  Plaintiff's petition for a writ of certiorari to the Fourth Circuit is now pending before the Supreme Court.  While Plaintiff's personal interest in uncovering additional evidence regarding this allegation is not cognizable under FOIA, the public generally has an interest in knowing whether first degree murder convictions and death sentences have been obtained as the result of prosecutorial misconduct.  *See Berger v. United States*, 295 U.S. 78, 88 (1935) (The "United

---

[7] Plaintiff does not recite all of the facts pertaining to his separate fraud on the court action here; they are laid out in detail in the district court's 2016 opinion denying relief.  *Higgs*, 193 F. Supp. 3d 495.

States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.").

While the agency's response seeks to minimize the public interest, in fact the public interest is paramount over any remaining privacy interest asserted by the agency.  At a minimum, the agency has not met its burden and could only do so by filing a more detailed declaration.

### ii.       Exemption (b)(7)(C)

Exemption 7(C) applies to law enforcement information the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Under the balancing test that applies to Exemption 7(C), the agency must first identify and evaluate the privacy interest, if any, implicated in the requested records.  *E.g.*, *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. U.S. Dep't of Justice*, 503 F. Supp. 2d 373, 383 (D.D.C. 2007).  While Exemption 7(C) "provides more protection for information compiled for law enforcement purposes" than is provided under Exemption 6, the agency still has the burden of showing a reasonable expectation that an unwarranted invasion of privacy would result.  *Id.* Here, as in *Akin*, the broad categorical withholding claimed under Exemption 7(C) "cannot be justified without further clarification of the subject matter of the records."  *Id.* (footnote omitted). Furthermore, as under Exemption 6, the privacy interests, if any, of deceased persons are greatly reduced, so the agency must take "basic steps to ascertain whether an individual" on behalf of whom a privacy exemption is claimed is "dead or alive."  *Schrecker*, 254 F.3d at 167.  Also, as under Exemption 6, individuals whose identities have already been disclosed to Plaintiff as part of this litigation cannot possibly have a remaining privacy interest, as Plaintiff and the public are already aware of their identities and connections to this investigation.

Where a protected privacy interest is identified, courts then engage in a balancing of the privacy interest against the interest in disclosure.  The standard of public interest to consider is limited to the FOIA's "core purpose" of "shed[ding] light on an agency's performance of its statutory duties."  *Reporters Comm.*, 489 U.S. at 773.  Here, Plaintiff contends that the public interest in uncovering wrongdoing by federal officials overcomes the asserted privacy interests. In such cases, the Supreme Court has held that the following test applies:

> [W]here there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure.  Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).

Plaintiff readily meets that standard.  As discussed above, Plaintiff alleged in separate proceedings that the federal government arranged with state authorities to cease pursuing homicide charges in a separate case against the key cooperating witness against Plaintiff – in order to prevent attacks on the witness's credibility – and then concealed those facts from Plaintiff and the public.  The court that considered those allegations found that Plaintiff had "obtained considerable evidence to support his motion . . . ."  *United States v. Higgs*, 193 F. Supp. 3d at 514 n.15.  Where, as here, an investigation has "uncovered several potential improprieties by [agency] staff," *Aguirre*, 551 F. Supp. 2d at 56, the *Favish* standard is satisfied. *See also Hidalgo v. FBI*, 541 F. Supp. 2d 250, 255-56 (D.D.C. 2008) (disclosure required "where the plaintiff has made enough of a showing to raise questions about possible agency misconduct").

Moreover, where an agency has withheld documents based on the privacy interests of a government employee, the employee's rank and the evidence of wrongdoing against the

employee are among the relevant factors in conducting the balancing analysis. *Perlman v. U.S. Dep't of Justice*, 312 F.3d 100, 107 (2d Cir. 2002), *vacated*, 541 U.S. 970, *reinstated on remand*, 380 F.3d 110 (2d Cir. 2004). Here, it is impossible to assess these factors as the agency has relied on status as a government employee as a shield against disclosure of any employee's name.

The above discussion applies equally to the claim of an exemption based on the privacy interests of local government employees. 2d Hardy Decl. 13. The claim of alleged wrongdoing includes participation by local government employees. Where that is the case, the privacy interests of the local government employees should not be allowed to override the public interest in disclosure.

### b. Exemption (b)(7)(D)

Given the nature of the crime and the described relationship of the sources to the subjects of the investigation, Plaintiff does not contest the legal principle that some documents may be withheld under Exemption (b)(7)(D). Given the concerns expressed throughout regarding the categorical nature of the withholding and the failure to show that all reasonably segregable information has been produced, Plaintiff requests that the court conduct in camera review of the records withheld on the basis of Exemption (b)(7)(D).

### c. Exemption (b)(7)(E)

The agency relies on Exemption (b)(7)(E) as a basis for withholding information regarding firearms examinations and printouts from non-public databases. 2d Hardy Decl. 16-18. Exemption (b)(7)(E) has been described as follows:

> Exemption 7(E) applies to law enforcement records which, if disclosed, would risk circumvention of the law. *PHE, Inc. v. Department of Justice,* 983 F.2d 248, 249-50 (D.C. Cir. 1993). This exemption, however, may not be asserted to withhold "routine techniques and procedures already well-known to the public, such as ballistic tests, fingerprinting, and other scientific tests commonly known."

> *Ferri* [*v. Bell*], 645 F.2d [1213], 1224 [(3d Cir. 1981)] (citing H.R. Conf. Rep. No.
> 1200, 93rd Cong., 2d Sess. 12 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6285,
> 6291).

*Davin*, 60 F.3d at 1064.

Given that Congress explicitly excluded "ballistic tests" from exemption 7(E), the agency is forced to rely on the assertion that while *some* information about ballistics tests is known the public, *other* information is non-public and, if disclosed, could result in circumvention of the law.  2d Hardy Decl. 17.  This bare assertion is insufficient, *see Davin*, 60 F.3d at 1064, especially in the circumstances of this case.

The assertion that there are significant aspects of the FBI's methodologies for collecting and analyzing firearms information that are non-public is dubious at best.  The reliability and scientific basis for the methods used by the FBI and other law enforcement agencies to collect and analyze firearms information have been the topic of considerable public debate and litigation,[8] including in this case.  *See* [Filing No. 50-10] (transcript of testimony of FBI firearms examiner Carlo Rosati).]  Given that there has been such extensive public testimony and debate concerning firearms analysis, the mere assertion that there are remaining undisclosed aspects of the manner in which firearms analysis was conducted some twenty years ago that could enable present day criminals to circumvent the law is insufficient to justify the agency's withholding of such information.

---

[8] *See, e.g.*, National Research Council, *Strengthening Forensic Science in the United States: A Path Forward*, 5-18 to 5-21 (2009) (discussing methodology and its weaknesses); National Research Council, *Ballistic Imaging* 3 (2008) ("The validity of the fundamental assumptions of uniqueness and reproducibility of firearms-related toolmarks has not yet been fully demonstrated."); *United States v. Glynn*, 578 F. Supp. 2d 567, 570-71 (S.D.N.Y. 2008) (discussing prior decisions and concluding that ballistics analysis "could not fairly be called 'science,'" and "was too subjective to permit opinions to be stated to 'a reasonable degree of ballistic certainty.'"); *United States v. Monteiro*, 407 F. Supp. 2d 351, 359-72 (D. Mass. 2006) (finding, after evidentiary hearing and lengthy discussion, methodology sufficiently reliable to permit testimony).

In fact, the record is to the contrary, for at least the following reasons: (1) the techniques of firearms analysis are public and widely known; (2) the techniques are not scientific, but require subjective judgments based on the experience of the examiner; and (3) a putative wrongdoer in 2018 who was made aware of additional information about techniques used in the mid-1990s would have no way of knowing whether the FBI and other law enforcement agencies have changed their methodologies in response to the scientific and judicial criticisms of the approach to ballistics evidence taken in the past.

With respect to its databases, the agency's argument apparently is that it can protect all information derived from one of its databases in order to prevent criminals from learning about the operation of the databases. 2d Hardy Decl. 17-18. Again, the agency has provided insufficient information to evaluate this argument. On its face, it would appear that any truly private information about how the databases operate could be segregated from the information included within the databases. Neither this portion of the Vaughn declaration nor the "Segregability" section, 2d Hardy Decl. 19-20, is detailed enough to enable Plaintiff or the Court to evaluate the agency's claim, as it is unclear what techniques or procedures are at issue.

The agency also argues for a sweeping interpretation of Exemption 7(E) that would cover virtually any investigative report maintained by the FBI:

> Disclosure of the printouts or information compiled from the search results would provide criminals with an understanding of the type of information gathered, analyzed, and utilized by the FBI in criminal investigations, particularly in murder investigations. It would also reveal the FBI's abilities and limitations in regards to what types of investigative information it can track and later query when developing investigative/law enforcement strategies. Releasing this information would allow criminals access to key investigative data and afford them the opportunity to develop countermeasures to avoid detection. It would alert them as to the type of information collected and provide insight into the FBI's analysis of such information, allowing them the opportunity to structure their activities in a manner that deprives the FBI of critical investigative data.

PA-74

*Id.* at 18.  This explanation, if credited, would permit the FBI to withhold any investigative document in any investigation – open or closed – without limitation.  It is particularly misplaced in this case, where the lead investigative agency has in essence turned over its entire investigative file, which documents investigative techniques and procedures utilized in this case with a great degree of specificity.  *See supra*.

### d.      Segregability

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed.  *Pacific Fisheries Inc. v. United States,* 593 F.3d 1143, 1148-49 (9th Cir. 2008) ("Courts must apply that burden with an awareness that the plaintiff, who does not have access to the withheld materials, is at a distinct disadvantage in attempting to controvert the agency's claims").  It is reversible error for a district court "to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof," with respect to that document.  *Wiener v. FBI*, 943 F.2d 972, 988 (9th Cir. 1991) (citation omitted).  The district court is required "to make a specific finding that no information contained in each document or substantial portion of a document withheld is segregable."  *Id.*  Non-exempt portions of a document must be disclosed unless the court finds that they are inextricably intertwined with exempt portions to such a degree that separating the two would "impose significant costs on the agency and produce an edited document with little informational value."  *Willammette Indus., Inc. v. United States*, 689 F.2d 865, 867-68 (9th Cir. 1982) (citing *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)).

The agency's analysis of segregability, *see* 2d Hardy Decl. 19-20, is conclusory.  Because the declaration is conclusory and does not adequately demonstrate that all reasonably segregable, nonexempt information has been disclosed, the Court should deny Defendant's motion for summary judgment.  *See, e.g.*, *Ctr. for Biological Diversity v. OMB*, No. 07-4997, 2008 WL 5129417, at *9 (N.D. Cal. Dec. 4, 2008) (denying summary judgment because agency used "boilerplate segregability language without a 'detailed justification' for the withholding of the portions of exempt records"); *Lawyers' Comm. for Civil Rights v. U.S. Dep't of the Treasury*, No. 07-2590, 2008 WL 4482855, at *10 (N.D. Cal. Sept. 30, 2008) (same; agency relied on conclusory assertion that there was no reasonably segregable information); *Nat'l Res. Def. Council v. U.S. Dep't of Defense*, 388 F. Supp. 2d 1086, 1106 (C.D. Cal. 2005) (same; burden not met where agency relied on a "boilerplate statement . . ., which conclusorily asserts [that] all reasonably segregable information has been released"); *Edmonds Inst. v. U.S. Dep't of the Interior*, 383 F. Supp. 2d 105, 110 (D.D.C. 2005) (directing defendant to produce more detailed Vaughn index because its "generalized paragraph on segregability does not suffice").

WHEREFORE, Plaintiff respectfully requests that the court grant his motion for summary judgment or order the FBI to prepare a sufficiently detailed Vaughn index, and deny Defendant's motion for summary judgment.

Respectfully submitted,

/s/ Matthew C. Lawry
Matthew C. Lawry
Federal Community Defender Office
Eastern District of Pennsylvania
601 Walnut Street
Curtis Center, Suite 545-West
Philadelphia, PA 19106
Phone: (215) 928-0520
Fax: (215) 928-0826
Matthew_Lawry@fd.org

Counsel for Plaintiff
Dustin John Higgs

PA-77

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 13, 2017 the foregoing was filed electronically through

ECF/CM.  Notice of this filing will be sent to the following parties by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system:

<div align="center">

Jill Z. Julian
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, IN  46204

</div>

/s/ Matthew C. Lawry            
Matthew C. Lawry
Federal Community Defender Office

PA-78

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DUSTIN JOHN HIGGS,                        )
                                          )
        Plaintiff,                        )
                                          )
                v.                        )        Case Number 2:16-cv-00096-JMS-MJD
                                          )
UNITED STATES PARK POLICE,                )
                                          )
        Defendant.                        )

**REPLY IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND IN RESPONSE
TO PLAINTIFF'S MEMORANDUM OF LAW
AND CROSS MOTION FOR SUMMARY JUDGMENT**

Since the filing of Plaintiff Dustin John Higgs' ("Higgs") Complaint on March 16, 2016, the Defendant United States Park Police ("U.S. Park Police") has made numerous releases, and through the course of this litigation, the parties have narrowed the remaining documents at issue. The parties are in agreement that "the only remaining issue Plaintiff contests is the adequacy of the response from the FBI." [Filing No. 52 at 2]. Thus the sole issue remaining between the parties before this Court, is whether the FBI's response to the referral of records from the U.S. Park Police was adequate.[1] [Filing No. 52 at 3]. The U.S. Park Police is entitled to the entry of summary judgment in its favor and against Higgs.

