**Nos. 18-2826, 18-2937**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

DUSTIN JOHN HIGGS,

Plaintiff-Appellee/Cross-Appellant,

v.

UNITED STATES PARK POLICE,

Defendant-Appellant/Cross-Appellee.

On Appeal from the United States District Court
for the Southern District of Indiana, No. 2:16-cv-96
(Magnus-Stinson, Jane, Chief J.)

## RESPONSE AND REPLY BRIEF FOR APPELLANT/CROSS-APPELLEE

JOSEPH H. HUNT
　　*Assistant Attorney General*
JOSH MINKLER
　　*United States Attorney*
H. THOMAS BYRON III
CAROLINE D. LOPEZ
　　*Attorneys, Appellate Staff*
　　*Civil Division, Room 7535*
　　*U.S. Department of Justice*
　　*950 Pennsylvania Avenue NW*
　　*Washington, DC 20530*
　　*(202) 514-4825*

# TABLE OF CONTENTS

**Page**

COUNTER-STATEMENT OF THE ISSUE ON CROSS-APPEAL .........1

PERTINENT STATUTES AND REGULATIONS ....................................1

INTRODUCTION AND SUMMARY OF ARGUMENT..........................1

STANDARD OF REVIEW....................................................................4

ARGUMENT .........................................................................................5

I.   This Court Should Apply The De Novo Standard Of Review
     To This FOIA Summary Judgment Decision. ...................................5

II.  Exemption 7(C) Protects Against The Release Of Individuals'
     Personally Identifying Information In FBI Case Files, When
     There Is No Reason To Believe The Individuals Are
     Deceased And When There Is No Public Interest In
     Disclosure. .......................................................................................11

     A.   The Individuals Identified In FBI Case Files Have A
          Substantial Privacy Interest, Which Has Not Been
          Negated By The Passage Of Time........................................12

     B.   There Is No Public Interest In Disclosure Of The
          Individuals' Identities And Personal Information...............22

     C.   The FBI's Vaughn Index And Declarations
          Demonstrate That There Is No Incremental Benefit To
          Disclosure Of The Individuals' Personal Information..........32

III. Exemption 7(D) Protects Against The Disclosure Of The
     Identities Of And Information Given By Confidential
     Sources. ...........................................................................................41

     A.   The Circumstances Here Support The Application of
          Exemption 7(D). ..................................................................42

B.     The District Court Correctly Found That There Were No Segregable Portions Of Interviews With Or Documents Provided By Confidential Sources. .....................49

CONCLUSION ..................................................................................52

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                    **Page(s)**

*Abraham & Rose, P.L.C. v. United States,*
  138 F.3d 1075 (6th Cir. 1998) ...............................................................7

*ACLU v. Department of Justice,*
  655 F.3d 1 (D.C. Cir. 2011) ..................................................................30

*Anderson v. Department of Health & Human Servs.,*
  907 F.2d 936 (10th Cir. 1990) ...............................................................7

*Animal Legal Def. Fund v. FDA,*
  836 F.3d 987  (9th Cir. 2016) ....................................................7, 10, 11

*August v. FBI,*
  328 F.3d 697 (D.C. Cir. 2003)........................................................15, 21

*Batton v. Evers,*
  598 F.3d 169 (5th Cir. 2010) .................................................................7

*Becker v. IRS,*
  34 F.3d 398 (7th Cir. 1994) ...................................................................8

*Boyd v. Criminal Div. of U.S. Dep't of Justice,*
  475 F.3d 381 (D.C. Cir. 2007)..............................................................28

*Campbell v. Department of Justice,*
  164 F.3d 20 (D.C. Cir. 1998) ........................................................16, 17

*Chilivis v. SEC,*
  673 F.2d 1205 (11th Cir. 1982) .............................................................7

*Church of Scientology Int'l v. Department of Justice,*
  30 F.3d 224 (1st Cir. 1994)............................................................7, 46

*Citizens for Responsibility and Ethics in
  Washington v. U.S. Department of Justice,*
  746 F.3d 1082 (D.C. Cir. 2014) ...............................................28-29, 30

*Davin v. Department of Justice,*
  60 F.3d 1043 (3d Cir. 1995)......................................................16, 17

*Davis v. Department of Justice,*
  460 F.3d 92 (D.C. Cir. 2007) ...........................................................13

*Department of Justice v. Landano,*
  508 U.S. 165 (1993) ...................................16, 29, 42, 44, 48

*Department of Justice v. Reporters Comm. for
Freedom of the Press,* 489 U.S. 749 (1989) ......................... 13, 27, 34, 35

*Enviro Tech Int'l, Inc. v. EPA,*
  371 F.3d 370 (7th Cir. 2004) .............................................................5

*Hale v. Department of Justice,*
  99 F.3d 1025 (10th Cir. 1996) .........................................................45

*Halpern v. FBI,*
  181 F.3d 279 (2d Cir. 1999).................................................7, 9, 10, 11

*Hentosh v. Herman M. Finch Univ. of Health Scis./
Chi. Med. Sch.,* 167 F.3d 1170 (7th Cir. 1999) ...................................49

*Hodge v. FBI,*
  703 F.3d 575 (D.C. Cir. 2013)...........................................................51

*Hulstein v. Drug Enf't Admin.,*
  671 F.3d 690 (8th Cir. 2012) ...........................................................45

*In re Wade,*
  969 F.2d 241 (7th Cir. 1992) ........................................................6, 23

*Kaganove v. EPA,*
  856 F.2d 884 (7th Cir. 1988), *abrogated on other grounds
by Milner v. Department of Navy,* 562 U.S. 562, 567 (2011) ................6

*Kimberlin v. Department of Treasury,*
  774 F.2d 204 (7th Cir. 1985) ..................5, 34, 37, 42, 48, 49, 50, 51, 52

*Labow v. Department of Justice,*
  831 F.3d 523 (D.C. Cir. 2016).....................................................46, 47

iv

*Lakin Law Firm, P.C. v. FTC,*
    352 F.3d 1122 (7th Cir. 2003) ........................................... 13, 15, 21, 22

*Lame v. Department of Justice,*
    767 F.2d 66 (3d Cir. 1985) ......................................................... 7

*Mays v. Drug Enf't Admin.,*
    234 F.3d 1324 (D.C. Cir. 2000) .................................................. 45, 48

*Miller v. Bell,*
    661 F.2d 623 (7th Cir. 1981), *abrogated on other grounds by*
    *Department of Justice v. Landano,*
    508 U.S. 165 (1993) ............................................................... 29, 31

*Missouri ex rel. Garstang v. Department of Interior,*
    297 F.3d 745 (8th Cir. 2002) ..................................................... 7

*National Archives & Records Admin. v. Favish,*
    541 U.S. 157 (2004) .................................................. 12, 13, 14, 22, 23,
                                                                    24, 26, 31, 36, 40

*Patterson v. IRS,*
    56 F.3d 832 (7th Cir. 1995) ..................................................... 33, 49

*Petroleum Info. Corp. v. Department of the Interior,*
    976 F.2d 1429 (D.C. Cir. 1992) .................................................. 6

*Roth v. Department of Justice,*
    642 F.3d 1161 (D.C. Cir. 2011) ................................................ 22, 31, 47

*Rubman v. U.S. Citizenship & Immigration Servs.,*
    800 F.3d 381 (7th Cir. 2015) ...................................................... 8, 10

*Scherer v. Kelley,*
    584 F.2d 170 (7th Cir. 1978) ...................................................... 48

*Schrecker v. Department of Justice,*
    349 F.3d 657 (D.C. Cir. 2003).................................................. 17, 19, 32

*Sherman v. Department of Army,*
    244 F.3d 357 (5th Cir. 2001) ..................................................... 12, 21

*Silets v. Department of Justice,*
   945 F.2d 227 (7th Cir. 1991) ...................................................38, 39, 40

*Solar Sources, Inc. v. United States,*
   142 F.3d 1033 (7th Cir. 1998) .........................................................8

*Stein v. Department of Justice,*
   662 F.2d 1245 (7th Cir. 1981) .....................................................9, 12

*Sussman v. U.S. Marshals Serv.,*
   494 F.3d 1106 (D.C. Cir. 2007) ...................................................38, 39

