CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit



In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 18-2826, 18-2937

DUSTIN JOHN HIGGS,

*Plaintiff-Appellee/Cross-Appellant*,

*v.*

UNITED STATES PARK POLICE,

*Defendant-Appellant/Cross-Appellee*.

_____

Appeals from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:16-cv-96-JMS-MJD — **Jane Magnus-Stinson**, *Chief Judge*.

_____

ARGUED APRIL 3, 2019 — DECIDED AUGUST 13, 2019

_____

Before WOOD, *Chief Judge*, and BAUER and ROVNER, *Circuit Judges*.

WOOD, *Chief Judge*. More than two decades ago, Dustin Higgs kidnapped and murdered three women. Because the murders took place in the Patuxent National Wildlife Refuge, a federal property in Maryland, he was tried in federal court for these crimes. He was convicted and sentenced to death. See *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003). Higgs, now housed on the federal death row within the U.S.

Penitentiary at Terre Haute, Indiana, has insisted for years that the government failed to turn over certain exculpatory evidence to which he is entitled under *Brady v. Maryland*, 373 U.S. 83 (1963). Along the way, in 2012, an investigator from the Federal Community Defender Office for the Eastern District of Pennsylvania filed a request under the Freedom of Information Act (FOIA) with the U.S. Park Police, seeking a complete copy of everything pertaining to the homicide convictions. The Park Police produced some information and then referred the request to the Federal Bureau of Investigation (among other agencies).

This case arises out of that FOIA request. Dissatisfied with the government's response, Higgs filed a complaint in the Southern District of Indiana, where USP Terre Haute is located, seeking information that the FBI had refused to turn over. Some aspects of Higgs's demands have since been resolved, but he primarily has contended in his lawsuit that the FBI's decisions to redact or withhold information under FOIA Exemptions 6, 7(C), and 7(D), 5 U.S.C. § 552(b)(6), (b)(7)(C), and (b)(7)(D), were not warranted. Exemptions (6) and 7(C) cover materials that would invade personal privacy, while Exemption 7(D) covers information that "could reasonably be expected to disclose the identity of a confidential source, … and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation … information furnished by a confidential source … ."

Upon the parties' cross-motions for summary judgment, the district court split the difference. It concluded that the FBI had properly withheld certain documents under Exemption 7(D), but that the FBI did not justify the invocation of

Exemption 7(C). The court accordingly held that the FBI had to release all of the personal information at issue, including names of still-living people, contact information, reports of interviews, fingerprints, and rap sheets for third parties. It gave little weight to the privacy interests of the people concerned, in part because the murders took place 22 years earlier and in part because it thought that the FBI had not met its burden of proof on that point. That failure of proof meant, the court decided, that Higgs was entitled to the documents.

The government has appealed from the district court's judgment insofar as it ordered disclosure under Exemptions 6 and 7(C); Higgs has cross-appealed from the court's refusal to order disclosure of the materials under Exemption 7(D). We conclude that the district court erred when it found that the public interest prevailed over the privacy interests of the persons involved, and thus it should have refused disclosure of those documents pursuant to Exemptions 6 and 7(C). With respect to Exemption 7(D) materials, we agree with the district court's result (though not necessarily all of its reasoning) and affirm. The net effect is that this case is over: the government is not obliged to turn over any of these additional materials under FOIA.

## I

We do not need to examine the details of the murders; interested readers can find them in the Fourth Circuit's opinion on direct appeal, at 353 F.3d 281. It is enough to say that Higgs and the three female victims had been at Higgs's apartment, and Higgs had an argument with one of them. The three women walked out, but Higgs did not let matters rest. He grabbed a handgun and convinced two of his friends, Willis Haynes and Victor Gloria, to come with him. They quickly

caught up with the women and ordered them into a car, which the men drove to the Patuxent Refuge. There Higgs gave Haynes the gun and ordered him to shoot all three women. Haynes complied. The men left the bodies where they fell and tossed the gun into a river. A motorist found the bodies a few hours later and reported the murders to the Park Police. On the scene, the police found a reference to Higgs in one of the women's day planners. The investigation dragged on for three years, but ultimately Haynes and Higgs were indicted by a federal grand jury for the Patuxent murders. Their cases were severed for trial.