## I.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

The parties agree that there are no material facts in dispute.

---

[1] Higgs also concedes that his direct FOIA request to the FBI and any action by the FBI on that request is not properly before this Court. [*see* Filing 52 at 3 and Filing No. 38 at 12-15].

## II.    ARGUMENT

### A.    FOIA Background

FOIA's basic purpose "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). As such, FOIA generally envisions a policy favoring broad disclosure of federal agency records, *see Solar Sources*, *Inc. v. United States*, 142 F.3d 1033, 1037 (7th Cir. 1998), and gives any member of the public as much right to disclosure as one with a special interest in a particular document, *United States Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 771 (1989) (citation omitted).

Accordingly, "neither an individual's identity nor his intended use for the documents is relevant to a FOIA request." *Solar Sources*, 142 F.3d at 1041; *see Reporters Comm.*, 489 U.S. at 772 (stating that "the particular purpose for which the document is being requested" is not relevant to the determination of whether disclosure is warranted under FOIA); *Robbins Tire*, 437 U.S. at 242 n.23 (acknowledging that an individual's rights under FOIA are neither diminished nor enhanced by a "particular, litigation-generated need" for the requested materials); *Becker v. Internal Revenue Serv.*, 34 F.3d 398, 404 (7th Cir. 1994) ("It is fundamental that the identity of the requesting party has no bearing on the merits of his or her FOIA request." (internal quotation marks and citation omitted)); *United States Dep't of Navy v. Fed. Labor Relations Auth.*, 975 F.2d 348, 355 (7th Cir. 1992) ("Either all requestors have access, or none do. The special needs of one, or the lesser needs of another, do not matter.") (citations omitted)). Thus, FOIA's "sole concern is with what must be made public or not made public." *Reporters Comm.*, 489 U.S. at 771-72 (internal quotation marks and citation omitted).

PA-80

Consistent with this concern, FOIA contemplates that certain government documents should not be subject to public disclosure, and Congress included nine statutory exemptions from its disclosure requirements. *See* 5 U.S.C. § 552(b)(1)-(9); *Silets v. United States Dep't of Justice*, 945 F.2d 227, 228 (7th Cir. 1991). Whether the government is justified in invoking a FOIA exemption is typically decided at the summary judgment phase. *See Solar Sources*, 142 F.3d at 1036; *Wright v. OSHA*, 822 F.2d 642, 644 (7th Cir. 1987). The burden is on the governmental agency to prove that the documents at issue fit within one of the statutory exemptions. *Antonelli v. Drug Enforcement Admin.*, 739 F.2d 302, 303 (7th Cir. 1984). To meet this burden, "the agency must provide detailed justification for its claim of exemption, addressing the requested documents specifically, and in a manner allowing for adequate adversary testing." *Id.* (citation omitted). An agency satisfies this burden by providing affidavits and other evidence that show that the documents in question were either produced or are exempt from disclosure. *Kimberlin v. Dep't of Treasury*, 774 F.2d 204, 210 (7th Cir. 1985) ("Affidavits are sufficient for summary judgment under FOIA without *in camera* inspection where the affidavits (1) describe the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of agency bad faith." (internal quotation marks and citations omitted)).

Furthermore, the agency is entitled to a presumption that it acted in conformity with its legal obligations and in good faith. *Int'l Union of Elevator Constructors Local 2 v. United States Dep't of Labor*, 804 F. Supp. 2d 828, 835 n.4 (N.D. Ill. 2011); *see also In re Wade*, 969 F.2d 241, 246 (7th Cir. 1992) ("Without evidence of bad faith, the veracity of the government's submissions regarding reasons for withholding the documents should not be questioned."). This

presumption cannot be rebutted by purely speculative claims. *Int'l Union*, 804 F. Supp. 2d at 835 n.4. Courts ordinarily evaluate the decision of whether a document is properly withheld or redacted as of the time the agency made the decision. *Bonner v. United States Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991).

**B.     The Vaughn Declaration is Sufficiently Detailed**

Higgs asserts that the FBI's *Vaughn* declaration is insufficient. [Filing No. 52 at 4]. Here, according to standard practice, the FBI relied on a coded *Vaughn* declaration. A coded *Vaughn* declaration groups together similar types of information protected under an exemption; assigns each grouping a code (*e.g.*, -1, -2, -3, etc.); and the exemption and code are placed on released in part pages next to the related redaction. Thus, every time a particular exemption code appears next to a redaction, the reader will know what information was protected. For example, (b)(6)-1/(b)(7)(C)-1 is the code assigned to FBI Special Agents and Professional Staff; any time that exemption and code appear  next to a redaction, the reader knows an FBI employee's name was redacted. [*See. e.g.,* Filing No. 50-1 at 5-8, and 9]. That coded exemption then corresponds to an explanation in the declaration about why, for example, FBI employees' identities are protected. On pages withheld in full, the FBI provides a "Deleted Page Information Sheet" that lists the applicable coded FOIA exemptions appearing on that page.

Courts have generally accepted the use of such coded declarations when "[e]ach deletion was correlated specifically and unambiguously to the corresponding exemption …" and the withholding of each category was adequately explained. *Keys v. DOJ*, 830 F.2d 337, 349-50 (D.C. Cir. 1987). *See, e.g.*, *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (affirming agency's use of coded *Vaughn* Index and explaining that there is no requirement for "'repetitive, detailed explanations for each piece of withheld information – that is, codes and categories may

be sufficiently particularized to carry the agency's burden of proof'" (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006)); *Blanton v. DOJ*, 64 F. App'x 787, 789 (D.C. Cir. 2003) (stating that "coding . . . adequately describes the documents and justifies the exemptions"); *Maynard v. CIA*, 986 F.2d 547, 559 n.13 (1st Cir. 1993) (explaining that "use of coded indices has been explicitly approved by several circuit courts"); *Fischer v. DOJ*, 596 F. Supp. 2d 34, 44 (D.D.C. 2009) (finding agency's coded declaration to be sufficient); *Garcia v. DOJ*, 181 F. Supp. 2d 356, 370 (S.D.N.Y. 2002) (accepting adequacy of agency's coded Vaughn declaration); *Canning v. DOJ*, 848 F. Supp. 1037, 1043 (D.D.C. 1994) ("[T]here is nothing inherently improper about the use of a coding system."); *Steinberg v. DOJ*, 801 F. Supp. 800, 803 (D.D.C. 1992), *aff'd in pertinent part & remanded in part*, 23 F.3d 548 (D.C. Cir. 1994) (refusing to find coded *Vaughn* declaration inadequate); *cf. Fiduccia v. DOJ*, 185 F.3d 1035, 1043-44 (9th Cir. 1999) (observing that "[t]he form of disclosure is not critical" and that "redacted documents [can be] an entirely satisfactory (perhaps superior) alternative to a Vaughn index or affidavit performing this function").

The FBI's coded *Vaughn* declaration in this case readily meets the criteria and requirements for an adequate declaration. Specifically, the FBI's declaration provides "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with" the redaction of information or withholding of pages." *Miccosukee Tribe of Indians of Fla. V. United States*, 516 F.3d 1235, 1258 (11th Cir. 2008) (quoting *Mead Data Central, Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). Thus, it should be "accorded a presumption of good faith." *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) (quoting *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

The single case that Higgs cites – *Davin v. DOJ*, 60 F.3d 1043 (3d Cir. 1995) – does not undermine the above-cited cases or show that the FBI's *Vaughn* declaration here was inadequate. *Davin* was concerned with the effect of relying on a coded declaration when withholding documents in full. Here, the only two types of documents withheld in full were: (1) a report detailing the FBI's review and analysis of rifling characteristics for the firearm used in the triple murder; and (2) criminal and information printouts about third parties from a law enforcement database. [*See* Filing 43-1 at 17-18 (Hardy Decl. at ¶¶ 34 & 35)].  The specific page numbers of the withheld in full pages for each type of document were provided. [Filing 43-1 at 17-18 (Hardy Decl. at n.11 & n.12)]. The justification for withholding these documents in full was provided for each type of document. [Filing 43-1 at 17-18 (Hardy Decl. at ¶¶ 34 & 35)]. While the name of the law enforcement database was not disclosed, this was not a function of using a coded declaration as opposed to an index. Rather, the name of the database is itself exempt information, as explained in the 2d Hardy Declaration. [Filing 43-1 at 18 (Hardy Decl. at ¶ 35)].Thus, all of the information that would be contained in a *Vaughn* index was provided narratively in the coded *Vaughn* declaration.

Finally, if this Court were to conclude that the FBI's *Vaughn* submission, is inadequate, the remedy is not, as Higgs suggests, an order to disclose the withheld information or records. Rather, the proper remedy would be for the FBI to supplement the record to address any inadequacies identified by the Court. *See, e.g., Davin*, 60 F.3d at 1065.

C.     **The FBI Properly applied the Exemptions to FOIA**

Although FOIA contains several exemptions, *see* 5 U.S.C. § 552(b)(1)-(9), the FBI applied only three groups to withhold the documents remaining at issue in this action: (1) Exemptions (b)(6) and (b)(7)(C) relating to clearly unwarranted and unwarranted invasion of

personal privacy; Exemption (b)(7)(D)-1 relating to confidential source information; and (3)

Exemption (b)(7)(E) relating to investigative techniques and procedures.

> **1. Exemptions (b)(6) and (b)(7)(C) Clearly Unwarranted and Unwarranted Invasion of Personal Privacy**

Exemption (b)(6) protects from disclosure "personnel and medical files and similar files"

when the disclosure of such information would constitute a clearly unwarranted invasion of

personal privacy. 5 U.S.C. § 552(b)(6). "Similar files" include all information which "applies to

a particular individual." *See Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999); *see also*

*United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). Any disclosure

of information that applies to a particular individual meets the threshold requirement for

protection under Exemption (b)(6). *See Washington Post Co.*, 456 U.S. at 602 ("When disclosure

of information which applies to a particular individual is sought from Government records,

courts must determine whether release of the information would constitute a clearly unwarranted

invasion of that person's privacy."). In determining whether the disclosure of information would

result in a clearly unwarranted invasion of personal privacy, a court must balance the

individual's interest in keeping his affairs private against the public's interest in disclosure.

*Lepelletier*, 164 F.3d at 46; *accord Lakin Law Firm, P.C. v. FTC*, 352 F.3d 1122, 1125 (7th Cir.

2003). There is a public interest in disclosure only if disclosure "would 'she[d] light on an

agency's performance of its statutory duties' or otherwise let citizens know 'what their

government is up to.'" *Lepelletier*, 164 F.3d at 46; *see also United States Dep't of Defense v.*

*Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (stating that the only public interest a

court must examine is whether disclosure would contribute significantly to public understanding

of the government's operations or activities). A prisoner's interest in attacking his own

conviction is not a public interest. *Hawkins v. Drug Enforcement Admin.*, 347 F. App'x 223, 225

(7th Cir. 2009) (unpublished); *see also Antonelli*, 721 F.2d at 619 (finding no public interest in ensuring a plaintiff's convictions were not obtained as a result of a constitutional violation). Once a government agency establishes that a legitimate privacy interest is implicated, the burden shifts to the requester to show both "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and that "the information is likely to advance that interest." *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

As a threshold to applying Exemption 7, an agency must demonstrate that the "records or information [were] compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The FBI is a law enforcement agency. [Filing No. 43-1 at 3, 4 (Hardy Decl. ¶¶ 7 & 8)]  Pursuant to 28 U.S.C. §§ 533 and 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency. [Filing No. 43-1 at 3, 4 (Hardy Decl. ¶ 8)]. The records at issue were compiled under this investigative authority for the purpose of investigating the murders of three young women who were killed while on federal land. Such an investigation involves the enforcement of federal laws within the law enforcement duties of the FBI. [Filing No. 43-1 at 3, 4 (Hardy Decl. ¶ 8)].

When a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. United States Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987) (citation omitted). In such a case, a criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "based on information sufficient to support at least 'a colorable claim' of

its rationality.'" *Keys*, 830 F.2d at 340 (quoting *Pratt v. Webster*, 673 F.2d 337, 421 (D.C. Cir. 1982)).

Exemption (b)(7)(C) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Courts must balance the privacy interest of the individual referenced in the record against the public interest in disclosure. *See Reporters Comm.*, 489 U.S. at 762; *Beck v Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). To overcome a legitimate privacy interest by the named individual, the requester must show both that the public interest sought to be advanced is a significant one—an interest more specific than having the information for its own sake—and that the information is likely to advance that interest. *Favish*, 541 U.S. at 172.

Furthermore, Exemption (b)(7)(C) protects the privacy interests of all persons mentioned in law enforcement records. *See, e.g., Schrecker v. United States Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003). Indeed, the mere mention of persons in law enforcement files in such a way as to associate them with criminal activity is subject to protection under this exemption. *See Reporters Comm.*, 489 U.S. at 780; *Safecard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) ("[U]nless access to the names and addresses of private individuals appearing in files within the ambit of Exemption [(b)(7)(C)] is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."). The Supreme Court has held "as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no 'official information' about a Government agency, but merely requests records that the Government

happens to be storing, the invasion of privacy is 'unwarranted.'"  *Reporters Comm.*, 489 U.S. at 780.