*United States v. Higgs,*
   193 F. Supp. 3d 495 (D. Md. 2016) ..............................2, 24, 25, 26, 27

*Weisberg v. Department of Justice,*
   745 F.2d 1476 (D.C. Cir. 1984) .......................................................10

*Willard v. IRS,*
   776 F.2d 100 (4th Cir. 1985) ...........................................................7

*Yorger v. Pittsburgh Corning Corp,*
   733 F.2d 1215, 1220-21 (7th Cir. 1984) ......................................21, 22

**Statutes:**

5 U.S.C. § 552(a)(4)(B)..........................................................................9

5 U.S.C. § 552(b)(7)(C)........................................................................11

5 U.S.C. § 552(b)(7)(D).................................................................1, 41, 51

## COUNTER-STATEMENT OF THE ISSUE ON CROSS-APPEAL

Whether Exemption 7(D) of FOIA, which permits withholding of records whose disclosure "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source," 5 U.S.C. § 552(b)(7)(D), applies to the identities of and singular information provided by confidential law-enforcement sources to the FBI during an investigation of a triple homicide.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to the government's opening brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Since being convicted for the brutal murder of three women on federal parkland, Dustin Higgs has unsuccessfully sought to challenge that conviction on direct appeal and through habeas proceedings. As relevant here, a federal district court has twice rejected Higgs's allegations that the government conspired to conceal part of the consideration given to a witness who testified against him. That court concluded that Higgs's claim of

government misconduct was not "colorable" and denied his request to seek additional discovery from the federal government. *See United States v. Higgs*, 193 F. Supp. 3d 495, 496 (D. Md. 2016). Higgs now raises those same implausible allegations as the sole support for the purported public interest in his FOIA request for the entire FBI's investigative file pertaining to his case, including all of the personally identifying information of individuals appearing in the case file. As relevant here, the FBI produced certain documents in full or in part, and provided a Vaughn Index and declarations explaining the nature of the documents and the basis for withholding certain material to protect individuals under Exemptions 7(C) and 7(D).

The district court's order requiring the wholesale disclosure of individuals' private information protected under Exemption 7(C)—including names, personal contact information, and even fingerprint records—must be reversed, whether under the de novo standard (which the government believes applies) or the modified clear error standard that this Court has often employed, because the district court's decision was based on internally inconsistent

logic and contravenes Exemption 7(C)'s core purpose. Having correctly rejected Higgs's assertion that the court should presume that the individuals had died in the twenty-two years since the investigation began, the district court nonetheless effectively adopted just such an improper presumption by discounting all of the individuals' privacy interests and holding that the FBI should have *sua sponte* investigated every individual's life status in response to the FOIA request by Higgs. *See* SA 24-25.[1] Requiring disclosure of that information, and thereby undermining the significant privacy interests of third parties, is fundamentally incompatible with this Court's recognition that the privacy interest protected by Exemption 7(C) belongs to the individuals and cannot be waived by anything the government does or does not do.

The individuals identified in the FBI files, in fact, likely are still alive and have substantial privacy interests. Because the record does not support any public interest that could outweigh

---

[1] Citations to the short appendix bound with the government's opening brief will be abbreviated "SA __." Citations to the government's appendix will be abbreviated "GA __."

those privacy interests, FOIA does not require disclosure of that personally identifying information. Higgs's arguments to the contrary are not persuasive.

Plaintiff's cross-appeal seeks disclosure of information about confidential law-enforcement sources, which the district court correctly found is protected by FOIA Exemption 7(D). FOIA recognizes that confidential sources serve an important function in law-enforcement investigations, and Congress respected the government's need to assure their confidentiality. That guarantee applies, as the district court recognized, to the interviews with and documents provided by confidential sources here, because the brutal nature of the triple homicide being investigated and the sources' proximity to and "singular" insight into the suspects gave rise to a reasonable inference of confidentiality. The district court correctly held that these documents fit squarely within the logic of Exemption 7(D), and that there was no need for *in camera* review.

## STANDARD OF REVIEW

This Court's "case law is not entirely consistent" as to whether "[r]eview for clear error" or de novo review applies when reviewing a

FOIA summary judgment decision. *See Enviro Tech Int'l, Inc. v. EPA*, 371 F.3d 370, 374 (7th Cir. 2004); *see also* Gov't Br. 14-15. Because the Government should prevail under either standard of review, it may not be necessary for the Court to address the question in this case. To the extent that this Court reaches this question, the de novo standard of review should be applied, as explained below.

This Court reviews the challenge to the district court's decision not to review the Exemption 7(D) material *in camera* for abuse of discretion. *See, e.g.*, *Kimberlin v. Department of Treasury*, 774 F.2d 204, 210 (7th Cir. 1985).

## ARGUMENT

### I. This Court Should Apply The De Novo Standard Of Review To This FOIA Summary Judgment Decision.

Although "[r]eview for clear error remains the norm for FOIA cases" in this Court, its "case law is not entirely consistent" as to whether "[r]eview for clear error" or de novo review applies when reviewing a FOIA summary judgment decision. *See Enviro Tech Int'l, Inc. v. EPA*, 371 F.3d 370, 374 (7th Cir. 2004). Indeed, this Court has previously applied the de novo standard of review to another case involving the same issue presented here: a requester's challenge to the

FBI's withholdings under Exemption 7(C). *See In re Wade*, 969 F.2d 241, 245-47 (7th Cir. 1992) (reviewing de novo the "legal question" of whether summary judgment was appropriate where requester was challenging the court's "withholding decisions"); *see also Kaganove v. EPA*, 856 F.2d 884, 886-90 (7th Cir. 1988) (reviewing de novo whether summary judgment was appropriate as to Exemption 2 withholdings), *abrogated on other grounds by Milner v. Department of Navy*, 562 U.S. 562, 567 (2011). Pursuant to Circuit Rule 40(e), this case may present an opportunity for the panel to resolve the intra-Circuit split about the correct standard of review in FOIA cases, by joining the majority of circuits in applying the de novo standard to FOIA summary judgment cases. That same standard would apply both to the government's appeal and Higgs's cross-appeal.

The courts of appeals are divided on the standard of review governing appeals from FOIA summary judgment decisions, but the majority of circuits recognize that appellate review should proceed on a de novo standard, and several courts have abandoned inconsistent case law to the contrary. *See Petroleum Info. Corp. v. Department of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (R.B. Ginsburg, J.)

(making clear that the D.C. Circuit now applies the de novo standard); *Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 989-90  (9th Cir. 2016) (en banc) (per curiam) (overruling prior precedent applying the clear error standard and adopting de novo review); *see also Batton v. Evers*, 598 F.3d 169, 175 & n.6 (5th Cir. 2010) (rejecting interpretations of earlier precedents that "suggested what appears to be a different standard of review for FOIA summary judgments" and adopting the de novo standard); *Church of Scientology Int'l v. Department of Justice*, 30 F.3d 224, 228 (1st Cir. 1994) (applying de novo review to FOIA cases); *Halpern v. FBI*, 181 F.3d 279, 287-88 (2d Cir. 1999) (same); *Abraham & Rose, P.L.C. v. United States*, 138 F.3d 1075, 1078 (6th Cir. 1998) (same); *Missouri ex rel. Garstang v. Department of Interior*, 297 F.3d 745, 749 (8th Cir. 2002) (same); *Anderson v. Department of Health & Human Servs.*, 907 F.2d 936, 946 (10th Cir. 1990) (same); *but see Lame v. Department of Justice*, 767 F.2d 66, 70 (3d Cir. 1985) (applying clear error standard); *Willard v. IRS*, 776 F.2d 100, 104 (4th Cir. 1985) (same); *Chilivis v. SEC*, 673 F.2d 1205, 1210 (11th Cir. 1982) (same).

As this Court has already recognized, applying the clear error standard in FOIA cases is in "tension" with the usual practice in

summary judgment cases.  *See, e.g.*, *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1038 n.5 (7th Cir. 1998).  This Court's decisions applying the clear error standard have sought to justify the "use of a deferential standard of review in exemption cases" on the ground that the requesting party often "'does not know the contents of the document withheld or its redacted portion,'" with the result that "'the real responsibility for appraisal of the issue is with the district court, and review by the appellate court is correspondingly limited.'"  *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 388 (7th Cir. 2015) (quoting *Becker v. IRS*, 34 F.3d 398, 402 n.11 (7th Cir. 1994)).