Both were convicted, but Haynes (the trigger man) was sentenced to life in prison, while Higgs was sentenced to death. Higgs's conviction and sentence were affirmed on direct appeal, 353 F.3d 281. He also failed in several other endeavors to secure relief: a motion for new trial, 95 F. App'x 37 (4th Cir. Apr. 20, 2004); a motion under 28 U.S.C. § 2255, 711 F. Supp. 2d 479 (D. Md. 2010), aff'd 663 F.3d 726 (4th Cir. 2011); and a motion under Federal Rule of Civil Procedure 60(b) to reopen the judgment denying his motion under section 2255, 193 F. Supp. 3d 495 (D. Md. 2016), certificate of appealability denied, 2016 WL 6879939 (D. Md. Nov. 22, 2016), 4th Cir. No. 16-15 (Feb. 23, 2017), cert. denied, 138 S. Ct. 2572 (2018).

While those proceedings were underway, an investigator for the Federal Defender who was representing Higgs sent a FOIA request to the Park Police, asking for a "complete copy of everything pertaining to" the Patuxent murders. In so doing, counsel was following up on one of the *Brady* claims that Higgs has been attempting to pursue. See *Brady v. Maryland*, 373 U.S. 83 (1963). Higgs is convinced that the government suppressed information that would have impeached Gloria,

one of its key witnesses—namely, evidence that he believes would show that the federal prosecutors in his case persuaded Maryland state prosecutors to drop charges against Gloria for an unrelated killing in exchange for Gloria's testimony incriminating Higgs. This contention has been thoroughly explored by the Maryland district court. That court found that Higgs's theory was "pure speculation" and that, in any event, the jury already knew so much about Gloria's criminal history and self-interest that the supposedly suppressed evidence would have been immaterial and cumulative even if it existed. See 193 F. Supp. 3d at 505–06.

But the FOIA proceeding continued to move along notwithstanding the fact that it paralleled Higgs's other efforts. After some back-and-forth about the cost of responding to the request, counsel paid the amount due and waited. On November 7, 2013, the Park Police responded that it would not release any documents. It invoked the three exemptions under FOIA mentioned earlier: Exemptions 6 and 7(C), which relate to personal privacy, and Exemption 7(D), which relates to law-enforcement confidentiality. Counsel appealed, to no avail, and so on March 16, 2016, Higgs filed the present suit. Two months later, the Park Police informed Higgs that it had located nine boxes of responsive documents. It had referred those documents to other federal agencies and, based on their advice, it concluded that it might be able to release 330 pages and possibly more.

Matters reached a stalemate when, on August 16, 2016, Higgs was told that the FBI (which held most of the records) had asserted a "blanket" exemption to production. That was a bit of an overstatement, since the FBI did produce a few more documents on July 31, 2017. Shortly thereafter, the FBI

furnished two declarations from FBI official David Hardy explaining the agency's decision. It also took the following steps:

- 10 pages were released in full

- 38 pages were released with redactions

- 654 pages were withheld in full based on FOIA exemptions

- 36 pages were withheld as duplicates

Thus, of the 738 pages of documents, Higgs received all or part of only 48.

Higgs filed a motion for summary judgment on December 13, 2017, seeking the rest of the records. He argued that Hardy's declarations were inadequate to justify the FBI's decisions, that the privacy interests on which the FBI relied were attenuated at best (some people, for example, may have been deceased), and that the FBI's failure to file a so-called Vaughn Index (named for the decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)) made it impossible for him to track and evaluate the claimed exemptions.

After a telephonic hearing on March 6, 2018, the district court ordered the government to file a complete Vaughn Index. It did so the next day. Higgs moved again for summary judgment, but this time the government argued that he had failed to show a public interest in the requested disclosures. In an order filed on June 25, 2018, the district court granted Higgs's motion in part and denied the rest.

For purposes of its ruling, the court grouped the contested documents into three categories: (1) interview reports from 1999 and associated records (the 1999 Records); (2) National

Crime Information Center (NCIC) reports; and (3) documents that relate to rifling characteristics (the Ballistics Reports). The 1999 Records include internal FBI forms (FD-302's) that memorialize FBI interviews; the forms cover four interviews of confidential sources who provided information under an assurance of confidentiality. With Higgs's consent, Exemption 6 dropped out of the case, since on this record it largely duplicates Exemption 7(C).