Because the privacy interests protected under Exemption (b)(7)(C) are broader than those protected under Exemption (b)(6), cases balancing the privacy interests under Exemption (b)(6) are useful when balancing under Exemption (b)(7)(C). Specifically, Exemption (b)(6) requires that the invasion of privacy be "*clearly* unwarranted," a requirement omitted from the language of Exemption (b)((7)(C). *Compare* 5 U.S.C. § 552(b)(6), *with* 5 U.S.C. § 552(b)(7)(C); *see also Fed. Labor Relations Auth.*, 510 U.S. at 496 n.6. Second, whereas Exemption (b)((7)(C) prevents disclosure of information that "could reasonably be expected to constitute" an unwarranted invasion of privacy, Exemption (b)(6) limits the protection to information that "would constitute" an unwarranted invasion of privacy. *Fed. Labor Relations Auth.*, 510 U.S. at 496 n.6. Thus, Exemption (b)((7)(C) is more protective of privacy than Exemption (b)(6), and, although both exemptions require the court to engage in a similar balancing analysis, they "differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions." *Id.*

### a    Categories (b)(6)-2 and (b)(7)(C)-2

Exemptions (b)(6) and (b)(7)(C) have been asserted to protect the names of FBI Special Agents ("SAs") who are responsible for conducting, supervising, and/or maintaining the investigative activities in this and other investigations.[2] [Filing No. 43-1 at 9 (Hardy Decl. ¶ 17]. Similarly, the exemption was used to redact the names and identifying information of FBI support employees. These individuals are in positions of access to information regarding official

---

[2] Exemption (b)(6)-2/(b)(7)(C)-2 have been cited on the following pages:  HIGGS-FBI-1, 3, 26, 32, 34, 39, 40, 43, 52-77, 80, 82-90, 91-6, 98-9, 100-17, 135-56, 158-206, 210, 214, 216-226, 319, 397, and 452. [Filing No. 43-1 at 11 (Hardy Decl. n.4)].

law enforcement investigations, counter-terrorism and national security investigations, and could become targets of harassing inquiries for unauthorized access to FBI investigations if their identities were released. Accordingly, FBI support personnel have personal privacy interests in not having their identities disclosed.

   b.      Categories (b)(6)-3 and (b)(7)(C)-3

Exemptions (b)(6) and (b)(7)(C) have been asserted to protect the names and/or identifying information of non-FBI federal government personnel whose names appear within the records. These employees are acting in their official capacities and aided the FBI in the law enforcement investigative activities reflected in these records. The rationale for protecting non-FBI federal employees is the same as for FBI employees. Disclosure of their identities and identifying information could subject them to unauthorized inquiries and harassment that would constitute a clearly unwarranted invasion of their personal privacy.[3]

In applying these exemptions to these classes of FBI employees, and other non-FBI federal government personal, The FBI examined documents containing the names and/or identifying information of FBI SAs and support personnel, and other non-FBI federal government personal to determine whether there was any public interest that outweighed these individuals' substantial privacy interests and concluded there was none. Specifically, the FBI determined that disclosure of the name and identifying information of the federal government personnel, by themselves, would not shed light on the operations and activities of the FBI. Therefore, the FBI determined the privacy interests of the federal government personnel

---

[3] Exemptions (b)(6)-3 and (b)(7)(C)-3 have been asserted on the following pages: HIGGS-FBI-1, 4, 28, 30, 32-3, 38-9, 43, 51, 80, 100, 102, 105, 113, 210, 213-15, 282, 284, 288, 290, 294, 299-300, 302, 335, 340, 342, 351, 356, 358, 363-364, 390, 392, 394-5, 399, 410, 417-19, 421, 426, 429, 445, 448, 450, 454, 463, 465, 495, 498-500, 505, 510-15, 517, 520, 522-23, 525, 540, 545-46, 553, 564, 569-70, 589, 591, 608, 629, 649, 661, 667, 695-96, 725, and 734. [Filing No. 43-1 at 12 (Hardy Decl. n.5)].

outweighed any public interest in disclosure, and that disclosure would unwarrantedly invade their personal privacy interests.

### c. Categories (b)(6)-4 and (b)(7)(C)-4

Exemptions (b)(6) and (b)(7)(C) have been asserted to protect the names and/or identifying information of third parties who provided information. [Filing No. 43-1 at 13-14 (Hardy Decl. at § 26-27)].[4]

### d. Categories (b)(6)-5 and (b)(7)(C)-5

Exemptions (b)(6) and (b)(7)(C) have been asserted, sometimes in conjunction with (b)(7)(D), to protect the names and/or identifying information of individuals who were interviewed during the course of the FBI's murder investigation.[5]

### e. Categories (b)(6)-6 and (b)(7)(C)-6

Exemptions (b)(6) and (b)(7)(C) have been asserted to protect the names and/or identifying information of local law enforcement personnel whose names appear within the referred records.[6] These employees are acting in their official capacities and aided the FBI in Higgs' criminal investigation. The rationale for protecting non-FBI federal employees is the same as for FBI employees.

Information that applies to a particular individual meets the threshold requirement for Exemption 6 protection. *See Washington Post Co.*, 456 U.S. at 602. Moreover, there is a

---

[4] Exemptions (b)(6)-4 and (b)(7)(C)-4 have been asserted on the following pages: HIGGS-FBI-2, 24, 32-38, 40, 42, 43, 44-45, 52-77, 78, 79, 81, 82-99, 101, 103-4, 106-12, 114-19, 135-7, 142-54, 155, 158-205, 210, 211-26, 230-266, 268-81, 283, 289-335, 339-424, 426-553, 563-70, 575-733, and 735-738. [Filing No. 43-1 at 12 (Hardy Decl. at n.6)].

[5] Exemptions (b)(6)-5 and (b)(7)(C)-5 have been asserted on the following pages: HIGGS-FBI-32-43, 210-13, and 215. [[Filing No. 43-1 at 13 (Hardy Decl. at n.7)].

[6] Exemptions (b)(6)-6 and (b)(7)(C)-6 have been asserted on the following pages: HIGGS-FBI-425, 466, and 468. [Filing No. 43-1 at 14 (Hardy Decl. at n.8)].

substantial privacy interest in personal identifying information. *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006) (noting that in addition to files, the court has interpreted Exemption 6 as protecting "bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy"); *Lakin Law Firm*, 352 F.3d at 1124 ("[P]ersonal identifying information is regularly exempt from disclosure. As it should be, for the core purpose of FOIA is to expose what the government is doing, not what its private citizens are up to."); *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (stating that an individual has a significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"); *see also Fed. Labor Relations Auth.*, 975 F.2d at 353 (holding that federal employees have a privacy interest in the non-disclosure of their names and home address).

Government officials do not surrender all rights to their personal privacy simply by choosing to work for the government. *Bast v. United States Dep't of Justice,* 665 F.2d 1251, 125455 (D.C. Cir. 1981); *see Columbia Packing Co. v. United States Dep't of Agric.*, 417 F. Supp. 651, 654-55 (D. Mass. 1976), *aff'd*, 563 F.2d 495 (1st Cir. 1977) (holding that Exemption 6 prohibited disclosure of personnel files of two former agency employees that included medical records because the privacy interest outweighed the public interest). On the contrary, the very nature of an employee's work may render release of personal information an unwarranted invasion of personal privacy. *See, e.g.*, *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 194-95 (2d Cir. 2012) (holding that OPM properly withheld both names and duty-station information for over 800,000 federal employees in five sensitive agencies and twenty-four sensitive occupations, including correctional officers); *Becker v. IRS*, 34 F.3d 398, 405 (7th Cir. 1994) (personal interest in disclosure of employees names does not advance a public interest in disclosure and the

personal interest does not outweigh the employees privacy interests); *Matter of Wade*, 969 F.2d 241, 246 (7th Cir. 1992) ("We have stated that FBI agents' privacy interests are serious and substantial" as "[d]isclosure conceivably could result in annoyance and harassment of the agents by the requesting party.").

Once a government agency establishes that a legitimate privacy interest is implicated, the burden shifts to the requester to show both "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and that "the information is likely to advance that interest." *Favish*, 541 U.S. at 172. Higgs has failed to identify any such a public interest.

The interest identified by Higgs is really his personal interest in seeking information potentially relevant to him for purposes of his pending 2255 petition, and he cannot recast it as a public interest. [*See* Filing No. 52 at 16]. There is a public interest in disclosure only if disclosure "would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  *Lepelletier*, 164 F.3d at 46; *see also United States Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (stating that the only public interest a court must examine is whether disclosure would contribute significantly to public understanding of the government's operations or activities). A prisoner's interest in attacking his own conviction is not a public interest. *Hawkins*, 347 F. App'x at 225 (unpublished); *see also Antonelli*, 721 F.2d at 619 (7th Cir. 1983) (finding no public interest in ensuring a plaintiff's convictions were not obtained as a result of a constitutional violation). Indeed, it is well settled that FOIA was not intended to supplement or displace rules of discovery. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989); *see Robbins Tire*, 437 U.S. at 242; *Marshall v. FBI*, 802 F. Supp. 2d 125, 136 (D.D.C. 2011) (noting that FOIA was not intended as a device to enlarge the scope of discovery permitted by the Federal Rules of Criminal

Procedure); *See Thomas v. United States Dep't of Justice*, 260 F.App'x 677, 679 (7th Cir. 2007) (unpublished) (finding no public interest as plaintiff was "seek[ing] to learn about prosecutorial misconduct, not the [agency's] misconduct").[7]

Finally, even if understanding whether prosecutorial misconduct occurred could somehow be considered a public interest contemplated by FOIA, it is not sufficient for Higgs to merely make the allegation. Rather, the Supreme Court has held that when a public interest argument is based on claims of misconduct by a federal agency, the plaintiff "must produce evidence that would warrant a belief by a reasonable person that the alleged government impropriety might have occurred" before considering whether disclosure of an individual's identity might substantially increase the public's understanding regarding the alleged misconduct. *Favish*, 541 U.S. at 174-75. Here, Higgs has not produced any evidence in this FOIA case of FBI misconduct. Indeed, the only evidence of purported misconduct to which he cites is the decision on his Rule 60(d) Motion, [Filing No. 52 at15 & n.7], in which the Court recounts his argument that an Assistant U.S. Attorney made fraudulent assertions to the Court. *United States v. Higgs*, 193 F. Supp. 3d 495, 506 (D. Md. 2016). Importantly, however, the Court held in that case that "Higgs has failed to prove by clear and convincing evidence, first, that the Government in any sense committed fraud on the court …; and second, that the Government engaged in an intentional plot to deceive the Court …; and third, even assuming the factual accuracy of Higgs's allegations, he has failed to establish that evidence of benefits to [a third party] beyond those already disclosed to the defense would have made a material difference to the outcome of the § 2255 proceedings." *Id*. None of this establishes evidence in this FOIA case

---

[7] Consideration of *Berger v. United States*, 295 U.S. 78, 88 (1935) does alter this analysis. *Berger* is not a FOIA case, and the Supreme Court did not undertake to balance privacy interests against a public interest in the release of information about a criminal prosecution.

that the FBI engaged in any misconduct, nor that the disclosure of all individuals' names from the responsive FBI records would significantly increase the public's understanding of the purported misconduct.

Higgs also challenges the application of these exemptions together suggesting that "it is improper to lump (b)(6) and (b)(7)(C) together, since the standards and requirements for the two exemptions are distinct." [Filing No. 52 at 12]. Higgs' argument ignores that the Supreme Court has acknowledged that:

> Exemption 7(C) is more protective of privacy than Exemption 6: The former provision applies to any disclosure that "could reasonably be expected to constitute" an invasion of privacy that is "unwarranted," while the latter bars any disclosure that "would constitute" an invasion of privacy that is "clearly unwarranted." Contrary to the view of the court below, *see* 975 F.2d, at 1113, however, the fact that *Reporters Committee* dealt with a different FOIA exemption than the one we focus on today is of little import. Exemptions 7(C) and 6 differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions. As we shall see in Part III, infra, however, the dispositive issue here is the identification of the relevant public interest to be weighed in the balance, not the magnitude of that interest. *Reporters Committee* provides the same guidance in making this identification in Exemption 7(C) and Exemption 6 cases. *See, e.g., Department of State v. Ray*, 502 U.S. 164, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) (Exemption 6 case applying *Reporters Committee* ).

*United States Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496, n.6 (1994).

Moreover, consideration of the Declaration of David Hardy demonstrates that the FBI both understood the basis for each, and the distinctions between the exemptions and determined that both were applicable to exempt certain information from disclosure. [*See* Filing No. 43-1 at 7 (Hardy Decl. at ¶¶ 11-13)].

Nor does the passage of time diminish the privacy protection afforded by Exemption (b)(7)(C). *See, e.g., Halpern v. FBI*, 181 F.3d 279, 297 (2d Cir. 1999) ("Confidentiality interests cannot be waived through … the passage of time."); *McDonnell v. U.S*., 4 F.3d 1227, 1256 (3d

Cir. 1993) (passage of 49 years did not negate individual's privacy interests); *Maynard v. CIA*, 986 F.2d 547, 566 n.21 (1st Cir. 1993) (finding effect of passage of time upon an individual's privacy interests to be "simply irrelevant"); *Fitzgibbo*n, 911 F.2d at 768; *Keys v. DOJ*, 830 F.2d 337, 348 (D.C. Cir. 1987) (holding passage of forty years did not "dilute the privacy interest as to tip the balance" in favor of disclosure); *King v. DOJ*, 830 F.2d 210, 234 (D.C. Cir. 1987) (rejecting argument that passage of 35 years diminished privacy interests); *Stone v. FBI*, 727 F. Supp. 662, 665 (D.D.C. 1990) (explaining that FBI Special Agents who participated in an investigation over 20 years ago, even one as well known as the investigation of the assassination of Robert F. Kennedy, "have earned the right to be 'left alone' unless an important public interest outweighs that right"); *Branch v. FBI*, 658 F.Supp. 204, 209 (D.D.C. 1987) (privacy interests of persons mentioned in investigatory files does not necessarily diminish simply by the passage of time).  Thus any assertion that because these records are decades old, they would not harm any privacy interests, [*see* Filing No. 52 at 8], lacks merit.