But this conclusory rationale does not explain why the district court is any better situated than the appellate court to resolve any concerns about an asymmetry in information.  The requestor faces the same challenges in presenting his case in the district court as in the appellate court.  And the courts have developed other tools—agency affidavits, Vaughn Indexes, and *in camera* review—that are tailored to this concern.  Indeed, this Court has explained that Vaughn Indexes and affidavits (including *in camera* affidavits) enable judges to navigate:

> [the] dilemma [that] arises from the conflict between their obligation to maintain the openness and adversarial nature of judicial proceedings and their responsibility to carry out the purpose of the FOIA by obtaining sufficient information from the government so as to perform the review function mandated under the Act, all without jeopardizing the legitimate interests of the government and third parties in the confidentiality of withheld documents.

*See Stein v. Department of Justice*, 662 F.2d 1245, 1252-56 (7th Cir. 1981).

The appellate court has access to the information generated by such district court orders, and thereby sits in the same position as the district court in its ability to evaluate the legal question of whether a FOIA exemption applies to the agency's withholdings based on the summary judgment record.  A dispute over how to correctly apply the law to a set of undisputed facts is precisely the kind of question most suited to de novo review.  Not only is a deferential standard of review therefore ill suited to the  concerns raised in this Court's prior cases, but it also is inconsistent with the plain text of FOIA, which "requires that 'the court shall determine the matter *de novo*.'"  *See Halpern*, 181 F.3d at 288 (quoting 5 U.S.C. § 552(a)(4)(B)).  The de novo standard of review "fits better with the policy and purpose of FOIA," which deems "'*[d]e novo* review . . . essential to prevent courts reviewing agency

action from issuing a meaningless judicial imprimatur on agency discretion.'" *Animal Legal Def. Fund*, 836 F.3d at 990 (quoting *Halpern*, 181 F.3d at 287). Nothing in FOIA's text or purpose suggests that a different standard should apply to appellate review.

So too, this Court's "[c]oncern for the conservation of judicial resources," given the breadth of documents at issue in certain FOIA requests, *Rubman*, 800 F.3d at 388, is more properly addressed through other available FOIA tools, such as sampling. *Cf. Weisberg v. Department of Justice*, 745 F.2d 1476, 1490 (D.C. Cir. 1984) ("The sampling procedure is appropriately employed, where as here the number of documents is excessive and it would not realistically be possible to review each and every one."). In any case, this rationale does not meaningfully differentiate FOIA cases from other complex civil litigation that may, for example, involve thousands of pages of depositions and complex financial records.

Like the Fifth, Ninth, and D.C. Circuits (and consistent with the standard adopted by the majority of circuits), this Court should overrule its prior precedents applying the clear error standard to FOIA summary judgment exemption decisions as incompatible with FOIA's text and

10

purpose. Because there is "no compelling reason to depart from a pure *de novo* standard" in the FOIA context, *see Animal Legal Def. Fund*, 836 F.3d at 990 (quoting *Halpern*, 181 F.3d at 287), this Court should apply de novo review to all FOIA cases. *See* Circuit Rule 40(e) (permitting a panel opinion to overrule prior decisions of this Court after circulation to active members of the Court).

If this Court agrees that the government would prevail under either standard of review, as we contend, there may be no need to address this question. But the Court need not inquire into the application of a different standard of review as to each of the merits arguments below if it adopts the de novo standard.

## II. Exemption 7(C) Protects Against The Release Of Individuals' Personally Identifying Information In FBI Case Files, When There Is No Reason To Believe The Individuals Are Deceased And When There Is No Public Interest In Disclosure.

As we explained in the opening brief, Exemption 7(C) protects "records or information compiled for law enforcement purposes" whose disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Under Exemption 7(C), the privacy interests of individuals must be protected

unless release of the information would advance a specific and significant public interest. *See, e.g., National Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). Because Higgs fails to satisfy that stringent standard, the district court had no basis to order disclosure. *See also* Gov't Br. 17-24.

### A. The Individuals Identified In FBI Case Files Have A Substantial Privacy Interest, Which Has Not Been Negated By The Passage Of Time.

As discussed in our opening brief, and as Higgs acknowledges, all of the individuals identified in the FBI files (if still alive) have substantial privacy interests that are not diminished by the mere passage of time. *See* Gov't Br. 17-9 *cf.* Pl's. Br. 27; *see also, e.g., Stein*, 662 F.2d at 1260 (recognizing that the "names and other identifying data of agents of the FBI, informants, targets of investigations, and people tangentially related to counter-intelligence investigation . . . may be withheld properly under (b)(7)(C)"). Here, that highly personal information includes individuals' names, addresses, social security numbers, and even rap sheets and fingerprint cards. *See, e.g.*, GA 3, 6, 20 n.2. This "privacy interest . . . belongs to the individual, not the agency holding the information." *Sherman v. Department of Army*, 244

F.3d 357, 363 (5th Cir. 2001) (citing *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989)); *see also* Gov't Br. 18-19 (listing cases); *cf. Lakin Law Firm, P.C. v. FTC*, 352 F.3d 1122, 1124 (7th Cir. 2003). And it survives the death of the individual (although some courts have suggested that the interest is diminished with death). *Cf.* Pl's. Br. 27 (citing *Davis v. Department of Justice*, 460 F.3d 92, 97-98 (D.C. Cir. 2007)); *Favish*, 541 U.S. at 170-71.

Higgs nonetheless urges this Court to adopt the district court's theory that it could disregard the individuals' privacy interests here on the ground that the FBI had not first proven that these individuals remained alive twenty years after the end of the investigation. *See* Pl's. Br. 27-33; SA 24-25. That ruling must be reversed under even the more deferential of the two standards that this Court has applied in reviewing FOIA summary judgment decisions: the district court lacked an adequate factual basis to treat these individuals as deceased on this record and committed clear legal error in ordering the disclosure of all of their personal information without allowing the FBI to first substantiate life status. *See* Gov't Br. 19-24. Indeed, even if some of these individuals are deceased, which the record here is inadequate to

13

demonstrate, the district court's decision would reflect clear error because it failed to weigh those individuals' (and any family members') remaining privacy interests against the incremental public interest in disclosure of this information. *Cf. Favish*, 541 U.S. at 170-71.

The district court's order should be reversed because the logic of its analysis of the individuals' privacy interests is internally inconsistent and therefore clearly erroneous. *See* Gov't Br. 19. The district court began by correctly concluding that twenty-two years is not enough time to "presume that the individuals at issue in this case are deceased," SA 24—a conclusion that Higgs has not challenged here. Yet, the district court effectively adopted just such an improper presumption by ruling that the FBI was required to investigate life status because Higgs had asserted that such a presumption applied here and it would have been feasible to conduct the search.

The district court compounded this logical flaw by refusing to allow the FBI an opportunity to supplement the record with the results of an investigation before ordering disclosure. And the district court opined that it was "skeptical" that the FBI would succeed on the merits of an appeal defending these individuals' substantial privacy interests

in their personal information even after the FBI determined, "at least preliminarily, that the majority of the individuals are living." *Compare* Order of July 9, 2018 at 1 (ECF 76), *Higgs v. U.S. Park Police*, No. 2:16-cv-00096 (S.D. Ind.), *with* Def.'s Unopposed Emergency Mot. to Stay 6 (ECF 75) (Mot. to Stay).

The only rationale that the district court (and Higgs) has provided for not allowing the FBI to supplement the record was that the court should not have to "give the Park Police a further opportunity to support its claim" in light of the "the prolonged history of this case." SA 25; *see also* Pl.'s Br. 28-33. But ordering the disclosure of individuals' personal information simply due to the length of the litigation or due to the government's litigation conduct cannot be squared with the fundamental principle that the privacy interest belongs to the individuals named in the FBI's investigative files and cannot be waived by the government. *See Lakin Law Firm*, 352 F.3d at 1124; *see also* Gov't Br. 23-24. Indeed, the D.C. Circuit has excused the government from its mistaken failure to raise Exemption 7(C) at all in district court in order to protect the affected individuals' privacy interests. *See August v. FBI*, 328 F.3d 697, 701-02 (D.C. Cir. 2003).