The district court began by analyzing Exemption 7(D), which protects confidential sources and information derived from them. Higgs argued that the government bore the burden of proving the expectation of confidentiality and asserted that the Hardy declarations fell short. The court found that the documents had been compiled for law-enforcement purposes—the threshold requirement for both Exemption 7(C) and 7(D). But more is needed, as the Supreme Court recognized in *U.S. Dep't of Justice v. Landano*, 508 U.S. 165 (1993). Circumstantial evidence, such as the nature of the crime and the source's relation to it, will shed light on the particular source's expectation of confidentiality. The court found that the government met its burden of showing that the documents withheld under Exemption 7(D) did satisfy those criteria. In so ruling, it relied on the Hardy declarations, even though Hardy did not say whether the sources were paid or how they communicated with the FBI. It did not conduct its own examination of the documents. The court also noted that the fact that Higgs might have learned the identity of one or more of the informants through the trial made no difference to its ruling.

Turning to Exemption 7(C), the court noted that the parties agreed that it had to balance the privacy interests of the

affected persons against the public interest in disclosure of the information, in order to decide whether that exemption applied. *Baker v. FBI*, 863 F.3d 682, 684 (7th Cir. 2017), citing *U.S. Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 495 (1994). It started with the question whether Higgs had advanced a sufficient public interest to allow his claims about Exemption 7(C) to move forward. In this connection, the court acknowledged that a "prisoner's interest in attacking his own conviction is not a public interest." *Hawkins v. DEA*, 347 F. App'x 223, 225 (7th Cir. 2009) (citing *Peltier v. FBI*, 563 F.3d 754, 764 (8th Cir. 2009)). But, the court concluded, more than that was involved in Higgs's case, because he was trying to uncover a form of government misconduct (*i.e.* the alleged deal with the Maryland authorities in exchange for Gloria's testimony). The court also distinguished *Baker* as involving only a vague interest in ensuring that the government had adequately staffed an investigation. It concluded that the public interest in the manner in which the Department of Justice carries out its law-enforcement mission—an asserted public interest the court saw as distinct from Higgs's government-misconduct claim—sufficed to support Higgs's request.

After concluding that Higgs had met the threshold requirement of demonstrating a public interest supporting disclosure, the court criticized the government for failing to show what privacy interests would be impaired and how badly. (As with Exemption 7(D), it came to this conclusion for Exemption 7(C) without personally examining any of the documents *in camera*; it also admitted that it did not know which of the affected people were alive or dead, some 22 years after the events in question, though it assumed that at least some were alive.) Having determined that the government did not meet its burden of production with respect to the protected

privacy interests, the court concluded that any balancing was impossible and that Higgs's asserted public interest therefore carried the day.

Finally, the court ruled that the government failed to meet its burden to justify the withholding of the NCIC Reports and the Ballistics Reports under Exemption 7(E). The government has not raised any objection to the court's application of 7(E) on appeal.

## II

We have not been consistent about the standard of review that applies when we review a district court's grant of summary judgment in a FOIA case. Recently, however, we have said that we examine the agency's declarations *de novo* to see if there was an adequate factual basis for its decision. If there was, then we switch gears and review the district court's conclusion only for clear error. *Rubman v. USCIS*, 800 F.3d 381, 388 (7th Cir. 2015); see also *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1022 (7th Cir. 2012). But sometimes we have approached the entire appeal as a *de novo* matter, which is the normal standard in an appeal from summary judgment. *E.g.*, *Matter of Wade*, 969 F.2d 241, 245 (7th Cir. 1992); *Kaganove v. EPA*, 856 F.2d 884, 886 (7th Cir. 1988), abrogated on other grounds by *Milner v. Dep't of Navy*, 562 U.S. 562 (2011).

Most of our sister circuits use *de novo* review. See *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992); *Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 989–90 (9th Cir. 2016); *Batton v. Evers*, 598 F.3d 169, 175 & n.6 (5th Cir. 2010); *Church of Scientology Int'l v. Dep't of Justice*, 30 F.3d 224, 228 (1st Cir. 1994); *Halpern v. FBI*, 181 F.3d 279, 287–88 (2d Cir. 1999); *Abraham & Rose PLC v. United States*, 138 F.3d 1075, 1078

(6th Cir. 1998); *Missouri ex rel. Garstang v. Dep't of Interior*, 297 F.3d 745, 749 (8th Cir. 2002); *Anderson v. Dep't of Health and Human Servs.*, 907 F.2d 936, 946 (10th Cir. 1990). Older cases from the Third, Fourth, and Eleventh Circuits appear to use the clear-error standard. See *Lame v. Dep't of Justice*, 767 F.2d 66, 70 (3d Cir. 1985); *Willard v. IRS*, 776 F.2d 100, 104 (4th Cir. 1985); *Chilivis v. SEC*, 673 F.2d 1205, 1210 (11th Cir. 1982).