Likewise, how the U.S. Park Police applied FOIA to its documents has no bearing on whether the FBI properly applied the FOIA exemptions to information and material that originated with the FBI. The U.S. Park Police's disclosure of information that Higgs believes is the same or similar to information the FBI withheld as exempt does not preclude the FBI from doing so because one agency cannot waive a FOIA exemption on behalf of another agency. *See Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999) (release of information by one agency does not constitute an official release by another agency); *Hunt v. CIA*, 981 F.2d 1116, 1120 (9th Cirt. 1992); *Nielsen v. BLM*, 252 F.R.D. 499, 519 (D. Minn. 2008) ("This Court will not construe the release of the … unredacted email by the Forest Service as waiver of the deliberative process privilege by the BLM, considering that it was not the BLM that released the document.")  *Cf.*

*Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1130-33 (D.C. Cir. 1983) (for a prior public disclosure to constitute a waiver blocking an agency's assertion of an exemption, it must (1) be as specific as the information previously released; (2) match the information previously disclosed; and (3) have been made public *through an official and documented disclosure* by the agency seeking to assert the exemption). Thus, the U.S. Park Police cannot – and has not – bound the FBI by any of its independent disclosure determinations. Higgs' assertion that the mere fact that AUSA names were made public during trial or through a press release by the United States Attorney's Office, [*see* Filing No. 52 at 14 n.6], undercuts the FBI's application of the privacy exemptions, similarly lacks merit. The prior release of the information by another agency does not waive the FBI's application of the FOIA exemption.

### 2.   Exemption (b)(7)(D)

Higgs does not make a legal challenge to the FBI's Exemption (b)(7)(D) withholdings – nor, by extension, to the (b)(6)/(b)(7)(C)-5 withholdings taken in conjunction with (b)(7)(D). He only reiterates his claim that the FBI's *Vaughn* declaration is not sufficient because it was "categorical." However, his generalized complaints about the FBI's briefing are inadequate to raise a genuine issue about the FBI's withholdings under (b)(7)(D).

### 3.   Exemption (b)(7)(E)

#### a.   Review and Analysis of Rifling Characteristics

*PHE, Inc. v. DOJ*, 983 F.2d 248, 249-50 (D.C. Cir. 1993) does not stand for the proposition, as Higgs argues, that "ballistics test" information broadly can never be protected under Exemption (b)(7)(E), and the statute itself does not exclude this category of information from protection. Rather, what *PHE, Inc.* says – consistent with the legislative history – is that the

FBI cannot refuse to disclose the existence of a certain types of techniques that are already publicly known, such as ballistics testing. But case law is clear that non-public information about the use and utilization of an otherwise publicly known technique is subject to protection under Exemption (b)(7)(E). This very application of Exemption (b)(7)(E) was recently upheld by the district court for the District of Columbia in a case involving non-public information about the FBI's use and utilization of surveillance, a technique that is clearly known to the public. *Judicial Watch v. Dep't of State,* 2017 WL 3913212, at \*4 (D.D.C. Sept. 6, 2017) (the FBI properly asserted (b)(7)(E) to protect surveillance videos because they would reveal non-public details concerning the use surveillance as a law enforcement technique).

Moreover, the FBI's use of Exemption (b)(7)(E) does not turn on whether or not this is a scientific technique, nor did the FBI claim that it did. The FBI made it clear that it was protecting its methodologies for collecting and analyzing rifling characteristics (not ballistics testing broadly), and that disclosure of this information, even after all of these years, risks circumvention of law now in relation to the FBI's current activities and methodologies. *See, e.g., id.* (mere passage of time does not justify disclosure under (b)(7)(E)).

In any event, the FBI is not required to establish risk of circumvention in order to apply Exemption (b)(7)(E) to law enforcement techniques and procedures, based on the plain language of the statute. *See Hamdan v. DOJ*, 2015 WL 4773499, at \*13 (9th Cir. Aug. 14, 2015) (following the Second Circuit's lead, the Ninth Circuit found that the plain language of Exemption (b)(7)(E) does not require a showing of risk of circumvention to protect techniques and procedures); *see also Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Security*, 626 F.3d 678, 681 (2d Cir. 2010).

**b.      Database Printouts**

Not all databases used by FBI are non-public law enforcement or sensitive databases, and accordingly, the FBI does not use Exemption (b)(7)(E) as an excuse to withhold *all* database printouts it obtains in an investigation, contrary to Higg's assertion. Here, however, the FBI's use of the database at issue – including its use in particular types of investigations and/or under particular circumstances – is not a publicly known fact. Disclosure of any part of the database printout could reasonably be expected to risk revealing the database or the nature of the database being used, which reveals non-public information about investigative techniques utilized by the FBI. And although the FBI is not required to establish a risk of circumvention, it did so in the Second Hardy Declaration. [*See* Filing No. 43-1 (Hardy Decl. at ¶ 35)].

Moreover, as explained previously, the reports protected by the FBI are reports that were obtained *about third parties*. Once all information that is exempt under Exemption (b)(7)(E) – *i.e.*, all information that would reveal the database being utilized and the types of information being gathered in furtherance of a particular type of investigation – and under Exemptions b)(6)/(b)(7)(C) – i.e., information about third parties in which they have privacy interests – is redacted, there is no reasonably segregable, non-exempt information left to be released.

Finally, as argued above, *supra* at 17-18, Higgs' argument that the U.S. Park Police may have applied these exemptions to records in its possession differently, is irrelevant to the whether the FBI properly applied these exemptions.

**D.      The FBI made every effort to segregate the exempted materials**

FOIA provides that "[a]ny reasonably segregated portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). At the same time, however, "[i]f the proportion of nonexempt

PA-98

factual material is relatively small and is so interspersed with exempt material that separation by the agency and policing of this by the courts would impose an inordinate burden, the material is still protected because, although not exempt, it is not 'reasonably segregable.'" *Lead Indus. Ass'n v. Occupational Safety & Health Admin.*, 610 F.2d 70, 86 (2d Cir. 1979). Agencies are entitled to a presumption that they complied with this obligation to disclose reasonably segregable materials. *Stevens*, 2014 WL 5796429, at *9 (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)). Regardless of whether a litigant raises the issue, courts must make an express finding on the issue of segregability. *Mo. Coal. for Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F.3d 1204, 1212 (8th Cir. 2008); *see, e.g.*, *Patterson*, 56 F.3d at 840 (remanding partly because the district court made no finding as to segregability). Mr. Hardy's declaration sets forth the segregability analysis the FBI performed regarding each document withheld. [Filing No. 43-1 at 20-21 (*See* Hardy Decl. ¶¶ 36-40)].

Contrary to Higgs assertion that the FBI's segregability explanation is boilerplate, Mr. Hardy's Declaration, read in total, establishes that the FBI conducted a document-by-document, line-by-line review of the responsive records and released everything that could reasonably be segregated. Higgs has not pointed to any redactions on the pages that were released to him that he believes were not properly segregated, and thus has failed to establish any reasonable dispute about segregation on those pages. As to the withheld in full pages, the segregability explanation sufficiently establishes why no information can be segregated and released on those pages.

This uncontroverted declaration evidences that, as to all materials withheld, every effort was made to release all information that could be segregated without revealing the privacy interests of third parties, law enforcement techniques, or other exempted information. Accordingly, given this declaration, the presumption in favor of the FBI, and the lack of

evidence to rebut this presumption, *see Wade*, 969 F.2d at 246 (stating that the veracity of the government's submissions regarding reasons for withholding documents should not be questioned without evidence of bad faith), the FBI has proven that no segregable, nonexempt portions of these materials were withheld and is entitled to a finding of such.

> ### E.    *In camera* **review is not necessary.**

In his brief, as an alternative to the entry of summary judgment in his favor, Higgs requests that the Court conduct an *in camera* review of the remaining items in dispute to determine whether they were properly exempted from disclosure. [Filing No. 52 at 4].

The court has discretion to conduct an *in camera* review of the materials at issue if the public record does not provide a sufficient basis for analyzing the applied exemptions. *See* 5 U.S.C. § 522(a)(4)(B); *In re United States Dep't of Justice*, 999 F.2d 1302, 1310 (8th Cir. 1993); *Stein v. United States Dep't of Justice*, 662 F.2d 1245, 1254 (7th Cir. 1981). Thus, courts need not review documents withheld under FOIA exemptions if the withholding agency provides sufficiently detailed affidavits describing what documents were withheld and explaining why they fit a cited exemption. *Wade*, 969 F.2d at 246; *see also Antonelli*, 739 F.2d at 303 ("The agency may submit detailed descriptions of the requested documents and justifications of the claim of exemption without disclosing the documents themselves." (citation omitted)). Indeed, the Seventh Circuit has stated that "[a]ffidavits are sufficient for summary judgment under FOIA without *in camera* inspection where the affidavits (1) describe the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of agency bad faith." *Kimberlin v. Dep't of Treasury*, 774 F.2d 204, 210 (7th Cir. 1985) (internal quotation marks omitted).

The declaration provided by Mr. Hardy provides specific detail concerning the information contained in the materials withheld and why that information was withheld. Moreover, as addressed above, his declaration further demonstrates that the information withheld falls logically within each exemption that the FBI applied. *Kimberlin*, 774 F.2d at 210. And, lastly, Higgs has presented no evidence contradicting Mr. Hardy's declaration or suggesting that the FBI acted in bad faith. *See id.* Therefore, the FBI has met its burden of proving that the materials at issue fit within one of the statutory exemptions, and an *in camera* review is not necessary. *See Antonelli*, 739 F.2d at 303.

## IV.     CONCLUSION

For all of the foregoing reasons, the U.S. Park Police respectfully requests that this Court grant summary judgment in its favor and against Higgs.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney


By:     s/ Jill Z. Julian
        Jill Z. Julian
        Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2018, the foregoing was filed electronically through

ECF/CM. Notice of this filing will be sent to the following parties by operation of the Court's

electronic filing system. Parties may access this filing through the Court's system:

Matthew C. Lawry
FEDERAL COMMUNITY DEFENDER
matthew_lawry@fd.org


<div align="center" style="text-align:left; margin-left:45%;">

s/ <u>Jill Z. Julian</u>
Jill Z. Julian
Assistant United States Attorney
Office of the U.S. Attorney
10 West Market Street, Suite 2100
Indianapolis, IN 46204
317-226-6333

</div>

PA-102

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DUSTIN JOHN HIGGS, | : | |
| | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | No. 2:16-cv-00096-JMS-MJD |
| | : | |
| v. | : | |
| | : | |
| | : | |
| UNITED STATES PARK POLICE, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to this Court's Order of September 12, 2017 [Filing No. 45], Plaintiff Dustin

Higgs, by undersigned counsel, respectfully files his reply in support of his cross-motion for

summary judgment.

**ARGUMENT**

**I.     THE VAUGHN DECLARATION IS INSUFFICIENTLY DETAILED.**

The agency contends that the "coded" Vaughn declaration it submitted is sufficient.

Primarily, the agency relies on the assertion that such coded declarations are virtually per se

adequate.  Reply in Supp. of Def.'s Mot Summ. J. 4-6 [Filing No. 55] (hereinafter "Def.'s

Reply").  It would be more accurate to say that *some* coded declarations are adequate.

For example, the District of Columbia Circuit Court of Appeals reached different

conclusions in two leading cases, decided only days apart.  In *King v. U.S. Dep't of Justice*, 830

F.2d 210 (D.C. Cir. 1987) (cited and quoted in Pl.'s Br. in Supp. of Cross-Mot. Summ. J. 10

[Filing No. 52] (hereinafter "Pl.'s Br."), the court found that the agency's "categorical"

PA-103

description of the redacted material was "clearly inadequate." *King*, 830 F.2d at 224.  Days later, a different panel of the District of Columbia Circuit found that a "coded" declaration was adequately specific.  *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349-50 (D.C. Cir. 1987) (cited and quoted in Def.'s Reply 4).