As the government discussed in its opening brief, no other appellate court has taken such a drastic step. *See* Gov't Br. 21-22. Instead, the typical rule allows the district court "discretion" to require the government to investigate life status in a particular case, but not to presume death (especially after a relatively short time) if the agency has not *sua sponte* undertaken such an investigation based on a requestor's assertion that some individuals may have died due to the passage of time. *See, e.g.*, *Davin v. Department of Justice*, 60 F.3d 1043, 1046, 1058-59 (3d Cir. 1995); *Campbell v. Department of Justice*, 164 F.3d 20, 33-34 (D.C. Cir. 1998). That is the kind of "workable rule[] of FOIA disclosure" that Congress intended. *See Davin*, 60 F.3d at 1059 (quotation marks omitted) (quoting *Department of Justice v. Landano*, 508 U.S. 165, 180 (1993)).

The D.C. and Third Circuits have applied that commonsense rule. When there has been a question of whether an additional investigation into life status is required, both circuits have remanded to allow the government to either perform an investigation in the first place or to substantiate the thoroughness of their investigation, rather than ordering immediate disclosure.

In *Campbell*, for example, the D.C. Circuit remanded to allow the FBI to document its position on the requester's argument that individuals in records from the 1960s were deceased, and to allow the district court to "order the FBI to take such action as is necessary to ensure proper implementation of exemption," *i.e.*, to perform an investigation if warranted. 164 F.3d at 33-34; *see also Schrecker v. Department of Justice*, 349 F.3d 657, 660 (D.C. Cir. 2003) (describing earlier remand to the district court to provide government with the opportunity to show that it had performed an adequate investigation). Similarly, the Third Circuit remanded to allow the district court to decide whether to order the government to investigate the life status of individuals identified in records from the 1930s and 1940s, rather than ordering disclosure on the presumption that they were deceased. *See Davin*, 60 F.3d at 1058-59.

Higgs still has not pointed to any appellate opinion that has followed the approach taken by the district court. *Cf.* Pl's. Br. 31-32. His insistence that no appellate case has expressly held that a district court erred by not allowing the government to investigate is beside the point. *See* Pl's. Br. 31. That is not the relevant question here, in light

of the strong privacy interests at stake.  In any event, Higgs does not point to any other case where a district court reached such an extraordinary result, and thus there is no indication that any appellate court has decided that question before now.

As discussed in our opening brief, adopting the district court's extreme stance here would create significant administrability problems for the FBI.  *See* Gov't Br. 20-21.  The district court's approach would impose a significant administrative burden on the FBI, which would have to make an affirmative determination whether every individual named in an investigative file is alive every time a FOIA requester asserts that some individuals may have died due to the passage of even a short length of time.  And the failure to make such a determination could run the risk that the individual's privacy interests would be disregarded.  There is no basis for such a blanket requirement that the FBI establish that every individual identified in its files is alive at the time of a FOIA request, which no other court has imposed, and it would be highly burdensome to adopt a rule that would effectively require the FBI to do so in every case without a district court first weighing in on

18

whether an individualized investigation is necessary in the circumstances.

Moreover, the FBI reasonably determined that the passage of at most twenty-two years here meant that the individuals identified in the FBI's records likely were still alive. For example, a person who was thirty in 1996 would have been fifty-two at the time of the district court's decision, and a person who was fifty in 1996 would have been seventy-two, both well within the range of modern life expectancy. *Cf. Schrecker*, 349 F.3d at 663-65 (upholding the FBI's use of the 100-year rule to assume that an individual was alive, even absent definitive proof of life); *see also* Gov't Br. 23 (citing cases deferring to FBI's presumptions of life). Nor had Higgs presented any evidence indicating that particular individuals had died.

The district court's prior orders contained no indication that the court was concerned about the FBI's reasonable presumption that the individuals were still alive. *See* Min. Entry From Hr'g of March 6, 2018, at 2 (ECF 60) (ordering the FBI to supplement its declarations by producing a Vaughn Index, without mentioning the question of life status); *see also* Order of Feb. 27, 2018, at 2-3 (ECF 59) (directing the

parties to be prepared to resolve nine issues in this case in a telephonic hearing, without mentioning the question of investigating life status). Indeed, the district court subsequently agreed with the FBI that twenty-two years is not enough time to "presume that the individuals at issue in this case are deceased." SA 24. The FBI thus had no reason to believe that further investigation was warranted before the district court's ruling.

Higgs's contention that the government has waived these individuals' substantial privacy interests misses the mark. *See* Pl's. Br. 29-33. The government did respond to Higgs's arguments that the individuals may have been deceased by explaining that the "passage of time [does not] diminish the privacy protection afforded by Exemption (b)(7)(C)." Reply in Supp. of Def.'s Mot. for Summ. J. & in Resp. to Pl.'s Mem. of Law & Cross-Mot. for Summ. J. 16-17 (ECF 55) (listing cases). That was all that was required because Higgs had provided no evidence that any individuals had died, and there was no indication that the district court was persuaded by Higgs's general claims that twenty-two years was sufficiently long to presume death. *See also supra* pp. 19-20. Moreover, the FBI filed an emergency stay of the disclosure order in

district court, explaining that the district court had erroneously denied the FBI the opportunity to supplement the record, and because the FBI had subsequently determined "at least preliminarily, that the majority of the individuals are living." *See* Mot. to Stay 6. The government's appellate brief thus did not raise any new issue that had been waived below. *Cf. Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1220-21 (7th Cir. 1984).

Higgs's waiver argument also cannot be squared with this Court's holding that, because the privacy interest belongs to the individual, the government "cannot waive individual[] . . . privacy interests" under FOIA, "whatever it does or fails to do." *Lakin Law Firm*, 352 F.3d at 1124 (cited at Gov't Br. 18); *see also, e.g.*, *Sherman*, 244 F.3d at 363-64 & n.12 (holding that "only the individual whose informational privacy interests are protected by [E]xemption 6 can effect a waiver of those privacy interests" and citing cases from the Second, Sixth, Ninth and D.C. Circuits holding the same) (cited at Gov't Br. 18); *August*, 328 F.3d at 701-02. Higgs's reliance on this Court's general rule that issues not

raised below are typically waived, *see* Pl's. Br. 30-31, thus is inapposite.[2]

Treating the substantial privacy rights of individuals who likely are

alive as waived because of something the government "does or fails to

do," would be a miscarriage of justice that provides an exception to the

general waiver rule. *See Lakin Law Firm*, 352 F.3d at 1124; *cf. Yorger*,

733 F.2d at 1221.

### B. There Is No Public Interest In Disclosure Of The Individuals' Identities And Personal Information.

The district court's order also should be reversed for the

independent reason that there is no public interest in disclosure of the

individuals' identities and personal information. Higgs has failed to

"establish a sufficient reason for the disclosure" by showing that "the

public interest sought to be advanced is a significant one" or that "the

information [sought] is likely to advance that interest." *Favish*, 541

---

[2] The D.C. Circuit's decision in *Roth v. Department of Justice*, 642 F.3d 1161, 1180-81 (D.C. Cir. 2011), on which Higgs also relies, is even further afield. First, it concerned a factual argument that the government raised for the first time at oral argument on appeal, *id.* at 1181, whereas the FBI raised this issue below and in its opening appellate brief. Second, the argument at issue in *Roth* went to the strength of the public interest asserted by the requester, which is a distinct question from the existence of an individual's privacy interest. *See id.* at 1180-81.

U.S. at 172. Higgs relies on two potential public interests: (1) "informing the public about potential government and prosecutorial misconduct," and (2) insight into "matters of substantive law enforcement policy." Pl's. Br. 35-36. As discussed in our opening brief at 24-34, however, he has not met his burden to show that the information he seeks would further either of these interests. Without such a public interest in this case, even a minimal privacy interest supports withholding. *Cf. Wade*, 969 F.2d at 247.

**1.** Higgs's speculative claim of prosecutorial misconduct is insufficient to establish the first of these public interests under *Favish*, 541 U.S. at 174. Higgs relies on Baltimore Police files to allege that federal prosecutors sought to "induce[] state authorities to cease pursuing homicide charges against" Victor Gloria for the 1998 murder of Martrelle Creighton, to "prevent attacks on Gloria's credibility" at Higgs's unrelated trial for the 1996 murder of three women, and then "improperly concealed those facts from [Higgs] and the public." *See* Pl's. Br. 34-35. But those files do not support such an assertion. Indeed, a Maryland federal district court has already rejected the same claim of prosecutorial misconduct and cover-up as not "colorable" based on the

23

same evidence. *Compare United States v. Higgs*, 193 F. Supp. 3d 495, 496, 508-14 (D. Md. 2016), *with* SA 19-21.