Procedural purists might question how the clear-error standard pops up in an appeal from a summary-judgment ruling, given how well established the *de novo* standard of review is in such cases. We, too, have our doubts. But for present purposes we find it unnecessary to resolve how to treat this unusual type of litigation—unusual because the district court must resolve some facts before coming to a final decision on summary judgment. Either way, the government has the burden of justifying its decision to withhold requested information. *Patterson v. IRS*, 56 F.3d 832, 836 (7th Cir. 1995). And whether we use clear error or *de novo* review, we come out the same way in this case.

The government presents two arguments for reversal of the district court's decision with respect to the Exemption 7(C) materials: first, it contends that the district court clearly erred in its evaluation of the individual privacy interests held by the affected persons, and second, it launches a broadside attack on the court's finding that Higgs has shown a sufficient public interest to warrant disclosure.

It is all but impossible for us to say anything about the individual privacy interests at stake, for the simple reason that the district court did not develop the record enough for us to know what and who were involved. The court realized that some of the affected people were probably still alive, though

some may have been dead. Some may have been third parties who provided information, some may have been of interest to law enforcement, and some may have been law-enforcement personnel. Some may have testified before a grand jury in reliance on the confidentiality rules found in Federal Rule of Criminal Procedure 6(e). The sensitivity and amount of information collected from each person also probably varies. If the case turned on this point, we would have no choice but to remand it to the district court for further proceedings, likely including an *in camera* review of the disputed materials.

We conclude, however, that the government's second argument has merit. Higgs had the burden of demonstrating a significant public interest in the disclosure of the Exemption 7(C) materials. *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). This is a threshold matter. So long as the government has shown enough of a protected privacy interest to invoke the exemption in the first place, the burden shifts to the person seeking disclosure to demonstrate that there is some significant public interest that the court must balance against those privacy interests. Given the district court's acknowledgement that at least some of the affected people were probably still alive, it was legal error to find that the government had failed to make the required threshold showing of *any* protected privacy interests. If, after the burden shifted to Higgs, he had met it, then a remand to learn *more* about the government's asserted privacy interests may have been proper. But if he did not meet his burden, there is no need to reach the more complex balancing test required for Exemption 7(C).

Higgs proposes two different public interests that would be advanced through disclosure of these materials: revelation

of government misconduct, and education of the public about the way in which the Department of Justice carries out its law-enforcement duties. Neither one carries the day for him.

Higgs has been trying since 2005 to convince someone that the federal prosecutors in his case pressured the Maryland state prosecutors not to charge Victor Gloria for a 1998 murder; they did so, he insists, in order to strengthen or preserve Gloria's utility as a witness against him. Under *Favish*, in order to prevail on this point Higgs must point to evidence that would "warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." 541 U.S. at 174. The district court did not make a definitive ruling on this point; it said only that it was "difficult to say" whether Higgs met that burden. It thought that it could avoid the question because of the public-education benefit of disclosure, which (in its view) did require a showing of misconduct.

But the court erred by putting this question to one side. If it had resolved the question in the government's favor, Higgs could not use the claimed misconduct to overcome Exemption 7(C); if it had ruled in Higgs's favor, we would ask whether that ruling was either clearly erroneous or just plain wrong. But so long as we must reach Higgs's claims of government misconduct (and we must, given our rejection below of his public-education argument) the *Favish* question is before us. And under any standard of review, we cannot see how we could find that Higgs has presented evidence that would "warrant a belief by a reasonable person" that the alleged impropriety occurred. Such a finding would be possible only if we threw in the wastebasket the careful findings of the Maryland district court on this very argument, first in the proceedings under section 2255, 711 F. Supp. 2d at 508–09, and

then in great detail in its opinion rejecting relief under Rule 60(b), 193 F. Supp. 3d at 513. Higgs has offered no reason—either as a matter of fact or as a matter of law—for us to wipe the slate clean in that manner and rule in his favor. There are only so many bites at the apple that one person can have, and Higgs has had more than his share. The only possible conclusion on this record is that Higgs has not shown that a reasonable person could find government impropriety.