In the thirty years since *King* and *Keys* were decided, little has changed.  The agency supplies a string of citations approving coded declarations.  Def.'s Reply 4-5.  A string of citations disapproving coded declarations follows:  *Halpern v. FBI*, 181 F.3d 279, 293-94 (2d Cir. 1999) (coded affidavit failed to "fulfill the functional purposes addressed in *Vaughn*");  *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1051 (3d Cir. 1995) (discussed in Pl.'s Br. 10-11);  *Church of Scientology Intern. v. U.S. Dep't of Justice*, 30 F.3d 224, 230-32 (1st Cir. 1994) (cited in Pl.'s Br. 11);  *Wiener v. FBI,* 943 F.2d 972, 977–79 (9th Cir. 1991) ("boilerplate" explanations without an effort to "tailor the explanation to the specific document withheld" were insufficient);  *Samahon v. FBI*, 40 F. Supp. 3d 498, 510 (E.D. Pa. 2014) (cited in Pl.'s Br. 11); *Samuel Gruber Educ. Project v. U.S. Dep't of Justice,* 24 F. Supp. 2d 1, 5-8 (D.D.C. 1998) (discussing "the near universal condemnation" of this categorical indexing scheme).[1]

The critical question should be whether the party seeking disclosure and the court can tell from the declaration what is being withheld and why it is being withheld.  *See Hinton v. Dep't of Justice*, 844 F.2d 126, 129 (3d Cir. 1988) (function rather than form is the key; what is required of Vaughn declaration "is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure.").  If they cannot, then the agency's inherently superior knowledge about those questions forecloses both meaningful argument by the requesting party and meaningful review

---

[1] Given that several of these decisions were cited in Pl.'s Br. 10-11, the agency errs in asserting that Plaintiff cited only *Davin* to support his argument.  *See* Def.'s Reply 6.

by the court.  *See, e.g.*, *Davin*, 60 F.3d at 1051 ("index provides no information about particular documents that might be useful in evaluating the propriety of the decision to withhold"); *Samahon*, 40 F. Supp. 3d at 510 ("[W]ithout more information specific to the circumstances of this case, it is impossible to assess the precise nature of the particular privacy interests at stake or to consider the public interest that might be served by the disclosure.").

Here, the need for a more detailed declaration is particularly acute because the agency has completely withheld 655 out of 738 pages of records, and many of the pages provided are heavily redacted.  Using "coded" declarations for pages withheld in full has been found inadequate.  *See Coleman v. FBI*, No. 89-2773, 1991 WL 333709, at *4-6 (D.D.C. April 3, 1991) (allowing "coded" declaration for redacted pages, but rejecting it as to pages withheld in full), *summarily aff'd*, No. 92-5040, 1992 WL 373976 (D.C. Cir. Dec. 4, 1992).  In withholding many of those pages, the agency claimed multiple overlapping exemptions, and asserted that whatever was not exempt was not "reasonably segregable" from the exempt material.  *See* Def.'s Reply 20-22.  Where that is the case, Plaintiff and this Court have only the vaguest idea what was withheld and why.  The agency attempts to avoid the obvious application of *Davin* and similar decisions to this situation by asserting that only two types of documents were "withheld in full," Def.'s Reply 6, ignoring the fact that many other pages of documents were effectively withheld in full because of the multiple overlapping exemptions claimed by the agency.  This practice is much more opaque than withholding a document based on a single claimed exemption.

For the reasons set forth in Pl.'s Br. and herein, the agency's *Vaughn* declaration is inadequate.  As discussed in Pl.'s Br. 11, where the declaration is inadequate, the district court has discretion either to grant summary judgment to the requester, require the agency to provide a more specific index or declaration, or conduct in camera review.

## II.     THE GOVERNMENT'S CLAIMED EXEMPTIONS DO NOT JUSTIFY WITHHOLDING OF THE REQUESTED DOCUMENTS.

### A.     Exemptions (b)(6) and (b)(7)(C).

The agency contends that all names contained in its records – whether of witnesses, FBI personnel, non-FBI governmental personnel, third parties who provided information, people who were interviewed, or local law enforcement personnel – are exempt under both (b)(6) and (b)(7)(C).  Def.'s Reply 7-18.  After reviewing the Reply and cited authorities, we agree that regardless of whether some or all of such names are within the scope of Exemption 6, they are all within the scope of Exemption 7(C).  Plaintiff faces a higher bar with respect to Exemption 7(C) than with respect to Exemption 6.  *See, e.g.*, *Iowa Citizens for Cmty. Improvement v. U.S. Dep't of Agric.*, 256 F. Supp. 2d 946, 953 (S.D. Iowa 2002).  Therefore, it makes sense to analyze Plaintiff's claim under Exemption 7(C).  *Perlman v. U.S. Dep't of Justice*, 312 F.3d 100, 106 (2d Cir. 2002), *vacated and remanded*, 541 U.S. 970, *reinstated after remand*, 380 F.3d 110 (2d Cir. 2004).[2]

Where a privacy interest is claimed as the basis for an exemption, the reviewing court must balance the privacy interest of the person referenced in the record against the public interest in disclosure.  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).  The relevant public interest in disclosure is "to open agency action to the light of public scrutiny."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1975) (quotation marks omitted).  The statute, with its basic policy of full disclosure,

---

[2] Contrary to the agency's assertion, Def.'s Reply 16 (quoting *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994)), analysis under Exemptions 6 and 7(C) remains distinct.  As the quoted passage itself makes clear, the Court in *Fed. Labor Relations Auth.* only applied the analysis from a previous Exemption 7(C) case to an Exemption 6 case with respect to the "*identification* of the relevant public interest . . ., not the *magnitude* of that interest."  510 U.S. at 496 n.6 (emphasis in original).  *See Iowa Citizens*, 256 F. Supp. 2d at 953.

focuses on the citizens' right to be informed "what their government is up to." Official information that sheds light on an agency's performance of its duties falls squarely within that statutory purpose.

*Reporters Comm.*, 489 U.S. at 773.

In its Reply, the agency treats the privacy interests of the various types of persons whose names are contained in the records – FBI personnel, non-FBI federal government personnel, local law enforcement personnel, interviewees, etc. – as identical and identically powerful, and the public interest in disclosure as minimal or non-existent.  Def.'s Reply 10-18.  The agency's arguments are not supportable with respect to either side of the balance.

While many persons who are named in the agency's records have privacy interests, those interests are not identical or identically powerful.  As pointed out in Pl.'s Br. 14, deceased persons have at most very limited privacy interests.  The agency does not contend that it has taken any steps to determine whether the individuals whose identities have been withheld are deceased or alive.  Its response is therefore inadequate.  *Id.*  Other types of persons also have diminished privacy interests.  *See, e.g.*, *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 7 (D.C. Cir. 2011) (persons convicted of crime have reduced privacy interest); *Perlman*, 312 F.3d at 107-08 (discussing factors bearing on strength of government employees' privacy interests); *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001) (privacy interests of public law enforcement officers reduced, particularly to the extent that records might disclose official misconduct).  Furthermore, contrary to the agency's unsupported assertion, Def.'s Reply 18, the fact that the Justice Department regularly issues press releases about its prosecutions, *see* Pl.'s Br. 14 n.6, does reduce any notion that the identities of prosecutors and other persons mentioned in those releases are obscure.  *ACLU*, 655 F.3d at 10 & n.12.

The agency argues that any person named in a law enforcement record has an overwhelming privacy interest.  Def.'s Reply 9-10 (citing and quoting *Reporters Comm.*, 489

U.S. at 780; *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991)).  This argument is not well taken.  First, as is clear from the authorities cited, the agency's argument applies at most to private individuals, not law enforcement officers.  *See Safecard Servs.*, 926 F.2d at 1206 (referring to "names and addresses of private individuals").  Second, even when law enforcement records contain information about private individuals, those individuals' privacy interests do not necessarily override the public interest in disclosure.  *See ACLU*, 655 F.3d at 6-16.

With respect to the public interest, the agency first asserts that the only interest "really" at stake is Plaintiff's personal interest in obtaining information potentially relevant to his pending petition under 28 U.S.C. § 2255, and that he cannot recast that as a public interest.  Def.'s Reply 14.  Plaintiff agrees that his personal interest is not cognizable under FOIA.  Pl.'s Br. 15.  However, Plaintiff is aware of no basis whatever for Defendant's assertion that an individual's personal interest *disqualifies* that individual from presenting a valid public interest, and Defendant has cited no authority for that proposition.  To the contrary, with exceptions not relevant here, the "identity of the requesting party has no bearing on the merits of his or her FOIA request."  *Reporters Comm.*, 489 U.S. at 771; *see also Multi Ag Media Ltd. Liab. Co. v. Dep't of Agriculture*, 515 F.3d 1224, 1231 n.2 (D.C. Cir. 2008) (although plaintiff "may not want the information to check up on the government itself, the use for which the requester seeks the information is not relevant for purposes of determining the public interest").

Remarkably, Defendant expresses doubt about whether "understanding whether prosecutorial misconduct occurred could somehow be considered a public interest contemplated by the FOIA . . . ."  Def.'s Reply 15.  Plaintiff makes two observations about this contention.

First, there can be no real question that allegations of misconduct by government investigators are matters of substantial public interest.  The topic has received widespread media

PA-108

attention.[3]  The activities of the Department of Justice have also been the topic of frequent, though not always productive, congressional investigations.  *See* Congressional Research Service, *Congressional Investigations of the Department of Justice, 1920-2012: History, Law, and Practice*, Nov. 5, 2012, https://fas.org/sgp/crs/misc/R42811.pdf.  It is also readily apparent that issues regarding investigative and prosecutorial misconduct are frequently litigated at all levels of the court system, as part of criminal proceedings, in post-conviction proceedings, and in civil suits.  The results of such litigation are also matters of public interest.

Second, the public interest identified by Plaintiff is not simply in "understanding whether prosecutorial misconduct occurred," Def.'s Reply 15, but in "shedding light on whether the federal government," including the FBI, "arranged with state authorities to cease pursuing homicide charges in a separate case involving the key cooperating witness against Plaintiff . . . and then improperly concealed those facts from Plaintiff and the public."  Pl.'s Br. 15.  This is a quintessential example of "citizens' right to be informed 'what their government is up to,'" *Reporters Comm.*, 489 U.S. at 773, and thus fits within the "basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny."  *Rose*, 425 U.S. at 372 (internal quotation marks omitted).  Indeed, similar interests have repeatedly been identified as

---

[3] *See, e.g.*, Chris Palmer, Craig R. McCoy & Mark Fazlollah, *Philadelphia DA Larry Krasner faces political, policy test with reported list of problem cops*, http://www.philly.com/philly/news-/crime/philadelphia-police-misconduct-list-larry-krasner-homicide-philip-nordo-20180214.html; Michael Wines, *Prosecutors Had the Wrong Man.  They Prosecuted Him Anyway*, N.Y. Times, Jan. 17, 2018, https://www.nytimes.com/2018/01/17/us/prosecutors-new-orleans-evidence.html; Molly Davis, *Commentary: Prosecutors need to be held accountable for wrongdoing*, Salt Lake Trib., Jan. 13, 2018, https://www.sltrib.com/opinion/commentary/-2018/01/13/commentary-prosecutors-need-to-be-held-accountable-for-wrongdoing/; Henry Gass, *Cliven Bundy case: How big a problem is prosecutorial misconduct?*, Christ. Sci. Mon., Jan. 11, 2018, https://www.csmonitor.com/USA/Justice/2018/0111/Cliven-Bundy-case-How-big-a-problem-is-prosecutorial-misconduct; Human Rights Watch, *Dark Side: Secret Origins of Evidence in US Criminal Cases*, Jan. 9, 2018, https://www.hrw.org/report/2018/01/09/dark-side/secret-origins-evidence-us-criminal-cases.

substantial public interests.  *See, e.g.*, *ACLU*, 655 F.3d at 13 (finding public interest in "shedding light on the scope and effectiveness of cell phone tracking as a law enforcement tool"); *Cooper-Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 554 (5th Cir. 2002) (public interest in monitoring specific OSHA investigation was sufficient to overcome privacy interests); *Lissner*, 241 F.3d at 1223 (finding public interest in integrity of agency investigation); *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 811-12 (9th Cir. 1995) (public interest in names of subjects of investigatory interest because disclosure would shed light on FBI actions and to what extent FBI "abused its law enforcement mandate by overzealously investigating a political protest movement"); *Hidalgo v. FBI*, 541 F. Supp. 2d 250, 255-56 (D.D.C. 2008) ("public has a strong interest in ascertaining the truth of . . . serious allegations of government misconduct"). Accordingly, Plaintiff presents a significant public interest in disclosure.

Where there are both privacy interests and public interests, the opposing interests must be balanced.  In particular, under Exemption 7(C), a "bare suspicion" of misconduct is not enough; the requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).  As set forth in Pl.'s Br. 15, the District Court for the District of Maryland found that Plaintiff had "obtained considerable evidence," *United States v. Higgs*, 193 F. Supp. 3d 495, 514 n.15 (D. Md. 2016), to support his claim that actions taken by the federal government resulted in the state authorities' decision not to pursue homicide charges against the key cooperating witness.  Ultimately, however, the district court denied Plaintiff's motion to set aside the judgment for fraud on the court under the demanding standard of Rule 60(d)(3).  *Id.* at 513.

The agency responds that "[n]one of this establishes evidence in this FOIA case that the FBI engaged in any misconduct . . . ." Def.'s Reply 15-16. In making that assertion, the agency appears to rely heavily on the Maryland district court's ruling that Plaintiff had failed to prove by "clear and convincing evidence" that the Government had committed a fraud on the court. *Id.* at 15 (quoting *Higgs*, 193 F. Supp. 3d at 506).