The district court here also declined to find that Higgs had shown a public interest in shedding light on potential misconduct, explaining that it "is difficult to say" whether Higgs met his evidentiary burden under *Favish*. *See* SA 21. Higgs thus has not met his burden to "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred," *Favish*, 541 U.S. at 174, and therefore cannot rely on this kind of public interest to overcome the substantial privacy interests protected by Exemption 7(C).

In challenging this conclusion, Higgs glosses over the district court's recognition of the weakness of the evidence of misconduct he put forth in this case, *cf.* Pl's. Br. 35-37, and mischaracterizes the Maryland district court's detailed analysis of why his misconduct claims are unconvincing. Higgs first seeks to distinguish the Maryland case by arguing that the district court there determined that Higgs had not met the "clear and convincing evidence" standard to reopen the judgment denying his prior habeas petition, and he argues that a lesser standard

is required to establish a public interest in potential prosecutorial misconduct under *Favish*. *See* Pl's. Br. 40-41 & n.9. But the Maryland district court did not merely find that Higgs had fallen somewhat short of the clear-and-convincing-evidence standard. The court instead underscored that Higgs had not raised a "*colorable*" claim that the government committed fraud in denying knowledge of the same alleged prosecutorial misconduct Higgs raises here. *See Higgs*, 193 F. Supp. 3d at 496 (emphasis added); *see also* Gov't Br. 28.

As also discussed in our opening brief at 28-30, the Maryland district court thoroughly explained why the evidence on which Higgs relied—which is the same evidence he presented here—did not support his theory that the federal government had exerted "federal pressure that changed the course" of the state officials' elimination of Gloria as a suspect in the unrelated Creighton homicide. *See Higgs*, 193 F. Supp. 3d at 511; *see generally id*. at 508-14. The district court concluded that the "reasonable inference" was that Baltimore authorities came to their own conclusion that a different suspect (Miller) was responsible based on the following facts: (1) "three eyewitnesses with no obvious motive to lie to police independently identified Miller as the likely murderer (two

doing so by name), and . . . suggested Gloria was not even involved in the altercation" in interviews that occurred before the Baltimore authorities spoke to the federal authorities; (2) the Baltimore police initially "continued to treat Gloria as a suspect in the Creighton murder even after discussing the case with" federal authorities; and (3) additional evidence came to light after the conversation with federal authorities that pointed to Miller. *See Higgs*, 193 F. Supp. 3d at 510-12.

A claim of prosecutorial misconduct and cover-up that a district court has already rejected as not being colorable does not satisfy *Favish*'s requirement that evidence must "warrant a belief by a reasonable person" that alleged governmental impropriety may have occurred. *See Favish*, 541 U.S. at 174. The cases on which Higgs relies for the proposition that a public interest exists where there is sufficient evidence to warrant such a belief, *see* Pl's. Br. 35-36, 40-41, thus do not support his arguments here.

Likewise, Higgs's emphasis on the Maryland district court's statement that Higgs had "obtained considerable evidence to support his motion" to reopen his habeas proceedings, Pl's. Br. 39 (quoting *Higgs*, 193 F. Supp. 3d at 514 n.15); Pl's. Br. 41 (same), is misleading.

That statement was not an endorsement of Higgs's theory, but rather an explanation for why Higgs could not justify the need for additional "discovery in connection with [his] fraud-on-the-court allegations." *Higgs*, 193 F. Supp. 3d at 514 n.15. Indeed, the court had evaluated that "considerable evidence," *id.*, in ruling that it did not support a "colorable" claim of prosecutorial misconduct or cover-up, *id.* at 496. This isolated phrase thus does not support Higgs's assertion that any court has recognized that he has put forth sufficient evidence for a reasonable person to believe that prosecutorial misconduct occurred.

**2.** Nor did the district court (or Higgs) demonstrate that the second potential public interest—providing insight into "matters of substantive law enforcement policy," *Reporters Comm.*, 489 U.S. at 766 n.18—applies here. *Cf.* SA 21-22, Pl's. Br. 36-37. The district court opined that Higgs's "allegations concern the manner in which [the Department of Justice] carries out substantive law enforcement policy," *see* SA 21-22, without providing any reasoning for this assertion. Because the district court did not offer a sufficient basis for concluding that such a public interest had been established in this case, its opinion should be reversed. *See* Gov't Br. 26-27, 31-32.

On appeal, Higgs argues that the "matters of substantive law enforcement" at issue are "independent of any impropriety," *cf.* Pl's. Br. 36, thereby waiving any reliance on a public interest in revealing a possible pattern or practice of federal conspiracies to unduly influence state authorities' investigations. Even absent a waiver, such an argument would be without merit. Where there is no credible evidence of the likelihood of even a single incident of prosecutorial misconduct, there can be no factual or legal basis to presume that the records might reveal a pattern or policy of such prosecutorial misconduct. *Cf. Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 387-88 (D.C. Cir. 2007) (holding that "a single instance of a *Brady* violation in [this] case would not suffice to show a pattern of government wrongdoing as could overcome the significant privacy interest at stake"); *see also* Gov't Br. 31. To find otherwise, would turn *Favish* on its head.

It likewise is insufficient for Higgs to rest on the general assertion that the "public interest is promoted where . . . disclosure 'would likely reveal much about the diligence of the [agency's] investigation and the [Department of Justice]'s exercise of its prosecutorial discretion.'" Pl's. Br. 36 (first brackets in original) (quoting *Citizens for Responsibility &*

*Ethics in Washington (CREW) v. Department of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014)). Higgs has not explained why the withheld material would shed light on either of those kinds of interests. Besides his unfounded allegations about a prosecutorial conspiracy (which are insufficient for reasons described *supra* pp. 23-27), Higgs has not offered any reason to doubt the diligence of the FBI's investigation or the exercise of the prosecutors' discretion that could be addressed by disclosure of the individuals' private information protected by Exemption 7(C). *Cf.* Pl's. Br. 34-35, 38 (continuing to rely solely on an interest in a purported prosecutorial conspiracy to unduly influence state authorities' investigation of a separate case in which a federal witness was a suspect).

Without such reasons, Higgs's purported public interest is no more than a general concern about how the government enforces the law, which is clearly insufficient. *See* Gov't Br. 26-27. In *Miller v. Bell*, 661 F.2d 623, 630 (7th Cir. 1981) (per curiam), *abrogated on other grounds by Landano*, 508 U.S. at 174-78, this Court rejected a claim that "serv[ing] as a watchdog over the adequacy and completeness of an FBI investigation" constitutes a public interest because it "would apparently

apply to every FBI criminal investigation, severely vitiating the privacy and confidentiality provisions of exemptions 7(C) and (D)." Higgs has not provided any special factors or circumstances that would distinguish this case from the general watchdog interest rejected in *Miller*.

Higgs points to two exceptions to this general rule recognized in the D.C. Circuit, Pl's. Br. 36-37; *see also* SA 21-22, but fails to establish that either exception applies here. *See* Gov't Br. 32. Unlike *ACLU v. Department of Justice*, 655 F.3d 1, 12-13 (D.C. Cir. 2011), which sought information related to the use of warrantless cell-phone tracking on a macro level, Higgs's request does not implicate a purported government policy. Nor does this case fall within the narrow exception recognized in *CREW*, in which the request pertained to the effectiveness of a "wide-ranging public corruption investigation as part of [the FBI's] ongoing efforts to root out systemic corruption within the highest levels of government," 746 F.3d at 1093 (alteration in original). Assuming *arguendo* that such an exception is appropriate in an exceptionally important, far-reaching investigation into the highest levels of government, those circumstances are not present in a case like this,

30

which involves the investigation and prosecution of a homicide. Contrary to Higgs's assertions, *see* Pl's. Br. 38, the distinctions between these cases and his own are critical in ensuring that the "privacy and confidentiality provision[]" of Exemption 7(C) is not "vitiate[ed]" in every FOIA request pertaining to criminal investigations and prosecutions. *See Miller*, 661 F.2d at 630; *cf. Favish*, 541 U.S. at 172.