Higgs's appeal to public education fares no better. As we noted earlier, a prisoner's "interest in ensuring that his convictions were not obtained as a result of a violation of the Constitution" does not suffice to show a public interest. *Antonelli v. FBI*, 721 F.2d 615, 619 (7th Cir. 1983). It thus follows that a prisoner's interest in using FOIA as a discovery tool in a collateral attack on his own conviction is also insufficient. Higgs disclaims those interests, however, and says instead that he is trying to shine a light on "the manner in which the DOJ carries out substantive law enforcement policy." See *Citizens for Responsibility & Ethics in Washington (CREW) v. U.S. Dep't of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014). This sort of interest does not depend on "whether or not the policy in question is lawful." *Am. Civil Liberties Union (ACLU) v. U.S. Dep't of Justice*, 655 F.3d 1, 14 (D.C. Cir. 2011).

All this is well and good, but we have no idea what "substantive law enforcement policy" was the focus of this FOIA request. Higgs says that disclosure "would reveal much about the diligence of the [agency's] investigation and the DOJ's exercise of its prosecutorial discretion," but that is exactly the kind of vague interest that we rejected in *Baker*, 863 F.3d at 684 (interest in whether FBI assigned its best agents to a particular case). The facts in *CREW* and the *ACLU* cases were far

different: *CREW* dealt with a wide-ranging public corruption investigation of highly placed officials, while *ACLU* focused on an alleged policy of warrantless cell phone tracking. In contrast, the broad questions of diligence and how the government chooses to exercise its prosecutorial discretion would come up in virtually every case. Finally, this case is not like *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161 (D.C. Cir. 2001), even though *Roth* dealt with a particular prisoner's death sentence, because the court in *Roth* found that the plaintiff had satisfied his obligations under *Favish*. As we already have explained, Higgs has not.

Because Higgs has not met his threshold burden of showing that the public interest calls for the disclosure of the Exemption 7(C) materials, we reverse the district court's judgment in his favor on this part of the case.

### III

All that remains is to address Higgs's cross-appeal from the judgment in the government's favor on the materials it was allowed to withhold under Exemption 7(D). This is a closer question than the government admits. FOIA Exemption 7(D) protects the law-enforcement function, by protecting either the identity of a confidential source or information furnished by a confidential source. 5 U.S.C. § 552(b)(7)(D). All parties agree that the information here was collected for law-enforcement purposes, and so the only issue is whether the government has shown that either the identities or the information would be threatened if the documents are turned over to Higgs.

The problem is this: *Landano* holds that the FBI does not enjoy a blanket presumption of confidentiality for Exemption

7(D) purposes for all criminal investigative sources. 508 U.S. at 175–76. Instead, the Supreme Court has called for a more granular inquiry into such matters as the source's expectation of confidentiality, the nature of the crime, the source's relation to it, and the affected government agency's relation to the informant. In so doing, the Court observed that the government might wish to justify its decision through an *in camera* hearing, but it did not call for such a hearing in every case. *Id.* at 180.

We do know a few things about this case: it was a violent triple murder; the sources, at least according to Hardy's affidavits, were close to Higgs and his associates; the sources provided information that Hardy called "singular" about the suspects; Higgs leaned on several potential witnesses in an effort to convince them to provide a false alibi for him, 353 F.3d at 291; and the FBI believed that the confidential sources provided information at their own peril.

We do not rule out the possibility that this showing complied with *Landano.* The record would have been much better if the court had conducted an *in camera* review, as courts often do to ensure that the exemption has properly been invoked. See, *e.g., Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1186 (D.C. Cir. 2011); *Labow v. U.S. Dep't of Justice*, 831 F.3d 523, 526 (D.C. Cir. 2016). But we need not come to a decision on this issue for a reason specific to Higgs's case: all of the materials for which the government sought an exemption under 7(D) also involved a claimed 7(C) exemption. The difference between the two exemptions mattered for the district court, which was willing to uphold only the government's refusal to produce the law-enforcement documents, *i.e.*, the subset of the 7(C) materials for which the government also asserted Exemption 7(D). But viewing those documents through the lens of the

7(C) exemption, Higgs again founders on his inability to show that the public interest supports disclosure.

## IV

Higgs has had more than enough opportunities to explore the relationship between the federal prosecutor and the Maryland state prosecutor with respect to Victor Gloria's actions. The documents he is seeking under the Freedom of Information Act need not be produced if the government can show that they fall under an exemption to the Act. It has claimed that all are covered by Exemption 7(C), and it has asserted that some also fall under Exemption 7(D).

Because Higgs has not shown that the public interest supports disclosure here, the government was entitled to summary judgment across the board. We therefore REVERSE the district court's grant of summary judgment in favor of Higgs, as it applies to the documents under Exemption 7(C), and we AFFIRM its judgment in favor of the government for the documents protected by Exemption 7(D). Costs will be taxed against Higgs.