To the extent that the agency is arguing that Plaintiff's failure to persuade the Maryland district court that he had proved a fraud on the court by clear and convincing evidence means that he has also failed to satisfy the *Favish* standard, the agency is mistaken. By its own terms, the *Favish* standard – evidence that would "warrant a relief by a reasonable person" that the alleged impropriety *might* have occurred – is obviously a far lower standard than the "clear and convincing evidence" standard applied by the Maryland district court. Indeed, that court's finding that Plaintiff had "obtained considerable evidence" to support his motion would appear to satisfy *Favish*. Courts have found the *Favish* "more than bare suspicion/evidence sufficient to warrant belief that impropriety might have occurred" or similar standards satisfied based on similar showings. *See, e.g.*, *Aguirre v. SEC*, 551 F. Supp. 2d 33, 56 (D.D.C. 2008) (*Favish* standard met where an investigation "uncovered several potential improprieties by [agency] staff"); *Hidalgo*, 541 F. Supp. 2d at 255-56 (disclosure required "where the plaintiff has made enough of a showing to raise questions about possible agency misconduct"); *Bennett v. DEA*, 55 F. Supp. 2d 36, 42 (D.D.C. 1999) (disclosure required where Plaintiff uncovered information "suggesting extensive government misconduct, and the information sought is necessary to confirm whether Plaintiff's findings are backed by the record").

The agency's response may also be read as asserting that Plaintiff has not shown any evidence "in this FOIA case" of government misconduct, apart from the Maryland district

court's opinion.  To the extent that there is a question whether Plaintiff has made an adequate factual proffer of evidence of misconduct, Plaintiff attaches hereto the Rule 60(d) motion, with attached exhibits, that was filed in the District Court of Maryland.  In the interest of completeness, Plaintiff also attaches hereto the government's response and his reply.  *See* Exhibits A-C.  Plaintiff does not seek to relitigate those matters, but only to show that there is evidence in this case of government misconduct, and thus that his factual proffer meets the requirements of *Favish*.

Accordingly, the agency has not satisfied its "burden of justifying withholding under any of FOIA's exemptions."  *Am. Civil Lib. Union of N. Cal. v. U.S. Dep't of Justice*, 880 F.3d 473, 483 (9th Cir. 2018) (citation omitted) (hereinafter "*ACLU-NC*").  The Court should grant summary judgment as to Exemption 7(C) or conduct in camera review.

### B.      Exemption (b)(7)(D).

Plaintiff does not reply with respect to Exemption 7(D), beyond reiterating that it is impossible to tell whether the agency has properly invoked that Exemption, given the inadequacy of the *Vaughn* declaration and the agency's broad and opaque application of the segregability principle, as discussed herein and in Pl.'s Br.  Defendant has failed to justify withholding under Exemption 7(D).  This Court should grant summary judgment as to Exemption 7(D) or conduct in camera review.

### C.      Exemption (b)(7)(E).

#### 1.      Review and analysis of rifling characteristics.

The agency contends that there are non-public "methodologies for collecting and analyzing rifling characteristics" whose exposure would risk circumvention of the law, and that it is entitled to withhold numerous pages of records on this basis under Exemption 7(E), even though the legislative history makes clear that "ballistics tests" cannot be excluded under that

exemption.  Def.'s Reply 18-19.[4]  "Exemption 7(E) only exempts investigative techniques not generally known to the public."  *Rosenfeld*, 57 F.3d at 815.  The agency's position is that there are non-public aspects of ballistics testing – because that is what "collecting and analyzing rifling characteristics" is – and that the non-public aspects may be withheld even though the public aspects may not be.

Plaintiff understands that this distinction has been applied in some settings, but submits that the agency has made no showing as to how it could possibly apply to ballistics tests.  As noted in Pl.'s Br. 19 n.8, FBI and other law enforcement agents testify every day in every court in the country about how they "collect[ed] and analyz[ed] rifling characteristics" of bullets.  The accuracy and reliability of such testing has been the subject of detailed scientific review, *see id.*, and has been contested in numerous trials.  There have been extensive discovery and hearings about the precise methodology used.  *In this context*, Plaintiff submits that it is extremely unlikely that there are "secret" aspects of the agency's techniques for "collecting and analyzing rifling characteristics," because those techniques have been fully aired in such trials.  *See Goldstein v. Office of Indep. Counsel*, No. 87-2028, 1999 WL 570862, at *14 (D.D.C. July 29, 1999) (finding portions of two documents improperly withheld under Exemption 7(E), because they did not contain a "secret or an exceptional investigative technique," and treating age of documents (ten and sixteen years old) as significant factor); *Campbell v. U.S. Dep't of Justice*, No. 89-3016, 1996 WL 554511, at *10 (D.D.C. Sept. 19, 1996) (holding that Exemption 7(E)

---

[4] The agency asserts that Plaintiff mis-cited *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248 (D.C. Cir. 1993), to stand for an improperly broad proposition about the application of Exemption 7(E) to ballistics testing.  Def.'s Reply 18-19.  In fact, Plaintiff did not cite *PHE* for any proposition.  Rather, Plaintiff quoted a passage from *Davin*, 60 F.3d at 1064, in which *Davin* cited *PHE*.  *See* Pl.'s Br. 18-19.

applies to "obscure or secret techniques"; finding agency's explanation inadequate, and ordering in camera review), *rev'd on other grounds*, 164 F.3d 20 (D.C. Cir. 1998).[5]

Alternatively, the agency argues that it is not required to establish risk of circumvention in order to apply Exemption 7(E) to law enforcement techniques. Def.'s Reply 19 (citing *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 778 (9th Cir. 2015); *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010)). There is a split in authority about this issue of statutory construction. For example, the District of Columbia Circuit has ruled that the risk of circumvention requirement applies to law enforcement techniques. *See Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, 160 F.Supp.3d 226, 241-42 (D.D.C. 2016) (discussing *Lowenstein* and contrary District of Columbia Circuit precedent). The Seventh Circuit apparently has agreed that the risk of circumvention requirement applies, in an unpublished order. *See Catledge v. Mueller*, 323 F. App'x 464, 466-67 (7th Cir. 2009) (reading statute as applying risk of circumvention to law enforcement techniques).

But even if the risk of circumvention requirement does not apply, the agency should still not be allowed to rely on Exemption (7)(E) as to its ballistics testing. The agency would still have to show that the techniques involved are not "publicly known investigate techniques." *ACLU-NC*, 880 F.3d at 492. In *ACLU-NC*, the Ninth Circuit (which followed *Hamdan* as to the circumvention requirement) conducted in camera review of the agency's assertion that withheld

---

[5] In contrast, *Judicial Watch, Inc. v. U.S. Dep't of State*, No. 12-893, 2017 WL 3913212 (D.D.C. Sept. 6, 2017), cited in Def.'s Reply 19, is a case in which the agency showed that disclosure of the withheld videos would reveal surveillance "'tradecraft' such as the use of 'vantage points' and 'concealment techniques'" that are still in use. *Id.* at *4. The agency has made no such showing here, but rather chosen to rely on semantics in an attempt to distinguish supposedly non-public "methodologies for . . . analyzing rifling characteristics" from admittedly public "ballistics testing."

documents would have revealed law enforcement techniques.  Following in camera review, the court concluded "that the documents do not contain non-public details regarding the use of these . . . techniques."  *Id.*

Because the agency has failed to justify its withholding under Exemption 7(E), the Court should either grant Plaintiff summary judgment or, as in *ACLU-NC*, conduct in camera review.

### 2.    Database printouts.

The agency withheld all documents that were printouts from a particular database.  It contends they are exempt under Exemptions 6 and 7(C) because they contain information about individuals with privacy interests, and under Exemption 7(E) because they would reveal information about the databases being utilized and the information being gathered.  Def.'s Reply 20.  Plaintiff has already replied to the agency's contentions concerning Exemptions 6 and 7(C). *See* § II.A, *supra*.

With respect to the database itself, Plaintiff continues to maintain that the agency has failed to meaningfully explain why it is impossible to separate any truly private information about how the databases operate from the information produced by the databases.  *See* Pl.'s Br. 20-21.  The *Vaughn* declaration submitted by the agency is simply inadequate to enable Plaintiff or the Court to evaluate the agency's claim.  Accordingly, the Court should either grant Plaintiff summary judgment, order a more detailed explanation from the agency, or conduct in camera review.

### D.    The Agency's Segregability Showing Is Inadequate.

To support its claim that any non-exempt material was not reasonably segregable, the agency piles one abstract principle on top of another: (1) the agency is entitled to a presumption that it complied with the obligation to disclose reasonably segregable materials; (2) the agency says via Mr. Hardy's "uncontroverted" declaration that it complied with that obligation; and (3)

Plaintiff may not question the veracity of the agency's submissions without evidence of bad faith. Therefore, according to the agency, it is game over as far as segregability is concerned. Def.'s Reply 20-22.

The agency, however, ignores countervailing principles. Those principles were discussed by the Ninth Circuit in *Pac. Fisheries v. United States*, 539 F.3d 1143 (9th Cir. 2008):

> The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed. 5 U.S.C. § 552(a)(4)(B), (b). Courts must apply that burden with an awareness that the plaintiff, who does not have access to the withheld materials, is at a distinct disadvantage in attempting to controvert the agency's claims. The agency can meet its burden by offering an affidavit with reasonably detailed descriptions of the withheld portions of the documents and alleging facts sufficient to establish an exemption. The affidavits must not be conclusory. Rather they should disclose as much information as possible without thwarting the claimed exemption's purpose.

*Id.* at 1148-49 (citations and internal quotation marks omitted); *see also Wiener v. FBI,* 943 F.2d 972, 979 (9th Cir.1991) (holding that the FBI's explanation was not sufficiently specific when it "provide[d] no information about particular documents and portions of documents that might be useful in contesting nondisclosure").

Furthermore, conclusory affidavits as to segregability are insufficient. *See* Pl.'s Br. 22. The agency contends that the Hardy Declaration is not conclusory because if the entire document is read it states that the agency conducted a detailed review and concluded that it had "released everything that could reasonably be segregated." Def.'s Reply 21. But that is the archetype of a conclusory statement. *See Nat'l Res. Def. Council v. U.S. Dep't of Defense*, 388 F. Supp. 2d 1086, 1106 (C.D. Cal. 2005) (agency's burden not met where agency relied on a "boilerplate statement . . ., which conclusorily asserts [that] all reasonably segregable information has been released"). As it stands, the record is "insufficient because it d[oes] not provide [the requester] or the district court with specific enough information to determine whether the [agency] had

properly segregated and disclosed factual portions of those documents that the [agency] claimed were exempt . . . ."  *Pac. Fisheries*, 539 F.3d at 1149.

This Court should either grant Plaintiff summary judgment, order a more detailed explanation from the agency, or conduct in camera review.

### E.      Application of Agency's Approach to a Hypothetical Document.

The agency's showing is particularly inadequate when the overlapping exemptions are considered in connection with the claim of segregability.  Consider how this could work with a hypothetical document that contains direct evidence of agency misconduct.  Assume that there is a document that reads as follows:

> SA John Doe asked local law enforcement agent Richard Roe not to prosecute Victor Gloria because Gloria is an important witness for Doe.

The agency would redact all of the names in the document based on Exemptions 6 and 7(C) to protect the named individuals' privacy.  The result would look like this:



> SA ███ asked local law enforcement agent ███ not to prosecute ███ because ███ is an important witness for ██.

At that point, the agency could decide that the non-redacted material was not "reasonably segregable," and withhold the entire document, citing (b)(6)-1, 2, 6, and (b)(7)(C)-1, 2, 6.

This is illustrative of the problems with the agency's response.  First, Doe and Gloria have diminished privacy interests because Doe is a law enforcement officer who may have committed misconduct, and Gloria was convicted of a crime.  Second, the public interest in the document, including the names of the persons in the document, is high because it constitutes evidence of agency misconduct, i.e, what the agency is "up to."  Third, once the agency uses the "reasonably segregable" concept to withhold the entire document, neither Plaintiff nor the Court has any idea what the document contained, or whether the evidence of agency misconduct is a strong enough public interest to overcome the privacy interest of any of the persons involved.

**F.      In Camera Review Is Necessary if the Court Does Not Grant Plaintiff's Motion for Summary Judgment.**

The agency argues that it should be granted summary judgment, without any in camera review, based on the Hardy Declaration.  Def.'s Reply 22-23.  Plaintiff does not quarrel with the principle that in camera review generally is not necessary when agencies meet their burden of proof by means of sufficiently detailed affidavits.  As detailed throughout this Reply and Pl.'s Br., however, the agency affidavit in this case is insufficiently detailed to permit meaningful review.  In such circumstances, this Court clearly has the discretion to conduct in camera review.  *See, e.g.*, *ACLU-NC*, 880 F.3d at 492 (finding based on in camera review that the documents did "not contain non-public details regarding the use of . . . surveillance techniques"); *Islamic Shura Council of S. Cal. v. FBI*, 635 F.3d 1160, 1166 (9th Cir. 2011) ("If the [agency's] affidavits are too vague, the court may examine the disputed documents in camera to make a first hand determination of their exempt status.") (citation and internal quotation marks omitted); *In re Dep't of Justice*, 999 F.2d 1302, 1310 (8th Cir. 1993) (en banc) ("If the [*Vaughn* index] categories remain too general, the district court may also examine the disputed documents in camera to make a first hand determination.").  In camera review has also been used to verify that an agency has released all reasonably segregable information.  *See, e.g.*, *Citizens Progressive Alliance v. U.S. Bureau of Indian Affairs*, 241 F. Supp. 2d 1342, 1359 (D.N.M. 2002) (finding that all reasonably segregable portions of documents were released based on in camera review).

The agency has failed to satisfy its burden to justify the claimed exemptions.  Therefore, in camera review is an available option for the Court to exercise in its discretion.