Finally, the D.C. Circuit's decision in *Roth v. Department of Justice*, 642 F.3d 1161, 1176 (D.C. Cir. 2011), does not alter the analysis. *See* Pl's. Br. 38. *Roth* concluded that the public interest there included the court's conclusion that "a reasonable person could believe that the FBI might be withholding information that could corroborate [the inmate's] claim of innocence" in a capital case, based on the FBI's prior failures to disclose information in response to FOIA requests. *Roth*, 642 F.3d at 1180. By contrast, Higgs has not suggested that these files would support an actual innocence claim; his cover-up claims have twice been rejected by a federal district court; and there is no evidence that the FBI engaged in bad faith in responding to his FOIA request or in trying to hide evidence of actual innocence.

**3.** As discussed in the government's opening brief, the district court's decision also should be reversed because it failed to weigh the purported public interest in substantive prosecutorial policy against the individuals' privacy interests. *See* Gov't Br. 32-33. The court should have determined whether "the incremental value" from the disclosure of the individuals' names and other personal information would further the public interests that Higgs put forth, especially in light of the information already released. *See Schrecker*, 349 F.3d at 661. As detailed below, the FBI's declarations and Vaughn Index provided sufficient information to have supported a finding that disclosure was not warranted.

**C. The FBI's Vaughn Index And Declarations Demonstrate That There Is No Incremental Benefit To Disclosure Of The Individuals' Personal Information.**

As discussed in our opening brief, the district court clearly erred by ordering wholesale disclosure without weighing the incremental benefit to the asserted public interest from disclosure of the specific information at issue against the individuals' substantial privacy information in the withheld material. *See* Gov't Br. 32-33. Assuming *arguendo* that Higgs has shown any public interest in the disclosure of

a subset of the withheld Exemption 7(C) material (which he has not), Higgs still failed to show that the specific personal information at issue here—which includes categorically exempt information like rap sheets, and much of which was collected before the date that any prosecutorial misconduct could have occurred under Higgs's theory—would significantly advance the public interest sufficiently to overcome the substantial privacy interests at stake. To the degree that there are any remaining questions as to the Exemption 7(C) material in a small subset of the documents, the FBI can provide additional declarations or produce those documents *in camera* so that the district court can make a segregability finding in the first instance. *See Patterson v. IRS*, 56 F.3d 832, 840 (7th Cir. 1995).

**1.** Contrary to Higgs's assertions, *see* Pl's. Br. 42-46, the FBI's declarations and Vaughn Index provide a sufficient basis for the district court to uphold the FBI's segregability determinations because they:

> (1) describe the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of agency bad faith."

*Kimberlin v. Department of Treasury*, 774 F.2d 204, 210 (7th Cir. 1985)

(per curiam). The information provided by the FBI contains sufficient

details to demonstrate that the redacted or withheld information is the

kind that has been held to categorically fall within the protection of

Exemption 7(C) or that clearly falls outside of the scope of Higgs's

purported public interest.

First, the Vaughn Index describes a number of documents that are

categorically exempt from disclosure under Exemption 7(C). For

example, the Vaughn Index identifies documents that have been

withheld in full under Exemption 7(C) because they are "NCIC

printouts pertaining to third party individuals,"—*i.e.*, rap sheets—

which are categorically exempt under *Reporters Comm.*, 489 U.S. at

780. *See* GA 6-11.[3] So too, third-party individuals' privacy interest in

their "[f]ingerprint records," *see* GA 3, 5, is "at its apex while the FOIA-

based public interest in disclosure is at its nadir" and therefore should

---

[3] The Vaughn Index identifies the following documents (including
page ranges) as "NCIC printouts": Higgs-FBI-52-77; Higgs-FBI-78;
Higgs-FBI-101; Higgs-FBI-103-04; Higgs-FBI-106-12; Higgs-FBI-114-
19; Higgs-FBI-135-206; Higgs-FBI-216-27; Higgs-FBI-230-83; Higgs-
FBI-289-492; Higgs-FBI-494-733; Higgs-FBI-735-38.

be categorically exempt from disclosure.  *See Reporters Committee*, 489

U.S. at 780.[4]  The district court's order to disclose these documents thus

conflicts with binding Supreme Court guidance and should be reversed.

Second, as described in our opening brief, and as evident on the

face of the Vaughn Index, *See* GA 2-3, 5-11,[5] a number of the documents

pertain to information that was gathered shortly after the 1996 triple

homicide for which Higgs was ultimately convicted, and which was

years *before* the date of the alleged prosecutorial misconduct, which

Higgs alleges arose from federal prosecutors' conspiracy to influence

Baltimore authorities' investigation of the 1998 Creighton murder to

benefit a witness in Higgs's trial.  These earlier documents from 1996

and 1997 thus could not possibly shed light on what the "[g]overnment

---

[4] The Vaughn Index identifies the following documents (including page ranges) as fingerprint records: Higgs-FBI-27-31; Higgs-FBI-50.

[5] The Vaughn Index identifies the following documents (including page ranges) as being created before 1998: Higgs-FBI-1-3; Higgs-FBI-4-5; Higgs-FBI-24-25; Higgs-FBI-26; Higgs-FBI-27-31; Higgs-FBI-32-33; Higgs-FBI-49; Higgs-FBI-51 (mislabeled as Higgs-FBI-39 on GA 5); Higgs-FBI-52-77; Higgs-FBI-80; Higgs-FBI-81-99; Higgs-FBI-100; Higgs-FBI-101; Higgs-FBI-102; Higgs-FBI-105; Higgs-FBI-106-12; Higgs-FBI-113; Higgs-FBI-114-19; Higgs-FBI-120; Higgs-FBI-121-31; Higgs-FBI-132-34; Higgs-FBI-135-206; Higgs-FBI-207-08; Higgs-FBI-209; Higgs-FBI-215; Higgs-FBI-216-27; Higgs-FBI-230-83; Higgs-FBI-284-88; Higgs-FBI-289-492; Higgs-FBI-735-38.

[wa]s up to" with the Baltimore authorities in 1998 and 1999.  *See*, *e.g.*, *Favish*, 541 U.S. at 171; *see also* Gov't Br. 33; *cf.* Pl's. Br. 34 (noting that the investigation of the Creighton homicide began with his murder on July 29, 1998, and lasted through 1999).  Nor has Higgs identified any other aspect of the investigation or prosecution that requires access to this earlier information.  The district court thus had no factual or legal basis to order the FBI to disclose any portion of the Exemption 7(C) withholdings in the pre-1998 documents, and its ruling as to those documents should be reversed.

Once the information that is clearly exempt from disclosure as (1) categorically exempt under *Reporters Committee*, (2) clearly outside of the scope of the public interest identified by the requester, (3) duplicates of pages that were processed, [6] or (4) also exempt from disclosure under Exemption 7(D), *see infra* pp. 42-47, eight pages remain at issue, *see* GA 4-6, 11.[7]  As to the redacted information in

---

[6] Pursuant to "the FBI's practice" in processing "consistent, timely, and efficient responses to FOIA requests," the FBI also withheld thirty-six pages because they "are duplicates of other pages processed by the FBI."  GA 32.  These withholdings have not been challenged.

[7] These documents are identified in the Vaughn Index as consisting of the following page ranges: Higgs-FBI-39; Higgs-FBI-79; and Higgs-

these documents (and the other documents discussed above), Higgs has

offered no support for his bare assertion that it is "likely that disclosure

of the identities of individuals would further the public interest," Pl's.

Br. 42. For example, Higgs has not explained how the redacted names

of law enforcement personnel or their phone numbers in an "FBI

Facsimile Cover Sheet documenting transmittal of [an FBI interview

summary document from] the FBI to the United States Park Police,"

from 1999, GA 4 (Higgs-FBI-39), would shed light on any public interest

in contacts between the prosecutors and Baltimore law enforcement

personnel. This type of information is typically exempt under

Exemption 7(C), and the district court lacked a basis for ordering its

disclosure. *See Kimberlin*, 774 F.2d at 208-10 (holding that Exemption

7(C) protects against disclosure of addresses, phone numbers, a driver's

license, and a passport where "[t]he record fails to reflect any benefit

which would accrue to the public from disclosure of this document and

---

FBI-734. In addition, certain pages within the documents withheld
primarily on the basis of Exemption 7(D) contain some redactions
identified as solely on the basis of Exemption 7(C). Those pages are
Higgs-FBI-34; Higgs-FBI-35; Higgs-FBI-38; Higgs-FBI-40; and Higgs-
FBI-43.