**CONCLUSION**

For the reasons set forth herein and in Plaintiff's prior submissions, this Court should

grant Plaintiff summary judgment.  Alternatively, the Court may order the agency to prepare a

more detailed description of the withheld documents and the claimed reasons for withholding, or

conduct in camera review.

Respectfully submitted,

/s/ Matthew C. Lawry
Matthew C. Lawry
Federal Community Defender Office
Eastern District of Pennsylvania
601 Walnut Street
Curtis Center, Suite 545-West
Philadelphia, PA 19106
Phone: (215) 928-0520
Fax: (215) 928-0826
Matthew_Lawry@fd.org

Counsel for Plaintiff
Dustin John Higgs

Dated:  February 20, 2018

PA-119

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2018, the foregoing was filed electronically through

ECF/CM.  Notice of this filing will be sent to the following parties by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system:

Jill Z. Julian
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, IN  46204

/s/ Matthew C. Lawry
Matthew C. Lawry
Federal Community Defender Office

PA-120

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

_____

DUSTIN JOHN HIGGS,

                      Plaintiff,

        v.

UNITED STATES PARK POLICE,

                Defendant.

_____

:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION
No. 2:16-cv-00096-JMS-MJD

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Pursuant to this Court's Order of March 16, 2018 [Filing No. 63], Plaintiff Dustin Higgs,

by undersigned counsel, respectfully files his supplemental brief in support of motion for

summary judgment.

**INTRODUCTION**

Based on the Vaughn Index that was recently filed by Defendant – Not. of Filing of FBI

Vaughn Index [Filing No. 61] (hereinafter "Vaughn Index") – Plaintiff is narrowing further the

scope of his request for summary judgment.  Review of the Vaughn Index has shown that

Plaintiff either already possesses or is no longer interested in obtaining certain documents that

have been released in part or withheld in full.  Thus, regardless of whether these documents are

exempt from disclosure, Plaintiff no longer seeks them.[1]

_____

[1] The documents Plaintiff no longer seeks are as follows: HIGGS-FBI-1-5, 24-33, 46-51, 79-80, 100, 102, 105, 120-34, 207-08, 215, 284-88, 493, 734, and 740.  *See* [Filing No. 50-1] (Letter from David Hardy to Matthew Lawry, July 31, 2017); Vaughn Index.  Hereafter, Plaintiff will simply refer to these documents by the HIGGS-FBI number.

With respect to the remaining documents, Plaintiff continues to seek summary judgment. In the alternative, Plaintiff requests that the Court conduct in camera review to the extent that it does not grant Plaintiff's request for summary judgment.  The remaining documents may be grouped in three categories: (1) FD-302 interview reports from 1999 and associated records, as to which Defendant claims exemption only under Exemptions 6 and 7(C) and/or (D); (2) NCIC reports, as to which Defendant claims exemption under Exemptions 6 and 7(C), and also under 7(E); and (3) ballistics reports, as to which Defendant claims exemption only under 7(E).  With respect to each category, we show that Defendant has not met its burden to show that the withholding was justified under the claimed exemption.  *See Am. Civil Lib. Union of N. Cal. v. U.S. Dep't of Justice*, 880 F.3d 473, 483 (9th Cir. 2018) (burden is on agency to justify withholding under a claimed exemption).

## ARGUMENT

**I.    THE GOVERNMENT HAS FAILED TO SHOW THAT THE INTERVIEW REPORTS FROM 1999 AND ASSOCIATED RECORDS ARE EXEMPT FROM DISCLOSURE**

Defendant contends that the FD-302 interview reports and associated records are exempt under FOIA Exemptions 6 and 7(C) and/or (D).  We will not repeat the discussion in prior submissions of the legal principles governing those claimed exemptions.  *See* Pl.'s Br. in Supp. of Cross-Mot. Summ. J. 12-18 [Filing No. 52] (hereinafter "Pl.'s Br."); Pl.'s Reply in Supp. of Cross-Mot. Summ. J. 4-10 [Filing No. 58] (hereinafter "Pl.'s Reply").  Briefly, as acknowledged in Pl.'s Reply 4, both Exemptions 6 and 7 are potentially applicable to the withheld records, and because Plaintiff's burden is heavier under Exemption 7, it makes sense to analyze the claim under that Exemption.

Where a privacy interest is claimed as the basis for Exemption 7(C), the reviewing court must balance the privacy interest of the person referenced in the record against the public interest

in disclosure.  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).  Where the agency contends that the name and identifying information of, and information provided by, a confidential source are involved under Exemption 7(D), there is no such balancing of interests.  *See, e.g.*, *McDonnell v. United States*, 4 F.3d 1227, 1257 (3d Cir. 1993).  Under Exemption 7(D), the primary issue is whether the source was indeed confidential.  In particular, an agency claiming – as here – that a source had an implied assurance of confidentiality must prove the expectation of confidentiality based on the circumstances of the specific case.  *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 179 (1993).  Under *Landano*,

> It is not enough . . . for the government simply to state blandly that the source's relationship to the crime permits an inference of confidentiality.  Rather, the government has an obligation to spell out that relationship . . . [without] compromising the very interests it is seeking to protect.

*Church of Scientology Int'l v. Dep't of Justice*, 30 F.3d 224, 234 (1st Cir. 1994).

These documents were either withheld in full, HIGGS-FBI-44-45, or so heavily redacted that very little can be discerned other than the location in which two of the interviews were conducted.[2]  The majority of the information appears to have been withheld under the confidential source provision, Exemption 7(D), but all names have been redacted from the documents released in part based on claimed privacy interests under Exemption 7(C).  Vaughn Index 3-4.

### A.     Privacy Interests under Exemption 7(C).

As discussed at length in Plaintiff's prior submissions, e.g., Pl.'s Reply 4-10, when a privacy interest is claimed as the basis for withholding under Exemption 7(C), the privacy interest of the person referenced in the record must be balanced against the public interest in

---

[2] The specific documents at issue are FBI-HIGGS-34-45, 209-14.  Although the 2-page document at FBI-HIGGS-44-45 is undated, it appears from the context – in particular the withholding based on provision by a confidential source – that this document is more than likely related to the withheld documents from 1999.

opening "agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1975) (quotation marks omitted). Here, the agency asserts privacy interests of (1) FBI personnel; (2) non-FBI government personnel; (3) third parties who were merely mentioned in the record; and (4) individuals who provided information to the FBI. Vaughn Index 3-4.

The FBI and non-FBI government personnel have reduced privacy interests, particularly to the extent that the records at issue might disclose official misconduct. *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001). As discussed in Plaintiff's prior submissions, Plaintiff contends that the records may indeed disclose official misconduct. *See* Pl.'s Reply 6-10; Pl.'s Br. 15-17. This is particularly true with respect to records from the 1999 time frame, as that is when the federal authorities became aware that Victor Gloria – their key witness in the homicides of which Mr. Higgs was convicted – was himself a suspect in a separate Baltimore homicide investigation. Plaintiff has alleged that after receipt of this information, federal authorities improperly attempted to steer the Baltimore investigation away from Mr. Gloria. *See* [Filing Nos. 58-1 through 58-4] (filings from District of Maryland relating to government misconduct claim). Thus, the identities of – and communications between – FBI and non-FBI governmental personnel during this time period may be of particular significance to the claim of governmental misconduct.

Furthermore, as shown in Pl.'s Reply 6-10, the public interest in unveiling potential governmental, and in particular prosecutorial, misconduct is indubitably a powerful one. Because Plaintiff has produced "evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred," *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004), the agency should be required to disclose the identities of the FBI and non-FBI government personnel.

Private individuals have a stronger privacy interest in their identities than do government personnel.  As Plaintiff has pointed out repeatedly, however, Pl.'s Reply 5; Pl.'s Br. 14, deceased persons have reduced privacy interests, and the agency has not explained what steps, if any, it took to determine whether the individuals whose identities have been withheld are deceased or alive.  Furthermore, even assuming that the individuals in question are alive, those individuals' privacy interests do not necessarily override the public interest in disclosure.  *See ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6-16 (D.C. Cir. 2011).  Given the substantial interest in disclosure discussed above, the Court should either order disclosure of these individuals' identities, or review the documents in camera to determine where the balance of interests lies.

## B.     Identity of and Information Provided by a Confidential Source, Exemption 7(**D**).

The agency purports to justify the bulk of the withholding on the ground that it was provided by confidential sources "who provided information with an implied assurance of confidentiality."  Vaughn Index 3-4.  It uses Exemption 7(D) to protect both the identity of the confidential sources and information provided by the sources.  *Id.*

In order to establish that the source is actually entitled to be treated as confidential, particularly where there was only an implied assurance of confidentiality, the agency must do more than "state blandly that the source's relationship to the crime permits an inference of confidentiality."  *Church of Scientology*, 30 F.3d at 234.  Here, that is all that the agency has done.  Accordingly, it has not met its burden to establish that it is entitled to rely on the confidential source exemption.  This Court should grant Plaintiff summary judgment as to this issue.  Alternatively, the Court has discretion to conduct in camera review of the documents.  *See* Pl.'s Reply 16.

## II.   THE GOVERNMENT HAS FAILED TO SHOW THAT THE NCIC REPORTS AND ASSOCIATED RECORDS ARE EXEMPT FROM DISCLOSURE

At issue, based on the document descriptions in the Vaughn Index, are NCIC printouts relating to "third party individuals" and, with respect to one group of documents, "subject," presumably Mr. Higgs.  For NCIC printouts relating to solely third party individuals, the agency withheld the documents in full to protect the individuals' privacy.  Where any information was released, the agency also withheld on privacy grounds names of FBI personnel, other government personnel, and third parties who were merely mentioned in the records.  Finally, the agency withheld "law enforcement database information." *See* Vaughn Index 5-10.

While the Vaughn Index does clarify that the database in question is the NCIC, it does little more to clarify what the agency is withholding, and why.  Plaintiff does not discuss further here the withholding of specific names and identifying information, as that topic has been addressed at length above and in Plaintiff's prior submissions.  Here, Plaintiff addresses two aspects that have been brought into focus by the Vaughn Index – the assertion that entire documents, rather than just names and identifying information – can be withheld to protect individuals' privacy, and the assertion that entire documents or large portions of documents – *see, e.g.*, HIGGS-FBI-81 – can be withheld to protect information about the NCIC.

Plaintiff is unaware of any authority supporting the concept that entire pages of records may be withheld because they relate to third parties (as opposed to redacting names and identifying information).  The agency has not provided any explanation or authority to support its position.[3]

---

[3] It is conceivable that the agency decided – after redacting names and identifying information – that whatever remained was not "reasonably segregable."  There is, however, no way to know whether that is the case or not.  This highlights the inadequacy of the agency's showing as to segregability, as discussed in Pl.'s Reply 13-15; Pl.'s Br. 21-22.

The agency's assertion that it may withhold most or all of pages of NCIC printouts to prevent revealing information about the databases being utilized and the information being gathered is likewise unsupported, especially now that we know that the database in question is the NCIC.  The NCIC is a database whose use is widely known and understood.  Printouts from NCIC are routinely disclosed in pretrial discovery or at sentencing in federal criminal cases.  *See, e.g.*, *United States v. Dyer*, 186 F. App'x 866, 867-68 (11th Cir. 2006) (rejecting defendant's objection to court's reliance on NCIC report in calculating sentence).  There may well be some types of information in the NCIC database whose disclosure would be damaging.  But the agency has made no showing that its blanket withholding of NCIC printouts is necessary.

**III.    THE GOVERNMENT HAS FAILED TO SHOW THAT REPORTS DOCUMENTING REVIEW AND ANALYSIS OF RIFLING CHARACTERISTICS EXEMPT FROM DISCLOSURE**

In the Vaughn Index, the agency asserts that it was entitled to withhold in full eighteen pages of reports, identified as HIGGS-FBI-6-23, documenting review and analysis of rifling characteristics, on the ground that: "Once all exempt information revealing the specific details of the FBI's collection and analysis of this information is removed, no reasonably segregable, non-exempt information exists to be released."  Vaughn Index 1.

The Vaughn Index provides essentially no new information with respect to these records.  As discussed at length in Plaintiff's prior submissions, *see* Pl.'s Reply 10-13; Pl.'s Br. 18-20, the agency has failed to show that there are non-public aspects of ballistics testing that may be withheld, even though the agency admits that there are public aspects of ballistics testing that must be disclosed.  Furthermore, as discussed above, the agency's segregability showing is also inadequate.  *See* Pl.'s Reply 13-15; Pl.'s Br. 21-22.

## CONCLUSION

After several attempts, the FBI has not met its burden of justifying withholding of the documents discussed herein.  It does not now appear likely that the agency will provide a detailed enough explanation of its withholding for the Court to conduct meaningful review of the remaining documents.  Accordingly, the Court should either grant Plaintiff summary judgment or conduct in camera review.

Respectfully submitted,

/s/ Matthew C. Lawry
Matthew C. Lawry
Federal Community Defender Office
Eastern District of Pennsylvania
601 Walnut Street
Curtis Center, Suite 545-West
Philadelphia, PA 19106
Phone: (215) 928-0520
Fax: (215) 928-0826
Matthew_Lawry@fd.org

Counsel for Plaintiff
Dustin John Higgs

Dated:  March 30, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2018, the foregoing was filed electronically through

ECF/CM.  Notice of this filing will be sent to the following parties by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system:

Jill Z. Julian
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, IN  46204


/s/ Matthew C. Lawry
Matthew C. Lawry
Federal Community Defender Office


PA-129

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DUSTIN JOHN HIGGS,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Case Number 2:16-cv-00096-JMS-MJD
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
UNITED STATES PARK POLICE,⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Defendant.⠀⠀⠀⠀⠀⠀⠀)

## RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEFING

The Defendant United States Park Police ("U.S. Park Police") supplements its prior briefing regarding the sole issue remaining between the parties: whether the FBI's response to the referral of records from the U.S. Park Police was adequate. The U.S. Park Police is entitled to the entry of summary judgment in its favor and against Higgs.