Kimberlin's self-serving assertions of government wrongdoing and coverup do not rise to the level of justifying disclosure").

**2.** Higgs does not engage with the merits of these arguments, resting instead on his incorrect assertion that the government did not identify these distinctions before the district court. *See* Pl's. Br. 42-43. That argument is incorrect: these distinctions are evident on the face of the Vaughn Index and FBI declarations submitted to the district court. *See* GA 2-11 (Vaughn Index descriptions of the relevant dates, document type, and claimed exemptions for each document); GA 19-25 (declaration providing additional justifications for withholding Exemption 7(C) information for each category of individual). In conjunction with the FBI's declaration that "no reasonably segregable, non-exempt portions have been withheld," GA 31; *see also* GA 16-18, 32-33, these details about the basis for the claimed exemption as to the withheld material entitle the FBI to a "presumption that they complied with the obligation to disclose reasonably segregable material." *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007); *see also Silets v. Department of Justice*, 945 F.2d 227, 231 (1991) (en banc). The district court clearly erred by ignoring this information

38

when ordering the wholesale disclosure of all material withheld solely under Exemption 7(C).

Nor do Higgs's concerns about "overlapping exemptions" or hypothetical misconduct in performing the segregability analysis, *see* Pl's. Br. 45-46, "rebut" the presumption of regularity here. *See Sussman*, 494 F.3d at 1117; *Silets*, 945 F.2d at 231. As to the overlapping exemptions concern, the Second Hardy Declaration clarified the information in the Vaughn Index by identifying the particular page numbers to which each exemption applies. *See* GA 20 n.3, 22 n.4, 23 n.5, 24 nn.6-7, 25 n.8. As the district court recognized in the context of upholding the FBI's Exemption 7(D) withholdings, such information can be sufficient to meet the FBI's burden. *See* SA 17 n.4. In the pages released in part to Higgs, the "coded category is notated next to the redaction to which it applies," GA 17, which provided further detail on how the FBI matched the redacted portions to particular exemptions within documents.

Equally unavailing is Higgs's hypothetical, which turns the usual presumption of regularity on its head by assuming that the FBI would misuse overlapping redactions to "withhold the entire document." *See*

Pl's. Br. 45-46.  This Court has held that "mere 'suggestions of wrongdoing' were insufficient to require remand for *in camera* review," which would require instead "*evidence* of bad faith."  *Silets*, 945 F.2d at 231.  And the Supreme Court has emphasized that "[a]llegations of government misconduct are easy to allege and hard to disprove." *Favish*, 541 U.S. at 175 (quotation marks omitted).  Higgs has offered no evidence of bad faith from the FBI in making its segregability determinations once the Park Police referred the FOIA request.[8]  To the contrary, the documents withheld in full under Exemption 7(C) are the kind that are categorically exempt as rap sheets and fingerprint records of third parties or were created outside of the timeframe of the purported public interest that Higgs has put forth.  *See supra* pp. 34-36. Higgs's conjecture does not provide an adequate factual basis for

---

[8] Higgs's statements as to any earlier delays caused by an entirely different agency (the Park Police) in its initial processing of his request, *see* Pl. Br. 29, 32, have no bearing on the question of whether the *FBI* engaged in bad faith in processing the request, and the district court clearly erred to the extent that it appears to have been influenced by this factor, *see* Gov't Br. 23-24 (citing SA 25).  In any case, initial processing delays or disputes as to FOIA fees are not evidence of bad faith in making segregability determinations.

requiring *in camera* review, much less for ordering disclosure of the information protected by Exemption 7(C) without such a review.

If the district court has any remaining questions about the personally identifying information withheld solely on the basis of Exemption 7(C), the FBI can provide supplemental declarations or provide the documents for *in camera* review as deemed necessary on remand.

## III. Exemption 7(D) Protects Against The Disclosure Of The Identities Of And Information Given By Confidential Sources.

Higgs's cross-appeal is insubstantial. Exemption 7(D) protects "records or information compiled for law enforcement purposes" whose release "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). Exemption 7(D) applies to material concerning sources who speak to law enforcement agencies "with an understanding that the communication would remain confidential," whether because of an express assurance of confidentiality or in

circumstances from which such an assurance could be reasonably inferred." *Landano*, 508 U.S. at 172 (quotation marks omitted in second quote). "[W]hen circumstances such as the nature of the crime investigated and the witness' relation to it support an inference of confidentiality, the Government is entitled to a presumption" that Exemption 7(D) protects against disclosure of the identities of and information provided by the informant. *Id.* at 181. The district court correctly concluded that the FBI's declarations and Vaughn Index established that these conditions were met and therefore the identities of and information provided by the confidential sources could be withheld, without additional *in camera* review. *See* SA 15-17 & n.4; *see Kimberlin*, 774 F.2d at 210.

## A.    The Circumstances Here Support The Application of Exemption 7(D).

The FBI's Vaughn Index and declarations established that the confidential sources who provided information had spoken to the FBI under the two generic circumstances that imply a guarantee of confidentiality under *Landano*. The Vaughn Index identified four documents withheld in part or in full under Exemption 7(D) because they documented interviews with confidential sources or were provided

by a confidential source. GA 4, 5, 9. The FBI's Second Hardy Declaration provided additional context supporting the application of Exemption 7(D) to these informants. The declaration explained that the nature of the crime supported an inference of confidentiality because it involved a "violent triple murder," and, "[i]n the FBI's experience, sources who provide information regarding violent crimes, particularly murder, do so at great peril." GA 28. The declaration also explained that the sources' relationship to the subjects of the investigation supported this inference in this case because the sources had "proximity to [Higgs] and his associates" and because the sources "provided information that was singular in nature concerning the activities of both subjects" who were investigative targets for the triple homicide. GA 27, 28.

The FBI warned that the disclosure of the confidential sources' "identities and the specific information they provided could have devastating consequences because revealing their cooperation could subject them, as well as their families, to harassment, serious bodily injury, and/or death." GA 27. A source providing information to the FBI in such conditions would reasonably expect confidentiality. *Cf.*

*Landano*, 508 U.S. at 172, 181.  The district court thus correctly concluded that the record provided by the FBI made clear that the "nature of the crime at issue and the sources' relation to the crime are both factors that weigh in favor of confidentiality in this case," regardless of whether the sources also received payment and regardless of the particular manner in which the sources communicated with the FBI.  SA 15.

As Higgs has conceded, the FBI "established" that the nature of the crime weighs in favor of confidentiality.  *See* Pl's. Br. 48.  Indeed, the gruesome nature of the particular crime here—"a violent triple murder" of three women after Higgs's "advances were rebuffed"—should itself be sufficient to establish such an expectation.  *See* GA 15, 28.  As the FBI explained, this is the kind of violent crime for which sources providing information "do so at great peril" and, therefore, likely provided that information with an expectation of confidentiality.  *See* GA 28.

Ordering the kidnapping and murder of three women in a deserted federal park is an unusually cruel and gruesome crime that would instill a fear of reprisal for any potential informant, regardless of

their exact relation to the crime. *See* GA 15 (Second Hardy Declaration's reliance on statement by district court judge at sentencing that "[Higgs] will always be remembered as a cold-blooded killer").  Indeed, the Eighth, Tenth, and D.C. Circuits have concluded that the first *Landano* factor can be sufficient standing alone to establish an inference of confidentiality.  *See Hale v. Department of Justice*, 99 F.3d 1025, 1031(10th Cir. 1996) (recognizing that "unusually cruel or gruesome crimes of violence indicating a propensity on behalf of the perpetrator for potential violence against the source" "ordinarily support an inference of confidentiality."); *cf. Mays v. Drug Enf't Admin.*, 234 F.3d 1324, 1331 (D.C. Cir. 2000) (sources providing information on the cocaine trade can be presumed to have done so on the expectation of confidentiality, regardless of their relationship to the crime because such informants "typically face[] a sufficient threat of retaliation"); *see also Hulstein v. Drug Enf't Admin.*, 671 F.3d 690, 695 (8th Cir. 2012) (same).