**A.⠀⠀⠀Privacy Interests under Exemption 7(C)**

The Plaintiff, Dustin John Higgs ("Higgs"), takes issue with the FBI's assertion of FOIA Exemption 7(C) in regard to various interview reports and associated documents. [Filing No. 65 at 2-3]. His argument adds nothing to the prior briefing of the parties on this issue, and does nothing to counter the U.S. Park Police's position that he has wholly failed to identify any public interest in the documents that he seeks. In regard to the FBI's application of Exemption 7(C), Higgs acknowledges both a privacy interest of these individuals, and that it must be balanced against a public interest in disclosure. [*See* Filing No. 65]. Higgs argument fails because he cannot establish a public interest in the information. A prisoner's interest in attacking his own conviction is not a public interest. *Hawkins v. Drug Enforcement Admin.*, 347 F. App'x 223, 225 (7th Cir. 2009) (unpublished); *see also Antonelli v. FBI*, 721 F.2d 615, 617 (7th Cir. 1983) (finding no public interest in ensuring a plaintiff's convictions were not obtained as a result of a

constitutional violation).  Once a government agency establishes that a legitimate privacy interest is implicated, the burden shifts to the requester to show both "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and that "the information is likely to advance that interest." *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).  While he argues that that the records "may indeed disclose official misconduct[,]" [Filing No. 65 at 4], the only evidence that he advances in support are his own allegations and legal theories made in his attempt to overturn his criminal conviction. [Filing No. 65 at 4].  When a public interest argument is based on claims of misconduct by a federal agency, the plaintiff "must produce evidence that would warrant a belief by a reasonable person that the alleged government impropriety might have occurred" before considering whether disclosure of an individual's identity might substantially increase the public's understanding regarding the alleged misconduct. *Favish*, 541 U.S. at 174-75.  What Higgs has alleged is not evidence in this FOIA case of FBI misconduct. *See States v. Higgs*, 193 F. Supp. 3d 495, 506 (D. Md. 2016) ("Higgs has failed to prove by clear and convincing evidence, first, that the Government in any sense committed fraud on the court …; and second, that the Government engaged in an intentional plot to deceive the Court …; and third, even assuming the factual accuracy of Higgs's allegations, he has failed to establish that evidence of benefits to [a third party] beyond those already disclosed to the defense would have made a material difference to the outcome of the § 2255 proceedings.").

There being no public interest in the disclosure of the information, the privacy interests of the individuals outweighs disclosure of the information.  The FBI has established that it properly applied Exemption 7(C).

**B.** **Protection of Confidential Sources Exemption 7(D)**

"Exemption 7(D) differs from other FOIA exemptions, because its applicability depends not on the actual content of the requested document, but rather on whether the information was provided to an agency by a "confidential source" and was part of a record compiled by a criminal-law enforcement authority in the course of a criminal investigation." *Brant Const. Co. v. E.P.A.*, 778 F.2d 1258, 1262 (7th Cir. 1985). In *DOJ v. Landano*, 508 U.S. 165, 173 (1993), the Supreme Court made clear that "[a] source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent . . . thought necessary for law enforcement purposes." The Court stated:

> we hold that the Government is not entitled to a presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI in the course of a criminal investigation.
>
> More narrowly defined circumstances, however, can provide a basis for inferring confidentiality. For example, when circumstances such as the nature of the crime investigated and the witness' relation to it support an inference of confidentiality, the Government is entitled to a presumption.

*Landano*, 508 U.S. 165, 181 (1993).

A review of the Vaughn Index indicates that the FBI was selective in its application of this Exemption, and applied it to only four of the FBI FD-302's, which are "internal FBI forms in which evidence is often documented, usually the results of FBI interviews.  Such evidence and/or interview information may later be used as testimony or evidence in court proceedings/trials." [Filing No. 61-1 at 1 n.1].  In each instance of applying Exemption 7(D), the FBI noted that the FD-302, documented "an interview of a confidential source who provided information with an implied assurance of confidentiality." [*See* Filing No. 61-1 at 2, 3, & 8 (HIGGS-FBI-34-38; HIGGS-FBI-40, 41-43; HIGGS-FBI-44-45; and at HIGGS-FBI-210-2140)].

The Second Declaration of David Hardy explains that in this particular case, in regard to its

application of Exemption 7(D) to the documents at issue:

> The FBI protected the identifying information as well as information
> provided by these individuals under Exemption (b)(7)(D). The individuals
> provided information on two subjects who were the targets of a triple
> murder investigation. These individuals had access to and/or knowledge of
> the investigative targets. This type of access automatically exposes the
> individuals to potentially significant harm, or even death, should their
> association and cooperation with the FBI become publicly known. They
> provided information that was singular in nature concerning the activities
> of both subjects. Disclosure of the sources' identities and the specific
> information they provided could have devastating consequences because
> revealing their cooperation could subject them, as well as their families, to
> harassment, serious bodily injury, and/or death. These individuals
> provided valuable information to the FBI concerning its investigation, and
> in doing so, have placed themselves in harm's way should their identity
> and cooperation with the FBI become known. In the FBI's experience,
> sources who provide information regarding violent crimes, particularly
> murder, do so at great peril. Given the nature of the crime – a violent
> triple murder – and the individuals' proximity to Plaintiff and his
> associates, the FBI has a legitimate reason to conclude the disclosure of
> their identities could subject them to reprisals such as serious bodily injury
> and/or death should their cooperation become known.

[Filing No. 43-1 at 15-16]. This is the very type of narrowly defined circumstances contemplated

by *Landano*, and supports the FBI's application of Exemption 7(D) to protect the confidentiality

of individuals had had knowledge of, or access to, targets of a triple murder investigation.

## C.    The NCIC Reports

Higgs takes issue with the FBI asserting a number of Exemptions to withhold the NCIC

Reports regarding third parties, and presumably himself. [*See* Filing No. 65 at 6]. The NCIC is a

compilation of databases that contain materials that have been compiled for law enforcement

purposes. *See, generally, Vazquez v. U.S. Dep't of Justice*, 887 F. Supp. 114, 116-17 (D.D.C.

2012). To support the withholding of these reports, the FBI provided a detailed justification,

explaining that:

Exemption (b)(7)(E) has been asserted to protect database search results located through non-public databases used for official law enforcement purposes by the FBI. These non-public databases serve as repositories for investigative data. They are essentially "one-stop" shops that allow law enforcement to query information and develop investigative leads from a variety of source data using state-of-the-art analytical tools. More specifically, the withheld pages consist of criminal and informational printouts from one particular database used by FBI personnel as well as task force members from other federal agencies. Though it is known the FBI utilizes a database to gather criminal information, the details about that database and the specific information it furnishes is not well known. Disclosure of the printouts or information compiled from the search results would provide criminals with an understanding of the type of information gathered, analyzed, and utilized by the FBI in criminal investigations, particularly in murder investigations. It would also reveal the FBI's abilities and limitations in regards to what types of investigative information it can track and later query when developing investigative/law enforcement strategies. Releasing this information would allow criminals access to key investigative data and afford them the opportunity to develop countermeasures to avoid detection. It would alert them as to the type of information collected and provide insight into the FBI's analysis of such information, allowing them the opportunity to structure their activities in a manner that deprives the FBI of critical investigative data. In addition, revealing details about the database as well as the specific stored data could jeopardize the FBI's investigative mission by making the database a target for criminals who seek to corrupt of delete data. Accordingly, disclosure of the specific information would impede the FBI's use of the database and potentially aid criminals in developing countermeasures to circumvent the law, rendering the investigative technique ineffective.

[Filing No. 43-1 at 18]. Higgs has provided nothing to call into question the FBI's reasonably detailed declaration providing the basis for the application of Exemption 7(E) to justify the withholding of the NCIC reports. *See Vazquez*, 887 F. Supp. 2d 114 (upholding application of Exemption 7(E) to withhold requestor's NCIC transactions).

But, even if Higgs were able to overcome Exemption 7(E), the majority of the NCIC printouts he seeks are also being withheld by the application Exemptions (b)(6) and (b)(7)(C). [Filing No. 43-1 at 18-19]. The privacy interests of these individuals in their entire criminal histories being disclosed publically must be balanced against a public interest in disclosure. As

demonstrated above, Higgs' argument fails because he cannot establish a public interest in the information.

Nor is it relevant to the consideration that NCIC information may be disclosed in discovery in criminal prosecutions.  It is well settled that FOIA was not intended to supplement or displace rules of discovery.  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989); *see Robbins Tire*, 437 U.S. 214, 242 1978); *Marshall v. Fed. Bureau of Investigation*, 802 F. Supp. 2d 125, 136 (D.D.C. 2011) (noting that FOIA was not intended as a device to enlarge the scope of discovery permitted by the Federal Rules of Criminal Procedure).

**D.      Review and Analysis of Rifling Characteristics**

Higgs continues to take issue with the FBI's application of Exemption 7(E) to protect non-public information about the use and utilization of rifling and ballistics testing.  [Filing No. 65 at 7].  The FBI made it clear that it was protecting its methodologies for collecting and analyzing rifling characteristics (not ballistics testing broadly), and that disclosure of this information, even after all of these years, risks circumvention of law now in relation to the FBI's current activities and methodologies. [Filing No. 43-1 at 17]; *see Judicial Watch v. Dep't of State,* 2017 WL 3913212, at (D.D.C. Sept. 6, 2017) (mere passage of time does not justify disclosure under (b)(7)(E)).  The FBI has properly applied Exemption 7(E) to withhold this information.

**E.      Segregability**

Higgs continues to take issue with the FBI's segreability analysis, but his arguments add nothing more to his prior arguments, asserting that it is boilerplate.  Consideration of Mr. Hardy's Declaration, read in total, establishes that the FBI conducted a document-by-document, line-by-line review of the responsive records and released everything that could reasonably be

segregated.  Higgs still has not pointed to any redactions on the pages that were released to him that he believes were not properly segregated, and thus has failed to establish any reasonable dispute about segregation on those pages.  As to the withheld in full pages, the segreability explanation sufficiently establishes why no information can be segregated and released on those pages.  [See Filing No. 43-1 at 19-20].

This uncontroverted declaration evidences that, as to all materials withheld, every effort was made to release all information that could be segregated without revealing the privacy interests of third parties, law enforcement techniques, or other exempted information. Accordingly, given this declaration, the presumption in favor of the FBI, and the lack of evidence to rebut this presumption, *see In Re Wade*, 969 F.2d 241, 246 (7th Cir. 1998) (stating that the veracity of the government's submissions regarding reasons for withholding documents should not be questioned without evidence of bad faith), the FBI has proven that no segregable, nonexempt portions of these materials were withheld and is entitled to a finding of such.

**F.     *In camera* review is not necessary.**

The Court has discretion to conduct an *in camera* review of the materials at issue if the public record does not provide a sufficient basis for analyzing the applied exemptions. *See* 5 U.S.C. § 522(a)(4)(B); *Stein v. United States Dep't of Justice*, 662 F.2d 1245, 1254 (7th Cir. 1981).  The Seventh Circuit has stated that "[a]ffidavits are sufficient for summary judgment under FOIA without *in camera* inspection where the affidavits (1) describe the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of agency bad faith." *Kimberlin v. Dep't of Treasury*, 774 F.2d 204, 210 (7th Cir. 1985) (internal quotation

marks omitted).  The FBI is entitled to a presumption that it acted in conformity with its legal

obligations and in good faith. *In re Wade*, 969 F.2d at 246 (7th Cir. 1992).  Higgs has provided

nothing more than speculation to rebut this presumption.

For all of the foregoing reasons, the U.S. Park Police respectfully requests that this Court

grant summary judgment in its favor and against Higgs.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By:     s/ Jill Z. Julian
Jill Z. Julian
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 13, 2018, the foregoing was filed electronically through

ECF/CM.  Notice of this filing will be sent to the following parties by operation of the Court's

electronic filing system. Parties may access this filing through the Court's system:

Matthew C. Lawry
FEDERAL COMMUNITY DEFENDER
matthew_lawry@fd.org


<u>s/   Jill Z. Julian</u>
Jill Z. Julian
Assistant United States Attorney


Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN 46204
317-226-6333

# CERTIFICATE OF COMPLIANCE

The appendix filed by Mr. Higgs includes the materials required by Circuit Rule 30(a) and (b).

/s/ Matthew C. Lawry
Matthew C. Lawry

Dated: November 30, 2018

# CERTIFICATE OF SERVICE

I, Matthew Lawry, hereby certify that on November 30, 2018, I electronically filed the foregoing appendix with the Clerk of Court for the Seventh Circuit by using the appellate CM/ECF system. I further certify that I will cause 10 paper copies of the appendix to be received by the Clerk within seven days of the Notice of Docket Activity generated upon acceptance of the appendix, in compliance with Seventh Circuit Rule 31(b) and ECF Procedure (h)(2).

Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Matthew C. Lawry
Matthew C. Lawry