In any case, the FBI also established that the second *Landano* factor—the source's relation to the crime—is met.  The Second Hardy Declaration explained that the confidential sources' relation to the

crime supported a presumption of confidentiality both because of "the individuals' *proximity* to Plaintiff and his associates" and because the individuals "provided information that was *singular in nature* concerning the activities of both subjects" of the investigation. GA 27-28 (emphases added). The declaration further explained that "[t]his type of access automatically exposes the individuals to potentially significant harm, or even death, should their association and cooperation with the FBI become publicly known." GA 26.[9]

The declaration thus identified specific factual circumstances about these confidential sources' relationship to the homicide suspects and the unique information the sources provided that would make the information provided the kind that "could be traced to a particular source" if released to the public. *See Labow v. Department of Justice*, 831 F.3d 523, 532 (D.C. Cir. 2016). Indeed, the D.C. Circuit has held

---

[9] Higgs mistakenly relies on *Church of Scientology International*, 30 F.3d at 234, for the proposition that "bland[]" statements about the "source's relationship to the crime" are insufficient. *See* Pl. Br. 48. But as described above, *see supra* pp. 42-47, the details provided by the FBI satisfy the First Circuit's instruction to instead "spell out that relationship" by "establish[ing] factors such as the nature of the crime that was investigated and the source's relation to it," *see Church of Scientology Int'l*, 30 F.3d at 234.

that similar FBI statements that informants were "in a position to have ready access to and/or knowledge about targets" and that they "provided specific detailed information that is singular in nature" were sufficient to establish this factor and to support the application of Exemption 7(D), even when the informants were not paid. *Id.* at 532. So too here.

Higgs urges this Court to instead adopt an overly restrictive interpretation of *Landano* based on Higgs's misinterpretation of the four factors subsequently laid out by the D.C. Circuit in *Roth*, 642 F.3d at 1184. *See* Pl's. Br. 47-49. Higgs appears to argue that, under *Roth*, a law enforcement agency must adduce all four *Roth* factors: (1) the nature of the crime, (2) the source's relations to the crime, (3) whether the source received payment, and (4) the manner in which the source communicated with the agency. *See id.* (citing *Roth*, 642 F.3d at 1184). But neither the D.C. Circuit nor this Court has ever imposed such a requirement.

This Court should reject Higgs's crabbed understanding of *Roth* as inconsistent with the Supreme Court's instruction in *Landano* that the first two of the factors listed in *Roth*—the nature of the crime and the

source's relation to it—are sufficient to establish an expectation of confidentiality. *See Landano*, 508 U.S. at 181. Indeed, the D.C. Circuit itself has made clear that not all the *Roth* factors must weigh in favor of an inference of confidentiality for the government to prevail. *See Mays*, 234 F.3d at 1330 (rejecting the argument that "a presumption [of implied confidentiality] based solely upon the 'character of the crime' effectively obviates consideration of 'the source's relation to the crime'" as required under *Landano*). The district court thus correctly applied *Landano* in concluding that the sources spoke to the FBI with an expectation of confidentiality based on the nature of the crime and the sources' relation to the suspects, regardless of whether the sources were paid and regardless of the method by which they communicated with the FBI. *See supra* pp. 42-47.

Finally, Higgs does not challenge the district court's ruling that Higgs's potential knowledge of one or more of the possible confidential sources "does not change the [district court's] analysis" under this Court's precedent. SA 15-16 (citing *Kimberlin*, 774 F.2d at 208-09, and *Scherer v. Kelley*, 584 F.2d 170, 176 n.7 (7th Cir. 1978)); *cf.* Pl's. Br. 47-51 (raising other arguments on appeal regarding the documents

withheld under Exemption 7(D)).  By failing to raise this issue in his

opening brief, Higgs has waived any such challenge.  *See, e.g.*, *Hentosh*

*v. Herman M. Finch Univ. of Health Scis./Chi. Med. Sch.*, 167 F.3d

1170, 1173 (7th Cir. 1999).  In any case, such arguments would fail for

the reasons set forth in the district court's opinion

### B. The District Court Correctly Found That There Were No Segregable Portions Of Interviews With Or Documents Provided By Confidential Sources.

Having determined that Exemption 7(D) protected the identities

of these confidential sources and the information they provided, the

district court correctly found that the FBI "properly withheld portions of

the 1999 records pursuant to Exemption 7(D)."  SA 17; *see also id.* n.7

(explaining that, "[i]n so ruling, the Court relies upon Mr. Hardy's

Declaration as offering a more specific breakdown of pages than that set

forth in the *Vaughn* Index" and "hold[ing] that all such assertions were

proper").[10]  Under *Kimberlin*, 774 F.2d at 210, the district court did not

---

[10] Because Higgs's assertion that the district court "made no finding as to segregability," Pl. Br. 50, is inaccurate, this Court is not required to remand for the district court to make such a finding in the first instance under *Patterson*, 56 F.3d at 840.

abuse its discretion by making this segregability finding based on the FBI's Vaughn Index and declarations, without *in camera* inspection.

First, the FBI's Vaughn Index provided reasonably specific details about the four documents that it withheld in part or in full based on Exemption 7(D), *see* GA 4, 5, 9, as further justified by the Second Hardy Declaration, *see* GA 27-28. *See Kimberlin*, 774 F.2d at 210. The Vaughn Index described three of the files as consisting of "[a]n FD-302"—a term describing an FBI interview summary report—which "documents an interview of a confidential source who provided information with an implied assurance of confidentiality," GA 4, 5, 9. It described the fourth as a "[d]ocument provided by a confidential source who provided the information with an implied assurance of confidentiality" and was "withheld in full because it was provided by a confidential source." GA 5. As described above, *see supra* pp. 43-47, the Second Hardy Declaration provided additional details about the circumstances under which the confidential sources provided information that justified the FBI's reliance on Exemption 7(D) to withhold the requested portions of these documents. The record thus

50

provided the relevant details to justify the FBI's reliance on Exemption 7(D).

Second, the FBI's Vaughn Index and declarations "demonstrate that the information withheld falls logically within the claimed exemption." *Kimberlin*, 774 F.2d at 210. Documents memorializing interviews with confidential sources or consisting entirely of a document provided by a confidential source fit squarely within Exemption 7(D)'s protection against the disclosure of information that would reveal the confidential source's identity, as well as the Exemption's independent protection against disclosure of "information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D); *see also Hodge v. FBI*, 703 F.3d 575, 582 (D.C. Cir. 2013) (upholding 7(D) withholdings and explaining that "it is unsurprising that certain documents would be heavily redacted given the sensitive nature of the investigative reports at issue and the multiple exemptions that apply").

Finally, Higgs has not offered any "contrary evidence in the record" that these four documents do not consist of such information nor any "evidence of agency bad faith" with respect to the FBI's assertion of Exemption 7(D) to protect against disclosure of information pertaining

to or derived from confidential sources. *See Kimberlin*, 774 F.2d at 210; *cf.* Pl's. Br. 47-51 (arguing only the district court did not make a segregability finding and that it lacked a sufficient factual basis absent *in camera* review). The district court thus did not abuse its discretion in finding that the FBI had produced all reasonably segregable information in the documents containing information protected by Exemption 7(D).

## CONCLUSION

For the foregoing reasons, the judgment of the district court with respect to the FBI's withholdings under Exemption 7(C) should be reversed, and the judgment of the district court with respect to the FBI's withholdings under Exemption 7(D) should be affirmed.

Respectfully submitted,

JOSEPH H. HUNT
  *Assistant Attorney General*

JOSH MINKLER
  *United States Attorney*


H. THOMAS BYRON III

 *s/ Caroline D. Lopez*
CAROLINE D. LOPEZ
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7535*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4825*
  *caroline.d.lopez@usdoj.gov*

February 2019

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,316 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2013 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Caroline D. Lopez*
Caroline D. Lopez

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2019, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I further certify that I will cause fifteen paper copies of this brief to be received by the Clerk within seven days of the Notice of Docket Activity generated upon acceptance of the brief, in compliance with 7th Circuit Rule 31(b) and ECF Procedure (h)(2).

Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Caroline D. Lopez*
Caroline D. Lopez